IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

JOHN COSBY,

                    Plaintiff,

                                        Civil Action No.
                                        9:10-CV-0595 (TJM/DEP)

          v.

COLLEEN RUSSELL; ROBERTS J.
LENNOX; DARRELL D. PILON; SCOTT J.
BISHOP; DOUGLAS J. WILSON; KYLE J.
MULVERHILL; MAYO; J. HAYES; E.
PRITCHARD; E. RICH; and W. KLINE,

                    Defendants.

───────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

JOHN COSBY, *Pro Se*
94-A-2671
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN            ADRIENNE J. KERWIN, ESQ.
Attorney General of the             Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff John Cosby, a New York State prison inmate, has

commenced this action pursuant to 42 U.S.C. § 1983 against several New

York State Department of Corrections and Community Supervision

("DOCCS") employees stationed at the correctional facility in which he

was confined at the relevant times, alleging deprivation of his civil rights.

In his complaint plaintiff claims to have been assaulted by several

corrections officers, purportedly in retaliation for having filed a grievance

against a corrections employee who was not involved in the assault, and

that following the incident he received inadequate medical treatment for

the injuries he sustained.  Plaintiff's complaint asserts claims of excessive

force, unlawful retaliation, failure to intervene, and deliberate medical

indifference.

Currently pending before the court is a motion filed by the

defendants requesting dismissal of various claims contained within

plaintiff's complaint, which has already been amended once in response

to a court determination that the claims set forth in his initial complaint

were legally deficient.  For the reasons set forth below, I recommend that

defendants' motion be granted in part, but otherwise denied.

I.      BACKGROUND [1]

Plaintiff is a prison inmate entrusted to the custody and care of DOCCS; while currently incarcerated elsewhere, at the times relevant to his claims Cosby was designated to the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *See generally* Amended Complaint (Dkt. No. 7).

On May 14, 2007, while serving time in a long-term keeplock cell at Great Meadow, plaintiff filed a grievance accusing Corrections Officer Stormer, who is not named as a defendant in this action, of having threatened him.[2]  Amended Complaint (Dkt. No. 7) ¶ 22.  In response to his grievance plaintiff was transferred away from the area in which

---

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  Also considered were the materials submitted by the plaintiff in opposition to the defendants' motion, Dkt. No. 31, to the extent they are consistent with the allegations set forth in his complaint.  *See Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

[2]      Keeplock is a form of confinement through which an inmate is restricted to a cell, separated from others, and deprived of participation in certain regular prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).

Corrections Officer Stormer works and into a general population cell. *Id.* at ¶ 23.

Shortly after his transfer, plaintiff was approached by Corrections Officers Colleen Russell and Scott Bishop and instructed to dress himself so that he could be escorted to the prison commissary.   Amended Complaint (Dkt. No. 7) ¶ 24.  Once outside his cell plaintiff requested permission to take his hands out of his pockets while being transported so that he could utilize a handrail to assist him in negotiating a set of stairs. *Id.* at ¶¶ 25-26.  After the request was denied, and following a brief verbal exchange regarding the issue, plaintiff was ordered by Corrections Officers Russell and Bishop to return to his cell.  *Id.* at ¶ 26.  Plaintiff complied and walked back to his cell, where he then proceeded to sit down on the floor and demand that he be allowed to see a sergeant.  *Id.* at ¶ 27.  After efforts on the part of Corrections Officers Bishop and Russell to forcibly pull the plaintiff to his feet failed, he was forced to lay down on his stomach, and his feet and legs were temporarily secured until assistance could arrive in response to an alarm sounded by the officers. *Id.*

Once help arrived plaintiff was handcuffed, lifted to his feet, and

taken to a stairwell where he was told to face the control room.  Amended

Complaint (Dkt. No. 1) ¶ 28.  There his head was smashed into the control

room window by either Corrections Officer Robert J. Lenox or Corrections

Officer Darrell D. Pilon.  *Id.*  Thereafter, Officers Pilon, Lennox, and

Bishop began stepping on plaintiff's feet and striking him with blows to his

ankles and legs.  *Id.*  Plaintiff was then placed in leg restraints and taken

to the hospital infirmary for treatment of a laceration above his right

eyebrow, requiring five stitches to close the wound.  *Id.; see also* Plaintiff's

Opposition (Dkt. No. 31) Exhs. B, C.

Following the treatment received at the prison infirmary, plaintiff was

transported by wheelchair to the facility's special housing unit ("SHU"),[3]

where he was frisked by Corrections Officer Mayo.  Amended Complaint

(Dkt. No. 7) ¶ 29.  Corrections Officer Mayo then placed the plaintiff in

handcuffs and, with the assistance of two other officers, carried him by his

arms toward an SHU cell.  *Id.* at ¶ 30.  When plaintiff cried out in pain,

---

[3]        SHU is a more restrictive form of confinement than keeplock.  Inmates in
SHU are not completely restricted.  *Husbands v. McClellan,* 990 F. Supp. 214, 217
(W.D.N.Y. 1998); *see also* 7 N.Y.C.R.R. pt. 304.  They are allowed two showers per
week and one of hour of outdoor exercise per day.  *Id.*  They are entitled to unlimited
legal visits and one non-legal visit per week.  *Id.*  SHU inmates have access to
counselors and sick call.  *Id.*  Additionally, they can participate in cell study programs
and can receive books from the library.  *Id.*

Corrections Officer Mayo instructed the other two officers to lay him on the

floor on his stomach, at which time defendant Mayo "stomped down on

and jumped up and down on plaintiff's left ankle and leg[,]" causing an

injury later determined to be a broken leg. *Id.* at ¶¶ 30-31. Plaintiff was

then dragged into an SHU cell, but was later returned to the infirmary after

experiencing a seizure. Amended Complaint (Dkt. No. 7) ¶¶ 31-32.

Plaintiff did not receive medical treatment for his leg injury until May

15, 2007, the day following the alleged incident, when he was examined

by a physician's assistant and underwent x-rays revealing a fracture of his

left leg/ankle. *Id.* at ¶¶ 33-35. Plaintiff was then seen by Dr. Thomas, a

prison physician, who attempted to stabilize the injury by twisting his ankle

back into position pending treatment at a local hospital. *Id.* at ¶ 46.

Subsequent x-rays taken at a hospital confirmed that plaintiff's ankle was

broken in three places and dislocated. *Id.* at ¶ 37.

## II.   PROCEDURAL HISTORY

On May 20, 2010, plaintiff commenced this action and sought leave

to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1-3. Plaintiff's initial

complaint named Colleen Russell, Robert J. Lennox, Darrell D. Pilon,

Scott Bishop, Douglas Wilson, Kyle J. Mulverhill, [f/n/u] Mayo, J. Hayes,

[f/n/u] Griffin, E. Pritchard, E. Rich, and W. Kline as defendants. Dkt. No. 1. Following an initial review of plaintiff's complaint and IFP application, Senior District Judge Thomas J. McAvoy issued a decision on July 29, 2010 granting him leave to proceed *in forma pauperis* and approving the filing of the complaint, but directing dismissal of plaintiff's claims against defendants Wilson, Mulverhill, Hayes, Griffin, Pritchard, Rich, and Kline, without prejudice and with leave to replead within thirty days.

On September 30, 2010, plaintiff submitted an amended complaint in accordance with Senior District Judge McAvoy's order. Dkt. No. 7. That amended complaint names all of the defendants listed in his earlier complaint with the exception of defendant Griffin, and alleges claims of excessive force, failure to intervene, and deliberate medical indifference in violation of the Eighth Amendment to the United States Constitution, as well as unlawful retaliation in violation of the First Amendment; the complaint also purports to assert claims under federal and state criminal statutes as well as a conspiracy cause of action under 42 U.S.C. § 1985(3). *Id.* Plaintiff's complaint seeks declaratory relief as well as compensatory and punitive damages.

Upon its receipt, plaintiff's amended complaint was again reviewed

by the court for facial sufficiency.  That review resulted in the issuance of

a decision and order by Senior District Judge McAvoy on February 23,

2011 in which the court 1) ordered dismissal of all claims against

defendants Griffin, Wilson, and Mulverhill, without prejudice; 2) dismissed

plaintiff's due process and equal protection causes of action against

defendants Russell and Bishop, without prejudice; and 3) ordered the

addition of Dr. Thomas, a physician at Great Meadow Correctional

Facility, as a defendant based upon allegations against him set forth in the

body of plaintiff's complaint.  Dkt. No. 9.

Following service of the summons and amended complaint,

defendants moved, on May 17, 2011, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure to dismiss various of plaintiff's claims for

failure to state a cause of action upon which relief may be granted.  Dkt.

No. 26.  In their motion, defendants assert that 1) defendants Hayes,

Pritchard, Rich, and Kline were not sufficiently involved in the conduct

giving rise to plaintiff's claims to be held liable for damages under section

1983; 2) the claims against defendants Russell, Bishop, and Lennox

involve only a *de minimis* use of force and cannot support a plausible

excessive force claim under the Eighth Amendment; 3) plaintiff's

complaint fails to state a plausible deliberate medical indifference cause of action against Dr. Thomas; 4) plaintiff's retaliation claim is subject to dismissal based upon his failure to allege facts demonstrating that the defendants were aware of his grievance against Corrections Officer Stormer when taking the actions forming the basis for his claims; and, 5) plaintiff's claims arising out of state and federal criminal provisions as well as under 42 U.S.C. § 1985(3) lack merit. *Id.* Plaintiff has since responded in opposition to defendants' motion; included within his opposing papers are both an affidavit and supporting exhibits providing greater detail concerning his claims.[4] Dkt. No. 31.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

---

[4]     While those materials have not been formally excluded, I have opted not to recommend conversion of defendants' motion to an application for summary judgment pursuant to Federal Rules of Civil Procedure 12(d), although in deference to plaintiff's *pro se* status I have considered his additional submissions to the extent they are consistent with the allegations in his complaint. *Hale v. Rao*, No. 9:08-CV-1612, 2009 WL 3698420, at *3 n.8 (N.D.N.Y. Nov. 3, 2009) (Hurd, D.J. and Lowe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint.)

III.   DISCUSSION

A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second

Circuit has observed, "[w]hile *Twombly* does not require heightened fact

pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S.

at 570, 127 S. Ct. at 1974).

     In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences

in favor of the non-moving party.  *Cooper*, 378 U.S. at 546, 84 S. Ct. at

1734; *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.

2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v.*

*Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  However,

the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions.  *Iqbal*, 129 S. Ct. at

1949.  In the wake of *Twombly* and *Iqbal*, the burden undertaken by a

party requesting dismissal of a complaint under Rule 12(b)(6) remains

substantial; the question presented by such a motion is not whether the

plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled

to offer evidence to support the claims.'" *Log On America, Inc. v.*

*Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

    B.    <u>Personal Involvement</u>

From the outset, as is demonstrated by the court's initial order following review of Cosby's original complaint and accompanying IFP application, the sufficiency of his allegations to establish the requisite personal involvement of the named defendants in the conduct giving rise to his claims has been in question. The court's initial order reflects, moreover, that plaintiff has been apprised of the need to demonstrate the involvement of each named defendant in the civil rights deprivations alleged in order to establish liability. Despite this admonition, defendants argue, plaintiff's amended complaint perpetuates this deficiency and fails to set forth facts demonstrating a plausible showing of personal involvement in any unconstitutional conduct on the part of defendants Hayes, Pritchard, Rich, and Kline.

It is well-established that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.

1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.

1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert.

denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  As the Supreme Court

has noted, a defendant may only be held accountable for his or her

actions under section 1983.  *Iqbal*, 129 S. Ct. at 1952.  In order to prevail

on a section 1983 cause of action against an individual, a plaintiff must

show some tangible connection between the constitutional violation

alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d

260, 263 (2d Cir. 1986).

The sole allegations in plaintiff's amended complaint regarding the

involvement of defendants Hayes, Pritchard, and Rich in the relevant

events are as follows:

> 46.    The actions of Defendants, E. Hayes, E. Pritchard
> and E. Rich, violated the plaintiff's rights under Due
> Process and the Equal Protection of the Law under the
> Fourteenth Amendment to the United States Constitution
> and the Eighth Amendment's Deliberate Indifference
> standard, when they neglected and failed to intervene in
> the malicious, sadistic beating of plaintiff on the part of
> their fellow coworkers NYS Corrections Officers
> excessive use of force!

Amended Complaint (Dkt. No. 7) ¶ 46.  Defendants argue that this mere

conclusory allegation, without any supporting facts, fails to demonstrate

the existence of a plausible claim for failure to intervene.

The plaintiff appears to allege that while they did not actively participate in beating him, defendants Hayes, Pritchard, and Rich are nonetheless legally responsible for their failure to intervene and protect him from harm at the hands of other officers.  It is well-established that a corrections worker who, while not participating in an assault upon an inmate, is present while it occurs may nonetheless bear responsibility for any resulting constitutional deprivation.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  A law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers.  *See Mowry v. Noone,* No. 02-CV-6257 Fe, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted).[5]  In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the use of excessive force by someone other than the individual, and that the defendant under

_____

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

consideration 1) possessed actual knowledge of the use by another corrections officer of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.  *See Curley*, 268 F.3d at 72; *see also Espada v. Schneider*, 522 F. Supp. 2d 544, 555 (S.D.N.Y. 2007). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene.  *See, e.g., Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (noting that "liability in a § 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia*, *Daniels v. Williams*, 474 U.S. 327, 335-36, 106 S. Ct. 662, 667 (1986)).

As defendants argue, plaintiff's complaint states claims against defendants Hayes, Pritchard, and Rich in a purely conclusory fashion and without the inclusion of factual allegations sufficient to permit the court to gauge whether a plausible cause of action for failure to intervene has been asserted.  I have therefore turned to plaintiff's submission in opposition to the pending motion to determine whether this shortcoming is cured and a plausible claim exists against those defendants.

In his opposing papers plaintiff asserts that defendants Hayes, Pritchard, and Rich, as well as defendants Kline and Thomas, were present when he was physically beaten and severely injured.  Cosby Aff. (Dkt. No. 31) ¶ 3.  This claim is corroborated by a written Use of Force/Unusual Incident Report authored by Sergeant W. Kline on May 14, 2007, which confirms the presence of defendants Hayes, Pritchard, and Rich in plaintiff's B-1 SHU cell at or about the time of the alleged assault by defendant Mayo.  *See id.* at  Exh. B.  It therefore appears that, as supplemented by his motion opposition, plaintiff's complaint reveals the existence of a plausible cause of action against those three defendants for failure to intervene.  Accordingly, I recommend that the portion of defendants' motion seeking dismissal of plaintiff's claims against defendants Hayes, Pritchard, and Rich be denied.

Defendants also seek dismissal of plaintiff's claims against Corrections Sergeant W. Kline, on the basis of lack of personal involvement.  Once again, from a review solely of plaintiff's amended complaint it would appear that defendants' arguments regarding Sergeant Kline are well-taken.  The allegations set forth in the body of plaintiff's complaint regarding Sergeant Kline suggest that he is named as a

defendant solely by virtue of his supervisory position.  In his amended complaint plaintiff identifies Sergeant Kline as a supervisory employee and alleges that Sergeant Kline acted "with a callous disregard to the rights, life, health and safety of the plaintiff", and further that he was "deliberately indifferent to his suborindate(s) [sic] (corrections officers) use of excessive force in a malicious, sadistic manner upon plaintiff. . .".  Amended Complaint (Dkt. No. 7) ¶ 44.  To the extent that plaintiff is alleging that Sergeant Kline can be held vicariously liable for the acts of his subordinates, such a claim is not cognizable; a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; as there is no *respondeat superior* liability under section 1983.[6]  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.

From plaintiff's submissions in opposition to the pending motion, however, it is clear that his allegations against Sergeant Kline are not

---

[6]     Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom.*, *Ashcroft v. Iqbal*, 556 U.S. ___,129 S. Ct. 1937 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

limited to a *respondeat superior* claim, and that instead he asserts, and

provides convincing supporting documentation showing, that Sergeant

Kline was present during all or some of the incident but, according to the

plaintiff, failed to intervene and protect him from the assault.  *See* Cosby

Aff. (Dkt. No. 31) ¶ 4 and Exh. B.  In deference to his *pro se* status, I

therefore recommend that the court find that plaintiff has stated a

plausible claim of failure to intervene on the part of Sergeant Kline and

that the portion of defendants' motion seeking dismissal of plaintiff's

claims against that defendant also be denied.  *See Phillips v. Roy*, No.

9:08-CV-878, 2011 WL 3847265, at *7 (N.D.N.Y. Aug. 29, 2011) (Scullin,

S.J.).

>        C.      Legal Sufficiency of Plaintiff's Excessive Force Claims Against
>                Defendants Russell, Bishop, and Lennox

In their motion defendants argue that the only participation by

Corrections Officers Russell and Bishop in the relevant events was that

they tried lifting the plaintiff to his feet after he sat down and refused to

move until the arrival of a sergeant, and, failing in that endeavor, forced

him to lie down on his stomach in order to await the arrival of additional

officers to assist.  Defendants also contend that the actions of defendant

Lennox, as alleged in plaintiff's complaint, appear to be limited to the claim

that he smashed the plaintiff's head on the control room on an isolated occasion.  Defendants maintain that these allegations are insufficient to establish a plausible claim of use of excessive force against those officers.

Plaintiff's claims of excessive force are brought under the Eighth Amendment, which proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999).  The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-999 (1992) (applying *Whitley* to all excessive force claims);

*Whitley*, 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462 (1973)).

Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct.  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson,* 503 U.S. at 7-8, 112 S.Ct. at 999 and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).  As was recently emphasized by the United States Supreme Court in *Wilkins v. Gaddy*, however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. 130 S. Ct.1175, 1179 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically
> use force to cause harm, contemporary standards
> of decency always are violated . . . . This is true
> whether or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how diabolic or

inhuman, inflicting less than some arbitrary quantity of injury. *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F. Supp.2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10, 112 S.Ct. 1000 (citations omitted).

Plaintiff's amended complaint makes only exceedingly modest allegations regarding the roles of defendants Bishop and Russell in any use of excessive force against him.  Crosby alleges that after attempting to forcibly pull him to his feet, without success, the two officers required him to lay on his stomach at which time Officer Russell sat on his feet and legs until help could arrive.  Amended Complaint (Dkt. No. 7) ¶ 27.  He further alleges that after reinforcements arrived he was taken to a stairwell and that defendant Bishop "started stepping on [his] feet and striking him with deadly blows and force, to his ankles and legs."  *Id.* at ¶ 28.

The allegation that defendant Russell sat on plaintiff's legs after he complained of pain is insufficient to state a plausible deliberate

indifference claim.  "Not every push or shove, even if it later may seem

unnecessary in the peace of the judges chambers, judge's violates a

prisoner's constitutional rights."  *Johnson*, 481 F.2d at 1033.  By plaintiff's

own admission, he was non-compliant with orders from defendants Bishop

and Russell, requiring that some modicum of force be applied.  Because

the court is unable to conclude that plaintiff has stated a plausible claim,

demonstrating that the force applied was not a good faith effort to

maintain or restore discipline, I recommend dismissal of plaintiff's claims

against defendant Russell.  *See Cicio v. Graham*, No. 9:08-CV-534, 2010

WL 980272, at *5 (N.D.N.Y. Mar. 15, 2010) (Mordue, C.J.); *Headley v.*

*Fisher*, No. 06 CV 6331, 2008 WL 1990771, at *4 (S.D.N.Y. May 8, 2008).

    The claims against defendants Bishop and Lennox stand on

different footing.  Plaintiff alleges that defendant Bishop struck him with

blows to his ankles and legs, and that defendant Lennox smashed his

head into a control room window, causing a laceration requiring five

stitches.  The defendants' contention that these allegations are not

sufficient at this early juncture to establish a plausible excessive force

claim against those defendants is patently untenable.  *See Phelan v.*

*Hersh*, No. 9:10–CV–0011 2011 WL 6031940, at *12 (N.D.N.Y. Sep. 13,

2011) (Treece, M.J.), *report and recommendation adopted*, 2011 WL 6031071 (N.D.N.Y. Dec 05, 2011) (Sharpe, J.); *Phillips v. Roy*, No. 9:08–CV–878, 2011 WL 3847265, at *6-7 (N.D.N.Y. 2011) (Scullin, S.J.). I therefore recommend that the court deny the motion to dismiss as it relates to plaintiff's claims against defendants Bishop and Lennox.

### D.   Deliberate Medical Indifference

In his complaint, as amended, plaintiff alleges that while being treated for the broken ankle suffered as a result of the May 14, 2007 incident, Dr. Thomas, who apparently is a prison physician at Great Meadow, twisted his ankle when, consistent with proper medical judgment and the prevailing standard of medical care, he should not have. Defendants seek dismissal of this claim as failing to rise to a level of constitutional significance.

Like plaintiff's excessive force claim, his assertion that prison officials intentionally disregarded his medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment and are informed by the same principles. *Estelle,* 429 U.S. at 102, 104, 97 S.Ct. at 290, 291.  With regard to the objective element of an Eighth Amendment medical

indifference claim, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  With respect to the subjective element, a plaintiff must also demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'"  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).  Claims of medical indifference are subject to analysis utilizing this Eighth Amendment paradigm.  *See Salahuddin v. Goord,* 467 F.3d 263, 279-81 (2d Cir. 2006).

Plaintiff's allegations against Dr. Thomas fail to support the finding of a plausible deliberate medical indifference claim.  Instead, even when his complaint is liberally construed, the plaintiff's own words implicate nothing more the medical judgment exercised by Dr. Thomas in treating his ankle.  It is well-established that claims of medical malpractice or simple disagreement by a prison inmate with a course of treatment followed or prescribed by a prison medical employee do not rise to a level sufficient to support a deliberate indifference claim.  *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 292; *Chance,* 143 F.3d at 703; *see also Arroyo v. City*

*of New York*, No. 99 Civ. 1458, 2003 WL 22211500, at * 2 (S.D.N.Y. 2003) ("Charges that amount only to allegations of malpractice, and mere disagreements with respect to quality of medical care do not state an Eighth Amendment claim. . .'") (citing *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 292).  Based upon a review of plaintiff's complaint and accepting the truth of plaintiff's allegations, I find no basis to conclude that Cosby was either denied adequate treatment for his ankle condition, or that Dr. Thomas acted with a sufficiently culpable state of mind to establish deliberate indifference on his part.  Accordingly, I recommend dismissal of plaintiff's claims against that defendant.

 E. <u>Retaliation</u>

 In their motion defendants next seek dismissal of any First Amendment retaliation claim deemed to be contained within plaintiff's complaint.  In this regard, defendants assert that the complaint lacks any factual allegations that the defendants who participated in his beating had any awareness of a grievance filed earlier by Cosby against a fellow corrections officer, who is not named as a defendant and was not involved in the assault.

 When adverse action is taken by prison officials against an inmate,

motivated by the inmate's exercise of a right protected under the

Constitution, including the free speech provisions of the First Amendment,

a cognizable claim of retaliation lies under 42 U.S.C. § 1983.  *See Franco*

*v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has

repeatedly cautioned, however, such claims are easily incanted and

inmates often attribute adverse action, including the issuance of

misbehavior reports, to retaliatory animus; courts must therefore approach

such claims "with skepticism and particular care."  *Dawes v. Walker*, 239

F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13

(2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,*

534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)

(same).

    In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001). If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

The protected conduct alleged by plaintiff in support of his retaliation claim is the filing of a grievance against a corrections officer employed at Great Meadow. *See* Amended Complaint (Dkt. No. 7) ¶ 22. That act plainly qualifies as protected activity for purposes of the First Amendment. *Franco*, 854 F.2d at 590. As one court has noted, "*Franco* recognized that prisoners must be permitted the "free and uninhibited access'" to both administrative and judicial forums for the purpose of seeking redress of grievances.'" *Alnutt v. Cleary*, 913 F. Supp 160, 169 (W.D.N.Y. 1996) (quoting *Franco*). It is undeniable that were prison officials permitted to

retaliate against inmates for filing grievances, those individuals' First Amendment rights would suffer a severe chilling effect resulting from fear of reprisal.  *See Bordas v. Payant*, No. 9:08-CV-0458, 2009 WL 35292, at *3 (N.D.N.Y. Jan. 5, 2009) (McAvoy, S.J.), *aff'd*, 374 Fed. App'x 192 (2d Cir. 2010).

As an adverse action linked to and allegedly stemming from that protected conduct, plaintiff asserts that he was beaten by several other corrections officers.  This factual allegation, which at this juncture must be accepted as true, is similarly sufficient to plausibly support a finding of adverse action for purposes of plaintiff's retaliation cause of action.  *See Cannon v. Wood*, No. 9:10–CV–1332, 2011 WL 7071100, at * 5 (N.D.N.Y. Aug. 12, 2011) (Treece, M.J.) (finding allegation of harassment in retaliation for grievance sufficient to support a plausible claim for retaliation), *report and recommendation adopted*, 2012 WL 177972 (N.D.N.Y. Jan 23, 2012) (Suddaby, J.).

The focus of defendants' challenge to Crosby's retaliation claim is upon the required showing of a nexus between the protected conduct and adverse action.   As is true in most instances, plaintiff cannot point to direct evidence showing that plaintiff's beating was motivated by his filing

of a grievance.  Plaintiff argues, however, that the required link between

the two is evidenced in this case by the fact that on the same day that he

filed a grievance concerning corrections officer Stormer, causing him to be

transferred to a new cell block, he was assaulted by other corrections

officers.  The fact that an adverse action occurs shortly after an inmate

has engaged in protected conduct is one that can support a finding of the

required connection linking the two for purposes of a retaliation claim.

*Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002).  Given that at this

juncture all inferences must be drawn in plaintiff's favor, I conclude that

one such permissible inference to be drawn from the timing involved here

is that the officers engaged in the assault were aware of plaintiff's

grievance against one of their coworkers.  For this reason, I conclude that

plaintiff's complaint, as amended, sets forth sufficient allegations of fact to

support a finding of a plausible retaliation claim, and I therefore

recommend against dismissal of that cause of action.

     F.    <u>Plaintiff's Remaining Claims</u>

    In the final point of their motion defendants seek dismissal of

plaintiff's remaining claims.  Among the additional causes of action

summarily set forth in plaintiff's amended complaint are those arising out

of state and federal penal laws governing such matters as conspiracy,

assault, the filing of false written statements, and harassment under New

York Penal Law Articles 105, 120, 175, and § 240.26(1)(2) as well as 18

U.S.C. §§ 241 and 242.  Plaintiff's complaint also asserts a conspiracy

claim under 42 U.S.C. § 1985(3).

The portion of plaintiff's claims predicated upon penal statutes is

easily disposed of.  None of those statutes give rise to a private civil right

of action, but instead may be enforced only by authorized law

enforcement agencies.  *Brown v. Seniuk*, No. 01 CV 1248, 2002 WL

32096576, at *1 (E.D.N.Y. Mar. 25, 2002) (citing *Linda R.S. v Richard D.*,

410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable

interest in the prosecution or nonprosecution of another.")).

Turning to plaintiff's section 1985(3) claim, I note that to sustain a

cause of action for conspiracy to violate civil rights under that section, a

plaintiff must allege and demonstrate that defendants acted with racial or

other class-based animus in conspiring to deprive the plaintiff of his or her

equal protection of the laws or equal privileges and immunities secured by

law.  *United Brotherhood of Carpenters & Joiners, Local 610, AFL-CIO v.*

*Scott*, 463 U.S. 825, 834-39, 103 S. Ct. 3352, 3359-61 (1983); *Gagliardi v.*

*Village of Paing,* 18 F.3d 188, 194 (2d Cir. 1994); *Gleason v. McBride,* 869 F.2d 688, 694 (2d Cir. 1989); *Patterson v. County of Oneida*, No. 00-CV-1940, 2002  31677033, at *4 (N.D.N.Y. 2002) (Hurd, J.), *aff'd in relevant part*, 375 F.3d 206 (2d Cir. 2004); *Benson v. United States*, 969 F. Supp. 1129, 1135-36 (N.D. Ill. 1997) (citing, *inter alia*, *United Brotherhood*, 463 U.S. at 434-37); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995).  A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can, in the alternative, be evidenced circumstantially by a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'"  *LeBlanc-Sternberry*, 67 F.3d at 427 (quoting *United States v. Rubin,* 844 F.2d 979, 984 (2d Cir.1988)).  This notwithstanding, in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) (per curiam); *Williams v. Reilly*, 743 F. Supp. 168, 173 (S.D.N.Y. 1990) ("[u]nsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive [even] a motion to dismiss"). "[D]iffuse and expansive allegations are insufficient, unless amplified by

specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Moreover, it is well settled that a plaintiff attempting to establish a claim under 42 U.S.C. § 1985(3) must demonstrate that the defendant under consideration acted with class-based invidiously discriminatory animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 266-68, 113 S.Ct. 753, 758-59 (1993). "When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under 42 U.S.C. § 1985 may be dismissed." *Estes-El v. Town of Indian Lake*, 954 F.Supp. 527, 532 (N.D.N.Y. 1997)(citation and internal quotations omitted).

Plaintiff's complaint contains no factual allegations that would support a finding of racial or class-based animus. In his complaint plaintiff does not even identify his race, or that of the offending officers, nor does he set forth any factual allegations, as distinct from conclusory statements, that could give rise to a finding of race-based animus. I therefore also recommend dismissal of plaintiff's conspiracy claim under section 1985(3).

G.    Whether to Permit Amendment

The next issue to be addressed is whether plaintiff, having already

filed one amended complaint, should be granted further leave to replead

in order to cure the deficiencies noted in this report.

Ordinarily, a court should not dismiss a complaint filed by a  *pro se*

litigant without granting leave to amend *at least* once if there is any

indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d

698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P.

15(a) (leave to amend "shall be freely given when justice so requires");

*see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003

(E.D.N.Y.1995) (leave to replead granted where court could not say that

under no circumstances would proposed claims provide a basis for relief).

Generally, when a *pro se* action is dismissed *sua sponte*, the plaintiff

should be allowed to amend his or her complaint.  *See Gomez v. USAA*

*Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

Notwithstanding this rule, an opportunity to amend is not required

where "the problem with [plaintiff's] causes of action is substantive" such

that "[b]etter pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir. 2000) (finding that repleading would be futile) (citation

omitted); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."). The court must next determine whether plaintiff is entitled to the benefit of the general rule favoring amendment given the procedural history of the case.

Certain of the claims that I am recommending be dismissed appear on their face to be hopelessly defective, such that any opportunity to amend would prove futile. For example, plaintiff's endeavor to assert civil claims based upon state and federal penal statutes is plainly misguided, and no amount of revision will cure this deficiency. Other claims for which I have recommended dismissal, however, could ostensibly be revived. For this reason, I recommend that plaintiff be denied the opportunity to amend with regard to his effort to bring claims under state and federal penal laws since those claims are plainly precluded. I further recommend,

however, that he be given the opportunity to amend with regard to his excessive force claim against defendant Russell, any deliberate medical indifference cause of action against Dr. Thomas, and his section 1985 cause of action for conspiracy.

Should plaintiff choose to take advantage of any opportunity afforded to amend in his second amended complaint he must clearly set forth the facts, including the wrongful acts that give rise to the claim, the dates, times and places of the alleged acts, and the identity of each individual who committed or participated in each alleged wrongful act.  Such an amended complaint must replace the existing second amended complaint, must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court, *see Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), and should specifically allege facts indicating the involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish the they were tangibly connected to those deprivations.  *See Bass,* 790 F.2d at 263.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Certain portions of plaintiff's complaint in this action, including his allegations of the use of excessive force and failure of certain of the defendants to intervene to protect him from harm, set forth cognizable claims.  Others causes of action alleged by plaintiff, however, are not supported by factual allegations sufficient to demonstrate the existence of plausible claims.  Accordingly, it is hereby respectfully

RECOMMENDED that defendants' dismissal motion (Dkt. No. 26) be GRANTED, in part, and that plaintiff's claims against defendants Russell and Thomas, as well as plaintiff's causes of action arising out of state and federal penal law, and under 42 U.S.C. § 1985(3), be DISMISSED, with leave to replead only with regard to his claims against defendants Russell and Thomas, and under 42 U.S.C. § 1985(3), and that such amended pleading, if any, be filed within thirty days of any decision and order adopting this report and recommendation in full, and that defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 8, 2012
           Syracuse, NY



Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> [FN1.] This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> [FN2.] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> [FN3.] DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. Federal Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994); see also Heyman v. Commerce and Industry Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); accord Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994).

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir.1994); see also Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. Allison v. Kyle, 66 F.3d 71, 74 (5th Cir.1995). Under Sandin, a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes atypical and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> **FN5.** Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

> **FN10.** Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

**\*9** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John HALE, Plaintiff,
v.
Jadow RAO; J. Ireland; Mack/s/Revell; R. Furnia; J.
Silver; John Doe # 1; John Doe # 2; Jane Doe # 1; Jane
Doe # 2; Jane Doe # 3; and Jane Doe # 4, Defendants.
**No. 9:08-CV-612.**

Nov. 3, 2009.

John Hale, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Richard Lombardo, Esq., Asst. Attorney
General, of Counsel, Albany, NY, for Defendants.

### *DECISION and ORDER*

DAVID N. HURD, District Judge.

**\*1** Plaintiff, John Hale, brought this civil rights action in
March 2008, pursuant to 42 U.S.C. § 1983. By
Report-Recommendation dated September 29, 2009, the
Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motions to dismiss
(Docket No. 27) be granted in part and denied in part as
follows: (1) the motion to dismiss should be granted to the
extent that plaintiff asserts claims for money damages
against defendants in their official capacities; and (2) the
motion should be denied to the extent that defendants
moved to dismiss plaintiff's Eighth Amendment claim
against defendant Rao, and moved to dismiss the
complaint against defendant Rao on the ground of
qualified immunity. The Magistrate Judge further
recommended that the motion to dismiss for failure to

prosecute, or in the alternative for an order compelling
plaintiff's responses (Docket No. 36), be denied. No
objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in all
respects. *See* 28 U.S.C. 636(b) (1).

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss (Docket No. 27) is
GRANTED IN PART and DENIED IN PART;

    a. The motion to dismiss is GRANTED to the extent
    that plaintiff asserts claims for money damages against
    defendants in their official capacities; and

    b. The motion is DENIED to the extent that
    defendants moved to against defendant Rao on the
    ground of qualified immunity;

2. Defendants' motion to dismiss for failure to prosecute,
or in the alternative, for an order compelling plaintiff's
responses (Docket No. 36) is DENIED;

3. This matter is referred back to the Magistrate Judge for
any further proceedings.

IT IS SO ORDERED.

### *REPORT-RECOMMENDATION AND ORDER*

GEORGE H. LOWE, United States Magistrate Judge.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.

Currently pending is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), seeking dismissal of the complaint in its entirety against Defendant Dr. Jadow Rao and against Defendants J. Ireland, R. Furnia, Mack Reyell, J. Silver, and Rao in their official capacities. Dkt. No. 27. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

Also pending is a Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. Dkt. No. 36. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

For the reasons discussed below, I recommend that the Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) be granted, in part, and denied, in part. I also recommend that the Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff's responses be denied.

## I. MOTION TO DISMISS PURSUANT TO **FED. R. CIV. P. 12(b)(6)** AND **12(c)**

### A. BACKGROUND

**\*2** Plaintiff John Hale alleges that eleven employees ("Defendants") of the New York State Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment when (1) in or around May of 2006, Defendants Ireland, Revell, Furnia, and Silver physically assaulted and injured him without provocation at Clinton Correctional Facility ("C.F."), and (2) between May of 2006 and February of 2008, the remaining seven Defendants (Dr. Rao, John Does 1-2, and Jane Does 1-4)

were deliberately indifferent to his resulting serious medical needs at Clinton, Southport, Elmira and Attica C.F.s. Complaint at ¶¶ 16-27.

Plaintiff states that he has exhausted his administrative remedies. Complaint at ¶ 29. Plaintiff has submitted copies of decisions from the Central Office Review Committee of the Inmate Grievance Program. Dkt. No. 5, Exhibits. Plaintiff also included a copy of a decision from the Superintendent of Attica C.F. *Id.*

### B. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [FN1] or (2) a challenge to the legal cognizability of the claim. [FN2]

> FN1. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr .S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN2. *See Swierkiewicz v. Sorema N.A.,* 534 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12(b)(6)'s requirement of stating a cognizable claim and Rule 8(a)'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN3] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN4] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN5]

FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v.*

*Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (citation omitted).

FN4. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 (2d Cir.1996)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 570 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

**\*3** It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." FN6 "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "FN7 In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

> FN6. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN7. *Hernandez,* 18 F.3d at 136 (citation omitted); *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. FN8 Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." FN9 Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." FN10 Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint. FN11 In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." FN12

> FN8. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering plaintiff's response affidavit on motion to dismiss)). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

> FN9. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

> FN10. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

> FN11. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN12. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN13] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN14] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN15] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN16]

FN13. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") (internal quotation marks and citation omitted); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") (citation omitted).

FN14. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord,*

*Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit); *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN15. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN16. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

Defendants also move pursuant to Fed.R.Civ.P. 12(c). Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."[FN17]

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

FN17. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

## C. ANALYSIS

### 1. Eighth Amendment

Reading the complaint generously, Plaintiff alleges that he complained to Defendant Rao, Health Services Director at Attica C.F., about his "medical problems," which included (1) the injuries he sustained during the alleged May 2006 incident, such as persistent vomiting of blood and urinating of blood, (2) surgical staples in his stomach, and (3) swollen ribs.[FN18] Complaint at ¶ ¶ 16-27. Plaintiff alleges that in response, Dr. Rao stated that he did not believe Plaintiff's complaints, consistently "denied" Plaintiff's complaints, and called Plaintiff " 'crazy.' " *Id.* at ¶¶ 26, 27. Plaintiff claims that as a result, he has endured pain, suffering, and injuries. *Id.*

FN18. Specifically, Plaintiff states, "It should be noted that *Plaintiff has been complaining about all of the above medical problems* [which include the injuries sustained during the alleged assault, the surgical staples, and swollen ribs] to medical staff here at Attica C.F. *including Defendant Dr. Rao* ... and ever since he was beaten by the Defendant Officers Ireland, Reyell, Furnia, and Silver *he has been throwing up blood and urinating blood yet the Defendants consisting* [sic] *denied his complaints;* resulting in Plaintiff's pain and suffering, and further injuries." Complaint at ¶ 27 (emphasis added).

**\*4** Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim against Defendant Rao. Dkt. No. 27-2 at pp. 3-6.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corrections,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin,* 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

medical condition is sufficiently serious." *Id.* A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702-03.

**\*5** If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin,* 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003).

To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton." Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle,* 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d 698, 703 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,*

143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. 825, 835; *Ross v. Giambruno,* 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance,* 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendant Rao provided Plaintiff with inadequate or no medical care after learning of Plaintiff's physical complaints, including persistent vomiting of blood and urinating of blood. Vomiting of blood and urinating of blood are indications of serious medical needs. *See Morgan v. Maass,* No. 94-35834, 1995 WL 759203, at *2 (9th Cir. Dec. 26, 1995) (finding that vomiting blood constituted a serious medical need); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926, at *3 (M.D.Fla. Oct. 4, 2006) (finding that "[e]ven to a lay person, it is obvious that blood in the urine is an indication of a serious medical need."). Thus, the allegations in the complaint satisfy the objective component.

**\*6** Regarding the subjective component, the complaint alleges that Defendant Rao was aware that Plaintiff had serious medical needs, but consciously and intentionally disregarded or ignored those needs. Dkt. No. 1. Thus, the allegations in the complaint satisfy the subjective component.

Defendants argue that Plaintiff's complaint is conclusory and fails to contain specific allegations of fact indicating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

a deprivation of rights as against Defendant Rao. Dkt. No. 27-2, at p. 5. The Court disagrees. Plaintiff specifically stated that he informed Defendant Rao about his "medical problems," which included vomiting of blood and urinating of blood, but that Dr. Rao expressed disbelief, consistently "denied" Plaintiff's complaints, and stated that Plaintiff was "crazy." Complaint at ¶ 27. Plaintiff has set forth more than a simple conclusory allegation.

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed to state a claim for deliberate medical indifference against Defendant Rao.FN19 Accordingly, the motion to dismiss the Eighth Amendment claim against Defendant Rao should be denied.

>    FN19. *See Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citing *Chance,* 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted) (other citations omitted); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 559 (S.D.N.Y.2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms) (citing *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616, at *23 (S.D.N.Y. Apr. 3, 2008) (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant

was deliberately indifferent to plaintiff's medical needs)).

**2. Qualified Immunity**

Defendant Rao asserts that he is entitled to dismissal on the ground of qualified immunity. Dkt. No. 27-2 at pp. 6-8.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68-69 (2d Cir.2004) (citations omitted), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

>    (1) whether the right in question was defined with 'reasonable specificity'; whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted), *cert. denied,* 503 U.S. 962 (1992).FN20 "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169-70 (2d Cir.2007) (citations omitted). [FN21] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). [FN22] As the Supreme Court has explained,

FN20. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v.. City of Syracuse,* 26 F.3d 14, 17-18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

FN21. *See also Anderson v. Creighton,* 483 U.S. 635, 639 (1987) ( "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (citation omitted); *Davis v. Scherer,* 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

FN22. *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

*7 [T]he qualified immunity defense ... provides ample

protection to all but the plainly incompetent or those who knowingly violate the law.

... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [FN23]

FN23. *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendant Rao is entitled to qualified immunity at this stage. As noted, Plaintiff alleges that he informed Dr. Rao of his "medical problems," including persistent vomiting of blood and urinating of blood, but Dr. Rao stated that he did not believe Plaintiff's complaints, consistently denied Plaintiff's complaints, and called Plaintiff " 'crazy,' " which resulted in pain, suffering, and injuries. Complaint at ¶¶ 26-27. Therefore, the motion to dismiss the complaint on the ground of qualified immunity should be denied. [FN24]

FN24. *See Beeks,* 2008 WL 3930657, at *9 (citing *See McKenna,* 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....") (other citations omitted)).

**3. Eleventh Amendment**

Defendants Ireland, Furnia, Reyell, Silver, and Rao argue

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

that to the extent the complaint seeks damages against them in their official capacities, the claim is barred by the Eleventh Amendment. Dkt. No. 27-2 at pp. 8-9.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U .S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN25] Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) (citation omitted); *see also* Fed.R.Civ.P. 12(h)(3).

FN25. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The amenability to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages

against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

**\*8** Here, each of the represented Defendants has an official position with DOCS. Therefore, any claims for money damages against these Defendants in their officials capacities are barred by the Eleventh Amendment and should be dismissed.

**II. MOTION TO DISMISS FOR LACK OF PROSECUTION, OR IN THE ALTERNATIVE, FOR AN ORDER COMPELLING RESPONSES**

Defendants argue that the complaint should be dismissed on the ground that Plaintiff has failed to prosecute this action. Dkt. No. 36. Defendants argue that in the alternative, Plaintiff should be compelled to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. *Id.*

**A. ANALYSIS**

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

Rule 41 of the Federal Rules of Civil Procedure provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). As a result, Fed.R.Civ.P. 41(b) may be fairly characterized as providing for two independent grounds for dismissal on motion or on the Court's own initiative: (1) a failure to prosecute the action, and (2) a failure to comply with the procedural rules, or any Order, of the Court. *Id.*

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN26] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b):

> FN26. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN27]

> FN27. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41(b) dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) (citation and internal quotation marks omitted).

As a general rule, no single one of these five factors is dispositive.[FN28] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for

dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN29]

> FN28. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

> FN29. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 WL 567961, at *1 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ( "Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

**1. Address Changes**

As to the first factor (the duration of Plaintiff's "failures") Defendants argue that Plaintiff was transferred to several different facilities, but failed to update the Court and defense counsel of his changes of address. Dkt. No. 36-2, Lombardo Decl., at ¶¶ 4-5, 7-12 & Dkt. Nos. 49, 50. Defendants argue that the action should be dismissed for this reason alone. Dkt. No. 36-8.

**\*9** Plaintiff has failed at times to update the Court and defense counsel as to his address changes. His most recent failure occurred on July 6, 2009 when he was transferred from Green Haven C.F. to Auburn C.F., and subsequently to Wende C.F., where he now remains. Dkt. No. 50-2, Stachowski Decl., at ¶¶ 3-5. Plaintiff failed to update the Court and defense counsel as to these changes. Thus, Plaintiff's failure to provide an updated address has persisted since July 6, 2009 (less than three months). Generally, it appears that durations of this length (i.e., less than four months) are not long enough to warrant dismissal.[FN30]

> FN30. N.D.N.Y. L.R. 41.2(a) ("[P]laintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution.");

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

*Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

The Court notes that Plaintiff has been subject to frequent transfers. Since August 7, 2008, Plaintiff was transferred on seven occasions. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 4-11; Dkt. No. 50-2, Stachowski Decl. at ¶¶ 4-5. Three of the transfers occurred within a span of six days. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 7-11.

Moreover, whether Plaintiff was mentally and physically capable of providing written updates of all of his address changes is unclear. Plaintiff noted in his opposition papers that he was diagnosed as suffering from schizophrenia; has "borderline intellectual" functioning;[FN31] and is unable to read or write; therefore Plaintiff's submissions to the Court are written by others. Dkt. No. 39. Plaintiff also stated that at times he has been "prohibited from possessing any type of writing utensil." Dkt. No. 41. Plaintiff further stated that while at Central New York Psychiatric Center, "any legal work whatsoever" was discouraged and "not facilitate[d]." *Id.* In light of the foregoing, I find that the first factor weighs against dismissal of Plaintiff's complaint.

FN31. Plaintiff submitted copies of medical records indicating that he was diagnosed as suffering from, *inter alia,* schizophrenia, paranoid type; has borderline intellectual functioning; and has an IQ of 71. Dkt. No. 5.

As to the second factor (whether plaintiff had received notice that further delays would result in dismissal), I find that Plaintiff has received notice that his failure to provide his current address may result in dismissal. *See* Dkt. No. 12 at 4 *(Order stating that "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so will result in the dismissal of this action")* (emphasis in original); N.D.N.Y. L.R. 41.2(b) (stating, "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action.") [FN32] As a result, I find that the second factor weighs in favor of dismissal of Plaintiff's

complaint.

FN32. I note that, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's Local Rules of Practice and *Pro Se* Manual.

Regarding the third factor (whether defendants are likely to be prejudiced by further delay), I am unable to find, based on the current record, that Defendants are likely to be prejudiced by a delay in the proceedings. While any delay that occurs theoretically impairs the Defendants' memories, the preservation of evidence, and the ability to locate witnesses,[FN33] Defendants have not argued that any delay has occurred due to Plaintiff's failure to update his address. As a result, I find that the third factor weighs against dismissal of Plaintiff's complaint.[FN34]

FN33. *See, e.g., Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

FN34. *See Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348, at *2 (S.D.N.Y. Feb. 5, 1997) (declining to dismiss action for failure to prosecute or failure to comply with court orders where plaintiff had failed to meet discovery deadlines, and noting that the fact that plaintiff "has been in lock-down and transferred to another facility during the pendency of this action also counsels leniency toward [the plaintiff's] delays") (citing *Jones v. Smith,* 99 F.R.D. 4, 14-15 (M.D.Pa.1983) (granting *pro se* plaintiff final opportunity to comply with orders of court, despite repeated wilful, dilatory and contumacious tactics), *aff 'd* 734 F.2d 6 (3d Cir.1984)).

*10 Regarding the fourth factor (striking the balance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard), I find that Plaintiff's right to receive a further chance to be heard in this matter, at this point, outweighs the need to alleviate congestion on the Court's docket. Moreover, Defendants point to no delay caused by Plaintiff's failure to update his address. As a result, I find that the fourth factor weighs against dismissal of Plaintiff's complaint.

With regard to the fifth factor (whether the judge has adequately assessed the efficacy of lesser sanctions), I find that a strong reminder to Plaintiff of his obligation to provide a current address might be effective and is warranted. Plaintiff, who alleges that he suffers from schizophrenia and is unable to read and write, Dkt. No. 39, has been responsive to prior Orders from the Court,[FN35] and has shown an interest in prosecuting this action. *See* Dkt. Nos. 39, 41 (Plaintiff's Opposition Papers). As a result, I find that the fifth factor weighs against dismissal of Plaintiff's complaint.

> FN35. *See* Dkt. Nos. 7-11 (Report-Recommendation and Order; Plaintiff's Inmate Authorization Forms; Application to Proceed *In Forma Pauperis;* and Signed Last Page of Complaint).

Weighing these five factors together, I conclude that they tip the scales against dismissing Plaintiff's complaint (one of the factors weighing in favor of such dismissal and four of the factors weighing against such dismissal).[FN36] Dismissal based on a lack of prosecution is a harsh remedy to be used only in extreme situations. The Court does not currently view the present case to be in such a situation. For these reasons, I recommend that Defendants' Motion to Dismiss based on Plaintiff's failure to provide a current address (Dkt. No. 36) be denied.

> FN36. *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993); *see also Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254, at * 3 (2d Cir. Sept. 7, 2005) (remanding case to district court to make further factual findings concerning the plaintiff's lack of responsiveness and concerning his confinement

in a prison psychiatric ward where district court dismissed for failure to prosecute).

**2. Responses to Scheduling Order**

Defendants argue that if the Court does not dismiss the complaint for a failure to prosecute, the Court should issue an order requiring Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's mandatory pretrial discovery and scheduling order dated November 18, 2008 ("Scheduling Order"). Dkt. No. 36-8, Memo. of Law at pp. 3-4.

The Scheduling Order provided, in relevant part, as follows:

**I. Discovery**

**A.** ***Documents.*** Within sixty (60) days of the date of this order:

**1.** ***Plaintiff(s)*** shall provide to counsel for defendant(s) copies of all:

**a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;

**b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and

**c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**\*11** Dkt. No. 26, at pp. 1-2.

Defendants admit that they received "what purported to be plaintiff's response to paragraph I(A)(1) of the [Scheduling Order]" in a letter to defense counsel from Plaintiff. Dkt. No. 36-2, Lombardo Decl., at ¶ 19 & Dkt. No. 36-6, Ex. C. In that letter, Plaintiff asserted the following:

> Pursuant to paragraph I(A) of the court's mandatory pretrial discovery and scheduling order dated Nov. 18, [20]08[:]

> a. Documents and materials which plaintiff will use to support the claims in this complaint is [sic] the complete Medical Records for the period of June 14, 2006 to present, and current Tier III documents and pictures surrounding the incident which you forwarded to me pursuant to mandatory pretrial discovery, in addition enclosed please find Lab work report of specimen done on plaintiff which will also be use[d].

> Plaintiff has complied with the court's mandatory pretrial discovery and scheduling order pursuant to paragraph I(A) so your office no longer has to seek dismissal of the complaint for failure to prosecute.

Dkt. No. 36-6, Ex. C.

Defendants view this letter as being nonresponsive to paragraphs I(A)(1)(b) and (c). However, regarding paragraph I(A)(1)(b), Plaintiff specifically stated in the above-quoted letter that he "will use the complete medical records for the period of June 14, 2006 to present, and *current Tier III documents and pictures surrounding the incident which you forwarded to me.*" Dkt. No. 36-6, Ex. C at p. 1 (emphasis added). Moreover, Plaintiff stated in his March 23, 2009 letter to defense counsel that he filed grievances while in Attica C.F., but that he was no longer "in possession of those grievances" because his property was lost while he was at Central New York Psychiatric Center. [FN37] Dkt. No. 39 at p. 2. Plaintiff also stated that he has "no money in his account," therefore he has been unable to obtain copies of his grievances, as well as medical records. *Id.* Accordingly, Plaintiff has responded

to paragraph I(A)(1)(b). He stated that he no longer possesses the grievances he filed at Attica C.F.; he is unable to afford copies; and he intends to use the documents that defense counsel sent to him. To the extent that defense counsel is arguing that Plaintiff must provide copies of the same documents defense counsel has already provided Plaintiff, Dkt. No. 36-7, Ex. D at p. 2, this argument is unavailing.

> FN37. Plaintiff also asserts that he no longer has a copy of the complaint in this action. Dkt. No. 41, at ¶ 8. Accordingly, the Clerk will be directed to provide a copy of the complaint to Plaintiff.

Regarding paragraph I(A)(1)(c), Plaintiff stated in his March 23, 2009 opposition letter that "[t]here is no other complaints or petitions filed by plaintiff in any other cases in any other court [sic]." Dkt. No. 39, at p. 2. Plaintiff reiterated this response in a supplemental opposition letter dated March 31, 2009 by stating that "there are no other known complaints, petitions, etc. filed by plaintiff in any other court with regards to the claims raised in [this case]." Dkt. No. 41,[FN38] at ¶ 6. Accordingly, Plaintiff has responded to paragraph I(A)(1)(c).

> FN38. To the extent that Plaintiff is seeking permission to amend his complaint via his supplemental opposition letter, (Dkt. No. 41), Plaintiff's request must be in the form of a motion. *See* N.D.N.Y. Local Rule 7.1.

**\*12** In light of the foregoing, Defendants' request for an order compelling responses to paragraphs I(A)(1)(b) and (c) of the Scheduling Order should be denied as moot.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) (Dkt. No. 27) be GRANTED in part and DENIED in part. The motion to dismiss should be granted to the extent that Plaintiff asserts claims for money damages against Defendants in their official capacities. The motion should be denied to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

the extent that Defendants moved to dismiss Plaintiff's Eighth Amendment claim against Defendant Rao, and moved to dismiss the complaint against Defendant Rao on the ground of qualified immunity; and it is further

**RECOMMENDED** that the Motion to Dismiss for Failure to Prosecute or in the alternative for an Order compelling Plaintiff's responses (Dkt. No. 36) be DENIED; and it is further

**ORDERED,** *that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action;*

**ORDERED,** that the Clerk update Plaintiff's address to reflect that he is currently incarcerated at Wende Correctional Facility; [FN39] and it is further

FN39. Defendants' letter to the Court dated August 21, 2009 indicates that Plaintiff is now incarcerated at Wende C.F. Dkt. No. 50.

**ORDERED,** that the Clerk serve (1) copies of the electronically-available-only opinions cited herein; [FN40] (2) a copy of the Complaint (Dkt. No. 1); and (3) a copy of this Report-Recommendation and Order on Plaintiff.

FN40. Those decisions include *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119 (E.D.N.Y. Oct. 24, 2002); *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864 (2d Cir. Aug. 12, 2008); *Morgan v. Maass,* No. 94-35834, 1995 WL 759203 (9th Cir. Dec. 26, 1995); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926 (M.D.Fla. Oct. 4, 2006); *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657 (E.D.N.Y. Aug.21, 2008); *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616 (S.D.N.Y. Apr. 3, 2008); *Robinson v. Middaugh,* 95-CV-0836, 1997 WL

567961 (N.D.N.Y. Sept. 11, 1997); *Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997); and *Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254 (2d Cir. Sept. 7, 2005).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.
Hale v. Rao
Slip Copy, 2009 WL 3698420 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Frank G. MOWRY, Plaintiff(s),
v.
Robert F. NOONE, In his Individual and Official
Capacity and Douglas Dickenson, Individually and in
his Official Capacity as an employee/agent of the
County of Seneca, Defendant(s).
**No. 02-CV-6257FE.**

Sept. 30, 2004.

Frank G. Mowry, Gowanda, NY, pro se.

Thomas J. Lynch, Esq., Law Offices of Thomas J. Lynch,
Syracuse, NY, Thomas Desimon, Esq., Harris Beach LLP,
Pittsford, NY, for Defendants.

DECISION AND ORDER

*Preliminary Statement*

FELDMAN, Magistrate J.

**\*1** Plaintiff Frank G. Mowry ("Mowry" or "plaintiff"),
proceeding *pro se,* brings this action pursuant to 42 U.S.C.
§ 1983. Plaintiff alleges that (1) defendant Robert F.
Noone, Jr. ("Noone") used excessive force to effectuate
his arrest, in violation of his rights under the Fourth
Amendment of the Constitution, (2) defendant Douglas
Dickenson ("Dickenson") failed to intervene to stop
Noone from using excessive force, and (3) both Noone
and Dickenson deliberately denied him medical care in
violation of his rights under the Fourteenth Amendment of
the Constitution. Defendants now move for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure (Docket # 70). In accordance with the
provisions of 28 U.S.C. § 636(c), the parties have
consented to the jurisdiction of this Court for all
dispositive matters, including trial. (Docket # 11). For the
reasons set forth herein, defendants' motion for summary
judgment is granted.

*Factual Background*

Mowry alleges that on July 22, 1999 he was stopped at a
traffic light in the left turn only lane at the Ovid Street
bridge in Seneca Falls, New York. Mowry continued
straight ahead onto Cayuga Street when the light turned
green. Defendant Officer Robert F. Noone, Jr. of the
Seneca Falls Police Department, observed Mowry disobey
the traffic sign, activated the emergency lights on his
vehicle and began following Mowry. (Mowry Dep. Trans.
p. 17, 17-18 [FN1]). Mowry knew that he was driving
illegally but did not pull over. (Mowry Dep. Trans. p. 18,
12). Noone continued to follow Mowry for several miles.
(Mowry Dep. Trans. p. 20, 8). When Mowry turned onto
Route 318, Deputy Douglas Dickenson of the Seneca
County Sheriff's Department, joined the pursuit and
activated his emergency lights. (Mowry Dep. Trans. p. 22,
5-6, p. 24, 3). Mowry continued driving even though he
knew he was the subject of pursuit. (Mowry Dep. Trans.
p. 25, 7). Mowry lead defendants on a highspeed chase
that reached speeds of over 75 mph and narrowly avoided
several head-on collisions as he attempted to pass vehicles
on the two-lane road. (Mowry Dep. Trans. p. 21, 12-13,
22). Mowry turned onto Birdsey Road and continued
driving until a construction road closure forced him to stop
his car. (Mowry Dep. Trans. p. 28, 9-22).

FN1. Deposition references are to the page and
line number of transcript of the May 27, 2003
deposition of plaintiff Frank. G. Mowry.

Mowry exited his car and when he saw Dickenson,
followed by Noone, turn onto Birdsey Road he began to
flee. (Dep. Trans. p. 38, 9-13; p. 39, 3). Dickenson ran
after Mowry yelling at him to stop. (Mowry Dep. Trans. p.
39, 8). Once Mowry saw that he was about to be overtaken

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

by Dickenson, he stopped and Dickenson brought him to the ground. (Mowry Dep. Trans. p. 34, 20). Mowry landed with his hands and knees on the gravel. (Mowry Dep. Trans. p. 37, 2; p. 40, 20-21). Dickenson asked Mowry if he was alright, and Mowry responded yes. (Mowry Dep. Trans. p. 42, 15-20).

Dickenson gave Mowry 30 seconds to catch his breath on his hands and knees, then pulled Mowry's right arm behind his back to handcuff him. (Mowry Dep. Trans. p. 42, 12-13, p. 39, 21-22). At the same time, Mowry heard a car door slam and saw Noone running towards them. (Mowry Dep. Trans. p. 72, 19-21). Mowry testified that when he saw Noone running towards them he only had time to turn his head away. (Mowry Dep. Trans. p. 46, 6-8). Mowry testified that Noone was running too fast and overran Mowry and Dickenson. (Mowry Dep. Trans. p. 46, 18-19). As Noone jumped over the top of Mowry's head, the toe of Noone's boot hit the side of Mowry's head. (Mowry Dep. Trans. p. 49, 4-5). Noone landed on one foot before regaining his balance. (Mowry Dep. Trans. p. 48, 21-23). Noone and Dickenson pulled Mowry off the ground and placed him in Noone's car. (Mowry Dep. Trans. p. 49, 13-14). Mowry claims to have lost consciousness until he was placed in the back of the patrol car. (Mowry Dep. Trans. 50, 9-14). Mowry denies telling anyone that he was injured until after he got to the police station and was formally "booked in" at the county jail. (Mowry Dep. Trans. 55, 7-13). Mowry concedes that he did not ask for any medical attention at that time. (Mowry Dep. Trans. 55, 17-22, 68, 10-15).

**\*2** Mowry was taken to the Seneca Falls Police Station where he was charged with Driving While Intoxicated, Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree, and Reckless Endangerment.[FN2] Within 24 hours of his arrest, Mowry was examined by medical personnel at the county jail and was treated for neck pain. (Mowry Dep. Trans. p. 68, 19; p. 58, 3-4).

> FN2. Mowry later admitted guilt to all three charges. (Mowry Dep. Trans. p. 63, 8-20).

Mowry alleges that he was later diagnosed with a fractured left cheekbone. (Mowry Dep. Trans. p. 65, 5-9). He also asserts that as a result of this injury he experiences blurred vision and migraine headaches. (Mowry Dep. Trans. p. 65, 6-9). According to Mowry, the results of an MRI taken while he was in prison were "normal." (Mowry Dep. Trans. p. 82, 18-19).

*Discussion*

*Summary Judgment Standard:* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if it has some affect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Catanazaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998).

The burden of showing the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a court is confronted with facts that permit different conclusions, all ambiguities and inferences that may reasonably be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Rule 56(e), however, also provides that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial. Such an issue is not created by a mere allegation in the pleadings [citations omitted], nor by surmise or conjecture on the part of the litigants." *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (per curium). "Affidavits submitted in opposition to a motion for summary judgment must set forth such facts as would be admissible in evidence." *Franklin v. Krueger Int'l,* 1997 WL 691424 at \*3 (S.D.N.Y. November 5, 1997) (citing *Raskin v. The Wyatt Co.,* 125 F.3d 55 (2d Cir.1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

In addition, *pro se* submissions, particularly those alleging civil rights violations, are construed liberally and are

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

treated as raising the strongest arguments that they might suggest. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). *See also Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (because plaintiff's "complaint alleges civil rights violations and he proceeded *pro se* in the District Court, we must construe his complaint with particular generosity") (citations omitted).

**\*3** *I. Excessive Force Claim:* The Supreme Court has held that claims against police officers for excessive force must be examined under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Determining whether the force used was reasonable requires a balancing of the intrusion on the individual's Fourth Amendment rights against the interests of the government. *Id.* at 396. The reasonableness of a particular use of force must be judged objectively from the perspective of a reasonable officer at the scene of the arrest. *Graham,* 490 U.S. at 397. In evaluating the officer's actions, courts should consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. It is well established that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion. *Id. See Mickle v. Morin,* 297 F.3d 114, 120 (2nd Cir.2002)(in the context of excessive force used during an arrest, "not every push or shove" is excessive.)(internal citations omitted).

In this case, the record is clear that the officers were faced with an extremely dangerous situation as Mowry drove erratically down narrow roads to avoid capture. Indeed, Mowry's actions repeatedly put the lives of other motorists in imminent danger. Applying the *Graham* balancing test to these circumstances, there is no question that the officers acted appropriately in stopping and arresting Mowry. *See Washington v. City of Riverside Illinois,* 2003 WL 1193347, \*5 (N.D.Ill. March 13, 2003) (summary judgment granted when driver's decision to flee justified officer's subsequent use of force to arrest.). Simply put, Mowry has produced no evidence upon which a reasonable jury could find that the defendants used excessive force during his take down and arrest.

As for Mowry's allegation that Noone applied excessive

force by "kicking him in the head," this Court will not credit Mowry's attempt to change his deposition testimony with the affidavit he submits in opposition to defendants' motions. Rather, this Court relies on Mowry's deposition testimony which clearly establishes the accidental nature of any injury caused by Noone. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987)("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

The undisputed facts here are that after Mowry was taken down by Dickenson, Noone exited his vehicle, ran toward Mowry with such speed that he overran Mowry and Dickenson, and tripped over Mowry. In light of the prolonged chase, the officers had a reasonable basis for believing that Mowry posed a serious threat, especially since he continued to run and evade arrest after he exited his vehicle. Under these circumstances, this Court finds that it was objectively reasonable for Noone to approach Mowry at a high rate of speed in his effort to assist Dickenson in subduing Mowry, and that his actions can not constitute excessive force.

**\*4** *II. Failure to Intervene Claim:* Mowry also makes a claim for failure to intervene. It is well established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by others. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994); *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used. *Anderson,* 17 F.3d at 557. In order to be held liable, the law enforcement official must have had a realistic opportunity to intervene in order to prevent the harm from occurring. *Id.* at 557.

Here, based on the facts as presented by Mowry, Dickenson did not have the opportunity to intercede before Noone tripped over Mowry, and therefore cannot be held liable. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

(2d Cir.1988) (defendant entitled to judgment where record clear that blows were struck in such a rapid succession that officer "had no realistic opportunity to attempt to prevent them."). At the time the alleged excessive force was used, Dickenson had one hand on Mowry's left arm and was attempting to pull Mowry's right arm behind Mowry's back. Even Mowry stated that when he heard Noone running toward them he only had time to turn his head away before Noone overran them. Moreover, Noone's alleged use of excessive force was a single kick to the head, an event which Mowry concedes happened quickly and without warning. This was not a situation where the alleged excessive force continued for such a period of time that Dickenson, upon realizing what was happening, could have stopped it. *Id.* at 11-12.

Because a reasonable jury could not conclude otherwise, summary judgment should be granted in favor of Dickenson on the failure to intervene claim.

*III. Denial of Medical Treatment:* Mowry's third claim is for denial of medical treatment. The denial of medical treatment for a pre-trial detainee is evaluated under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). Although not specifically defined by the Supreme Court, the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment rights of a convicted prisoner. *City of Revere,* 463 U.S. at 244; *Weyant v. Okst,* 101 F.3d. at 856.

In *Weyant,* the Second Circuit established a two-part test to determine liability for denial of medical treatment. First, the denial of medical treatment must concern an objectively serious injury. *Weyant,* 101 F.3d at 856. A serious injury has been defined as "one that may produce death, degeneration or extreme pain." *Mills v. Fenger,* 2003 WL 251953, *4 (W.D.N.Y.2003) (citations omitted). Second, the plaintiff is required to show that based on what the defendant knew or should have known, the defendant acted with deliberate indifference to plaintiff's serious medical needs. *Weyant,* 101 F.3d at 856. Deliberate indifference is established if the defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical condition. *Weyant,* 101 F.3d at 856.

*5 Here, the undisputed facts establish that the defendants did not deny plaintiff medical treatment. Even assuming arguendo that Mowry's injury rose to the level of an objectively serious medical injury, there is no credible evidence in the record to base a finding that either Noone or Dickenson should have been aware of his need for medical treatment, but were indifferent to his needs. Indeed, the record demonstrates that Mowry never told the defendants that he needed medical attention and the injuries he now alleges were not apparent to them. Contrary to plaintiff's claims, Dickenson demonstrated his concern for plaintiff's well-being when he asked Mowry if he was alright and gave him time to catch his breath. Mowry did not ask for medical assistance or complain about his alleged injuries immediately following the arrest. At the county jail, Mowry stated that he did not need medical attention. It was not until the following day that Mowry first requested medical attention. Mowry admits that in response to this request, he was then treated by the medical personnel at the county jail and given a prescription for neck pain.

The record is devoid of credible evidence that either defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical needs. *See Thomas v. Nassau County Correctional Center,* 288 F.Supp.2d 333, 338 (E.D.N.Y.2003) (to establish a constitutional violation the facts must give rise to a reasonable inference that defendants *knew* of serious medical needs and intentionally disregarded them.). Based on the record here, summary judgment should be granted in favor of defendants Dickenson and Noone on plaintiff's denial of medical treatment claim.

*Conclusion*

For all the foregoing reasons, defendants' Motions for Summary Judgment (Docket # 67, 70) are granted. Having granted defendants' motion for summary judgment by determining that plaintiff has failed to adduce evidence of a constitutional violation, plaintiff's motions for "dismissal of defendant's (sic) motion" and "cross motion" for summary judgement (Docket # 75) are denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))


SO ORDERED.


W.D.N.Y.,2004.
Mowry v. Noone
Not Reported in F.Supp.2d, 2004 WL 2202645
(W.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Ralph Buck PHILLIPS, Plaintiff,
v.
Richard ROY, Inspector General, New York State;
George Seyfert, Deputy Inspector General, New York
State; Dale Artus, Superintendent, Clinton Correctional
Facility; Donald Selsky, Assistant Commissioner, New
York State Department of Correctional Services; Alec
Friedman, Rabbi, Clinton Correctional Facility; B.
LeCuyer, Nurse Administrator, Clinton Correctional
Facility, A. Lashway; Nurse Practitioner, Clinton
Correctional Facility; S. Racette, Deputy Superintendent
of Security, Clinton Correctional Facility; D. Jarvis,
Inmate Records Coordinator, Clinton Correctional
Facility; Roy Ano, Counselor, Clinton Correctional
Facility; Joseph Pucelli, Counselor, Clinton Correctional
Facility; W. Allan, Lieutenant, Clinton Correctional
Facility; M. Bosco, Mental Health, Clinton Correctional
Facility; Lee Martin, Corrections Officer, Clinton
Correctional Facility; T. Saunders, Corrections Officer,
Clinton Correctional Facility; Miller, Lieutenant,
Clinton Correctional Facility; E. Bouissey, Corrections
Officer, Clinton Correctional Facility; K. Hicks,
Sergeant, Clinton Correctional Facility (SHU); J.
Trottier, Investigator, Inspector General's Office; Brian
Fischer, Commissioner, New York State Department of
Correctional Services (DOCS); Lucien LeClair, Jr.,
Deputy Commissioner of Correctional Facilities
(DOCS); D. Uhler, Captain Security (SHU); T.
Brousseau, Inmate Grievance Program Supervisor; F.
Henderson, Deputy Superintendent of Security, Elmira
Correctional Facility; M. Kirkpatrick, Lieutenant
(C.E.R.T.) (DOCS); R. Marinaccio (C.E.R.T.) (DOCS);
K. Lebel, Corrections Officer (C.E.R.T.) (DOCS); T.
Doyle, Corrections Officer (C.E.R.T.) (DOCS); Curtis
Drown, Hearing Officer, Clinton Correctional Facility;
and John Doe, Defendants.
No. 9:08–CV–878 (FJS/ATB).

Aug. 29, 2011.
Ralph Buck Phillips, Dannemora, NY, pro se.

Office of the New York, State Attorney General, James B.
McGowan, AAG, James Seaman, AAG, of Counsel,
Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

SCULLIN, Senior District Judge.
**I. INTRODUCTION**
**\*1** Plaintiff, an inmate, filed a complaint *pro se*
pursuant to 42 U.S.C. § 1983, alleging twenty-eight causes
of action arising from events at two separate correctional
facilities. Plaintiff's allegations include the use of
excessive force and failure to prevent such conduct,
deprivations of procedural due process, cruel and unusual
punishment, violation of Plaintiff's right to practice his
chosen religion, and retaliation for filing grievances and
raising complaints regarding prison conditions.

Plaintiff commenced this action on August 18, 2008.
*See* Complaint. Plaintiff filed an amended complaint on
December 8, 2008, and a second amended complaint on
December June 19, 2009. *See* Dkt. Nos. 10, 52. In his
second amended complaint, he sought, among other
things, an injunction ordering Defendants to release him
from administrative segregation, or place him under
involuntary protective custody, or continue his
confinement to a special housing unit ("SHU") under
Directive 499 § 301.5. Plaintiff further sought
compensatory damages in the amount of $450,000 and
punitive damages in the amount of $10,000 against each
Defendant. Defendants moved to dismiss Plaintiff's second
amended complaint on September 15, 2009. *See* Dkt. No.
76. Magistrate Judge Peebles issued a Report and
Recommendation on September 27, 2010, in which he
recommended that the Court grant Defendants' motion in
part and deny it in part. *See* Dkt. No. 83, Report and
Recommendation ("Report–Rec.").

Currently before the Court is Magistrate Judge
Peebles' Report and Recommendation, Plaintiff's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

objections thereto, and Defendants' objections thereto. Specifically, Plaintiff objects to Magistrate Judge Peebles' recommendation that the Court dismiss Plaintiff's fourteenth cause of action, that Defendants Fischer, Roy, and LeClair conspired to hold Plaintiff in administrative segregation. *See* Dkt. No 88, Plaintiff's Objections ("Pltf.Obj.") at 4–8. Defendants object to the fact that Magistrate Judge Peebles did not recommend that the Court dismiss Plaintiff's complaint in its entirety and assert that the Court should dismiss Plaintiff's first, second, third, fourth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fifteenth, nineteenth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, and twenty-seventh causes of action.

## II. BACKGROUND[FN1]

> **FN1.** The Court assumes familiarity with the facts as presented in Magistrate Judge Peebles' Report and Recommendation. *See* Report–Rec.

Plaintiff is a New York State prison inmate who was convicted of aggravated murder, attempted murder, and escape. Plaintiff's convictions for murder and attempted murder arose from his shooting and killing two New York State Troopers following his escape from Erie County jail.[FN2] *People v. Phillips,* 56 A.D.3d 1163, 867 N.Y.S.2d 324 (4th Dep't 2008). After these convictions, Plaintiff entered DOCS custody at the Elmira Correctional Facility ("Elmira") on December 21, 2006. Plaintiff later transferred to the Clinton Correctional Facility ("Clinton"). Plaintiff's complaint includes events that occurred at both Elmira and Clinton.

> **FN2.** Typically, the circumstances underlying an inmate's conviction are not relevant to that inmate's challenges to his conditions of confinement. Here, however, Plaintiff alleges that corrections officers exhibit hostility toward him due to his criminal history. *See generally* Dkt. No. 52, Second Amended Complaint.

## III. DISCUSSION

### A. Standard of review
**\*2** Section 636 of Title 28 of the United States Code states that "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate judge's report and recommendation, a district court judge "make[s] a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Id.* However, where "an objecting " 'party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." " " *Webster v. Fischer* 694 F.Supp.2d 163, 169 (N.D.N.Y.2010) (quoting *Farid v. Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan v. Von Essen,* 417 F.Supp.2d 672, 679 (S.D.N.Y.2007))).

Courts use a two-step inquiry when deciding a Rule 12(b)(6) motion. First, they isolate the moving party's legal conclusions from its factual allegations. Second, they presume the factual allegations to be true and examine them for plausibility. *See Ashcroft v. Iqbal,* ––– U.S. ––––, ––––  – ––––, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain more than a "blanket assertion" of entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, *Twombly* added a requirement that a pleading show plausible grounds for relief to the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading " 'sho[w] that the pleader is entitled to relief.' " *Id.* at 557 (quotation omitted). The Supreme Court explained this standard in *Ashcroft,* where it set forth that to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949 (citation omitted).

When deciding a 12(b)(6) motion, a court may "consider documents attached to or incorporated by reference in [a] complaint." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). Even where a " 'plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

court may ... take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quotation omitted).

**B. Administrative segregation and due process claims**[FN3]

> FN3. In the New York State prison system, a regulatory scheme governs the practice of administrative segregation, and it requires that an inmate receive a hearing within fourteen days of entering administrative segregation. *See* 7 N.Y.C.R.R. § 301.4(a). The N.Y.C.R.R. also provides for post-segregation review of the inmate's situation every sixty days. *See* 7 N.Y.C.R.R. § 301.4(d). Administrative segregation inmates live in SHU and are subject to most of the disciplinary restrictions of SHU inmates. *See Edmonson v. Coughlin,* 21 F.Supp.2d 242, 248–49 (W.D.N.Y.1998) (footnote omitted).

Plaintiff's fourth, fifth, eleventh, thirteenth, and fourteenth causes of action address his confinement in administrative segregation and the periodic review of this determination.

The Supreme Court has held that the placement of an inmate into administrative segregation may implicate the Fourteenth Amendment where the restraints placed on the inmate constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Second Circuit has held that confinement for a period of less than 101 days does not typically constitute such a hardship *See Colon v. Howard,* 215 F.3d 227, 232 n. 5 (2d Cir.2000). Although the decision to enter an inmate into administrative segregation is typically one made by prison officials, inmates are entitled to procedural safeguards. To this end, due process requires (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing to present witnesses and evidence; (3) a written statement by the hearing officer explaining his or her decision and reasoning; and (4), in some situations, the right to call

witnesses and present evidence in his defense. *See Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The hearing officer's disciplinary determination must have the support of at least "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 447, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

**\*3** However, the *Sandin* decision eroded some of *Wolff's* safeguards. In *Sandin,* the Supreme Court held that an inmate's confinement in disciplinary segregation may not constitute such a significant deprivation as to implicate a liberty interest. *See Sandin,* 515 U.S. 485–86. To determine when the full array of *Wolff* rights applies, the Court considered (1) whether confinement in disciplinary segregation reflected the conditions of other forms of discretionary confinement; (2) whether the decision to place an inmate in administrative segregation presented a major disruption to his environment; and (3) whether the decision affected the duration of the inmate's sentence. *See id* at 486–87.

Further, "where a prisoner's placement in restrictive confinement has both a punitive *and* an administrative, non-punitive basis, the placement decision will not be found to have impaired a protected liberty interest." *Rosenberg v. Meese,* 622 F.Supp. 1451, 1469 (S.D.N.Y.1985) (citing *Sher v. Coughlin,* 739 F.2d 77, 81–82 (2d Cir.1984)) (other citation omitted).

Regarding the hearing itself, "inmates have a right to 'be judged by a fair and impartial hearing officer.' " *Kingwood v. Rourke,* No. 9:97CV1906, 2002 WL 31309240, *4 (N.D.N.Y. Sept.3, 2002) (quotation omitted). As a consequence, the participation of an insufficiently impartial hearing officer may infringe on a plaintiff's due process interest. *See Wolff,* 418 U.S. at 571. However, the mere "[p]reparation of an [administrative segregation] recommendation is not a basis for a § 1983 claim[;]" rather, a prisoner's due process rights remain intact so long as he has an opportunity to rebut the charges against him at a hearing. *Edmonson,* 21 F.Supp.2d at 254–55 (citations omitted).

Here, Plaintiff's fourth cause of action implicates his due process rights. First, Plaintiff indicates that he experienced "years" of hardship because as a result of his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

hearing before Defendant Drown, Plaintiff lived in administrative segregation. *See* Second Amended Complaint at 37. Although this is a vague statement, it indicates that Plaintiff lived in administrative segregation for more than 101 days. Moreover, Plaintiff's allegation against Defendant Drown, taken as true, is sufficient to demonstrate a level of predisposition against Plaintiff on the part of Defendant Drown. Plaintiff is entitled to an impartial hearing officer, and Defendant Drown's alleged statements indicate a lack of impartiality. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's fourth cause of action.[FN4]

> **FN4.** It should be noted that Plaintiff does not object to Magistrate Judge Peebles' finding that the hearing process likely met the stringent requirements of *Wolff. See* Report–Rec. at 12–13.

As to Plaintiff's fifth cause of action, against Defendant Seyfert, Plaintiff merely alleged that Defendant Seyfert filed an administrative segregation recommendation based upon false and misleading statements. However, since the preparation of an administrative segregation recommendation cannot serve as the basis of a § 1983 claim, and since Plaintiff had the opportunity to rebut these allegedly false charges at a hearing, the Court adopts Magistrate Judge Peebles' Report and Recommendation, finds that Plaintiff has not stated a viable claim, and grants Defendants' motion to dismiss Plaintiff's fifth cause of action.

**\*4** Regarding Plaintiff's eleventh and thirteenth causes of action, Plaintiff does not deny that Defendants conducted periodic post-segregation reviews. Instead, Plaintiff makes conclusory allegations that such reviews were "sham[s]" and "mere formalities." *See* Second Amended Complaint at ¶¶ 22, 24. However, without allegations to indicate actual bias, Plaintiff's claims are implausible and insufficient to satisfy the *Iqbal* standard. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's eleventh and thirteenth causes of action.

**C. Allegedly false misbehavior report**

To state a claim for retaliation regarding the filing of a false misbehavior report, a plaintiff must allege that a defendant not only filed the report but that his motivation to do so relates to the plaintiff having engaged in protected activity. *See Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). When examining a complaint for allegations of retaliatory animus, courts typically look for "[t]ypes of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation[, such as] ... temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Barclay v. N.Y.,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007) (citations omitted).

Here, Plaintiff fails to allege any facts to support a claim of retaliation. First, Plaintiff claims that Defendants filed these allegedly false misbehavior reports to retaliate against him for his murder of two New York State Troopers. *See* Second Amended Complaint at ¶ 30. Even assuming this is true, Plaintiff's killing of two police officers is criminal conduct, and it is obviously not protected by the constitution or by statute. In addition, the misbehavior report was not false. Plaintiff admitted performing the conduct which resulted in the misbehavior report. *See* Dkt. No. 67, Exhibit "2" attached thereto, McGowan Declaration. Accordingly, the Court adopts this portion of Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's seventeenth cause of action.

**D. Access to the courts**

Inmates have a well-established constitutional right to meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court has held that to state a claim for denial of access, an inmate "must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). A mere delay in working on a legal action or communicating with the court does not constitute a constitutional violation. *See Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citations omitted).

Plaintiff's second amended complaint states that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Defendants Racette and Jarvis interfered with his access to the courts when they denied him permission to receive a contact visit on July 4, 2007, from a paralegal, Wendy Gambles. *See* Second Amended Complaint at ¶ 23. Plaintiff alleged that this deprived him of the ability to give legal documents to Ms. Gambles, which interfered with his ability to consolidate a pending appeal with a potential appeal. *See id.*

**\*5** On this issue, the Court respectfully disagrees with Magistrate Judge Peebles' Report and Recommendation. Plaintiff alleges that his prejudice took the form of a delayed ability to consolidate a pending appeal with a potential appeal. Although this may have caused Plaintiff some inconvenience, Defendants did not take any action that actually prevented Plaintiff from pursuing either of these appeals, one of which was not yet at the appellate stage. Moreover, Plaintiff has not produced any evidence indicating that he experienced an adverse judicial decision in either of these actions because of the alleged denial of access to courts. In fact, Plaintiff ultimately pursued these appeals, and lost. *See People v. Phillips,* 56 A.D.3d 1163, 867 N.Y.S.2d 324 (4th Dep't 2008); *People v. Phillips,* 56 A.D.3d 1168, 867 N.Y.S.2d 633 (4th Dep't 2008). Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twelfth cause of action.

**E. Excessive force/Failure to intervene**

*1. Excessive force*

An Eighth Amendment claim for excessive force has an objective and a subjective element. *See Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). The objective element focuses on the effect of a defendant's conduct, while the subjective element focuses on the defendant's motive. *See id.*

The objective element is "contextual and responsive to 'contemporary standards of decency.' " *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quotation omitted). The Second Circuit has held that, "[w]here a prison official acts 'maliciously and sadistically,' 'contemporary standards of decency always are violated.' " *Abreu v. Nicholls,* 368 Fed. Appx. 191, 193 (2d Cir.2010) (quoting *Wright* 554 F.3d at 268–69). Thus, "[i]n assessing [the objective] component, the court must ask whether 'the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.' " *Wright,* 554 F.3d at 268 (quotation omitted).

The subjective element considers whether the prison official acted wantonly. Regarding this element, "[t]he 'core judicial inquiry' ... [is] ... 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins v. Gaddy,* ——U.S. ——, ——, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (quoting [ *Hudson v. McMillan,*] 503 U.S. [1,] 7, 112 S.Ct. 995, 117 L.Ed.2d 156 [ (1992) ] ) (other citation omitted). Courts may consider the extent of the injury that the plaintiff suffered as an indication of whether the amount of force was reasonably necessary, but a plaintiff need not sustain a serious injury to maintain an excessive force claim. *See id.*

*2. Failure to intervene*

A corrections officer who witnesses an assault upon an inmate may be responsible for any resulting constitutional deprivation. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) (citations omitted). In addition, law enforcement officials are under an affirmative duty to intervene where other officers violate the constitutional rights of an individual in their presence. *See Mowry v. Noone,* No. 02–CV–6257, 2004 WL 2202645, *4 (W.D.N.Y. Sept. 30, 2004) (citations omitted); *see also Curley v. Vill. of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) (stating that "[f]ailure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be" (citations omitted)).

**\*6** To state a claim for failure to intervene, a plaintiff must show that someone other than the defendant engaged in the use of excessive force and that the defendant (1) had actual knowledge of this use of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) intentionally refused or failed to take reasonable measures to end the use of excessive force. *See Curley,* 268 F.3d at 72. Mere inattention does not constitute deliberate indifference. *See Cicio v. Graham,* No. 9:08–CV–534, 2010 WL 980272, * 13

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

(N.D.N.Y. Mar. 15, 2010) (citation omitted).

Courts have found that, where officers assault an individual so quickly that a fellow officer does not have a realistic opportunity to intercede, the witness officer is not liable for the excessive force. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988); *see also Cusamano v. Sobek,* 604 F.Supp.2d 416, 428 n. 9 (N.D.N.Y.2009) (holding that where an attack is "sudden and brief," witnessing officers do not have a realistic opportunity to prevent it (citations omitted)); *Wright v. City of Waterbury,* No. 3:07–CV–306, 2011 WL 1106217, *6 (D.Conn. Mar. 23, 2011)* (holding that an officer who witnessed an attack that began without warning, and lasted two or three seconds, did not have a reasonable opportunity to intercede).

### 3. Plaintiff's causes of action

Plaintiff's first cause of action alleges that Defendants Kirkpatrick, Marinaccio, Lebel, and Doyle assaulted him upon his arrival at Elmira. *See* Second Amended Complaint at ¶¶ 6–8. Specifically, Plaintiff asserts that, after Defendants frisked him and attired him in prison garb, Defendant Lebel grabbed him by the throat and stated, "Your days of media glory are over," and then pushed him against a wall, causing his head to slam into the wall with some force. *See id.* at ¶ 6. Defendant Lebel then kept Plaintiff pinned to the wall as Defendant Doyle struck Plaintiff's legs with the heel of his right hand. *See id.* at ¶ 7. Only when Defendant Henderson, the Deputy Superintendent of Security, arrived on the scene did Defendants cease this conduct. *See id.* at ¶ 8.

Plaintiff's third cause of action cites the same facts contained in paragraphs six through eight of the second amended complaint and alleges that Defendants Lebel and Doyle assaulted Plaintiff with the intent to inflict physical harm.

Plaintiff's second cause of action also cites the same facts and alleges that Defendants Kirkpatrick, Marinaccio, and Henderson watched the assault upon Plaintiff and failed to intervene.

Regarding the excessive force causes of action, Plaintiff's allegations meet both elements of the excessive force inquiry. The statement that Defendant Lebel made,

assuming it is true, evidences a malicious intent. As to the objective prong, such a malicious intent violates contemporary standards of decency. As to the subjective prong, Defendant Lebel's statement indicates that he was not acting in good faith to maintain order but that he wanted merely to inflict pain on Plaintiff. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's first and third causes of action.

**\*7** In light of the length of the alleged attack, Plaintiff's second cause of action is weaker than his claims of excessive force. Plaintiff alleged that only a few seconds elapsed between the commencement of the attack and Defendant Henderson's arrival on the scene. *See* Second Amended Complaint at ¶ 8. Upon seeing the attack, Defendant Henderson told Defendants Doyle and Lebel to "knock it off." *See id.* Defendants Doyle and Lebel continued the attack briefly, at which point Defendant Henderson said more forcefully, "knock that shit off!" *See id.* The attack had only lasted for a few seconds when Defendant Henderson arrived, briefly assessed the situation, and told Defendants to cease their actions. Such action upon arriving at the scene of a short and sudden attack is reasonable. *See O'Neill,* 839 F.2d at 11; *see also Cusamano,* 604 F.Supp.2d at 428–29; *Wright,* 2011 WL 1106217, at *6*. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendant Henderson.

However, because Plaintiff alleges that Defendants Kirkpatrick and Marinaccio witnessed the entire series of events, from the frisk through the entire assault, it is plausible that they had a reasonable opportunity to intervene. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio.

### F. Religious exercise

Under the First Amendment, inmates have the right to the free exercise of their chosen religion. *See Ford v.*

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

McGinnis, 352 F.3d 582, 588 (2d Cir.2003) (citing Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). However, this right is subject to legitimate penal concerns. See Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.1990). The Supreme Court set forth a framework of analysis for the free exercise claims of inmates in O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and Turner v. Safley, 482 U.S. 78, 84–87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This framework relies on analyzing the reasonableness of prison-imposed restrictions on religious exercise, and it is less restrictive than tests that the Court has applied to the alleged infringement of other fundamental constitutional rights. See O'Lone, 482 U.S. at 349 (citation omitted).

In O'Lone, the Supreme Court held that a regulation that burdens a protected right will withstand a constitutional challenge if that regulation is reasonably related to legitimate penological interests. See id. (quoting Turner, 482 U.S., at 89, 107 S.Ct., at 2261) (footnote omitted). The same standard governs a decision to deny an individual inmate the ability to engage in a religious exercise. See Salahuddin v. Goord, 467 F.3d 263, 274 n. 4 (2d Cir.2006) (citation omitted).[FN5]

FN5. The Second Circuit has created a three-step process to analyze a free-exercise claim, stating that "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." Farid v. Smith, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted). The third prong of this test is at issue in the instant case; and, therefore, a "reasonably-related" analysis is appropriate here.

*8 The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact of accommodating that right on guards, inmates, and prison resources; and the exercise of alternative means

of facilitating the exercise of that right that only have a de minimis adverse effect on the valid penological interests. See King v. Bennett, No. 02–CV–349Sr, 2007 WL 1017102, *4 (W.D.N.Y. Mar.30, 2007) (citing Salahuddin, 467 F.3d at 274) (other citation omitted). Once prison officials identify a legitimate penal interest to justify their actions, the burden shifts to the plaintiff to prove that the defendant's concerns are irrational. See Ford, 352 F.3d at 595.

Plaintiff's seventh cause of action alleges that Defendant Racette deprived Plaintiff of the ability to participate in his Native American religious ceremonies. The Second Circuit has held that, to prevail on a motion to dismiss, defendant prison officials must provide reasons for any decisions to deny inmates access to religious services. See Young v. Coughlin, 866 F.2d 567, 570 (2d Cir.1989). Defendants have never presented a reason for the alleged delay. It remains unclear for how long Plaintiff was unable to attend religious services or if he has ever been permitted to so attend. Affording Plaintiff every reasonable inference, he has stated a plausible claim for a First Amendment violation, a claim which Defendants have not rebutted directly. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's seventh cause of action.

Plaintiff's eighth cause of action alleges that Defendant Friedman hindered Plaintiff's ability to freely practice his religion when he ignored Plaintiff's requests to order herbs for the purposes of smudging.[FN6] See Second Amended Complaint at ¶ 16. Plaintiff eventually received the herbs. See id. The Northern District has found that prison officials do not curtail an inmate's First Amendment rights where the inmate "wait[s] longer than he [thinks is] necessary" to receive religious materials. Miller v. Fischer, No. 9:07–CV–942, 2009 WL 7760224, *8 (N.D.N.Y. Sept.22, 2009) (citation omitted). Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's eighth cause of action.

FN6. The practice of smudging involves burning sacred herbs before and during the incantation of prayers.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Plaintiff's ninth cause of action alleges that, in January of 2008, he contacted Defendant S.E. Racette regarding the purchase of either matches or a lighter so that he could light the herbs for the purposes of smudging. *See* Second Amended Complaint. Plaintiff further alleges that Defendant Hicks deprived Plaintiff of the ability to practice his religion when he confiscated the cigarette lighter that Plaintiff had been given to burn and smudge herbs. *See* Second Amended Complaint at ¶¶ 17–18, 41.

**\*9** Given Plaintiff's history with explosives, the state has a legitimate penological interest in denying him access to a lighter. On October 1, 2007, a hearing officer found Plaintiff guilty of trying to introduce explosives to the prison facility, among other charges.[FN7] *See* Dkt. No. 46–5, Exhibit "D" attached thereto, Tier III hearing decision. An Article 78 judge upheld this ruling on appeal. *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

> FN7. This situation arose from a letter that Plaintiff attempted to send to Wendy Gambles. *See* Dkt. No. 46–5, Exhibit "C" attached thereto, Tier III Hearing Transcript. In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M–203 (a type of grenade launcher), and a bottle containing bird flu taped to an M–100 (a type of explosive device) to facilitate his escape from prison. *See* Dkt No. 46–5, Exhibit "B," Plaintiff's letter to Wendy Gambles.

Prison officials act in accordance with legitimate penological interests where they deny an inmate religious items because that particular inmate's history indicates that he may put the religious items to a destructive use. *See Miller v. Fischer,* No. 07–CV–942, 2011 WL 1100094 (N.D.N.Y. Mar. 24, 2011) (adopting a Report and Recommendation that found that the defendants possessed a legitimate penological interest and recommended that the court deny the plaintiff's First Amendment cause of action where the plaintiff, who had a history of marijuana use in prison, wished to obtain incense, a marijuana masking agent, for religious purposes). Accordingly, the Court respectfully rejects Magistrate Judge Peebles'

recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's ninth cause of action.

**G. Deliberate medical indifference**

To state a claim for deliberate medical indifference successfully, a plaintiff must demonstrate that the defendant deliberately ignored a serious medical need. *See Wallace v. Dawson,* 302 Fed. Appx. 52, 54 (2d Cir.2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Such a statement involves meeting an objective " 'medical need' " element and a subjective " 'deliberate indifference' element." *Lopez v. Fischer,* No. 07CV0365, 2011 WL 1233107, \*9 (W.D.N.Y. Mar.30, 2011) (citing *Smith v. Carpenter,* 316 F.3d 178, 183–184 (2d Cir.2003).

A plaintiff meets the objective element where " 'the alleged deprivation [is] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.' " *Wallace,* 302 Fed. Appx. at 54 (quoting [ *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ] ). Where an inmate plaintiff alleges that prison medical personnel provided care but that the care was inadequate, the court's inquiry focuses on the alleged inadequacy, rather than the seriousness of the plaintiff's condition. *See Williams v. Fischer,* No. 9:09–CV–1258, 2011 WL 1812527, \*4 (N.D.N.Y. Feb.9, 2011) (citing *Salhuddin [v. Goord* ], 467 F.3d [263,] 280 [ (2d Cir.2006) ] ).

To meet the subjective element, a plaintiff must allege that " 'the charged official ... act[ed] with a sufficiently culpable state of mind,' " which has been held to mean " 'something more than mere negligence' and akin to criminal recklessness." *Wallace,* 302 Fed. Appx. at 54 (citing [ *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ] ). Regarding the subjective element, "a prisoner's disagreement over the course of treatment rendered by prison medical personnel is not actionable under section 1983." *Williams,* 2011 WL 1812527, at \*5 (citing *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)). The Northern District has applied the reasoning from *Hyde* to instances where an inmate plaintiff received different pain medication than he requested. *See Ramos v. Johnson,* No. 09–CV–0899, 2011 WL 817526, \*9–\*10 (N.D.N.Y. Feb. 7, 2011). In *Ramos,* the Northern District held that where prison medical

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

personnel failed to honor the plaintiff's choice of pain medication,[FN8] the plaintiff did not have a basis for claiming an Eighth Amendment violation for deliberate medical indifference. *See id.*

> FN8. In *Ramos,* the plaintiff requested Tylenol; but prison medical personnel were concerned about his elevated liver enzyme levels and, to avoid possible liver damage, tried to give the plaintiff a combination of Neurontin and Ultram. *See Ramos,* 2011 WL 817526, at *9.

**\*10** Here, Plaintiff alleged that he was given a different pain medication than the one he requested. Plaintiff does not allege that he was refused medical care; he merely alleges that he received inadequate care. At this point, such an alleged inadequacy is sufficient to satisfy the objective prong of the medical indifference test. Plaintiff's allegations also satisfy the subjective prong, albeit barely. Plaintiff's request for Neurontin instead of Ibuprofen may appear to be a simple disagreement regarding the appropriate course of action for treating his back pain. However, Plaintiff alleged that he requested the stronger Neurontin and that prison medical personnel rebuffed him over the course of several months. Although Defendants treated Plaintiff, their lack of response to Plaintiff's continued complaints of unabated pain could constitute medical indifference. *See Morrison v. Mamis,* No. 08 Civ. 4302, 2008 WL 5451639, *8 (S.D.N.Y. Dec. 18, 2008)* (holding that a prisoner was unable to show deliberate medical indifference where doctors responded to the prisoner's complaints). Perhaps, by the summary judgment stage, Defendants will be able to show that they possessed a medical purpose for continuing to administer Ibuprofen to Plaintiff; but, for now, Plaintiff's allegations are barely plausible.

Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's tenth cause of action.

**H. Retaliation**

Inmates may state a retaliation claim under 42 U.S.C. § 1983 where prison officials, motivated by the inmate's exercise of a right protected by the Constitution, take adverse action against that inmate. *See Franco,* 854 F.2d at 589–90. However, the Second Circuit has repeatedly cautioned that, since it is easy for inmates to make claims attributing adverse action to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)), *overruled on other grounds,* *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To state a claim for retaliatory conduct under § 1983, a plaintiff must allege that (1) he engaged in protected conduct; (2) the defendants took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 284–86, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quotation omitted). Where the plaintiff's allegations meet this standard, the defendants must demonstrate that they would have taken the complained-of action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287.

The Second Circuit has instructed that courts should consider whether the actions that the defendants took would deter a similarly situated individual of ordinary firmness from complaining about prison conditions. *See Gill,* 389 F.3d at 381; *see also Espinal v. Goord,* 558 F.3d 119, 129 n. 7 (2d Cir.2009); *Lugo v. Van Orden,* No. 9:07–CV–879, 2008 WL 2884925, *4–*5 (N.D.N.Y. July 23, 2008). The Second Circuit has also warned litigants that "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

**\*11** Where a significant period of time has elapsed between an inmate's retaliated-for behavior and the actual alleged act of retaliation, courts typically find that this lack of temporal proximity precludes a plaintiff from supporting a retaliation claim. *See Johnson v. Conn., Dep't of Corr.,* 392 F.Supp.2d 326, 340–41 (D.Conn.2005) (finding that, where the defendants took the allegedly retaliatory action seven months and ten months after the

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

plaintiff filed a complaint, the plaintiff could not show a causal link between the two events).

Regarding cell searches, courts have ruled that, because "[r]andom cell searches ... are a necessary and routine part of prison life[,] ... [e]ven cell searches 'conducted solely for harassment' do not implicate the Constitution [.]" *Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, *2 (S.D.N.Y. July 22, 2010) (quotation omitted). Therefore, an inmate plaintiff " 'cannot base a retaliation claim against [a group of] defendant[s] based on a cell search.' " *Id.* (quoting *Bumpus v. Canfield*, 495 F.Supp.2d 316, 327 (W.D.N.Y.2007)). However, "the confiscation or destruction of property taken at the time of ... searches" constitute a retaliatory action. *Keesh v. Goord*, No. 04–CV–271A, 2007 WL 2903682, *8 (W.D.N.Y. Oct.1, 2007) (citation omitted).

Housing transfers may also support a claim for retaliatory action. *See Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, * 15 (S .D.N.Y. Mar. 31, 2006) (holding that a transfer to SHU, where the plaintiff alleged to be noisy and unhygienic, could serve as the basis for a retaliation claim).

Plaintiff's twenty-second cause of action alleges that, on January 22, 2008, Defendants Allan and Bouissey, under the guise of a cell search, ransacked his cell and issued him a fraudulent misbehavior report for possessing "gang material" and "contraband ." *See* Second Amended Complaint. Plaintiff alleges that Defendants did so in order to retaliate against him for filing grievances related to an alleged assault. *See id.* at ¶ 35. The only assault that Plaintiff alleges in his complaint occurred on December 21, 2006, at the Elmira Correctional Facility. *See id.* at ¶¶ 6–8. Plaintiff filed a second grievance regarding this alleged assault on March 1, 2007.[FN9] *See* Dkt. No. 1, Exhibit "2" attached thereto, at 87, March 1, 2007 Grievance. The nearly eleven-month gap between the filing of Plaintiff's grievance and the search of his cell constitutes such a significant temporal gap that causation between the two events cannot be established. *See Johnson*, 392 F.Supp.2d at 341. Plaintiff's allegations also cannot support a causal connection because the December 21, 2006 assault did not involve Defendants Allan or Bouissey, the Defendants who searched Plaintiff's cell. *See*

Second Amended Complaint at ¶ 35. Finally, Plaintiff alleges no facts to indicate that Defendants Allan and Bouissey had a retaliatory motive to search his cell. His second amended complaint merely attributes such a motive to Defendants Allan and Bouissey, and it relates a conversation between Plaintiff and another officer that indicated that Plaintiff and Defendant Allan did not get along. *See id.* However, Plaintiff makes no allegations which indicate that Plaintiff's filing grievances related to the assault was the cause of this animosity between him and Defendant Allan. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this respect and grants Defendants' motion to dismiss Plaintiff's twenty-second cause of action.

> FN9. According to this grievance, Plaintiff had attempted to file a grievance earlier, but that document was never filed. *See* March 1, 2007 Grievance.

**\*12** Plaintiff's twenty-third cause of action alleges that, on January 28, 2008, Defendants Allan and Trottier ransacked his cell and took newspapers and a legal document,[FN10] under the guise of a cell search, in retaliation for his filing complaints related to the December 21, 2006 assault. *See* Second Amended Complaint. As with Plaintiff's twenty-second cause of action, this claim fails for lack of a causal connection. The large temporal gap between the two incidents, the fact that each incident involved different defendants, and the fact that Plaintiff alleges only his belief of causation, as opposed to facts, show that the two events are not sufficiently related to support a claim for retaliation. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-third cause of action.

> FN10. Plaintiff does not allege denial of access to the courts in this cause of action; nevertheless, this cause of action would not support such a claim. Plaintiff does not identify what type of document Defendants removed from his cell, nor does he allege that the removal of this document hindered his ability to pursue a nonfrivolous legal claim. *See Allah v. Greiner*, No. 03 Civ.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

3789, 2007 WL 1280657, *6 (W.D.N.Y. Apr. 30, 2007).

Plaintiff's twenty-sixth cause of action alleges that Defendants Uhler and Allan intentionally changed Plaintiff's cell on a number of occasions as a means of retaliation. *See* Second Amended Complaint. Plaintiff does not discuss why Defendants Uhler and Allan might have been retaliating against him. Plaintiff asserts that the cells to which he relocated were noisy and unsanitary. *See id.* at ¶ 39. Since housing transfers can support a claim for retaliation and since the actions for which Defendants were allegedly retaliating are unclear, dismissing this claim at this stage would be premature. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's twenty-sixth cause of action.

Plaintiff's twenty-seventh cause of action alleges that Defendant Hicks, retaliating against Plaintiff for filing grievances, confiscated a cigarette lighter that Plaintiff had previously been allowed to use for the purposes of smudging. *See* Second Amended Complaint at ¶ 41. However, these allegations also lack a causal connection. Plaintiff does not allege that he had filed grievances against Defendant Hicks, nor does he allege any temporal proximity between the grievances he filed and the confiscation of the lighter. Plaintiff alleges that, when he asked Defendant Hicks why he was removing the lighter, Defendant Hicks said, "because I can." *See* Second Amended Complaint at ¶ 41. Although this statement may indicate that the two men did not get along particularly well, it does not suggest that Defendant Hicks was interested in hindering Plaintiff's religious practice in order to punish Plaintiff for filing grievances about the conditions of his confinement. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-seventh cause of action.

**I. Property loss claim**

Where adequate post-deprivation remedies exist, confiscation of an inmate's personal property will not constitute a due process violation. *See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).* Such remedies are available to inmates in New York State, *see* 7 N.Y.C .R.R. § 1700.3; and the Second Circuit has held that these remedies are adequate and sufficient to preclude a prisoner from maintaining a § 1983 action asserting a loss of due process rights based upon the confiscation of personal property, *see Love v. Coughlin, 714 F.2d 207, 208–09 (2d Cir.1983)* (*per curiam* ). Even where an inmate suffers a " 'random and unauthorized' [loss of property], courts have found that 'New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion....' " *Cantave v. N.Y. City Police Officers,* No. 09–CV2226, 2011 WL 1239895, *7 (E.D.N.Y. Mar.28, 2011)* (quoting *Dove v. City of New York,* No. 99 CIV. 3020DC, 2000 WL 342682, at *3 (S.D.N.Y. Mar.30, 2000))* (other citations omitted).

**\*13** New York State has ample post-deprivation remedies for inmates who intend to assert a claim based on the loss of personal property. Here, there is no evidence that Plaintiff pursued these remedies. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grant Defendants' motion to dismiss Plaintiff's eighteenth cause of action.

**J. Retaliatory mail watch**

The First Amendment guarantees prisoners the right, albeit not an unlimited right, " 'to the free flow of incoming and outgoing mail[ .]' " *LeBron v. Swaitek,* No. 9:05–CV–172, 2007 WL 3254373, *6 (N.D.N.Y. Nov. 2, 2007)* (quoting *Davis [v. Goord,* 320 F.3d 346,] 351 [ (2d Cir.2003) ] ) (other citation omitted). However, this right may be abridged without constitutional violation where prison officials have a legitimate penological interest in monitoring the mail. *See United States v. Workman,* 80 F.3d 688, 699 (2d Cir.1996). Since actions taken toward mail must align with legitimate penological interests, such as prison safety and order, "[c]ourts have consistently afforded greater protection ... to outgoing mail than to incoming mail." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (citations omitted). Nevertheless, the Second Circuit has held that " 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman,* 80 F.3d at 698 (quotation and other citation omitted). The Second Circuit has further held that where prison officials suspect that an inmate

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

wishes to conduct disruptive activities in prison, monitoring that prisoner's mail does not constitute a First Amendment violation. *See id. at 699* (finding no violation where prison officials based their monitoring of inmate's mail on overheard telephone conversations in which the inmate conducted drug trades and discussed the commission of contract murders).

Here, Plaintiff has alleged that Defendant Allan tampered with his outgoing and incoming mail, causing strained relations between Plaintiff and the friends and relatives with whom he was in contact by mail. *See* Second Amended Complaint at ¶ 37. Plaintiff discovered that Defendants were monitoring his outgoing mail when they held a Tier III misconduct hearing regarding a letter that he attempted to send to Wendy Gambles. *See* Dkt. No. 46–5, Exhibit "C" attached thereto, Tier III Hearing Transcript. In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M–203 (a type of grenade launcher), and a bottle containing bird flu taped to an M–100 (a type of explosive device) to facilitate his escape from prison. At his hearing, Plaintiff claimed that he wrote this letter to test the prison system and determine whether prison officials were monitoring his mail. *See* Dkt No. 46–5, Exhibit "B" attached thereto, Plaintiff's letter to Wendy Gambles. In the letter, Plaintiff makes reference to the possibility that prison officials are reading his mail. *See id.*

**\*14** The hearing officer found Plaintiff guilty of violent conduct, attempting to introduce explosives into the prison, soliciting items to be smuggled into prison, harassment, and threatening behavior. *See* Dkt. No. 46–5, Exhibit "D" attached thereto, Tier III hearing decision. Plaintiff commenced an Article 78 proceeding to review the Tier III decision; the Article 78 Judge affirmed. *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

Before sending this letter, Plaintiff had a history of escape from prison. He had made several comments regarding escape to the effect that he had nothing to lose by attempting escape again in the future. *See* Dkt. No. 76, Exhibit "8" attached thereto. In addition, Plaintiff had a history of contacting friends outside of prison to try to help him escape. In 1992, while incarcerated in the Chautauqua County Jail, Plaintiff conspired with his

girlfriend to smuggle a handcuff key to him in order to facilitate his escape. *See id.*

Given Plaintiff's history of escape, his history of soliciting outside help to facilitate escape, and his comments regarding future escape, monitoring Plaintiff's mail appears to meet a legitimate penological interest of maintaining order and ensuring that Plaintiff remain in prison. Therefore, the Court finds that Defendants examined Plaintiff's mail pursuant to a legitimate penological purpose. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-fourth cause of action.

**K. Conditions of confinement**

The Eighth Amendment prohibits inhumane conditions of confinement. *See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001).* Just like medical indifference claims, claims for unconstitutionally inhumane conditions of confinement must satisfy an objective and a subjective requirement. First, the conditions must be serious from an objective point of view; and the plaintiff must demonstrate that, subjectively, prison officials acted with deliberate indifference. *See Leach v. Dufrain, 103 F.Supp.2d 542, 546 (N.D.N.Y.2000)* (quotation omitted). Deliberate indifference exists where an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)*

The Second Circuit has held that allegations of unsanitary conditions may support an Eighth Amendment claim. *See Gaston, 249 F.3d at 165–66* (denying defendants' motion for summary judgment as to plaintiff inmate's claims of frigid temperatures, rodent infestation in his cell and collections of human waste and sewage water directly in front of his cell); *Wright v. McMann, 460 F.2d 126, 128–29 (2d Cir.1972)* (reversing the district court's decision to dismiss the plaintiff's claims that arose from spending eleven days, and, at another time, twenty-one days, naked or nearly naked, in a cold cell with only a toilet and washbowl and no hygienic materials or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

bedding).

**\*15** Courts have ruled that, although the denial of hygiene products for an extended period of time may support a plausible Eighth Amendment claim for the denial of basic necessities, a two-week long deprivation is not sufficient. *See Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003). Courts have also held that *de minimis* deprivations will rarely support a finding of an Eighth Amendment violation. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000); *Govan v. Campbell,* 289 F.Supp.2d 289, 299 (N.D.N.Y.2003).

Given the rulings in *Gaston* and *Wright,* Plaintiff has plausibly alleged Eighth Amendment violations on the part of Defendants Allan and Bosco, even though he was only subjected to these conditions for three days. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's fifteenth cause of action.

Regarding Plaintiff's nineteenth cause of action, Magistrate Judge Peebles characterized this claim as a retaliation claim, as opposed to an Eighth Amendment claim, because Plaintiff's cause of action referred to paragraph thirty-two of the complaint, wherein Plaintiff described his move to a cell traditionally reserved for assaultive and disruptive inmates. *See* Report–Rec. at 49. Plaintiff alleged that the cell had feces-smeared walls and was located near mentally disturbed inmates who created continuous noise and further unsanitary conditions. *See id.* However, the essence of this cause of action is Plaintiff's contention that Defendant Allan transferred him to this cell as a retaliatory measure for complaints that Plaintiff had made about the conditions at Clinton. *See id.* Upon review, paragraph thirty-two of the complaint appears to be primarily concerned with the retaliatory motive behind the transfer. The Second Circuit has ruled that cell changes may form the basis of a retaliation claim. *See Holmes,* 2006 WL 851753, at \* 15. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's nineteenth cause of action.

As to Plaintiff's twenty-first cause of action, given the findings in *Trammell,* Plaintiff's allegation that he received

new hygiene products every two weeks is insufficient to state a plausible Eighth Amendment cause of action. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twenty-first cause of action.

Regarding Plaintiff's twenty-fifth cause of action, Plaintiff's allegation that Defendants failed to fix malfunctioning water pipes, resulting in noise which interrupted his sleep, fails to meet the objective element of an Eighth Amendment inquiry. Although undoubtedly annoying, such conditions do not evince a serious risk of harm and do not rise to the level of an Eighth Amendment violation. *See, e.g., Mabery v. Keane,* No. 95 Civ. 1093, 1998 WL 148386, \*8 (S.D.N.Y. Mar.30, 1998) (finding that an inmate's allegation that he had to breathe fumes from nearby running raw sewage was insufficient to state an Eighth Amendment cause of action); *Giglieri v. New York City Dep't of Corr.,* No. 95 CIV. 6853, 1997 WL 419250, \*2, \*4 (S.D.N.Y. July 25, 1997) (finding that exposure to secondhand smoke is not a sufficient basis for an Eighth Amendment claim). Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twenty-fifth cause of action.

**L. Procedural due process**

**\*16** To maintain a claim for procedural due process deprivation, an inmate must allege that prison officials deprived him of a liberty or property interest. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (quotation omitted).

Here, Plaintiff alleged that he sustained a loss of procedural due process when Defendant Miller conducted a Tier II hearing in Plaintiff's absence. The maximum period of disciplinary SHU confinement that officials may impose after conducting a Tier II hearing is thirty days. *See* 7 N.Y.C.R.R. § 253.7(a)(1)(iii). Absent the pleading of special circumstances that would constitute a significant and atypical deprivation in relation to the ordinary incidents of prison life, a period of disciplinary SHU confinement of thirty days or less does not represent a liberty interest under the Due Process Clause of the Fourteenth Amendment. *See Palmer v. Richards,* 364 F.3d 60, 65–66 (2d Cir.2004) (noting that "we have affirmed

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short-less than ... 30 days"); *Rodriguez v. McGinnis,* 1 F.Supp.2d 244, 248 (S.D.N.Y.1998) (holding that " '[t]he decisions of the Second Circuit are unanimous that keeplock ... confinement of 30 days or less in New York prisons is not "atypical or significant hardship" under *Sandin' "* (quotation and other citations omitted)).

Here, Plaintiff's complaint lacks any allegation regarding the penalty imposed as a result of the Tier II hearing, nor does it include allegations demonstrating any conditions he may have endured due to such punishment. Again, the Tier II hearing, by New York State regulation, cannot impose a penalty that would implicate Plaintiff's due process rights under the Fourteenth Amendment. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twentieth cause of action.

**M. Personal involvement of supervisory officials**

The " ' "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983 [.]" ' " *Johnson v. Wright,* 234 F.Supp.2d 352, 362–63 (S.D.N.Y.2002) (quotation omitted). To prevail on a § 1983 cause of action against an individual, a plaintiff must demonstrate the existence of a tangible connection between the constitutional violation alleged and the particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

To sufficiently allege personal involvement on the part of an individual defendant who is a supervisor, a plaintiff must demonstrate that

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation ... failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the alleged victim] by failing to act on information indicating that unconstitutional acts were occurring.

**\*17** *JG & PG v. Card,* No. 08 Civ. 5668, 2009 WL 2986640, \*7 (S.D.N.Y. Sept. 17, 2009) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

Each of the Defendants named in this cause of action serves DOCS in a supervisory capacity, and they are all named only in the fourteenth cause of action. In this cause of action, Plaintiff alleges in conclusory terms that these three Defendants conspired to keep Plaintiff in administrative segregation to punish him for the crimes of his conviction. *See* Second Amended Complaint. Plaintiff expands on this slightly in the body of his complaint, stating that he "has continually petitioned" these Defendants regarding his confinement in Administrative Segregation. *See id.* at ¶ 25. Even if true, these allegations are insufficient to establish the requisite level of personal involvement on the part of Defendants Fischer, Roy, and LeClair. *See Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, \*4 (S.D.N.Y. Apr.19, 1995) (holding that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations" (citations omitted)).

Moreover, to the extent that Plaintiff's allegation that these Defendants "conspired" to keep him in SHU represents a conspiracy claim, such a claim fails. To maintain a conspiracy claim under § 1983, a plaintiff must show that a defendant " 'acted in a willful manner, culminating in an agreement, understanding, or "meeting of the minds", that violated the plaintiff's rights ... secured by the Constitution or the federal courts.' " *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (quotation omitted). Conclusory or vague allegations of conspiracy are not enough to state a claim for relief under § 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (citations omitted). Here, Plaintiff alleges in the most vague and conclusory of terms that Defendants Fischer, Roy, and LeClair conspired against him. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's fourteenth cause of action.

**N. Denial of contact visits**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Inmates do not have a constitutional right to contact visits. *See Zimmerman v. Burge,* No. 06–cv–0176, 2008 WL 850677, *2 (N.D.N.Y. Mar.28, 2008) (citation omitted). Plaintiff brings this cause of action under the Eighth Amendment. [FN11] As stated earlier, an Eighth Amendment claim has an objective and a subjective element. *See Wright,* 554 F.3d at 268. The objective element focuses on the effect of a defendant's conduct, while the subjective element focuses on the defendant's motive. *See id.*

> FN11. Typically, courts address the issue of contact visits with reference to the Fourteenth Amendment.

Plaintiff discusses no facts that would indicate that the effects of this denial had an objectively severe effect on his mental and emotional well being. Plaintiff also does not allege any facts to indicate that Defendant Artus acted with a sadistic or malicious intent when he denied Plaintiff the privilege of receiving contact visits. Plaintiff's second amended complaint merely contains a conclusory allegation that Defendant Artus acted maliciously. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's sixth cause of action.

**O. John Doe Defendant**

*18 Under Rule 4(c)(1) of the Federal Rules of Civil Procedure, the plaintiff must serve a summons and complaint upon each defendant within 120 days of the filing of the complaint. *See* Fed.R.Civ.P. 4(m). Where a plaintiff does not properly serve a defendant in accordance with the Federal Rules of Civil Procedure, the court will, upon motion or its own initiative, dismiss the case without prejudice as to that defendant. *See id.; see also Cooks v. Delpiano,* No. 9:07–CV–00765, 2008 WL 4186337, *1 n. 1 (N.D.N.Y. Sept.10, 2008); *Pravda v. City of Albany,* 178 F.R.D. 25, 26 (N.D.N.Y.1998).

Plaintiff alleged that the John Doe Defendant did nothing to help him when he was confined in the cold and unsanitary cell, about which he made an Eighth Amendment claim. Specifically, Plaintiff alleged that the John Doe Defendant mocked him when he requested that the windows be closed because snow was gathering on the floor of the cell. *See* Second Amended Complaint at ¶ 29.

However, despite the passage of nearly three years since his original complaint and more than one year since filing his second amended complaint, Plaintiff has not yet identified or served the John Doe Defendant. Accordingly, the Court dismisses Plaintiff's sixteenth cause of action.

**P. Deprivation of the ability to file grievances**

The Constitution does not require the state to create inmate grievance programs. *See Johnson v. Enu,* No. 08–CV–158, 2011 WL 3439179, *13 (N.D.N.Y. July 13, 2011) (citation omitted). As a consequence, allegations that prison officials violated such procedures will not support a claim under § 1983. *See id.* Further, should prison officials ignore or scuttle a grievance that raises constitutional claims, an inmate can petition the courts directly for redress. *See id.* (citing *Flick v. Alba,* 932 F.2d 728, 728 (8th Cir.1991)).

Plaintiff alleges that Defendant Brousseau "blocked" some of Plaintiff's grievances, in that she "picked and chose" which would proceed and which would not. *See* Second Amended Complaint at ¶ 42. The Constitution does not mandate a grievance procedure, and Plaintiff has the opportunity to petition the courts directly regarding any constitutional violations he feels he has sustained, an option with which he is obviously comfortable. Accordingly, the Court dismisses Plaintiff's twenty-eighth cause of action.

**Q. Leave to replead**

Courts must construe *pro se* pleadings liberally and interpret them " 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quotation omitted). Typically, courts do not dismiss *pro se* complaints without granting leave to amend at least once if there is any indication that a valid claim may be stated. *See Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991) (citations omitted); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

*19 Magistrate Judge Peebles, in deference to Plaintiff's *pro se* status, recommended that the Court give Plaintiff a final opportunity to amend his complaint to cure any deficiencies, with the exceptions of the seventeenth

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

(false misbehavior report) and eighteenth (lost property) causes of action. Magistrate Judge Peebles reasoned that neither of those causes of action presents even a potentially conceivable constitutional claim, and, therefore, neither could be rescued by even the most skillfully worded amendment.

There is no indication that Magistrate Judge Peebles' reasoning is clearly erroneous. Accordingly, the Court adopts this portion of his Report and Recommendation and allows Plaintiff to amend his second amended complaint, except for the seventeenth and eighteenth causes of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby ORDERS that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Defendants' motion to dismiss Plaintiff's fifth, eleventh, thirteenth, fourteenth, seventeenth, eighteenth, twentieth, twenty-first, and twenty-fifth causes of action, and Defendants' motion to dismiss those causes of action is **GRANTED;** and the Court further

ORDERS that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action and Defendants' motion to dismiss those causes of action is **DENIED;** and the Court further

ORDERS that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's eighth, ninth, twelfth, twenty-second, twenty-third, twenty-fourth, and twenty-seventh causes of action and Defendants' motion to dismiss those causes of action is **GRANTED;** and the Court further

ORDERS that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio and Defendants' motion to dismiss Plaintiff's second cause of action against those Defendants is

DENIED; and the Court further

ORDERS that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's second cause of action as it relates to Defendant Henderson and Defendants' motion to dismiss Plaintiff's second cause of action against Defendant Henderson is **GRANTED;** and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's sixth, sixteenth, and twenty-eighth causes of action is **GRANTED;** and the Court further

ORDERS that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** with respect to providing Plaintiff with an opportunity to replead and, therefore, **within thirty (30) days of the date of this Memorandum–Decision and Order,** Plaintiff may file a third amended complaint to cure the deficiencies in those causes of action that the Court has dismissed, with the exception of his seventeenth and eighteenth causes of action; [FN12] and the Court further

> [FN12.](#) In sum, Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action, as well as his second cause of action as it relates to Defendants Kirkpatrick and Marinaccio, are sufficient to withstand Defendants' motion to dismiss. On the other hand, Plaintiff's fifth, sixth, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth, eighteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-seventh, and twenty-eighth causes of action, as well as his second cause of action as it relates to Defendant Henderson, are insufficient to withstand Defendants' motion to dismiss. However, with the exception of Plaintiff's seventeenth and eighteenth causes of action, the Court will provide Plaintiff with an opportunity to amend his complaint to cure any deficiencies in the dismissed causes of action.

**\*20 ORDERS** that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Phillips v. Roy
Slip Copy, 2011 WL 3847265 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Terry CICIO, Plaintiff,
v.
GRAHAM; Peter M. Sigona; Richard D. Ruston, III;
Phil J. Manna; A. Vega; and Ryerson, Defendants.
No. 9:08-CV-534 (NAM/DEP).

March 15, 2010.
Terry Cicio, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General,
State of New York, Adrienne J. Kerwin, Esq., of Counsel,
Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

HON. NORMAN A. MORDUE, Chief Judge.

    **\*1** Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services ("DOCS"),
brought this action for declaratory and monetary relief
under 42 U.S.C. § 1983, claiming excessive use of force,
failure to intervene, and denial of adequate medical care
stemming from a disturbance involving 17 or more
inmates occurring in a "holding pen" or "cage" at Auburn
Correctional Facility ("ACF") on March 7, 2006. Plaintiff
moved for summary judgment (Dkt. No. 35) and
defendants cross-moved for summary judgment (Dkt. No.
38). Upon referral of the motions pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.3(c), United States
Magistrate Judge David E. Peebles issued a Report and
Recommendation (Dkt. No. 41) recommending that this
Court deny plaintiff's motion, grant defendants' motion,
and dismiss the action.

    Plaintiff has submitted an objection (Dkt. No. 42).
Plaintiff states that the Court should have reviewed the

transcripts from his disciplinary hearing, because the
testimony of defendants Peter M. Sigona and Richard D.
Ruston, III at that hearing "contradicts the reports that
[Magistrate Judge Peebles] relied on in making [his]
decision." Plaintiff gives no specifics and thus appears to
be interposing a general objection directed to the issues of
excessive force and failure to intervene. His objection
does not refer to the issue of medical indifference.

    Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court
reviews *de novo* those parts of a report and
recommendation to which a party specifically objects.
Where, as here, a party interposes only general objections
to a report and recommendation, the Court reviews for
clear error or manifest injustice. *See Davis v. Chapple,*
2010 WL 145298, *2 (N.D.N.Y. Jan.8, 2010), *Brown v.
Peters,* 1997 WL 599355,*2-* 3 (N.D.N.Y.), *aff'd without
op.,* 175 F.3d 1007 (2d Cir.1999). Failure to object to any
portion of a report and recommendation waives further
judicial review of the matters therein. *See Roldan v.
Racette,* 984 F.2d 85, 89 (2d Cir.1993).

    The Court accepts and adopts Magistrate Judge
Peebles' Report and Recommendation. In view of
plaintiff's objection, which, as noted, appears to be
directed to the evidence on the issues of excessive force
and failure to intervene, the Court briefly revisits these
issues. Although plaintiff interposes only a general
objection on these issues, in light of his *pro se* status and
the nature of the objection, the Court conducts a *de novo*
review. Plaintiff requests the Court to obtain the transcript
of the disciplinary hearing and contends that the testimony
given by Sigona and Ruston at that hearing contradicts the
reports relied on by Magistrate Judge Peebles; however,
as explained below, the award of summary judgment to
defendants is based on plaintiff's own evidence.

    The record evidence pertinent to the excessive force
and failure to intervene claims is briefly summarized as
follows. In a declaration supporting the motion for
summary judgment, Sigona, a sergeant at ACF, states:

    **\*2** On March 7, 2006, I was supervising the hospital

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

depot area at Auburn. While waiting with a group of inmates in the holding pen in the hospital depot, inmate Baer became disruptive and began threatening staff. Baer ignored several orders by me to cease his behavior. I then entered the holding pen with Officers Manna and Ruston with the intention of removing inmate Baer.

All of the inmates in the pen were ordered to one side of the pen, while Baer remained on the other. Inmate Green refused to move, so I guided him to the side directed.

While I was guiding inmate Green, plaintiff Cicio then lunged at Officer Manna, striking him with a closed fist and knocking him to the ground. I immediately went to Officer Manna's aid and assisted with gaining control of Cicio by taking control of Cicio's right side. Officer Manna and I then escorted a struggling Cicio out of the pen, after which Cicio and Officer Manna fell to the floor. Once Cicio stopped struggling, he was removed from the area and taken to medical for examination.

The declaration from defendant Philip J. Manna, a corrections officer at ACF, is consistent with Sigona's declaration.

Plaintiff's complaint states that defendant Sigona pushed plaintiff into defendant Manna "who then grabbed plaintiff by the hair and began to pull plaintiff towards [the] holding pen door at which point plaintiff was thrown to the floor and kneed in [the] nose." The complaint further states that, after plaintiff was brought to his feet and escorted out of the immediate area, defendant Manna "once again grabbed plaintiff by his hair and pushed plaintiff's face into [the] wall." According to plaintiff, Sigona and Ruston "stood and watched the incident" and did not "intervene[ ] to stop the assault."

Plaintiff testified in his deposition that there were 17 or 18 inmates in the holding pen awaiting transport; that there were no corrections officers in the pen but there were some in the vicinity; that another inmate George Baer started "cursing up a storm" at a corrections officer; and that the sergeant told Baer to "cut it out," to which Baer responded, "No." The sergeant then said, "Take him out of there," ordered Baer to come up front, and ordered

everyone else to the back of the pen. Instead of coming up front, Baer "sat down in the middle of the cage." Plaintiff stated that everyone else went to the back of the pen except plaintiff and inmate Green; according to plaintiff, they could not go back because "there was no more room." As plaintiff describes it:

There wasn't any more room. And he [Green] was standing directly in front of Inmate Baer. So they started taking Green out of the holding pen, and that's where everything just a whole jumble of things happened. I ended up getting mixed up in that, because one of officers tried to barge in there and push me into the sergeant, and then I got into a use of force behind it. So a whole lot of events that took place after one move.

**\*3** \* \* \*

Once they started pulling [Green] out [of the pen], other officers barged into the cage. I don't know if done purposely or not, but I was pushed into the sergeant, and from there I was given an assault charge and taken down.

\* \* \*

... [Baer] was sitting there [in the middle of the pen] when Green was being taken out. After I was pushed to the sergeant, I don't know what happened.

Plaintiff's deposition testimony continued:

Q. Was Green eventually taken out?
A. Yes.

Q. Okay. Now, was he still in the cage when you got pushed into the sergeant?

A. I am not sure.

Q. It was all happening at the same time?

A. Yes.

Q. Did you see any officers go to Baer to get him up and out?

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

A. Not specifically, because by this time it was just chaos in the cage. I was on the floor somewhere. I don't know where.

Q. How many officers were taking out Green?

A. When I first seen, I only saw one before everything just-

Q. When the sergeant said, "Take him of there," meaning Baer, how many officers entered the pen?

A. At the time, there was about five or six.

Q. They entered at the time just to remove Baer because of the goings on?

A. Yes.

Q. Was one of them the sergeant?

A. Yes. There was a sergeant in there.

Q. So the sergeant and/or three or four officers?

A. Quite a few, yes. Something like that.

Q. Okay. So they enter. Then Green is told to move. He doesn't. Somebody, was it one of those officers that entered that tried to remove Green?

A. The first officer that enters, the one that ... talked to him at first trying to remove him. I don't know which officer that was.

Q. Okay. But no additional officers to deal with Green, it was somebody in there from Baer?

A. Right. Once Green, once they saw an officer pulling Green out of the cage, that's when more officers entered the cage.

Q. So I think, and when I try to recap what you just said, I am not trying to put words in your mouth, but tell me if I am doing it wrong. I am trying to make sure I get it

right. You said five or six officers came in to deal with Baer; is that right?

A. Something close to, right.

Q. How many more entered once Green became an issue?

A. I have no idea, because by that time I was into the sergeant and on the floor.

Q. Okay. All right. So somebody, as they are rushing in, whether intentional or not, you don't know, pushed you into the sergeant?

A. Right.

Q. Then what happened?

A. From there, I was taken down. I got kneed in the nose.

Q. Do you know who took you to the floor?

A. I am only going by the reports.

Q. Okay.

A. I don't know specifically. Only in the reports that they wrote do I know any names.

Q. Okay.

A. But other than that, at the time of the incident, I didn't know anything.

Q. Okay. At what point in time did you-at some point in time did you see the report?

*4 A. I saw the reports after I got my misbehavior report, and I got my assistance, and I asked for the use of force report, and the unusual incident report, and everything else.

Q. Okay. Now, once you were taken to the floor, then what happened? Take me through it totally.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

A, Once I was taken to the floor, another CO kneed me in the nose. I don't know who.

Q. You don't think it was the same person that took you to the floor? A. I doubt it.

Q. All right. Okay.

A. And once I was lifted, I was pulled [from] the cage by my hair. At the time I had a lot of hair. I was pulled out [of] the cage by my hair, and then I hit the floor again.

Q. Okay. Now when you hit the floor again, were you taken to the floor? Do you know how that happened, the second hitting of the floor?

A. I am not sure.

Q. Okay.

A. I am not sure.

Q. You ended up on the floor?

A. I just ended up on the floor with a couple C.O.s on top of me. I don't know if they fell, if I fell. I have no idea.

Q. There were other officers on the floor with you?

A. Right.

Plaintiff explained that he was then removed from the scene, taken upstairs to "their SHU" and given a ticket. He was placed in a different holding pen where a nurse came to see him within 15 or 20 minutes. According to plaintiff, he told the nurse that his nose hurt, he had pains in his right wrist, which was swollen, and some of his hair "had got pulled out in back." He was not bleeding. He requested and was denied pain medication, although at some later time he was given ibuprofen. He had headaches "off and on" for two or three weeks and his wrist was swollen for a few days, although it did not limit any of his activities.

When the disputed facts are viewed most favorably to plaintiff and considered in combination with the undisputed facts, the record shows the following: a group of 17 or 18 inmates was confined in the pen; one inmate, Baer, became disruptive and refused to comply with Sergeant Sigona's direction to stop; five or six corrections officers entered the pen to remove Baer; the other inmates were directed to move to the back of the pen; there was not room for Green and plaintiff to do so; Green was told to move but did not do so; and corrections officers began removing Green. The evidence further shows that at that point "just a whole jumble of things happened"; more corrections officers entered the pen; as they were entering, one of them-intentionally or not-pushed plaintiff into Sergeant Sigona; it was "chaos" in the pen; a corrections officer took plaintiff to the floor; and plaintiff then "got kneed in the nose," probably by a different corrections officer. Plaintiff was then pulled out of the pen. In his complaint he states that Officer Manna again grabbed him by the hair and pushed his face into the wall, whereas in his deposition, plaintiff stated that he was pulled out of the pen by his hair and "ended up on the floor again" with a couple of corrections officers on top of him, and added: "I don't know if they fell, if I fell." He was then removed and taken to SHU, where a nurse examined him within 20 minutes.

**\*5** The Court agrees with Magistrate Judge Peebles that defendants are entitled to summary judgment dismissing plaintiff's claims of excessive force. It is undisputed that the force used on plaintiff on March 7, 2006 occurred in the context of a disturbance involving 17 or 18 inmates in a holding pen. In plaintiff's own word, it was "chaos." Indeed, plaintiff states that when he was pushed into Sergeant Sindona it may have been unintentional, and that, when he went to the floor a second time, it may have been because he and/or the corrections officers fell. In view of this evidence and the minimal nature of plaintiff's injuries, no rational trier of fact could conclude that plaintiff was subjected to force that was malicious or sadistic for the purpose of causing plaintiff harm and not in a good faith effort to maintain discipline. *See Wright v. Goord,* 554 F.3d 255, 268-69 (2d Cir.2009). For the same reason, there is no basis for a claim of failure to intervene. Moreover, no rational trier of fact could find

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

that plaintiff suffered a serious medical need. As to the other issues raised, the Court agrees with the Report and Recommendation. Accordingly, the Court hold that plaintiff has failed to establish that he is entitled to summary judgment; defendants have demonstrated their entitlement to summary judgment; and plaintiff has failed to show the existence of a material question of fact.

In addition to his objection to the Report and Recommendation (Dkt. No. 42), plaintiff has filed what appears to be an appeal from the Report and Recommendation (Dkt. No. 43). Because Magistrate Judge Peebles did not issue any order which could be the subject of the appeal, the appeal is denied. In the event that plaintiff wishes to appeal from this Memorandum-Decision and Order, he should follow the procedure set forth in the Civil Appeals Packet, which will be provided to him with this decision.

It is therefore

ORDERED that United States Magistrate Judge David E. Peebles's Report and Recommendation (Dkt. No. 41) is accepted and adopted; and it is further

ORDERED that the appeal (Dkt. No. 43) from the Report and Recommendation is denied; and it is further

ORDERED that plaintiff's motion for summary judgment (Dkt. No. 35) is denied; and it is further

ORDERED that defendants' cross motion for summary judgment (Dkt. No. 38) is granted and the complaint dismissed on the merits; and it is further

ORDERED that the Clerk is directed to provide plaintiff with a Civil Appeals Packet.

IT IS SO ORDERED.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Terry Cicio, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983,

claiming deprivation of his civil rights. In his complaint plaintiff asserts that he was assaulted by one of the defendants while two others stood by and failed to intervene, and that following the assault medical personnel at the prison facility where the incident took place failed to provide requested medical treatment for his resulting injuries. Plaintiff's complaint seeks both declaratory and monetary relief.

**\*6** Currently pending before the court are cross-motions for summary judgment. Plaintiff initiated the motion process, moving for summary judgment and claiming that the evidence in the record supports a finding in his favor on the issue of liability and that no reasonable factfinder could conclude otherwise. Defendants have responded by both opposing plaintiff's motion and seeking summary judgment dismissing plaintiff's complaint. In their motion defendants assert that based upon the record now before the court no reasonable factfinder could find in plaintiff's favor on any of his claims and that, in any event, they are deserving of qualified immunity from suit under the circumstances presented.

Having carefully reviewed the record considered in light of the arguments of the parties, for the reasons that follow I recommend that defendants' motion be granted and that plaintiff's motion be denied.

I. *BACKGROUND*

The facts forming the basis for plaintiff's claims are not particularly complex, although the parties have given conflicting accounts of the relevant events, particularly with regard to the circumstances surrounding the use of force by prison officials of force against Cicio.

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his complaint, Cicio was housed at the Auburn Correctional Facility ("Auburn"), located in Auburn, New York. *See generally* Complaint (Dkt. No. 1). On March 7, 2006, while plaintiff was among a group of between sixteen and eighteen inmates confined in the Auburn hospital depot awaiting transfer out a disruption occurred involving a fellow prisoner. Complaint (Dkt. No. 1) Statement of Facts ¶ 1; Sigona Decl. (Dkt. No. 38-8) ¶ 3; Manna Decl. (Dkt. No. 38-9) ¶ 3; *see also* Kerwin Aff.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

(Dkt. No. 38-3) Exh. K (transcript of plaintiff's deposition, conducted on May 15, 2009 and hereinafter cited as "Plaintiff's Dep. Tr." at pp. 8-10). Defendants Sigona, Manna and Ruston, all three of whom are employed as corrections workers at the facility, responded to the incident, entering the cell and ordering all of the inmates to retreat to the back. Complaint (Dkt. No. 1) Statement of Facts ¶ 2, Manna Decl. (Dkt. No. 38-9) ¶ 3; Sigona Decl. (Dkt. No. 38-8) ¶ 3. While those corrections officers attempted to remove the dissident inmate from the cell plaintiff Cicio became involved. It is at this point that the parties' versions of the relevant events significantly diverge.

Plaintiff contends that during the ensuing events he was pushed into defendant Manna, who then grabbed him by the hair and began to pull him toward the cell door, resulting in Cicio being thrown to the floor and kneed in the nose. Complaint (Dkt. No. 1) Statement of Facts ¶ 4; Cicio Decl. (Dkt. No. 40-2) ¶ 4. Plaintiff maintains that after regaining his footing he was again grabbed by the hair and pushed face first into the wall. Complaint (Dkt. No. 1) Statement of Facts ¶ 5. Plaintiff asserts that while this was occurring defendants Sigona and Ruston stood by and watched without coming to his assistance. *Id.*

**\*7** Defendants offer a markedly different version of the relevant events. According to the defendants, while they were attempting to extricate the disruptive inmate from the holding cell Manna issued a direct order to the plaintiff to move to the back of the cage. Plaintiff's Exh. D (Dkt. No. 35-2) Disregarding the order, plaintiff blocked Corrections Officer Manna's path, lunged at him and struck him with a closed fist knocking him to the floor. *Id.; see also,* Manna Decl. (Dkt. No. 38-9) ¶ 4; Sigona Decl. (Dkt. No. 38-8) ¶ 5. Cicio then began yelling to the other inmates in the cage, encouraging them to join in, exclaiming, "let's get them." Plaintiff's Exh. D (Dkt. No. 35-2). At that point, defendants Manna and Sigona attempted to subdue Cicio, who continued to struggle and resist, resulting in Cicio and Officer Manna falling to the floor. Manna Decl. (Dkt. No. 38-9) ¶¶ 4-5; Sigona Decl. (Dkt. No. 38-8) ¶ 5.

As a result of the incident a misbehavior report was subsequently issued by Corrections Officer Manna

charging Cicio with disciplinary infractions, including 1) assault on staff; 2) prison takeover; 3) engaging in violent conduct; 4) inciting inmates; 5) disobeying a direct order; 6) physically interfering with an employee; and 7) impeding inmate movement. Mann Decl. (Dkt. No. 38-9) ¶ 7. Following a Tier III disciplinary hearing commenced on March 13, 2006, plaintiff was found guilty of five of the six violations including, *inter alia,* assault on staff. Kerwin Aff. (Dkt. No. 38-3) Exh. I. As a result of that determination plaintiff received a series of sanctions which, after being modified on appeal, included twelve months of confinement in a facility special housing unit ("SHU") with a corresponding loss of packages, commissary, and telephone privileges, and an additional recommendation that plaintiff forfeit twelve months of good time credits. *Id.*

Following the incident plaintiff was immediately removed from the area and taken to be examined by facility medical personnel. Manna Decl. (Dkt. No. 38-9) ¶ 6. Plaintiff was examined by defendant A. Vega, a registered nurse, within fifteen to twenty minutes after the incident. Cicio Decl. (Dkt. No. 40-2) ¶ 5; Plaintiff's Dep. Tr. at p. 22. During that examination Nurse Vega observed a reddened area on the bridge of plaintiff's nose and noted his reports of minor pain in the nose and head areas. Plaintiff's Dep. Tr. at pp. 25-26; *see also* Kerwin Aff. (Dkt. No. 38-3) Exhs. B and H. Plaintiff was not treated for his injuries nor was he scheduled to see a doctor. Complaint (Dkt. No. 1) Statement of Facts ¶ 8.

Plaintiff claims that following the incident he submitted sick call slips on March 8, 9, 13 and 19, 2006, requesting medical intervention to address his injuries. Complaint (Dkt. No. 1) Statement of Facts ¶¶ 9, 11-12 and 15. Plaintiff contends, however, that those sick call slips were not processed by defendant Ryerson, the nurse administrator at Auburn. *Id.* ¶ 22. Defendant Ryerson denies that allegation and counters that based upon her review of all sick call slips received during the time period involved, there is no record of plaintiff having requested sick call at any time between March 8 and March 20, 2006. Ryerson Decl. (Dkt. No. 38-10) ¶ 4.

**\*8** As is the case with regard to plaintiff's substantive allegations, the parties disagree over the procedural steps

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

taken by the plaintiff to seek internal review of the relevant events. Plaintiff contends that following the incident he filed two separate grievances, filing the first on March 14, 2006, and both related to the failure of prison officials to permit him to attend sick call. Complaint (Dkt. No. 1) Statement of Facts ¶¶ 14, 16. Plaintiff does not assert in his complaint that he filed a grievance regarding the alleged use of force and failure of prison officials to intervene on his behalf, although in an affirmation in opposition to defendants' summary judgment motion Cicio succinctly states "[p]laintiff filed grievances on both incidents, only one was responded to." See Cicio Aff. (Dkt. No. 39) ¶ 3. Plaintiff's motion submission also includes a handwritten memorandum, dated March 14, 2006 and addressed to the facility inmate grievance review committee ("IGRC"), citing the events including the alleged assault by prison officials. See Plaintiff's Exhs. (Dkt. No. 35-3) p. 24 of 27.

According to the defendants, the sole grievance filed by plaintiff regarding the incident was submitted on March 24, 2006 and was denied by the facility IGRC on April 3, 2006 after plaintiff was transferred out of Auburn. Graham Decl. (Dkt. No. 38-7) ¶ 6. That denial was subsequently affirmed by defendant Graham, the Superintendent at Auburn, on April 3, 2006. While plaintiff claims to have appealed that determination on June 12, 2006, presumably to the DOCS Central Office Review Committee ("CORC"), the record contains no further indication of whether that appeal was in fact taken, and if so, the result. See Complaint (Dkt. No. 1) Statement of Facts ¶ 18. According to prison officials at Auburn, their research of relevant records at the facility failed to disclose additional documents regarding plaintiff's exhaustion of remedies and, significantly, to show that plaintiff appealed to Superintendent Graham from the disposition of his claimed use of force grievance. See Graham Decl. (Dkt. No. 38-7) ¶ 4.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on April 28, 2008.[FN1] As defendants, plaintiff's complaint names Auburn Superintendent Harold D. Graham; Corrections Sergeant Peter M. Sigona; Corrections Officers Richard D. Ruston and Phil J. Manna; Registered Nurse A. Vega; and Nurse

Administrator Ryerson. The complaint alleges varying claims against those defendants including for the alleged use of excessive force and failure to protect the plaintiff from the use of force as well as indifference to his medical needs arising from the incident.[FN2] See generally Complaint (Dkt. No. 1).

> FN1. This action was filed in the Western District of New York but was subsequently transferred here by order issued on May 2, 2008 by Chief District Judge Richard J. Arcara. Dkt. Nos. 1, 3.

> FN2. In his motion submission, plaintiff also claims to have asserted a cause of action for violation of procedural due process, based upon the defendants' alleged failure to process and investigate his grievances. Plaintiff's Memorandum (Dkt. No. 35-3) at p. 2. Such a claim, if indeed present in this action, is nonetheless subject to dismissal, since it is well established that a prison inmate has no cognizable constitutional right of access to the grievance process or to have grievances which have been filed investigated. Avent v. Doe, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar.31, 2008) (Scullin, S.J. & DiBianco, M.J.) (citing Torres v. Mazzuca, 246 F.Supp.2d 334, 342 (S.D.N.Y.2003)).

Issue was initially joined in the action by defendant Manna through his filing of an answer on September 25, 2008. Dkt. No. 23. Following the denial of their pre-answer motion seeking dismissal of plaintiff's claims against them on a variety of bases, see Dkt. Nos. 29, 32, an answer was filed on behalf of the remaining defendants on February 25, 2009. Dkt. No. 30.

*9 On July 15, 2009, following pretrial discovery, plaintiff filed a motion for summary judgment in his favor. Dkt. No. 35. While plaintiff's motion appears to focus on the defendants' use of force, it purports to seek summary judgment on all of his claims. See id . On September 28, 2009, defendants responded in opposition to plaintiff's motion and in support of a cross-motion requesting judgment dismissing all of plaintiff's claims against them as a matter of law. Dkt. No. 38. In their motion,

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

defendants argue that 1) plaintiff's deliberate medical indifference claim is legally deficient based both upon his inability to establish the existence of a serious medical need and the lack of evidence of indifference on the part of defendants Vega or Ryerson, the two medical personnel against whom the claim appears to have been lodged; 2) plaintiff's claim surrounding the alleged use of a excessive force and failure to intervene lacks merit; 3) plaintiff's claims against Superintendent Graham are subject to dismissal based upon his lack of personal involvement in the constitutional deprivations alleged; and 4) in any event defendants are entitled to qualified immunity from suit. Plaintiff has since responded in opposition to defendants' motion and in further support of his initial summary judgment motion. Dkt. Nos. 38, 39, 40.

The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also* Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson).* A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *but see* Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*10** When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553; Wright v. Coughlin, 132 F.3d 133, 137-38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See* Building Trades Employers' Educ. Ass'n v. McGowan, 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also* Anderson, 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

In a case such as this, where parties have interposed cross-motions for summary judgment, each motion must be independently assessed, using this standard as a backdrop. *See* Light Sources, Inc. v. Cosmedico Light, Inc., 360 F.Supp.2d 432, 434 (D.Conn.2005).

B. *Excessive Force/ Failure To Intervene*

At the heart of plaintiff's complaint is his claim that

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

on March 7, 2006 he was subjected to an unprovoked attack by defendant Manna and that defendants Sigona and Ruston watched and failed to take any measures to end the assault and that, as a result, he suffered physical injuries. Plaintiff claims that the record supports his excessive force and failure to intervene claims as a matter of law. Defendants counter by arguing that no reasonable factfinder could conclude, based upon the record now before the court, that plaintiff's constitutional rights were violated, even assuming the truth of his version of the relevant events.

1. *Excessive Force*

Plaintiff's excessive force claim must be analyzed under the Eighth Amendment, which proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 100, 97 S.Ct. 285, 290, 291, 50 L.Ed.2d 251 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-999, 117 L.Ed.2d 156 (1992) (applying *Whitley* to all excessive force claims); *Whitley,* 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom ., John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

**\*11** Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009) (citing *Hudson,* 503 U.S. at 7-8, 112 S.Ct. at 999 and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). As was recently emphasized by the United States Supreme Court in *Wilkins v. Gaddy,* however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. --- U.S. - - - -, --- S.Ct. ----, --- L.Ed.2d - - - - , 2010 WL 596513, at \*3 (Feb. 22, 2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe,* 899 F.Supp. 972, 973 (N.D.N.Y.1995) ( *McAvoy, C.J.) (quoting Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F.Supp.2d 204, 211 (N.D.N.Y.2001) (Kahn, J.). Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9-10, 112 S.Ct. 1000 (citations omitted).

With its focus on the harm done, the objective prong of the inquiry is contextual and relies upon "contemporary standards of decency." *Wright,* 554 F.3d at 268 (quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. at 1000) (internal quotations omitted)). When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

suffered by the inmate plaintiff. While the absence of significant injury is certainly relevant, it is not dispositive. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson,* 481 F.2d at 1033). "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated.... This is true whether or not significant injury is evident.' " *Wright,* 554 F.3d at 268-69 (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000). That is not to say, however, that "every malevolent touch by a prison guard gives rise to a federal cause of action." *Griffen,* 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)); *see also Johnson,* 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

**\*12** Addressing the objective prong of the Eighth Amendment analysis, the fact that Cicio suffered minor though discernable injuries from the use of force distinguishes this case from others in which the lack of injury has justified summary judgment dismissing excessive force claims under the Eighth Amendment. *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (the fact that the plaintiff, who claims he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance since plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Cunningham v. Rodriguez,* No. 01 Civ. 1123, 2002 WL 31654960, at \*5 (S.D.N.Y. Nov. 22, 2002).[FN3] Under the circumstances now presented it would be inappropriate to find, as a matter of law, that objectively plaintiff's injuries were not sufficiently serious to rise to a constitutionally cognizable level.

FN3. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

Turning to the subjective element, the record is devoid of any evidence from which a reasonable factfinder could conclude that this element of plaintiff's excessive force claim against Manna has been met. Rather than representing an unprovoked use of force, by plaintiff's own version, the use of force against the plaintiff occurred during a period of turmoil when one or more disruptive inmates in a group of between sixteen and eighteen combined in a single holding cell became unruly and were being urged to lash out against corrections officers. Plaintiff alleges in his complaint and states in a sworn declaration that he was pushed into a corrections officer by Sergeant Sigona, pulled out of the holding pen by his hair, and thrown to the floor and kneed in the nose. During his deposition, however, plaintiff testified that five or six corrections officers rushed into the holding pen directing him to move to the back, which he could not do because there was no room. Plaintiff's Dep. Tr. at pp. 16 and 51. From there, plaintiff is not exactly sure what happened; he does not know whether he was pushed intentionally, only that "[he] was taken down ... [and] ... kneed in the nose." *Id.* at p. 16. Additionally, at the time of the incident, plaintiff did not know who the officers involved were, who "took him down", or who kneed him in the nose, and could not say whether there were also officers on the floor with him.[FN4] *Id.* at pp. 16-17, 52. Plaintiff further testified that after he fell to the floor, he was lifted and pulled out of the cage by his hair, and then he hit the floor again. *Id.* at p. 18. Again, plaintiff admittedly does not know how he ended up on the floor a second time, or whether he fell or the corrections officers fell on him, although he recalls that he was on the floor with a couple of corrections officers on top of him. *Id.*

FN4. Plaintiff later learned the names of the officers he identified in his complaint when he received a copy of the misbehavior report that was issued to him as a result of the incident. Plaintiff's Dep. Tr. at p. 17.

Under the circumstances presented, even accepting as true plaintiff's version of the events, when considering the four factors informing the subjective analysis no

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

reasonable factfinder could conclude that the force applied was malicious or sadistic for the purpose of causing plaintiff harm and not in a good faith effort to maintain discipline. Moreover, considering the extent of the force applied and the relatively minor injuries suffered even by plaintiff's account, coupled with the lack of evidence of malicious motives on the part of the corrections officers involved, I recommend a finding that the use of force was truly *de minimis* and did not abridge plaintiff's Eighth Amendment rights.[FN5]

> **FN5.** By plaintiff's own account, the injures suffered as a result of the incident were minor. *See* Plaintiff's Dep. Tr. at pp. 21-26.

2. *Failure to Intervene*

**\*13** A corrections worker who, though not participating, if present when an assault upon an inmate occurs may nonetheless bear responsibility for any resulting constitutional deprivation. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his or her presence by other officers. *See Mowry v. Noone,* No. 02-CV-6257 Fe, 2004 WL 2202645, at \*4 (W.D.N.Y. Sept.30, 2004); *see also Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted). In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration 1) possessed actual knowledge of the use by another corrections officer of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *See Curley,* 268 F.3d at 72; *Espada v. Schneider,* 522 F.Supp.2d 544, 555 (S.D.N.Y.2007). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *See, e.g., Schultz v. Amick,* 955

F.Supp. 1087, 1096 (N.D.Iowa 1997) (noting that "liability in a § 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams,* 474 U.S. 327, 335-36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)).

Based upon my finding that plaintiff's Eighth Amendment rights were not violated through the actions of defendant Manna, there can be no cognizable claim for liability on the part of defendants Sigona and Ruston for failure to intervene and protect plaintiff from the constitutional violation. *See Curley,* 268 F.3d at 72. I therefore recommend that plaintiff's claims against those defendants be dismissed as well.

C. *Medical Indifference*

The second component of plaintiff's complaint alleges that defendants Vega and Ryerson failed to provide him with needed medical treatment. Plaintiff's claim against Nurse Vega apparently stems from her failure, upon examining Cicio immediately following the March 7, 2006 incident, to arrange for him to see a doctor or to prescribe pain medication. The allegations against defendant Nurse Administrator Ryerson result from her alleged failure to process sick call slips submitted on several occasions following the incident by plaintiff. While plaintiff's summary judgment motion does not speak directly to this claim, he apparently seeks summary judgment on the issue of liability on this claim as well. For their part, defendants urge dismissal of plaintiff's medical indifference claims as a matter of law due to his failure to assert the existence of a serious medical need and additionally for lack of any evidence to satisfy the subjective element of the controlling test.

**\*14** Claims that prison officials have intentionally disregarded an inmate's medical needs are encompassed within the Eighth Amendment's prohibition of cruel and unusual punishment. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291 (1976). The Eighth Amendment's prohibition of cruel and unusual punishment proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.; see also Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer); Waldo,* 1998 WL 713809, at *2 (same).

1. *Serious Medical Need*

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, " 'sufficiently serious' ". *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). A medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). A serious medical need can also exist where " 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' "; since medical conditions vary in severity, a decision to leave a condition untreated

may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley,* 219 F.3d 132, 136-37 (2d Cir.2000) (quoting, *inter alia, Chance,* 143 F.3d at 702). Relevant factors informing this determination include whether the plaintiff suffers from an injury that a " 'reasonable doctor or patient would find important and worthy of comment or treatment' ", a condition that " 'significantly affects' " a prisoner's daily activities, or " 'the existence of chronic and substantial pain.' " *Chance,* 143 F.3d at 701 (citation omitted); *Lafave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr.3, 2002) (Sharpe, M.J.) (citation omitted).

*15 The record in this case fails to establish that plaintiff experienced a serious medical need of constitutional proportions as a result of the incident complained of. Plaintiff alleges that during the incident he suffered from a swollen and painful wrist as well as head pain. Complaint (Dkt. No. 1) Statement of Facts ¶ 6; *see also* Plaintiff's Dep. Tr. at pp. 21-22, 24-26. The record, including plaintiff's submission in support of his summary judgment motion and later opposition to defendants' motion, fails to provide further elaboration and contains no evidence of any extreme pain or degeneration. Instead, the record discloses only injuries of a transitory nature which are insufficient to establish existence of a serious medical need of constitutional proportions. *Ford v. Phillips,* No. 05 Civ. 6646(NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar.27, 2007) (finding that minor bruising, slight bleeding, and abrasions are no injuries that may produce death, degeneration or extreme pain and that no reasonable juror could find otherwise).

2. *Deliberate Indifference*

In addition to establishing the existence of a serious medical need, to prevail on an Eighth Amendment claim a plaintiff must also establish indifference to that condition on the part of one or more of the defendants. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer,* 511 U.S. at 837, 114

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

S.Ct. at 1979); *Waldo,* 1998 WL 713809, at *2 (same).

It should be noted that the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of which diagnostic techniques and treatments should be administered to address an inmate's medical condition is a "classic example of a matter for medical judgment", and, accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998) (citation omitted).

The record now before the court fails to substantiate plaintiff's claims of deliberate indifference. Even if plaintiff could establish the existence of a serious medical need, the record does not provide a basis for a reasonable factfinder to conclude that either defendant Vega or defendant Ryerson was deliberately indifferent to such a need. Plaintiff's claim against Nurse Vega is that on one occasion she failed to provide pain medication or to refer the plaintiff to a physician as a result of his injuries. Such an allegation of a single instance of delayed or denied medical care does not establish constitutional claim of medical deliberate indifference. *See Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir.2003).

*16 Turning to the allegations against defendant Ryerson, those stem from an alleged failure to process sick call slips on four or five occasions following the March 7, 2006 incident. Even assuming the existence of a serious medical condition prompting the need for medical care and defendant Ryerson's failure to process sick call slips over a brief period of time, these facts alone do not suffice to establish a deliberate indifference claim as against defendant Ryerson since there is no evidence suggesting that the minimal delay caused any significant adverse effect to plaintiff's health. *See Bumpus v. Canfield,* 495 F.Supp.2d 316, 324 (W.D.N.Y.2007). Accordingly, I recommend dismissal of plaintiff's deliberate indifference claim against defendant Ryerson on this alternative basis.

D. *Personal Involvement*

In their motion defendants assert that even if plaintiff could establish a cognizable excessive force or deliberate indifference claim, his cause of action against defendant Graham, the superintendent at Auburn, is legally insufficient based upon his lack of personal involvement in any conduct forming the basis for those claims.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). In order to prevail on a section 1983 cause of action against an individual a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Importantly, a supervisor like Superintendent Graham cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 2931 (2009); *see also*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)

(Cite as: 2010 WL 980272 (N.D.N.Y.))

*Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

**\*17** In my earlier report and recommendation, addressing a pre-answer dismissal motion filed by certain of the defendants including Superintendent Graham, I recommended against dismissing plaintiff's claim against defendant Graham, finding that the proof at trial could potentially establish that defendant Graham learned, through the appeal of plaintiff's grievance denial, that he was deprived of medical care at a point when he had an opportunity to cure that alleged constitutional deficiency. *See* Report and Recommendation dated February 10, 2009 (Dkt. No. 29) at pp. 17-21. The more fully developed record now before the court, however, firmly establishes that this is not the case. There is no indication that defendant Graham was aware of plaintiff's circumstances prior to plaintiff's appeal on April 12, 2006 of the IGRC's grievance denial. *See* Graham Decl. (Dkt. No. 38-7) ¶ 6. By that point, plaintiff had been transferred out of Auburn, and thus even if defendant Graham was placed on notice of a constitutional deprivation in the form of denial of adequate medical treatment, he was no longer in a position to cure that deficiency. *Id.* Accordingly, because the record fails to disclose any basis on which defendant Graham could be held liable for the constitutional violations alleged, there is an independent, alternate basis for dismissing plaintiff's claims against him.

*IV. SUMMARY AND RECOMMENDATION*

The record in this case discloses no basis on which a reasonable factfinder could conclude that plaintiff's constitutional right to be free from cruel and unusual punishment was violated by defendant Manna during the course of the March 7, 2006 incident and that defendants Sigona and Ruston failed to intervene to prevent such a violation. The record similarly discloses no basis on which a reasonable factfinder could conclude that plaintiff suffered injuries of constitutional significance as a result of that incident or that the defendants were subjectively indifferent to the medical needs presented by those injuries. Finally, the record discloses no basis on which a reasonable factfinder could assign liability on the part of defendant Graham, as superintendent of the Auburn Correctional Facility. Accordingly, it is hereby

respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 38) be GRANTED and that plaintiff's complaint be dismissed in its entirety, and that based upon that determination plaintiff's summary judgment motion (Dkt. No. 35) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2010.

Cicio v. Graham
Not Reported in F.Supp.2d, 2010 WL 980272 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Rogelio HEADLEY, Plaintiff,
v.
Brian FISHER, Superintendent of Sing Sing
Correctional Facility, Correction Officers Simpson, B.
Ellis, R. Bethea, T. Rizzuto, K. Harris, R. Reyes, K.
Barrett, Defendants.
No. 06 CV 6331(PAC)(KNF).

May 7, 2008.
*ORDER*

Honorable PAUL A. CROTTY, District Judge.
   **\*1** *Pro se* Plaintiff Rogelio Headley ("Headley"), an
inmate formerly housed at New York's Sing Sing
Correctional Facility ("Sing Sing"), seeks $5,000,000 in
damages against eight Defendants: Brian Fisher
("Fisher"), Superintendent of Sing Sing, and Correction
Officers Simpson ("Simpson"), B. Ellis ("Ellis"), R.
Bethea ("Bethea"), T. Rizzuto ("Rizzuto"), K. Harris
("Harris"), R. Reyes ("Reyes"), and K. Barrett ("Barrett"),
alleging multiple violations of his constitutional and
statutory civil rights under 42 U.S.C. § 1983, including his
Eighth and Fourteenth Amendment rights as well as
allegations of conspiracy and retaliation.
   Defendants filed motions to dismiss on February 5,
2007 and December 6, 2007, pursuant to Federal Rules of
Civil Procedure 12(b) (1) (failure to exhaust
administrative remedies) and 12(b)(6) (failure to state a
claim for which relief can be granted).[FN1] Headley opposed
both motions to dismiss the Complaint. Magistrate Judge
Kevin Nathaniel Fox issued his Report and
Recommendation ("R & R") on February 26, 2008, and
Headley filed timely objections to the R & R. Defendants
filed no objections.

   FN1. The February motion also sought dismissal
   pursuant to Federal Rule of Civil Procedure

12(b)(5), based on Headley's failure to serve
Defendants Simpson and Rizzuto. Headley
subsequently served those two Defendants,
thereby mooting the Rule 12(b)(5) motion.

**FACTUAL BACKGROUND**[FN2]

   FN2. Unless otherwise noted, the facts are drawn
   from Headley's Complaint dated August 21,
   2006 and from the R & R issued by Magistrate
   Judge Fox.

   During 2004 and 2005, while Headley was housed at
Sing Sing in Ossining, New York, he filed of a series of
grievance reports about the facility and against certain
Correction Officers ("C.O.s"), seven of whom were named
as Defendants in a Complaint filed on August 21, 2006.
The following are the chief factual points alleged in
Headley's Complaint:

   (1) The water at Sing Sing was black and undrinkable,
   exposing Headley to Hepatitis A. Additionally, the
   ventilation system was not functional and the exhaust
   fans were inoperable. Headley filed multiple grievances
   on this matter in 2004 and 2005, but the facility
   maintained that the water was clean.

   (2) On April 21, 2004, CO. Barrett prepared a
   misbehavior report charging Headley with leaving the
   mess hall without permission. At the relevant hearing,
   Headley explained that he had permission to leave the
   mess hall and that he had the requisite escort. The
   charges against him were subsequently dropped, but not
   before Headley served twelve days in "keep-lock"
   confinement.[FN3]

      FN3. As explained in the R & R, "keep-lock" is
      a disciplinary confinement "in which the prisoner
      is confined to his own cell and is deprived of
      almost all contact with the rest of the prison
      population and participation in the normal
      routine of the institution." *McKinnon v.*
      *Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *see*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

N.Y. Comp.Codes R. & Regs. tit.7, § 301.6.

(3) On April 29, 2004, CO. Simpson refused, without explanation, to let Headley use the bathhouse. After a nearby sergeant directed Headley to follow Simpson's orders, Headley claims that Simpson grabbed him, cursed at him, spit in his face, and slapped his face twice. Simpson then pushed Headley into his cell, where Headley received a blow to his lower hips and back when he hit the side of a locker located in the cell. Simpson threatened Headley and then placed him in keep-lock for sixteen days, where Headley did not receive meals, a shower, or recreation.

(4) On or about May 21, 2004, eighty-eight photographs were taken from Headley during a family visit, and C.O. Ellis and C.O. Bethea strip-searched him and made offensive comments. Ellis slapped Headley in the face and threatened that "something bad" was going to happen if he continued to submit written complaints about Simpson. (Complaint ("Compl.") at 5 [FN4].) For months following that incident, Ellis and Bethea harassed him-pushing and shoving him, searching his cell without producing a search slip, and taking items from his cell after stopping and searching him unjustifiably.

> FN4. The pagination in Headley's Complaint does not follow standard numerical order-it begins with pre-printed pages on which he lists the Defendants in the case and continues on with typed pages prepared by Headley on which numbers repeat and/or are missing. For the purposes of this order, the Complaint will be treated as fifteen pages in length, with page numbers beginning on the cover page (page 1) and continuing in numerical order to the signature page (page 15).

**\*2** (5) On or about June 21, 2004, on his way to speak with Correction Lieutenant Siger about the incident with Simpson, CO. Harris searched Headley roughly. Headley reported this incident to Siger (not named as a defendant in the Complaint) but no action was taken.

(6) On August 8, 2004, CO. Rizzuto issued a misbehavior report on Headley for failing to report to work. Based on this report, Headley was placed in keep-lock for six days. The report was ultimately dismissed following a disciplinary hearing where Headley called witnesses who testified that Headley was not in fact scheduled to work on that day.

(7) Finally, on December 14, 2004, CO. Reyes searched Headley and confiscated an envelope given to Headley by another inmate. Headley was placed in keep-lock and charged with smuggling and unauthorized exchange. Headley claims that a hearing officer convinced him to plead guilty to those charges.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Complaint purports to be a factual narrative that does not clearly identify constitutional or statutory rights or legitimate legal bases for challenging the Correction Officers' conduct. Magistrate Judge Fox carefully parsed the discursive allegations in Headley's *pro se* Complaint into legal claims, which he then carefully reviewed and analyzed before issuing the R & R. Magistrate Judge Fox's analysis is compelling and the Court adopts the structure of the R & R for the purposes of ruling on the motions to dismiss. [FN5]

> FN5. Magistrate Judge Fox made recommendations on several threshold issues as well as on claims against individual Defendants. Although the Eleventh Amendment would normally bar Headley's claims for money damages against the Correction Officers in their official capacities, Magistrate Judge Fox found that it does not apply here because the claims are made against state officials only in their individual capacities. (R & R at 5). Magistrate Judge Fox refused to convert the motions to dismiss into motions for summary judgment because Defendants failed to satisfy the requirements of Local Rule 56.2 by not providing notice to Headley, a *pro se* Plaintiff, describing the nature of a summary judgment motion. (R & R at 7-9). Additionally, Magistrate Judge Fox found that, when taken as true for the purposes of a motion to dismiss, Headley's allegations of exhaustion are sufficient. (R & R

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

at 14). Finally, Magistrate Judge Fox denied Defendants' motion to dismiss pursuant to the doctrine of qualified immunity because Defendants failed to meet their burden of demonstrating that their conduct did not violate either: (i) the plaintiff's clearly established rights; or (ii) constitutional rights of which a reasonable correction officer would have known. (R & R at 26); *see Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir.2007). Defendants did not object to the Magistrate Judge's R & R. The Court finds no clear error with respect to these recommendations and accordingly adopts them.

**I. Claims Against Facility and Individual Defendants**

Magistrate Judge Fox identified nine claims in Headley's Complaint and recommended the dismissal of all claims except the retaliation claims against Simpson and Ellis and the Fourteenth Amendment Due Process claim against Simpson. (R & R 26-27).

1. *Water and Ventilation Claim*

The Magistrate Judge recommended dismissal of the water and ventilation claim because Headley failed to allege any facts from which it could be inferred that he suffered actual injury from the alleged contaminated water and inoperable ventilation system. Applying 42 U.S.C. § 1997e, which states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," Magistrate Judge Fox found that Headley failed to state a physical injury and recommended dismissal of this claim. (R & R 14-15).

2. *Claims Against Fisher*

In his Complaint, Headley makes only one mention of Superintendent Brian Fisher: "I brought [the information regarding prison conditions and mistreatment by the Correction Officers] to the Superintendent Fisher...." (Compl. at 9). Magistrate Judge Fox recommended dismissing any and all claims as to Fisher because Headley failed to allege any personal involvement of Fisher in the alleged constitutional violations, a required element of a § 1983 claim against a supervisor. (R & R at 16); *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

3. *Eighth Amendment Claim Against Simpson*

**\*3** Headley claims a violation of his Eighth Amendment rights in Simpson's use of excessive force. Magistrate Judge Fox recommended dismissal of this claim for Headley's failure to allege that Simpson acted with the requisite "wantonness" under the circumstances or that the alleged misconduct involved "unnecessary and wanton infliction of pain" and the use of more than *de minimis* force. (R & R at 18); *see Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir.2000).

4. *Conspiracy Claim*

Headley makes vague assertions in his Complaint regarding a conspiracy among the Correction Officers to harass and abuse him. Magistrate Judge Fox recommended dismissal of the conspiracy claim because Headley failed to allege any facts from which it could be inferred that two or more defendants agreed to act in concert to inflict an unconstitutional injury upon him. (R & R at 21); *see Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999).

5. *Misbehavior Report Claim Against Rizzuto*

Headley claims that C.O. Rizzuto filed a false misbehavior report against him on or around August 8, 2004. Magistrate Judge Fox recommended that the Court dismiss this claim against Rizzuto because "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." (R & R at 21) (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997)).

6. *Eighth Amendment Claims Against Ellis, Bethea, and Harris*

Headley claims that: (a) Ellis slapped him after a strip search on May 21, 2004; (b) Bethea pushed and shoved him during searches; and (c) Harris conducted a rough search of him on June 21, 2004. Magistrate Judge Fox recommended dismissing these claims of Eighth Amendment violations because Headley's claims do not give rise to a claim of excessive force. (R & R at 24). Magistrate Judge Fox concluded that Headley failed to allege facts from which it could be inferred that the conduct of Ellis, Bethea, and Harris was characterized by "wantonness" or that he suffered an "unnecessary or wanton infliction of pain", involving more than a *de*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

*minimis* use of force. (R & R at 24); *see Sims,* 230 F.3d at 21.

7. *Due Process and Retaliation Claims Against Reyes and Barrett*

Headley claims that Reyes and Barrett issued misbehavior reports against him when he had done nothing wrong. Magistrate Judge Fox recommended that the Court dismiss the claims against Reyes and Barrett because Headley has no constitutional right to be free from a false misbehavior report and because Headley failed to allege any facts from which it can be inferred that the false misbehavior report was issued in retaliation for Headley's exercise of any protected right. (R & R at 24).

8. *Fourteenth Amendment Claim Against Simpson*

After the physical altercation in Headley's cell, C.O. Simpson ordered Headley into keep-lock confinement, where Headley claims he remained for sixteen days without meals, a shower, or recreation. Magistrate Judge Fox recommended that Simpson's motion to dismiss this claim be denied because Headley's Due Process claim against Simpson is plausible on its face. Magistrate Judge Fox reasoned that since New York provides procedural due process for each type of segregated confinement, which includes an opportunity to be heard prior to confinement, and because Simpson allegedly locked Headley up without affording him a hearing, Headley's Fourteenth Amendment claim against Simpson survives a motion to dismiss. (R & R at 20).

9. *Retaliation Claim*

**\*4** Headley makes general allegations of retaliation involving all of the named Defendants. Magistrate Judge Fox recommended that the Court grant the motion to dismiss for all Defendants except Simpson and Ellis. The Magistrate Judge found that, regarding the retaliation claim against Simpson, Headley sufficiently alleged a causal connection between a constitutionally protected act (filing a grievance against Simpson) and the retaliation (Simpson putting Headley in keep-lock for sixteen days). (R & R at 23). As for the claim against Ellis, Magistrate Judge Fox found that Headley alleged a causal connection between a constitutionally protected act (filing a grievance against Simpson) and the retaliation (Ellis slapping Headley in the face and stating this is what Headley

"get[s] for writing up Simpson."). (R & R at 23). As to all other Defendants, Magistrate Judge Fox found that Headley failed to allege facts from which it could be inferred that their actions were taken in retaliation for a constitutionally protected activity or that Headley suffered any harm as a result of the action. (R & R at 23).

In sum, the Magistrate Judge recommended that the February 5, 2007 motion to dismiss be denied with respect to the retaliation claim against Ellis, and granted with respect to all other claims. Additionally, Magistrate Judge Fox recommended that the December 6, 2007 motion to dismiss be denied with respect to both the Fourteenth Amendment Due Process claim and the retaliation claim against Simpson, and granted with respect to all other claims. (R & R at 26-27).

**APPLICABLE LAW**

In evaluating the Report and Recommendation of a Magistrate Judge, the District Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the Magistrate Judge's recommendations, the court is required to review the contested portions *de novo.* *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). For uncontested portions of the R & R, the court need only review the face of the record for clear error. *See Wilds v. United Parcel Serv.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003).

**HEADLEY'S OBJECTIONS**

On March 12, 2008, Headley filed objections to the dismissal of: (1) the Eighth Amendment claim against Simpson; (2) the Eighth Amendment claim against Ellis; (3) the conspiracy claim; (4) six of the named Defendants from the suit; and (5) the claims against Fisher. The Court reviews the recommendations of Magistrate Judge Fox on these claims *de novo.*

a. **Objections to the Eighth Amendment Claims Against Simpson and Ellis**

Headley's Eighth Amendment claims against Simpson and Ellis do not give rise to a claim of excessive force. His claims that Simpson grabbed his shoulder, cursed in his face, slapped him twice and pushed him in his cell do not constitute "unnecessary and wanton infliction of pain."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

*Sims,* 230 F.3d at 21. Headley's allegations do not demonstrate that Simpson acted maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline, after Headley was directed by the sergeant 'to do as [Simpson] said to do.' *See Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 1085 (1986) ("the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (internal citations and quotation marks omitted)). Headley's excessive force claim against Simpson cannot be sustained; Simpson's motion to dismiss Headley's Eighth Amendment claim is granted.

*5 Similarly, Headley failed to allege any facts from which it could be inferred that Ellis's conduct was characterized by wantonness, or that Headley suffered any unnecessary and wanton infliction of pain, involving more than a *de minimis* use of force. *See Sims,* 230 F.3d at 21. Headley objects, claiming that Ellis hit him without justifiable reason, but the lack of justification does not elevate a single slap to the level of excessive force under the Eighth Amendment. Ellis's motion to dismiss the Eighth Amendment claim against him is granted.

**b. Objection to the Dismissal of the Conspiracy Claim**

Headley objects to the recommended dismissal of the conspiracy claim and urges the Court to draw an inference of conspiracy from the actions of the officers. He argues that "[i]t is convincingly clear that the fact that I was not fed for 16 days shows the elements of a prearrange complicity [sic]." (Plaintiff's Objections ("Pl.Obj.") at ¶ 5). The paucity of facts provided by Headley does not satisfy the pleading requirements for a § 1983 conspiracy claim. *See Pangburn,* 200 F.3d at 72 ("To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."). As to this objection, the recommendation of Magistrate Judge Fox is adopted and the motion to dismiss the conspiracy claim is granted.

**c. Objection to the Dismissal of Six of the Defendants**[FN6]

FN6. Headley objects to the "dismiss[al] of six (6) defendants from the suit," (Pl. Obj. at ¶ 6), but does not specify which Defendants he is referring to nor does he actually name six Defendants in the objection. Magistrate Judge Fox recommended the dismissal of all claims except two against Simpson and one against Ellis, effectively dismissing Fisher, Bethea, Harris, Barrett, Rizzuto, and Reyes from the case. The Court assumes that Headley refers to those six Defendants in this objection. Further, Headley objects to the dismissal of claims against Brian Fisher in a separate objection, so claims against Fisher will be analyzed in a separate section here as well, even though Fisher is presumed to be one of the six Defendants Headley refers to in the preceding objection.

Headley fails to adequately allege constitutional or statutory claims against Bethea, Rizzuto, Harris, Reyes and Barrett, making their dismissal from the suit proper. Nothing in the Complaint approaches what is necessary to make out an Eighth Amendment claim against any of these Defendants, and Headley's vague and unsubstantiated claims of conspiracy and retaliation likewise fail to satisfy pleading requirements. *See Ostrer v. Aronwald,* 567 F .2d 551, 553 (2d Cir.1977) ("[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed."). The Court adopts the R & R on the claims against these Defendants and dismisses them from the suit.

**d. Objection to the Dismissal of Claims Against Brian Fisher**

The only allegation regarding Fisher that Headley makes in his Complaint is that he sent letters to the attention of the superintendent regarding the alleged mistreatment at Sing Sing. The mere writing of letters to a supervisor, however, is insufficient personal involvement to state a § 1983 claim. *See Hernandez v. Goord,* 312 F.Supp.2d 537, 547 (S.D.N.Y.2004) (plaintiff had no claim where he merely asserted that supervisor received letters of complaint). This Court adopts the recommendation of Magistrate Judge Fox and dismisses all claims against Brian Fisher.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

### CONCLUSION

**\*6** The R & R issued by Magistrate Judge Fox is adopted in full. Defendants' motions to dismiss the Fourteenth Amendment and retaliation claims against Simpson and the retaliation claim against Ellis are DENIED. The motions to dismiss all other claims as to all other Defendants are GRANTED. The Clerk of the Court is directed to close out this motion. The order of reference to Magistrate Judge Fox shall continue for further dispositive motions.

SO ORDERED.

### REPORT AND RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

### INTRODUCTION

Plaintiff Rogelio Headley ("Headley"), proceeding *pro se*, brings this action, pursuant to 42 U.S.C. § 1983, for monetary damages against defendants Brian Fisher [FN1] ("Fisher"), Superintendent of Sing Sing Correctional Facility, and Correction Officers Simpson ("Simpson"), B. Ellis ("Ellis"), R. Bethea ("Bethea"), T. Rizzuto ("Rizzuto"), K. Harris ("Harris"), R. Reyes ("Reyes") and K. Barrett ("Barrett"). On February 5, 2007, the defendants made a motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), Fed.R.Civ.P. 12(b)(5) and Fed.R.Civ.P. 12(b)(6), because the plaintiff failed to: (1) serve Simpson and Rizzuto; (2) exhaust his administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e; and (3) state a claim for which relief may granted under 42 U.S.C. §§ 1983 and 1985. Additionally, the defendants contend, the plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment of the United States Constitution. Subsequent to the filing of the defendants' motion to dismiss, the plaintiff served Simpson and Rizzuto, mooting the defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(5).

> FN1. The defendant indicated that the correct spelling of his last name is Fischer. However, the Court will refer to him using the spelling of his name appearing in the complaint.

On December 6, 2007, Simpson and Rizzuto made a motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), asserting that: (a) the plaintiff failed to exhaust his administrative remedies; (b) the Eleventh Amendment to the United States Constitution bars the plaintiff's claims against them in their official capacities; (c) the doctrine of qualified immunity shields them against the plaintiff's claims; and (d) the complaint fails to state a federal claim upon which relief can be granted. The plaintiff opposed both motions to dismiss the complaint. The motions are addressed below.

### BACKGROUND

In his complaint, Headley alleges the following:

In 2004 and 2005, when he was an inmate at the Sing Sing Correctional Facility in Ossining, New York, the facility's water was black or dark-brown and undrinkable, causing him to contract Hepatitis A. He filed a grievance about that matter; but the facility maintained the water was clean. Additionally, according to Headley, the ventilation system in the facility was not functional, and the exhaust fans were inoperable.

**\*7** On April 21, 2004, Barrett prepared a misbehavior report, charging Headley with leaving the mess hall without permission. At the hearing, held in connection with that report, Headley explained he did not leave the mess hall without permission because a correction officer escorted him from the mess hall to the package room. Although he was sentenced, unjustifiably, to 12 days of keep-lock [FN2] confinement, in connection with that misbehavior report, all the charges against him were dropped by the hearing officer.

> FN2. Keep-lock is a disciplinary confinement "in which the prisoner is confined to his own cell and is deprived of almost all contact with the rest of the prison population and participation in the normal routine of the institution." *McKinnon v. Patterson, 568 F.2d 930, 936 (2d Cir.1977)*, *cert. denied* 434 U.S. 1087, 98 S.Ct. 1282 (1978); *see* New York Compilation of Codes, Rules and Regulations, Title 7 ("7 NYCCRR") §

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

301.6.

On April 29, 2004, Simpson refused to allow Headley to use the bathhouse without explanation. A sergeant, who was in the vicinity, heard the commotion, approached and directed Headley to follow Simpson's order. At that time, Simpson became aggressive, grabbed Headley by the shoulder, cursed at him, spit in his face and slapped his face twice. Simpson spoke disrespectfully to Headley, while escorting him to his cell. Once they reached the cell, Simpson pushed Headley in, causing him to receive a blow to his "lower hips" and "back" by hitting the side of a locker located inside the cell. Simpson also threatened that he would deprive Headley of "everything" and told him he was "on the burn for as long as [Simpson is] in the facility." Additionally, Simpson told Headley, if he is "still alive by the time he comes back from vacation," he will let him out. Without receiving a misbehavior report and as retaliation, Headley was placed in keep-lock confinement for 16 days, where he did not receive meals, a shower or recreation. Although Headley asked repeatedly for a sick call slip, the officers refused to notify the sergeant about his requests.

On or about May 21, 2004, 88 photographs were taken from Headley by a correction officer, during his family's visit, but they were not returned to him. After the photographs were seized from Headley, he was strip-searched by Ellis and Bethea. During the strip-search, Ellis made offensive comments about his private parts and she and Bethea laughed at him. When Headley dressed, after the strip-search, Ellis slapped his face and threatened that "something bad" would happen to Headley if he continues to submit written complaints regarding Simpson. Thereafter, Headley filed a grievance report about that incident.

In the following months, Bethea and Ellis continued to harass the plaintiff by stopping and searching him numerous times, without justification. More specifically, Bethea pushed and shoved Headley in order to provoke him, and searched his cell without giving him a search slip. Ellis also stopped and searched Headley unjustifiably, and took items from his packages when she was on duty, during his family's visits.

On or about June 21, 2004, Correction Lieutenant Siger summoned Headley for an interview concerning the April 29, 2004 incident involving Simpson. When Headley reached the disciplinary office to attend the interview, Harris harassed him by searching him roughly. Harris, claiming one of Headley's personal sheets had a drawing on it, confiscated all his sheets, without giving him a receipt. Headley reported this incident to Lieutenant Siger, but no action was taken against Harris.

*8 On July 22, 2004, Correction Officer Montalvo stopped Headley, confiscated a bag from him and threw all his food on the floor. On August 7, 2004, during a visit by his family, Correction Officer Horton refused to give the plaintiff a letter, which identified the content of a package Headley had received from his family that day. On August 8, 2004, Rizzuto issued a misbehavior report, charging Headley with failing to report to work, on a day he was not scheduled to work. Consequently, the plaintiff was placed in keep-lock confinement for six days. As a result of a subsequent disciplinary hearing, that misbehavior report was dismissed. A few days after he was released from a keep-lock confinement, Headley observed Rizzuto and Simpson, in the mess hall, speaking about him and looking at him.

On November 11, 2004, Headley received a letter informing him that he was no longer a mess hall worker. He sent a letter to the Grievance Office and the Superintendent inquiring about the reason his job was terminated. On December 4, 2004, he was reinstated to the mess hall worker position, but Barrett and Correction Sergeant Coulthrust continued to harass him.

On December 14, 2004, after Headley served lunch, Reyes searched him and confiscated an envelope Headley received from an inmate. The plaintiff was placed in keep-lock confinement and charged with smuggling and unauthorized exchange. Headley was convinced by a hearing officer to plead guilty to the charges.

**DISCUSSION**

*Fed.R.Civ.P. 12(b)(1)*
Absent waiver by the State or valid congressional override, the Eleventh Amendment to the United States

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

Constitution bars a damages action against state officials in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107 (1985). The defendants contend the Eleventh Amendment bars the plaintiff's claims for damages against them in their official capacities; thus, the court lacks subject matter jurisdiction over those of the plaintiff's claims. The plaintiff does not dispute the defendants' contention, but maintains he is suing the defendants in their individual capacities. Therefore, the Court finds that the plaintiff's claims for damages against the defendants, in their official capacities, are barred by the Eleventh Amendment.

*Fed.R.Civ.P. 12(b)(6)*

A court may dismiss an action, pursuant to Fed.R.Civ.P. 12(b) (6), for failure to state a claim upon which relief may be granted, if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Where, as here, the plaintiff is proceeding *pro se,* the court must construe his complaint liberally and "interpret [it] to raise the strongest arguments it suggests." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007).

**\*9** When considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Iqbal v. Hasty,* 490 F.3d 143, 152 (2d Cir.2007). Additionally, when assessing a motion pursuant to Fed.R.Civ.P. 12(b)(6), "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters [about] which judicial notice may be taken," as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Rothman v. Gregor,* 220 F.3d 81, 88-89 (2d Cir.2000) (internal citation omitted).

Fed.R.Civ.P. 12(d) provides:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded

by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The determination to convert a motion to dismiss, under Fed.R.Civ.P. 12(b)(6), into a motion for summary judgment, under Fed.R.Civ.P. 56, is within the court's discretion, "and in exercising its discretion the court looks to the substance of the motion." *Ansonia Tenants' Coal., Inc. v. Ansonia Associates,* 163 F.R.D. 468, 470 (S.D.N.Y.1995).

*February 5, 2007 Motion to Dismiss*

The February 5, 2007 motion to dismiss the complaint, made by Fisher, Ellis, Bethea, Harris, Reyes and Barrett, contains the following exhibits: (a) the plaintiffs December 2004 disciplinary package respecting charges contained in a misbehavior report, issued by Reyes on December 14, 2004; (b) the plaintiff's grievances, dated May 20, May 27, June 29 and September 14, 2004, and the listing of grievances appealed by the plaintiff to the Central Office Review Committee for the Inmate Grievance Program, maintained by the New York State Department of Correctional Services. However, despite including matters outside the pleadings: numerous exhibits pertaining to the plaintiff's disciplinary proceedings and grievances, the February 5, 2007 motion to dismiss did not: (i) include a motion for summary judgment, pursuant to Fed.R.Civ.P. 56; and (ii) provide the notice to the *pro se* plaintiff describing the nature of a summary judgment motion, as required by Local Civil Rule 56.2 of this court. [FN3] Therefore, the Court will not convert the February 5, 2007 motion to dismiss to a motion for summary judgment.

> FN3. Local Civil Rule 56.2 states, in pertinent part: "Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment' in the form indicated below."

In analyzing the February 5, 2007 motion to dismiss,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

the Court has considered the following items, which are appended to a declaration of Jennifer L. Johnson, the defendants': (1) Exhibit A, consisting of the plaintiff's December 2004 disciplinary package, because, when he made factual assertions concerning the December 14, 2004 incident in his complaint, the plaintiff incorporated by reference and relied on the misbehavior report charges filed by Reyes, on December 14, 2004, and the disposition of the related disciplinary proceeding; (2) Exhibit B, No. 1, a document entitled "Inmate Grievance Complaint," dated May 22, 2004, because the plaintiff asserted in the complaint that he filed a grievance report in connection with the incident that occurred on May 21, 2004; (3) Exhibit B, No.2, a document entitled "Inmate Grievance Complaint," dated June 21, 2004, because the plaintiff indicated in his complaint that he "grieved all of [his] complaint[s] to the Commissioner of Corrections;" (4) Exhibit B, No. 4, a document entitled "Inmate Grievance Complaint," dated September 10, 2005; and (5) Exhibit B, No. 4, a document entitled "Sing Sing Correctional Facility Inmate Grievance Program," dated September 22, 2005, because the plaintiff asserted in the complaint that he filed grievances in 2005 concerning the safety of the water in the facility, and that the facility answered his concerns. All other documents, submitted by the defendants as part of Exhibit B, were disregarded by the Court because they pertain to the facts neither asserted nor relied upon, by the plaintiff, in the complaint.

*December 6, 2007 Motion to Dismiss*

**\*10** The December 6, 2007 motion to dismiss, made by Simpson and Rizzuto, contains the following: (i) a notice of motion to dismiss; (ii) a declaration by Inna Reznik, with Exhibits A-C; (iii) a declaration by Karen Bellamy, with Exhibit A; (iv) a "Notice to *pro se* litigants opposing motion to dismiss or motion for summary judgment"; and (v) a memorandum of law. Local Civil Rule 56 .2 requires a defendant to provide notice to a *pro se* litigant opposing a motion for summary judgment informing that "[t]he defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure." The defendants misnamed the notice to *pro se* litigant, required by Local Civil Rule 56.2, as a "Notice to *pro se* litigants opposing motion to dismiss." In that notice, the defendants state: "The

defendants in this case have moved to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure or, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure."

However, in their notice of motion, the defendants indicate only that they move for "an order pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure." Neither the defendants' notice of motion nor their memoranda of law provide notice to the plaintiff that their motion is one for summary judgment, pursuant to Fed.R.Civ.P. 56. In fact, the defendants contend, in their memorandum of law, that "courts routinely consider extrinsic material on a motion to dismiss for nonexhaustion, without first requiring conversion pursuant to Rule 12(b) or (c)." Moreover, the defendants maintain, "[b]ecause the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to materials outside of the complaint" when determining, on a Fed.R.Civ.P. 12(b)(6) motion, whether the plaintiff exhausted administrative remedies. Accordingly, the Court will not convert the defendants' December 6, 2007 motion to dismiss to a motion for summary judgment.

In analyzing the December 6, 2007 motion to dismiss, the Court did not consider the defendants' Exhibit A, appended to the declaration of Karen Bellamy, which is a listing of the plaintiff's appeals filed between October 28, 1992, and November 7, 2007, because it contains a matter outside of the complaint, which was not included by reference or relied upon by the plaintiff in his pleadings. However, the Court did consider the following material, appended to the declaration of Karen Bellamy, the defendants': (a) Exhibit A, a document entitled "I.G.R.C.," dated September 15, 2004, the plaintiff's handwritten grievance concerning the incident that occurred on August 8, 2004; and (b) Exhibit B, a document entitled "Grievance Form," dated August 10, 2004, the plaintiff's handwritten grievance concerning the incident that occurred on August 7, 2004. The Court did not consider other documents, contained in the defendants' Exhibits A and B, which are appended to the declaration of Inna Reznik, because they pertain to facts neither asserted nor relied upon by the plaintiff in the complaint.

*Exhaustion of Administrative Remedies*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

**\*11** PLRA provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[F]ailure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007). In order to exhaust administrative remedies properly, an inmate needs to do no more than comply with prison grievance procedures and "[t]he level of detail necessary in a grievance to comply with the grievance procedures" is determined by the prison grievance process and varies from claim to claim. *Id.* at 922-23. "As a general matter, if a complaint contains both [exhausted] and [unexhausted] claims, the court proceeds with the [exhausted claims] and leaves [the unexhausted claims]." *Id.* at 924.

In this judicial circuit, a three-part inquiry is used to determine whether an inmate exhausted available administrative remedies: (1) whether administrative remedies were available to the inmate; (2) whether the defendants forfeited the affirmative defense of non-exhaustion by failing to raise it; and (3) whether the defendants' own actions, inhibiting the inmate's exhaustion of remedies, may estop the defendants from raising non-exhaustion as a defense. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004). If the court finds that administrative remedies were available to the prisoner and not pursued and further, that the defendants are not estopped and have not forfeited their non-exhaustion defense, then it "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Id.* (citation omitted).

The defendants contend the plaintiff "did not fully grieve all of the allegations that he asserts against Officers Bethea, Ellis, Harris, Reyes and Barrett," because: (i) "complaints to the Commissioner of Corrections do not equate with the exhaustion of administrative remedies;" and (ii) "any letter plaintiff may have written to the Superintendent also does not constitute the exhaustion of his administrative remedies." The defendants concede that

the following claims are exhausted: (a) May 21, 2004 allegations against Ellis and Bethea regarding a strip search; (b) June 21, 2004 rough search allegations against Harris; (c) allegations that Barrett singled out Headley for searches and issued an erroneous misbehavior report against him; and (d) 2005 allegations concerning the state of the water and ventilation system at Sing Sing. Furthermore, the defendants contend, although the plaintiff filed a grievance against Rizzuto for being placed in keep-lock confinement without receiving compensation, after Rizzuto issued an August 2004 misbehavior report, his grievance did not complain about "Rizzuto coming to plaintiff's cell, accusing him of skipping work, writing up a misbehavior report, and placing him in keeplock, as alleged in the Complaint."

**\*12** The plaintiff contends he appealed fully the grievances against Simpson, Ellis, Bethea, Harris, Reyes and Barrett, but did not file a grievance against Fisher, because "as chief executive officer he is responsible for the actions of his subordinates." Moreover, the plaintiff asserts, he exhausted the matters related to the incident preceding the strip search by Ellis and Bethea, because he brought them to the attention of Fisher and Commissioner Goord. The plaintiff maintains, he exhausted his claim against Rizzuto properly because he filed a grievance and appealed the decision related to that grievance. According to the plaintiff, if his "complaint sought back pay why would [he] keep appealing when the facility agreed to give it to [him]." The plaintiff contends, his appeal was based on Rizzuto's filing of "false disciplinary charges in retaliation of [his] writing up [ ] Simpson and other officers." The plaintiff asserts that, under the circumstances, it "would not have been wise for [him] to file another grievance after hearing Simpson and Rizzuto talk of retaliation in the Mess hall."

*New York's Inmate Grievance Program*

The New York Department of Correctional Services defines grievance as:

[A] complaint, filed with an [Inmate Grievance Program] IGP clerk, about the substance application of any written or unwritten policy, regulation, procedure or rule of the Department of Correctional Services, or any of its program units, or the lack of a policy, regulation,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

procedure or rule. A letter addressed to facility or central office is not a grievance.

7 NYCCRR § 701.2.

The Inmate Grievance Program Procedure ("IGPP") requires an inmate to file the complaint within 21 calendar days of an alleged occurrence, either on an inmate grievance complaint form or on plain paper. 7 NYCCRR § 701.5(a)(1). IGPP informs that "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e. specific persons/areas contacted and responses received." 7 NYCCRR § 701.5(a)(2).

Once an inmate files a complaint, IGPP mandates that the Inmate Grievance Resolution Committee ("IGRC"): (1) resolve a grievance informally, within 16 calendar days after the filing of a grievance; and (2) if no resolution is reached, conduct a hearing to answer the grievance or make a recommendation to the superintendent. 7 NYCCRR § 701.5(b). IGPP also outlines the procedures to be followed if the grievant or any direct party wishes to appeal to the superintendent, or to the central office review committee ("CORC"). See 7 NYCCRR §§ 701.5(c) and (d). "If no appeal is filed upon denial by the IGRC, it will be presumed that the grievant or direct party accepts the committee's recommendation. An exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part." 7 NYCCRR § 701.5(c)(1). Additionally, IGPP provides for expedited review of grievances alleging: (i) violations of department policy regarding strip searches or strip frisks; and (ii) employee harassment. See 7 NYCCRR §§ 701.10 and 701.8.

*13 The plaintiff does not contest that New York administrative remedies were available to him. He contends he exhausted them properly, except for the claim concerning the retaliation conversation Simpson and Rizutto had in the mess hall, because administrative remedies were unavailable for that conduct. The Court finds that, taken as true, the alleged conversation between Simpson and Rizzuto was reasonably perceived as a threat of retaliation by the plaintiff; thus constituting a "special circumstance" that justifies his failure to exhaust that claim.

The plaintiff indicates, with respect to the incident preceding his strip search, he brought the matter to the attention of Superintendent Fisher and Commissioner Goord. While the defendants are correct that a letter to Superintendent Fisher and Commissioner Goord does not satisfy the IGP grievance requirements, the plaintiff also described the occurrence in his May 22, 2004 grievance, thus satisfying the IGP content requirement.

When taken as true, for the purpose of a motion to dismiss, the plaintiff's allegations that he exhausted grievances in connection with the claims alleged in his complaint, without more, are sufficient to demonstrate he complied with the IGP's requirements. Therefore, for the purpose of the motion to dismiss, the Court finds that the plaintiff's claims are exhausted.

*Deficient Water and Ventilation Claims*

The defendants contend the plaintiff's allegations that: (a) prisoners generally catch cold easily in a crowded prison; and (b) he was once exposed to the Hepatitis A virus, without any claim of a current Hepatitis A condition, suggest that the plaintiff failed to assert an actual injury caused by the alleged water or facility ventilation system deficiencies.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e. The plaintiff alleges, in connection with the deficiencies in the facility's water and ventilation systems, that he "was subjected to being in a housing unit without proper ventilation" and that "he drank a lot of water that was contaminated." However, the plaintiff fails to assert any facts from which it could be inferred that he suffered an injury from the allegedly contaminated water and improper ventilation. The plaintiff's allegations, that in June 2006, a physician told him that he was exposed to Hepatitis A in 2004 and that Hepatitis A "comes from drinking dirty water," are not sufficient to state that he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

suffered an injury, when the plaintiff also alleges that, in June 2006, the same physician assured him "the virus left [his] system" and no other symptom is alleged to have been experienced by the plaintiff as a result of the water he consumed and ventilation system deficiencies he endured. Therefore, the plaintiff failed to state a claim based on the alleged deficiencies in the water and ventilation systems.

*Claims Against Fisher*

**\*14** The doctrine of respondeat superior may not be used in a section 1983 action to impose liability on a supervisory official for a constitutional violation(s) committed by his subordinates. *See Al-* *Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). To establish a section 1983 claim, a plaintiff must show a supervisory defendant's personal involvement in committing the violation by evidence of his: (a) direct participation in the alleged constitutional violation; (b) failure to remedy the wrong, after being informed of it through a report or appeal; (c) creation of an unconstitutional policy, based on which the violation occurred; (d) grossly negligent supervision of the wrongdoers; or (e) deliberate indifference to the rights of the plaintiff manifested by a failure to act on information indicating that constitutional violations were occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Fisher contends the plaintiffs "bare allegation that he had somehow 'brought [his claims]' " to his attention is not sufficient to demonstrate Fisher's personal involvement in any alleged constitutional violations. Moreover, according to Fisher, the plaintiff failed to allege that Fisher had a direct and personal responsibility for the purportedly unlawful conduct of his subordinates.

The plaintiff asserts Fisher failed to remedy the unlawful conduct after he was informed about it numerous times by the plaintiff, both through the appeals of his grievances and "a detailed letter explaining how the officers were retaliating against [him]." According to the plaintiff, Fisher "exhibited 'deliberate indifference' to the rights of inmates by failing to act on information documented and brought to [his] attention indicating that unconstitutional acts were occurring."

The plaintiff does not allege that Fisher participated directly in any of the alleged constitutional violations or that he created an unconstitutional policy, based on which the violations occurred. The only allegation the plaintiff makes in his complaint against Fisher: "I brought this to the Superintendent Fisher," is not adequate to demonstrate Fisher's personal involvement in the alleged wrongdoing. Although the plaintiff, in his opposition to the instant motion, asserted that "his letters should have placed Mr. Fisher on notice of the conduct of his officers," he made no factual allegations in his complaint from which it could be inferred that Fisher actually received his letters or was aware of them. Moreover, the plaintiff failed to assert any facts in his complaint from which it could be inferred that Fisher acted with deliberate indifference to the alleged violations or that he was grossly negligent in supervising other defendants. The plaintiff's assertion that he appealed fully the decisions on his grievances demonstrates that Fisher did not act with a deliberate indifference, but, rather, in accordance with the IGP's procedure. Therefore, the plaintiff's claims against Fisher cannot be maintained.

*Claims Against Simpson*

**\*15** Simpson contends the plaintiff's allegations, that he: (i) slapped Headley twice and pushed Headley into his cell; (ii) "spoke to him disrespectfully and cursed in his face so loud that Plaintiff felt spit on his face;" and (iii) "engaged in offensive comments and name calling" do not give rise to a claim of excessive force. Moreover, although the plaintiff alleged that Simpson stated he would deprive Headley of everything and have him "on the burn" for as long as he was in the facility, the plaintiff failed to state a Fourteenth Amendment Due Process claim against Simpson because Headley made no allegations that it was Simpson who kept the plaintiff in keep-lock confinement for 16 days or denied Headley his due process rights.

The plaintiff contends, in his opposition to the defendants' motion, Simpson acted "wantonly" and "with sadistic and malicious intent to cause harm" when he slapped him twice on the face, pushed him with force and watched him hit his "lower hips" and "back" and fall. As a result of Simpson's conduct and his threats, the plaintiff asserts, he was placed in keep-lock confinement where he was deprived of meals, a shower and recreation, in violation of his Eighth Amendment right to be free from

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

cruel and unusual punishment. Moreover, the plaintiff asserts, Simpson's failure to issue a misbehavior report deprived him of a hearing, a violation of due process.

*Eighth Amendment Claim Against Simpson*

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments,' U.S. Const. amend. VIII, including the 'unnecessary and wanton infliction of pain.' " *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925 [1976] ). To establish a claim, under the Eighth Amendment, for excessive use of force, a plaintiff must demonstrate first that the defendant acted with the necessary level of culpability, shown by actions characterized by "wantonness" under the circumstances of the challenged conduct. *Id.* at 21. Whether conduct is "wanton" depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 999 (1992). Additionally, the plaintiff also has the burden of showing that the alleged misconduct involved "unnecessary and wanton infliction of pain," and the use of more than *de minimis* force. *See Sims,* 230 F.3d at 21-22. Not every unnecessary push or shove violates an inmate's constitutional rights, and an allegation of a *de minimus* use of force "will rarely suffice to state a constitutional claim." *Id.* at 22.

The plaintiff alleges Simpson grabbed his shoulder, started cursing in his face, slapped his face twice and pushed him in his cell, causing Headley to "hit [his] lower hips on the side of the locker along with [his] back." Notwithstanding the petitioner's lack of clarity with respect to the exact body part with which he came into contact with his cell locker, the plaintiff failed to present facts from which it could be inferred that he suffered any pain or injury as a result of his hitting the locker. The plaintiff also failed to assert any facts that would give rise to an inference that Simpson used excessive force when he "pushed" the plaintiff into his cell. Although the plaintiff alleged that he "received a serious blow to my lower back and hips," such an allegation does not approach what is required to set forth an Eighth Amendment claim that excessive force was used. The plaintiff's allegations do not demonstrate that Simpson acted as he did maliciously and

sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline, after the plaintiff was directed by the sergeant "to do as [Simpson] said to do." Therefore, the plaintiffs excessive use of force claim against Simpson cannot be sustained.

*Fourteenth Amendment Due Process Claim Against Simpson*

**\*16** In order to establish a due process violation, a plaintiff must show that: (1) he possessed a liberty interest; and (2) the deprivation of that liberty interest occurred without due process of law. *See Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996). An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation of the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). Both duration and conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship." *See Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004).

The plaintiff alleges, and Simpson does not dispute, that, subsequent to the April 29, 2004 incident, he was in keep-lock confinement "for 16 days without receiving a misbehavior report" and that during that time, he "received no meals, no shower, no recreation, not a thing while [in keep-lock confinement]." Simpson contends the plaintiff failed to allege it was "Simpson who kept him in keeplock [confinement] for sixteen days or denied him his due process rights" and, moreover, "to the extent plaintiff's allegations attempt to state due process claims, his complaint fails and should be dismissed."

Although proceeding *pro se,* the plaintiff presented all his allegations chronologically, starting with the his 2004 complaints about the facility's water quality. The plaintiff's allegation of a 16-day keep-lock confinement follows immediately after his description of the April 29, 2004 incident involving Simpson. That the plaintiff used a passive mode to indicate he was in keep-lock confinement for 16 days, rather than an active mode stating that Simpson kept him in keep-lock confinement for 16 days, does not affect the clarity of the plaintiff's allegation, that his 16 days in keep-lock confinement followed as a result

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

of the April 29, 2004 altercation with Simpson. Simpson failed otherwise to oppose the plaintiff's due process claim.

Keep-lock confinement need not be based on a misbehavior report. *See* 7 NYCRR §§ 301.6 and 301.7. A failure to issue such a report, before discipline is imposed, does not demonstrate a violation of due process. However, New York provides procedural due process for each type of segregated confinement, including admission "to a special housing unit for any reason," which includes an opportunity to be heard, prior to confinement. *See* 7 NYCRR Part 301. The plaintiff does not allege that he had an opportunity to be heard prior to being placed in keep-lock confinement for 16 days. It can be inferred reasonably from the plaintiff's allegation, that he was confined without having a misbehavior report issued to him, and that he did not receive an opportunity to be heard before he was placed in keep-lock confinement for 16 days. Thus, the plaintiffs allegation, that he was placed in keep-lock confinement without an opportunity to be heard, is plausible on its face. Consequently, it is sufficient to raise his right to relief above the speculative level.

**\*17** The plaintiff possesses a liberty interest in receiving meals during his confinement. Failing to receive meals during a 16-day keep-lock confinement represents an "atypical and severe hardship" on an inmate. The Court must accept the plaintiff's factual allegations that he did not receive meals, showers, recreation or other things during his keep-lock confinement, as true and draw all reasonable inferences in the plaintiff's favor. Therefore, the Court finds that the plaintiff has stated a due process claim because he possessed a liberty interest of which he was deprived without due process of law. Accordingly, granting Simpson's motion to dismiss the Fourteenth Amendment Due Process claim made against him is not warranted.

*Conspiracy Claim*

In order to establish a section 1983 conspiracy claim, a plaintiff must demonstrate: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on him; and (2) "an overt act [was] done in furtherance of that goal causing damages."

*Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). "[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977).

The defendants contend "[a] conspiracy may not be assumed" and the plaintiff failed to allege conspiracy in his complaint. The plaintiff asserts his allegations that Simpson: (a) threatened him and placed him in keep-lock confinement for 16 days; and (b) "later spoke to [ ] Rizzuto and made comments about [him], "should be more than enough for this Court to presume that a conspiracy was taking place."

The only conspiracy allegation in the plaintiff's complaint is that a small group of officers conspired against him. The plaintiff failed to allege any facts from which it could be inferred that two or more defendants agreed to act in concert to inflict an unconstitutional injury upon him. The paucity of facts provided by the plaintiff militates in favor of granting the defendants' motion with respect to this claim.

*Misbehavior Report Claim Against Rizzuto*

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997). The defendants contend: (i) the plaintiff does not challenge the disciplinary hearing he received based on a misbehavior report issued to him by Rizzuto; and (ii) "to the extent that Plaintiff alleges that the misbehavior report was false," that allegation, by itself, does not state a due process claim. The Court agrees. Although the plaintiff did not allege explicitly that the misbehavior report issued by Rizzuto was false, that fact can be inferred from the plaintiff's allegation that the misbehavior report was dismissed. Inasmuch as a prisoner generally has no constitutional right to be free from being accused falsely in a misbehavior report, the plaintiff's claim against Rizzuto, concerning the misbehavior report, without more, cannot withstand the defendants' motion to dismiss.

*Retaliation Claims*

**\*18** An inmate has a constitutionally protected right to file grievances, U.S. Const. amend. I, and prison

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

officials may not retaliate against an inmate for exercising that right, *Colon,* 58 F.3d at 872. To establish a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) his speech or conduct was constitutionally protected; (2) a defendant took an adverse action against him; and (3) a casual link between the protected speech or conduct and the adverse action exists. *See Gill v. Pidlvpchak,* 389 F.3d 379, 380 (2d Cir.2004). An inmate asserting a First Amendment retaliation claim must allege either that his speech was chilled or that he suffered some other harm, including the adverse action of being placed in keep-lock confinement for a period of weeks. *See id.* at 383. However, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

The defendants maintain the plaintiffs "only allegations even suggesting retaliation are those plaintiff states against [ ] Ellis dated May 21, 2004, [ ] and the vague comments plaintiff alleges [ ] Harris made during a pat frisk conducted on June 21, 2004." According to the defendants, the plaintiff failed to claim any injury resulting from those actions and "the allegations of retaliation stated against other defendants are based solely in assumption and speculation."

For his part, the plaintiff asserts he alleged a retaliation claim adequately because he alleged that Ellis, by hitting him and stating "this is for CO. Simpson," retaliated against him for filing a grievance against Simpson. Moreover, the plaintiff contends, he also alleged a retaliation claim against: (i) Simpson, concerning the April 29, 2004 incident, because Simpson placed him in keep-lock confinement to retaliate for the plaintiff's attempt to speak with Simpson's supervisor; and (ii) Rizzuto, concerning the August 8, 2004 misbehavior report, because that report was issued in retaliation for the plaintiff's act of filing a grievance against Rizzuto's friend, Simpson.

The plaintiff's allegations show he engaged in a constitutionally protected activity: filing a grievance against Simpson. The plaintiff alleged Ellis took an adverse action against him when she slapped him and told him that was what he "get[s] for writing up CO. Simpson;" thus showing a causal connection between her conduct and

the plaintiff's constitutionally protected filing of a grievance against Simpson. The plaintiff also alleged that, when he attempted to speak to Simpson's supervisor, after Simpson refused to explain to him why he was not allowing him to go to the bathhouse, on April 29, 2004, Simpson took adverse action against him by placing him in keep-lock confinement for 16 days. Based on these facts, the Court finds that the plaintiff made sufficient allegations to support retaliation claims against Ellis and Simpson. However, the plaintiff failed to allege a retaliation claim against Rizzuto for issuing the August 8, 2004 misbehavior report. This is so because he did not allege facts in his complaint from which it could be inferred that Rizzuto's misbehavior report was issued in retaliation for the plaintiff's exercise of any constitutionally protected activity or that Headley suffered any harm as a result of the misbehavior report.

*Eighth Amendment Claims Against Ellis, Bethea and Harris*

**\*19** The defendants contend the plaintiff's allegations that: (a) Ellis slapped him after a strip search, on May 21, 2004; (b) Bethea pushed and shoved him during searches; and (c) Harris conducted a rough search of him on June 21, 2004, do not give rise to a claim of excessive use of force. Moreover, according to the defendants, the plaintiff's allegation, that Ellis made offensive comments, is not sufficient to state a constitutional claim under section 1983.

The Court agrees. The plaintiff failed to allege any facts from which it could be inferred that the conduct of Ellis, Bethea and Harris, during the May 21, 2004 strip search and during other searches was characterized by wantonness or that he suffered an unnecessary and wanton infliction of pain, involving more than a *de minimis* use of force. Therefore, allowing the plaintiff to prosecute Eighth Amendment claims against Ellis, Bethea and Harris is not warranted.

*Due Process and Retaliation Claims Against Barrett and Reyes*

According to the defendants, the plaintiff's allegations, that Barrett and Reyes issued misbehavior reports to him when he did not do anything wrong, do not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

support a due process claim. The defendants maintain the plaintiff does not allege he was denied procedural due process in connection with the misbehavior reports issued to him by Barrett and Reyes or that these reports were written in retaliation for the plaintiff's exercise of any protected right.

The plaintiff's allegation, that he "did not do anything wrong" when Barrett and Reyes issued misbehavior reports to him, is of no import because an inmate has no constitutional right to be free from a false misbehavior report. *See Boddie,* 105 F.3d at 862. Moreover, Headley failed to allege any facts from which it can be inferred that Barrett and Reyes issued misbehavior reports to him in retaliation for his exercise of any protected right. Accordingly, the plaintiff's due process and retaliation claims against Barrett and Reyes cannot be maintained.

*Qualified Immunity*

The doctrine of qualified immunity shields state officials from civil actions for damages for discretionary acts performed in the course of their duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). The threshold question in a qualified immunity determination is "whether the alleged facts demonstrate that a defendant violated a constitutional right." *Iqbal,* 490 F.3d at 152. If a violation of the plaintiff's constitutional right is demonstrated, a court must then determine "whether that right was clearly established at the time of the challenged action-that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Id.* A right is clearly established if: "(1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable [person in the defendant's position] [would] have understood from the existing law that [his] conduct was unlawful.' " *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004) (citation omitted). "A defendant will be entitled to qualified immunity if either (1) his actions did not violate clearly established law or (2) it was objectively reasonable for him to believe that his actions did not violate clearly established law." *Iqbal,* 490 F.3d at 152. Qualified immunity is an affirmative defense and "the

defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v.. Bilotti,* 123 F.3d 75, 78 (2d Cir.1997).

**\*20** Ellis contends "to the extent that plaintiff's allegations suggest only that an Officer was doing his or her job, with no factual allegations to suggest that the conduct at issue was malicious or based on retaliatory intent, qualified immunity applies ." Simpson contends, concerning the plaintiff's claim respecting the use of excessive force against him, "he would have not reasonably believed that he violated Plaintiff's Eighth Amendment rights" because "not every push or shove amounts to an Eighth Amendment violation."

As set forth above, the plaintiff made sufficient allegations that: (1) Simpson violated his Fourteenth Amendment Due Process rights; and (2) Simpson and Ellis retaliated against him for exercising his First Amendment rights. However, the defendants failed to meet their burden of demonstrating that their conduct did not violate either: (i) the plaintiff's clearly established rights; or (ii) constitutional rights of which a reasonable correction officer would have known. Contrary to the defendants' contentions, the plaintiff alleged that the defendants' conduct was based on retaliatory intent. Even assuming that the plaintiff failed to allege the defendants' conduct "was malicious or based on retaliatory intent," such a failure does not relieve the defendants of the obligation of showing that the elements of their qualified immunity affirmative defense exist. Moreover, Simpson does not allege he is shielded from liability to the plaintiff for damages, by the doctrine of qualified immunity, with respect either to the Fourteenth Amendment Due Process claim or the First Amendment claim Headley has asserted against him. Accordingly, no basis exists, on the record before the Court, for granting the defendants' motion pursuant to the doctrine of qualified immunity.

### RECOMMENDATION

For the reasons set forth above, the Court recommends that the February 5, 2007 motion to dismiss be denied with respect to the retaliation claim against Ellis and granted with respect to all other claims. Furthermore, the Court recommends that the December 6, 2007 motion

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)

(Cite as: 2008 WL 1990771 (S.D.N.Y.))

to dismiss be denied with respect to: (i) the Fourteenth Amendment Due Process claim against Simpson; and (ii) the retaliation claim against Simpson, and granted with respect to all other claims.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 470 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

S.D.N.Y.,2008.

Headley v. Fisher
Not Reported in F.Supp.2d, 2008 WL 1990771 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Kenneth J. PHELAN, Plaintiff,
v.
HERSH, C.O., Mt. McGregor Corr. Facility; M. Scott,
C.O., Mt. McGregor Corr. Facility; Pam Ramond,
Civilian Library Clerk, Mt. McGregor Corr. Facility;
Goodman, Lieutenant, Mt. McGregor Corr. Facility;
Fletcher, Civilian Employee, Mt. McGregor Corr.
Facility; J. Micheals, Sergeant, Mt. McGregor Corr.
Facility; Cambell, Sergeant, Mt. McGregor Corr.
Facility; W. Haggett, Superintendent, Mt. McGregor
Corr. Facility; Gregory Kadien, Superintendent,
Gowanda Corr. Facility; P.Millson, Mental Health
Director, Gowanda Corr. Facility; Brian Fischer,
Commissioner of Department of Corr.; James Morgan,
Associate Director of the Office of Mental Health; R.
Regan, Corr. Officer, Gowanda Corr. Facility;
Acosta–Ortiz, Corr. Officer, Gowanda Corr. Facility; B.
Pawelczak, Civilian Hearing Officer, Gowanda Corr.
Facility; Stachewiez, Lieutenant, Gowanda Corr.
Facility; Thompson, Deputy Superintendent, Collins
Corr. Facility; R. Thomas, Corr. Officer, Mt. McGregor
Corr. Facility, a/k/a "Fat Boy", Defendants.
Civ. No. 9:10–CV–0011 (GLS/RFT).

Sept. 13, 2011.
Kenneth J. Phelan, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Department of Law, The Capitol, Adrienne J.
Kerwin, Esq., Assistant Attorney General, of Counsel,
Albany, NY, for Defendants.

ORDER

RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** Kenneth J. Phelan, a New York state prison inmate

proceeding *pro se* and *in forma pauperis,* commenced this
action pursuant to 42 U.S.C. § 1983, alleging, *inter alia,*
in forty-three causes of action, that Defendants retaliated
against him for filing grievances, denied him due process
of the law, denied him adequate mental health treatment in
deliberate indifference to his medical needs, subjected him
to cruel and unusual punishment, and generally harassed
and discriminated against him on account of his disability.
Dkt. No. 1, Compl. Defendants now move for dismissal of
the Complaint pursuant to Federal Rule of Civil Procedure
12(b)(6). Dkt. No. 55. Plaintiff opposes the Motion. Dkt.
No. 60. For the reasons that follow, we recommend that
Defendants' Motion be **granted** in part and **denied** in part.

**I. BACKGROUND**

**A. Facts**

The following facts are derived from the Complaint,
which, in accordance with the standard of review on a
motion to dismiss, must be taken as true. *See infra* Part
II.A.

On or about March 25, 2009, Plaintiff, while housed
at Mt. McGregor Correctional Facility, requested mental
health treatment from "sick call," where a nurse told him
he would be notified when treatment becomes available.
Compl. at ¶ 6. On April 2, 2009, Plaintiff asked Defendant
Hersh if he could go to the "grievance building" to file an
administrative grievance complaining about the lack of
mental health treatment, to which Hersh replied that he
could. *Id.* at ¶ 7. At the grievance building, Defendant
Scott "immediately started yelling at [Plaintiff] and
demanded to know why [he] wanted to file [a grievance]."
*Id.* Scott called Plaintiff a "fucking retard" and that "[w]e
don't allow fucking inmates to file grievances. If you got
a problem we'll just beat the shit out of you. You really got
a problem?" *Id.* Plaintiff feared for his life, and responded
"no, ma['a]m" and returned to his housing unit without
filing a grievance. *Id.* at ¶ 8. Twenty minutes after
returning, Defendant Thomas, Defendant Hersh, and an
unidentified Correctional Officer searched Plaintiff's cell,
throwing his "neatly folded and ironed laundry ... on the
floor shaking them out." *Id.* at ¶ 9. Defendant Thomas also
read Plaintiff's legal mail and "stomped on his legal papers
and mail," while Hersh told him they "don't allowed

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

retards to file grievances" and threatened to fight him. *Id.* Thomas told Plaintiff that "[t]his is how we deal with grievances here retard." *Id.* Plaintiff received two disciplinary "write ups" from the incident, alleging, among other things, that Plaintiff refused direct orders and had gang material in his locker. *Id.* at ¶¶ 10–11.

On or about April 7, 2009, Plaintiff requested mental health treatment from Correctional Officer Collins, who is not a named Defendant in this action and arranged for "a nurse at medical" to speak with Plaintiff. *Id.* at ¶ 12. The nurse told Plaintiff that someone from mental health would be coming in a few days and asked if Plaintiff wanted to go to the infirmary until mental health assistance arrived, to which Plaintiff said no, because "that won't solve anything." *Id.*

**\*2** On April 14, 2009, Plaintiff went to the law library, where the clerk, Defendant Raymond, told Plaintiff, "[o]h, you are that retard the C/Os told me about.... I can do whatever I want to you retard.... Get the hell out of my library retard." *Id.* at ¶ 13. Plaintiff received a disciplinary ticket for this incident. *Id.* When he returned to his housing, Plaintiff was confronted by Defendants Cambell and Micheals, who yelled at Plaintiff, saying "[y]ou are a fucking retard and a scumbag, you know that[?] ... Stop l[y]ing about a disability and take your fucking medicine like a man;" they then asked Plaintiff for his "side of the story" regarding the incident in the library. *Id.* at ¶ 15. Apparently not satisfied with Plaintiff's synopsis, Defendant Micheals "came up beside [Plaintiff] and hit[ ] [Plaintiff] in the head several times, aggravating [his] Tra[u]matic Brain Injury." *Id.*

In April 2009, three disciplinary hearings for Plaintiff commenced. Two of the hearings, which started on April 9 and April 17, addressed disciplinary tickets Plaintiff received from Defendant Thomas and Defendant Ramond, respectively, and were presided over by Defendant Fletcher. *Id.* at ¶¶ 16 & 19. The other disciplinary hearing, presided over by Defendant Goodman, regarded a ticket from Defendant Scott and commenced on April 14. *Id.* at ¶ 17. Both Defendants Fletcher and Goodman stayed their hearings to undertake mental health assessments after Plaintiff told the hearing officers he had a mental disability. *Id.* at ¶¶ 16–17. Plaintiff claims that the

proceedings restarted with no mental health assessment ever being undertaken. *Id.* at ¶¶ 18–21. Plaintiff complains that in Defendant Fletcher's disciplinary hearings, Fletcher interviewed witnesses outside Plaintiff's presence and investigated witnesses suitability for the hearing without Plaintiff's involvement, which "was b[ia]sed." *Id.* at ¶¶ 19 & 21.

Pursuant to the disciplinary ticket issued by Defendant Thomas, Plaintiff plead not guilty "to the gangs charge" and guilty to the other charges, wherefore Defendant Fletcher found Plaintiff guilty of all charges and sentenced him three months in a Special Housing Unit ("SHU"), three months loss of packages, commissary, and phone privileges, and a five-dollar surcharge. *Id.* at ¶ 18. Defendant Fletcher also sentenced Plaintiff to the same punishment with regard to the disciplinary ticket from Defendant Ramond. *Id.* at ¶ 21.[FN1] Defendant Goodman sentenced Plaintiff to thirty days "keepblock, suspended 30 days and deferred for 90 days," a five-dollar surcharge, and took away Plaintiff's yard, packages, commissary, and phone privileges for thirty days. *Id.* at ¶ 20. Plaintiff appealed the disciplinary hearing determinations from Defendants Thomas's and Ramond's tickets; all convictions were affirmed except "the gang charge," which was reversed on May 26, 2009 "by the Commissioner." *Id.* at ¶¶ 22–23.

FN1. It is unclear by Plaintiff's Complaint whether these two sentences were to run concurrently or consecutively.

**\*3** On or about May 14, 2009, Plaintiff was transferred to Downstate Correctional Facility for an overnight stay. *Id.* at ¶ 24. Plaintiff was "sha [c]kled and cuffed to waist chains for about 4 hours, even though [he has] a mental illness." *Id.* The next day, Plaintiff was strip-searched and handcuffed and restrained again in order to be transferred to Lakeview Shock Correctional Facility, which was "about a 12 hour drive;" the drive made Plaintiff's shoulder muscles "very sore." *Id.* Plaintiff was not given a hot meal that day, but "was only given another dry boloney sandwich." *Id.* Plaintiff does not attribute these acts to any specific Defendants. Around July 19, 2009, Plaintiff was transferred to Gowanda Correctional Facility. *Id.* at ¶ 25.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

On or about July 21, 2009, Plaintiff had a medical doctor appointment with Dr. Bangsil,[FN2] who was concerned with Plaintiff's history of suicide attempts and put in a referral for Plaintiff "to see someone in mental health." *Id.* at ¶ 26. However, Plaintiff did not see someone from mental health until September 8, 2009; in the interim, he placed upwards of seven requests to "see M.H." *Id.* at ¶¶ 27–34 & 37. He also received a disciplinary ticket from Defendant Regan for smoking—"even though Plaintiff is a non-smoker and allergic to cigarette smoke—and Regan told him that, "I heard about you retard, you want treatment, I will throw you in the SHU." *Id.* at ¶¶ 35–36. When Plaintiff saw Defendant Millson, a psychologist from mental health who reviewed Plaintiff's medical history, Millson denied Plaintiff's specific request to see a psychiatrist. *Id.* at ¶¶ 32, 34, & 37.

> FN2. Dr. Bangsil is not a named Defendant in this action.

On September 15, 2009, Plaintiff's hearing for the smoking disciplinary ticket commenced, presided over by Lieutenant Kolpack,[FN3] where Plaintiff again "was not allowed to see a psychiatrist." *Id.* at ¶ 38. On September 14, Plaintiff had a doctor appointment with Dr. Bangsil and Nurse Amborlosi,[FN4] who both called the Plaintiff "retard" and told him to "get out of here," to which Plaintiff responded he would "see them in court." *Id.* at ¶ 39. Plaintiff was then written up on September 16 by Defendant Acosta–Ortiz, who called Plaintiff "pea brain," "retard," and "scumbag." *Id.* at ¶ 40. Plaintiff's disciplinary hearing for this ticket occurred on September 21, where hearing officer Defendant Pawelczak "force[d] Plaintiff to enter a plea" even though "[Plaintiff has] M.H. issues and can't proceed;" at the hearing Plaintiff claimed that Defendant Millson's evaluation of Plaintiff's mental health should be disregarded because he "is not competent to evaluate Plaintiff's M.H. condition because he is not a psychiatrist." *Id.* at ¶ 41. Plaintiff had another disciplinary hearing before Defendant Stachewiez, who Plaintiff claimed did not interview employee witnesses on the record. *Id.* at ¶ 43. Plaintiff was found guilty at all the above-mentioned hearings and lost all appeals, at least some of which were denied by Defendants Kadien and

Fischer. *Id.* at ¶¶ 38 & 41–43.

> FN3. Lieutenant Kolpack is not a named Defendant in this action.

> FN4. Nurse Amborlosi is not a named Defendant in this action.

**\*4** Plaintiff characterizes himself as someone suffering from Traumatic Brain Injury, who is slow to process information and has outbursts of temper and impulsive behavior. *Id.* at ¶ 46. He outlines his claims against the multiple Defendants in forty-three various causes of action. *See id.* at ¶ 47 [hereinafter "Causes of Action"]. He is currently housed at Collins Correctional Facility. *Id.* at ¶ 2.

**B. Procedural History**

Plaintiff filed his civil rights Complaint on January 5, 2010, along with a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. Nos. 1 & 2. On January 20, 2010, the Honorable Gary L. Sharpe, United States District Judge, reviewed those filings and granted Plaintiff permission to proceed with this mater IFP. Dkt. No. 5. However, citing various inadequacies with Plaintiff's pleading, Judge Sharpe dismissed Defendants R. Regan and Pam Ramond from this action, dismissed all of Plaintiff's claims of "harassment," and denied Plaintiff's motion for injunctive relief. *See generally id.*

On February 2, 2010, Plaintiff filed a Motion for Reconsideration of Judge Sharpe's Decision and Order. Dkt. 10. In an almost identical filing on the same day, Plaintiff also brought a Notice of Appeal to the Second Circuit Court of Appeals from the January Order. Dkt. 11. In a Decision and Order issued on July 20, 2010,[FN5] Judge Sharpe re-instated Defendants Pam Ramond and R. Regan and denied Plaintiff's request to be appointed counsel. Dkt. No. 22. Finally, pursuant to Plaintiff's representations that he wished to "waive [his] challenge to loss of good time," *see* Dkt. No. 23, Judge Sharpe dismissed all claims set forth in the Complaint relating to the loss of good time credits in disciplinary hearings, as well as directed the Clerk of the Court to strike Plaintiff's submitted Amended Complaint as duplicative. Dkt. No. 27.[FN6]

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

FN5. "[I]f a notice of appeal is filed after a motion for reconsideration, the district court retains jurisdiction over the motion for reconsideration." *Rich v. Associated Brands, Inc.,* 2009 WL 236055, at *1 (W.D.N.Y. Jan.30, 2009) (citing *Basciano v. Lindsay,* 2008 WL 1700442, at *1 (E.D.N.Y. April 9, 2008)).

FN6. Judge Sharpe noted that the only difference between Plaintiff's Complaint and his proposed Amended Complaint was an additional claim against Defendant Haggett related to the conditions of Plaintiff's confinement. This exact same claim is asserted in another action now pending in this District. *See Phelan v. Durniak,* 9:10–cv–666 (FJS/RFT). This Court also notes that Plaintiff has filed a virtually identical complaint to this instant action in this District, with the exact same factual assertions, but bringing claims against the defendants pursuant to the Americans with Disabilities Act ("ADA"). *See Phelan v. Thomas et al.,* 9:10–cv–012 (DNH/RFT). Because of the existence of this pending action, we will not address any claims Plaintiff makes in his instant Complaint seeking relief from Defendants under the ADA. *See, e.g., Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) ("As a part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104

S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] solely *relies and which is* integral to the complaint' may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)).

**\*5** The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1960, 173 L.Ed.2d 868 (citing *Twombly*).[FN7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1950–51, 173 L.Ed.2d 868.

> FN7. By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal,* the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 561 (2007) (quoting *Conley,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

**B. Deference Given to *Pro Se* Litigants**

Plaintiff herein is proceeding with this action *pro se.* "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citing, *inter alia, Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652) (other internal citations and quotation marks omitted). However, the Second Circuit has stated that there are circumstances where an overly litigious inmate, "who is quite familiar with the legal system and with pleading requirements," may not be afforded such special solicitude. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to afford an "extremely litigious inmate" the benefit of lenient treatment normally afforded *pro se* litigants and thus

denying the opportunity to amend a claim where he failed to properly plead a cause of action); *see also Davidson v. Dean,* 204 F.R.D. 251, 257 (S.D.N.Y.2001) (citing *Davidson v. Flynn,* 32 F.3d at 31, and refusing to accord deference to same plaintiff); *Santiago v. C.O. Campisi Shield No. 4592,* 92 F.Supp.2d 665, 670 (S.D.N.Y.2000) (applying *Davison v. Flynn* to *pro se* plaintiff who had ten suits pending in district); *Brown v. McClellan,* 1996 WL 328209, at *1 n. 3 (W.D.N.Y. Jun.11, 1996) (stating that plaintiff's "litigious nature," notwithstanding his *pro se* status, "weighs somewhat against the leniency that is normally accorded"); *Brown v. Selsky,* 1995 WL 13263, at *8 n. 1 (W.D.N.Y. Jan.10, 1995) (denying special solicitude to *pro se* plaintiff who had seven cases pending in district).

*6 It is patently clear that Kenneth J. Phelan, the instant Plaintiff, is no stranger to the courts.[FN8] In light of Plaintiff's experience in federal court, we find that the special solicitude afforded *pro se* litigants shall not be accorded herein.

> FN8. Since June 2010, Phelan has filed nineteen (19) lawsuits in this district alone:
>
> (1) *Phelan v. Sullivan et al.,* 10–cv–724 (DNH/ATB) (currently pending)
>
> (2) *Phelan v. Thomas et al.,* 10–cv–011 (GLS/RFT) (currently pending; the instant case herein)
>
> (3) *Phelan v. Thomas et al.,* 10–cv–012 (DNH/RFT) (currently stayed pending appeal)
>
> (4) *Phelan v. Eckert et al.,* 10–cv–325 (TJM/GHL) (transferred to W.D.N.Y. on Apr. 8, 2010)
>
> (5) *Phelan v. Cambell et al.,* 10–cv–540 (NAM/RFT) (currently pending)
>
> (6) *Phelan v. Chin et al.,* 10–cv–601 (DNH/RFT) (transferred to W.D.N.Y. on June 23, 2010)
>
> (7) *Phelan v. Durniak et al.,* 10–cv–666

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

(FJS/RFT) (currently pending)

(8) *Phelan v. Wolczye et al.,* 10–cv–1061 (GTS/DEP) (currently pending)

(9) *Phelan v. Lempke,* 10–cv–1108 (GTS) (closed on Sept. 28, 2010—habeas corpus petition dismissed without prejudice to Petitioner filing an action pursuant to 42 U.S.C. § 1983)

(10) *Phelan v. Zenzen et al.,* 10–cv–1178 (LEK/DEP) (transferred to W.D.N.Y. on Dec. 17, 2010)

(11) *Phelan v. Lempke,* 10–cv–1324 (TJM) (transferred to W.D.N.Y. on Nov. 4, 2010)

(12) *Phelan v. Bezio,* 11–cv–272 (GTS/GHL) (transferred to W.D.N.Y. on Mar. 15, 2011)

(13) *Phelan v. Bezio,* 11–cv–288 (DNH) (currently pending)

(14) *Phelan v. Fischer et al.,* 11–cv–289 (TJM/ATB) (currently pending)

(15) *Phelan v. Delnegro,* 11–cv–313 (GTS/DRH) (currently pending)

(16) *Phelan v. Quinn et al.,* 11–cv–314 (DNH/DRH) (currently pending)

(17) *Phelan v. Lichva et al.,* 11–cv–315 (GLS/GHL) (currently pending)

(18) *Phelan v. Bezio,* 11–cv–416 (GLS) (currently pending)

(19) *Phelan v. Karandy et al.,* 11–cv–636 (NAM/RFT) (currently pending).

**C. First Amendment Claims**

*1. Retaliation*

Plaintiff claims that Defendants Thomas, Hersh, and Scott retaliated against him for attempting to file grievances. *See* Compl. at Causes of Action 3, 4, & 5.

In order to state a valid retaliation claim, a plaintiff must allege that "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (quoting *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004)). The required causal connection means, "in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff." *Tafari v. McCarthy,* 714 F.Supp.2d 317, 347 (N.D.N.Y.2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Plaintiff alleges that Correctional Officers Thomas and Hersh searched Plaintiff's self and cell on April 2, 2009, seemingly in retaliation for Plaintiff attempting to file a grievance earlier that day about not getting appropriate mental health treatment. *See* Compl. at ¶¶ 8–9. Further, Plaintiff alleges the Defendants Thomas and Scott "wrote [Plaintiff] up" for various infractions relating to that cell search, such as refusing a direct order, and having "gang material"—all of which Plaintiff claims were fabricated and done in retaliation for his filing of a grievance. *Id.* at ¶¶ 10–11.

The Second Circuit has made clear that an inmate has a right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances as guaranteed under the First and Fourteenth Amendments. *See, e.g., Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) (cited in *Dorsey v. Fisher,* 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010)); *see also Colon v. Coughlin,* 58 F.3d 865, 972 (2d Cir.1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."). Thus, there is no question that Plaintiff's conduct, filing a grievance, is protected by the Constitution and satisfies the first prong of a retaliation claim.

Plaintiff's allegations—again, taken as true for the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

purposes of this Motion—also establish that the Defendants took "adverse action" sufficient to state a valid retaliation claim under section 1983. Initially, we note that while many of the District Courts in this Circuit have found that a "search of an inmate's cell, even if performed with a retaliatory motive, does not give rise to a constitutional claim for retaliation," *see, e.g., Keesh v. Goord,* 2007 WL 2903682, at *8 (W.D.N.Y. Oct.1, 2007) (citing *Hudson v. Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)),[FN9] the Second Circuit is silent on this matter. We decline to similarly draw such a hard-nosed line, and find that cell searches, if accompanied by more, can implicate a retaliation claim under section 1983. *See Shariff v. Poole,* 689 F.Supp.2d 470, 481 (W.D.N.Y.2010) ("Although a cell search is not considered to be actionable under § 1983, regardless of any retaliatory motives, there exists here a suggestive chronology of grievances, threats, and cell searches, the combination of which would likely 'chill a person of ordinary firmness from continuing to engage' in the protected activity at issue here—the filing of grievances.") (internal quotation omitted). Plaintiff states that Defendants Hersh and Thomas did more than just search his cell, but rather "tore up" his cell and locker, manipulated and damaged his legal papers, and threatened to fight Plaintiff. Finally, there was a causal connection between this cell search and the protected conduct of filing grievances. The search happened only twenty minutes after Plaintiff attempted to file a grievance, and Defendant Thomas explicitly told Plaintiff that "[t]his is how we deal with grievances here retard. Next time it will be more." Compl. at ¶ 9. Therefore, Plaintiff's assertions are enough to state a valid retaliation claim.

FN9. That an inmate has no constitutionally protected right of privacy in their prison cells, and that a search of that cell cannot give rise to a retaliation claim, has been found in all four District Courts of New York. *See Bumpus v. Canfield,* 495 F.Supp.2d 316, 327 (W.D.N.Y.2007) ("It is well settled ... that plaintiff cannot base a retaliation claim ... based on a cell search."); *Battice v. Phillip,* 2006 WL 2190565, at *7 (E.D.N.Y. Aug.2, 2006) (noting that "a prisoner has no reasonable expectation of privacy in his or her prison cell; therefore, a

search of an inmate's cell, even for retaliatory reasons, therefore does not implicate a constitutional right"); *Gadson v. Goord,* 1997 WL 714878, at *7 (S.D.N.Y. Nov.17, 1997) (holding that "searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature"); *Payne v. Axelrod,* 871 F.Supp. 1551, 1556 (N.D.N.Y.1995) (*"Hudson v. Palmer* [ ] permits even arbitrary cell searches in prison."). The cases cited herein that find these types of retaliation claims untenable collect their support in the case law noting that an inmate has no expectation of privacy in his cell, and therefore a cell search by itself is not actionable under the Fourth Amendment. Here, however, Plaintiff's claims and underlying facts allege more than a mere cell search under the Fourth Amendment, but rather state a claim of retaliation for exercising other protected constitutional rights.

**\*7** Furthermore, Plaintiff claims that he was unjustly written up by Defendants Thomas and Scott, in connection with the cell search. Plaintiff states that Defendants Thomas issued a report against Plaintiff for having gang material, harassment, and for "violating messhall proce[ ]dures," and that Defendant Scott issued one for "harassment, refusing a direct order, and [for being] out of place." Compl. at ¶¶ 10–11.

While a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," *see Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997), a misbehavior report issued in retaliation to the exercise of a constitutional right constitutes an "adverse action." *See Reid v. Bezio,* 2011 WL 1577761, at *4 (N.D.N.Y. Mar.30, 2011) ("[T]here is little doubt that a misbehavior report would constitute an adverse action.") (internal quotations omitted); *Lewis v. Blazejewski,* 2007 WL 542117, at *5 (W.D.N.Y. Feb.16, 2007) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.") (quoting *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002)). This Court is keenly aware that "retaliation claims by prisoners are

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Williams v. Hupkowicz,* 2004 WL 1197354, at *3 (W.D.N.Y. June 1, 2004) (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care.")). However, these purportedly fabricated misbehavior reports clearly were in the same chain of events as the cell search, and thus, taking Plaintiff's claims as true, are likewise causally connected to Plaintiff's attempt to file a grievance.[FN10]

> FN10. Implicit through the Plaintiff's narrative, though not always stated, is that the alleged retaliation was a result of his attempt to file grievances. *See* Compl. at ¶ 9. This is supported in his statements in his Causes of Action section. *See id.* at ¶ 47 ("Causes of Action" 4) ("Defendants C/O Thomas and C/O Scott retaliated against Plaintiff for trying to file a grievance ..."). Accordingly, we interpreted Plaintiff's constitutionally protected speech or conduct to be his attempt to file grievances. Plaintiff makes numerous claims, however, scattered variously throughout his forty-one-page Complaint, that Defendants violated his rights because of his disability. It is thus no surprise to see him also claim that the misbehavior reports were issued in retaliation "against [his] disability." *See id.* at ¶ 11; *see also id.* at Causes of Action 4 & 5. However, having a mental handicap or disability clearly is not protected "speech or conduct." When possible, this Court interprets any claims of such to be claims of retaliation against Plaintiff's attempt to file a grievance.

Accordingly, Plaintiff's allegations relating to Defendants Thomas and Hersh's cell search and his allegations that he received false misbehavior reports from Defendants Thomas and Scott, all in retaliation to his attempt to file a grievance, states a claim sufficient to survive Defendants' Motion to Dismiss.[FN11]

> FN11. Plaintiff also seems to indicate something akin to a retaliation claim regarding Defendant Regan, who gave Plaintiff "a write up (ticket) for smoking, even though Plaintiff is a non-smoker and allergic to cigarette smoke." Compl. at ¶¶ 35 & 36. However, Plaintiff's Complaint alleges, if anything, that this misbehavior report was premised on harassing Plaintiff because of his mental handicap alone. These allegations of harassment and discrimination based on Plaintiff's disability are examined later in this Court's Report and Recommendation, *see infra* Part III.F, but, again, adverse action for having a mental disability alone does not state a valid First Amendment retaliation claim. *See supra* Note 11.

### 2. Access to the Courts

Phelan asserts that Defendant Ramond prevented him from using the law library on April 14, 2009, that Defendant Thomas damaged his legal work during a cell search, and that Defendant Thompson prevented him from making copies on October 15 and December 18, both in 2009. Compl. at ¶¶ 9, 13, & 47. We interpret these facts to allege a violation of his right to access the courts.

The Supreme Court has held that the constitutional right of access to courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). To establish a *Bounds* violation, a plaintiff must show "actual injury," as *"Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 349 & 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Thus, to establish a claim of inadequate access to the courts under *Bounds,* a plaintiff must show " 'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim'—for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser,* 264 F.3d 175, 184 (2d Cir.2001) (citing *Lewis v. Casey,* 518 U.S. at 351).

**\*8** Plaintiff fails to allege any prejudice or injury from

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

Defendants' actions, and we find none in what has been presented to the Court. Without a demonstration that a "nonfrivolous legal claim had been frustrated or was being impeded," there is no basis to conclude Plaintiff's First Amendment right of access to the courts has been violated. *Lewis v. Casey,* 518 U.S. at 353. We recommend that this claim be **dismissed.**

### D. Due Process Claims

Plaintiff asserts in no fewer than eleven different claims that his Due Process rights were violated due to various deficiencies in his administrative disciplinary hearings and appeals thereto. Specifically, Plaintiff claims that the officers presiding over his disciplinary proceedings did not properly account for his mental disabilities; either interviewed witnesses outside Plaintiff's presence or did not interview them; and that his due process rights were violated because other Defendants denied his appeal. Compl. at ¶¶ 16–23 & Causes of Action 11, 12, 16, 21, 22, 31, 32, 33, 34, 38 & 39. We address these due process claims in turn.

As an initial matter, in order to state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). Plaintiff brings his due process claims against four separate hearing officers who presided over separate misbehavior report hearings. Plaintiff states that he received a punishment of at least three months of confinement in the SHU and three months loss of privileges, such as packages and phones, from the hearings Defendant Fletcher presided over. Compl. at ¶¶ 18 & 21. He states that he also received thirty days "keepblock, suspended 30 days and deferred for 90 days," and a loss of yard, packages, commissary, and phone privilege for thirty days from the hearing Defendant Goodman presided over. *Id.* at ¶ 20. However, Plaintiff fails to allege any liberty interest that was at stake from the hearings related to Defendants Pawelczak or Stachewiez. *See id.* at ¶¶ 42 & 43. Thus, because Plaintiff does not allege any liberty interest by which he was entitled to some measure of due process before being deprived therewith, his due process claims against Defendants Pawelczak and Stachewiez should be **dismissed.** *See Sandin v. Connor,* 515 U.S. 472,

484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life").

Turning back to Defendants Fletcher and Goodman, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship. Whether the conditions of the segregation amounted to atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker,* 139 F.3d at 336 (citations omitted). However, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the above-stated *Sandin* standard. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *see also Ayers v. Ryan,* 152 F.3d 77, 83 (2d Cir.1998) ("Whether or not a period of disciplinary confinement amounts to an atypical and significant hardship is a factintensive inquiry[.]"). The Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard,* 215 F.3d 227, 231–32 (2d Cir.2000). Comparatively, the segregative sentences of 125–288 days are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly term the confinement atypical or insignificant." *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000). In reviewing the duration and conditions of Phelan's special confinement as a result of the misbehavior hearings at issue, we do not find his confinement alone to be atypical and significant. In any event, we find that even if Plaintiff identified a valid liberty interest, he failed to allege facts supporting the notion that he was denied due process in his misbehavior hearings. Plaintiff states that Defendants Fletcher and Goodman each failed to adequately consider his mental disability in their respective disciplinary proceedings. Compl. at ¶¶ 16–19 & Causes of Action 11, 12, 18, & 19. While rules exist that govern the procedure hearing officers must follow when an inmate's mental health is an issue, *see* N.Y. COMP.CODES R. & REGS.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

tit. 7, § 254.6(b), there are no allegations in the Complaint that allege sufficient facts to state a claim that Plaintiff's constitutional rights were violated. For example, it appears from Plaintiff's Complaint that both Fletcher and Goodman stopped the proceedings to consider Plaintiff's mental health. Compl. at ¶¶ 16–17. In fact, with the same breath that Plaintiff claims his mental disability was not adequately considered in these disciplinary hearings, he claims Goodman "discriminated against Plaintiff's disability ... by unlawfully asking Plaintiff what his disability is and to describe [it] in detail." *Id.* at Causes of Action 17. Plaintiff's allegations that the disciplinary hearings were eventually continued and not excused altogether, without more, does not state a constitutional violation. Thus, Plaintiff's complaint that his disciplinary hearings proceeded despite his mental handicap fails to state a claim and should be **dismissed.**

**\*9** Plaintiff also claims his due process rights were violated by Defendant Fletcher when he failed to interview witnesses in Plaintiff's presence on the record and investigated witnesses on his own; Plaintiff further asserts that Defendant Fletcher "was biased." *Id.* at ¶¶ 19, 21 & Causes of Action 12, 16, & 21. The Supreme Court has held that due process entitles inmates to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution. *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir.1983). However, "it is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate." *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999) (internal citations omitted); *see also Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993) (noting an inmate does not have a constitutional right of confrontation in disciplinary hearings). Additionally, "the mere involvement of a hearing officer in related investigations or proceedings does not evidence bias." *Rodriguez v. Selsky,* 2011 WL 1086001, at \* 11 (N.D.N.Y. Jan.25, 2011) (citing *Vega v. Artus,* 610 F.Supp.2d 185, 200 (N.D.N.Y.2009). Defendant Fletcher's investigation into the witnesses Plaintiff wanted to call does not make him biased in his role as a hearing officer.[FN12] Rather, an impartial hearing officer is one who "does not prejudge the evidence and who cannot say ... how he would assess evidence he has

not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990). Plaintiff's unsupported and conclusory allegation of bias does not plausibly state a claim upon which relief can be granted, and thus, his due process complaints against Defendant Fletcher should be **denied.**

> FN12. Though not explicit in the Complaint, to the extent Plaintiff may be complaining that Defendant Fletcher did not call witnesses Plaintiff requested be called, "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999).

Lastly, Plaintiff claims his due process rights were violated because his appeals of the determinations of his disciplinary hearings were denied. Compl. at ¶¶ 23 & Cause of Action 22. This conclusory statement clearly does not state a due process violation—Plaintiff sets forth no facts that the determinations of his disciplinary hearings deserved reversal, let alone that a failure to reverse the results of the hearings would constitute a due process violation. Therefore, this claim should be summarily **denied.**

Because Plaintiff states no valid due process violations upon which relief may be granted, this Court recommends that his due process claims be **dismissed** in their entirety.

### E. Eighth Amendment Claims

In his expansive and lengthy Complaint, Plaintiff alleges two distinct Eighth Amendment claims: deliberate indifference to his serious medical needs and cruel and unusual punishment. We address these allegations *seriatim.*

*1. Deliberate Indifference to Serious Medical Needs*

Plaintiff claims that he was denied mental health treatment and services, specifically naming Defendants P. Millson, James Morgan, Gregory Kadien, W. Hagget, Cambell, and J. Michaels as the culprits. Compl. at ¶¶ 7, 26–34, 37, 39, 40, 44, & 45.[FN13] To state an Eighth Amendment claim for denial of adequate medical care, a

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06).

> FN13. Though discussed in multiple occasions in his forty-one-page Complaint, Plaintiff does not name Dr. Bangsil nor Nurse Amborlosi as Defendants in this action. They are named, however, in his almost identical complaint brought in this District under the ADA. *See supra* Note 3.

**\*10** The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin* ("*Hathaway I*" ), 37 F.3d 63, 66 (2d Cir.1994). Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.; Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d at 702 (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of mind." *Hathaway I,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In his Complaint, Phelan claims that he suffers from a traumatic brain injury dating back to when he was an infant, resulting in him being "slower to process information," and having "impulsive behavior." Compl. at

¶ 46(A) & (B). He also claims to suffer from attention deficit disorder and depression. *Id.* at ¶ 46(C). He states that despite his consistent requests, he did not receive adequate mental health care in prison, and as such, Plaintiff "adjusted poorly and received a lot of write ups, and spent more time in SHU th[a]n in general population." *See generally id.; see* Compl. at ¶ 46(F).

Here, Plaintiff does not provide facts by which this Court could assess the objective seriousness of his medical needs, other than injecting conclusory statements that his mental handicap, if left untreated, leads him to act out and receive misbehavior reports. Furthermore, Plaintiff does not sufficiently aver that Defendants acted with the requisite culpable state of mind. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Plaintiff states that, pursuant to his requests for a mental health examination, Defendant P. Millson received Plaintiff's mental health history and met with and examined Plaintiff in person. Compl. at ¶¶ 32 & 37. In that meeting, Defendant Millson, who is a psychologist, did not grant Plaintiff permission to see a psychiatrist, saying "we don't have to let you see one." *Id.* at ¶ 37. These facts do not support a finding that this Defendant was subjectively deliberately indifferent to Plaintiff's medical needs, or that Defendant Millson bore Plaintiff any ill will at all. Mere disagreement over the prescribed course of treatment does not evidence deliberate indifference. *See Brown v. Eagen,* 2009 WL 815724, at *9 (N.D.N.Y. Mar.26, 2009) (stating that the prison officials have broad discretion to determine the nature and character of the medical treatment afforded to inmates, as "[a]n inmate does not have the right to treatment of his choice") (citing, inter alia, *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986)).FN14 Likewise, Plaintiff's allegation against Defendant Morgan—that he wrote a letter in response to Plaintiff's requests for mental health care, stating that he is denying that request—without more, fails to allege the requisite culpable state of mind needed to state a claim for

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

deliberate indifference.

FN14. Additionally, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II" ),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

**\*11** Lastly, Plaintiff's conclusory statements that Defendants Gregory Kadien and W. Hagget "are responsible for and required by law to provide mental health care by a psychiatrist on a full time basis [and] failed to do this," as well as his claims that Cambell and J. Michaels yelled at him and told him to "stop l[y]ing about a disability and [to] take your fucking medicine like a man [,]" do not allege any facts by which this Court could engage in an Eighth Amendment examination or which would meet the *Iqbal* standard. *See* Compl. at ¶¶ 15 & 45. Plaintiff further does not allege personal involvement by Defendants Kadien and Hagget, who are the Superintendents at Gowanda and Mt. McGregor correctional facilities, respectively. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (providing the test for personal involvement of a supervisory defendant); *see also Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (stating that a defendant may not be liable for damages simply by virtue of holding a supervisory position).

Therefore, Plaintiff does not allege a valid Eighth Amendment claim that the Defendants were deliberately indifferent to his serious medical needs. Rather, as stated in his Complaint, Plaintiff was seen by medical personnel at Mt. McGregor upon his request on March 25, 2009, and then again on April 7, 2009, where he was offered the option of staying in the infirmary until someone from the mental health division could check on Plaintiff, but he refused, saying "that won't solve anything, so no." *Id.* at ¶¶ 6 & 12. He also appears to have had an appointment with Doctor Bangsil and Nurse Amborlosi to discuss his medical issues, but these appointments apparently did not

end well and Plaintiff told them "he would see them in court." *Id.* at ¶ 39. Considering all of the above allegations, we recommend that Plaintiff's claims of deliberate indifference be **dismissed** for failure to state a claim.

*2. Cruel and Unusual Punishment*

The Eighth Amendment also prohibits the infliction of cruel and unusual punishment. *Robinson v. California,* 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (cited in *Tramell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003)). Plaintiff appears to bring three claims under this umbrella: that the punishments he received from hearing officers concerning misbehavior reports were cruel and unusual; that he was subject to excessive physical force; and that he suffered cruel and unusual punishment resulting from his general conditions of confinement.

First, Plaintiff complains that punishments he received from disciplinary hearings, assigned from Defendants Fletcher and Goodman, violated his rights because they are cruel and unusual considering his mental illness. "Restraints on an inmate do not violate the [Eighth] [A]mendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.' " *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.1984) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Plaintiff provides no facts by which this Court could evaluate this claim. Sentencing an inmate with diminished mental capacity to special or solitary confinement does not constitute a *per se* violation of the Eighth Amendment. *See Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998). Plaintiff's claim accordingly should be **denied.**

**\*12** Secondly, to determine whether an Eighth Amendment violation occurred where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

(2d Cir.1994)). To validly assert an Eighth Amendment violation through the use of excessive force, an inmate must prove (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotations and citations omitted).

Plaintiff asserts that on May 14, 2009, when he was transferred "to a S-block [in] Downstate Correction Facility," he was handcuffed and shackled for "about [four] hours, even though [he has] a mental illness." Compl. at ¶ 24. The next day, Plaintiff was "strip[ ] searched again and shackled and cuffed with waist chains again to be transfer[re]d to Lakeview Shock Correctional Facility.... This was about a [twelve] hour drive." *Id.* He alleges this made his "shoulder muscles very sore." Plaintiff seems to associate this blame to Defendant Fischer, the Commissioner of DOCCS, but this fact is not made clear in Plaintiff's Complaint. *See* Cause of Action 23. Regardless of the assured lack of personal involvement, these facts do not give rise to a claim of cruel and unusual punishment. The facts fail to state that the use of handcuffs and shackles during transport was not done "in a good-faith effort to maintain or restore discipline," but rather as a form of punishment or to constitute a wanton infliction of pain. Therefore, Plaintiff's claim that he suffered excessive force relating to his transports should be **denied.**

Plaintiff also states that Defendant Micheals struck him in the head several times while asking Plaintiff questions in connection to the disciplinary ticket he received from his incident in the library. *See* Compl. at ¶ 13 & 15. While Plaintiff does not explicitly raise an accusation of excessive force against Micheals in his forty-three causes of action, Plaintiff's statement of facts clearly indicates the Eighth Amendment. Here, though Plaintiff provides sparse details of the incident, his claim suggests that Defendants Micheals hit him maliciously, multiple times, and without the good-faith effort to maintain discipline. This is enough to validly state an excessive force claim, and, accordingly, we recommend that this claim against Defendant Micheals survive Defendants' Motion to Dismiss.

Lastly, to the extent that Plaintiff claims his conditions of confinement constituted an Eighth Amendment violation—specifically, because he did not receive a hot meal for one day, when he was being transported to another correctional facility, but instead received a "dry boloney sandwich"—this complaint does not state a cause of action. There is no constitutional right to have a hot meal every day, but only that inmates be provided nutritionally adequate food prepared under safe conditions. *See Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (cited in *Quintana v. McCoy,* 2006 WL 2827673, at *6 (N.D.N.Y. Sept.29, 2006)). Furthermore, Plaintiff does not allocate personal involvement by any Defendant in this matter. Thus, Plaintiff does not state a valid Eighth Amendment claim here, and his allegation of such should be **denied.**

### F. Other Claims

**\*13** Throughout Plaintiff's Complaint, he accuses the majority of the Defendants of harassing him, chiefly through name-calling, specifically "retard." *See generally* Compl. As Judge Sharpe ruled in his January Order, allegations of verbal harassment are insufficient to support a § 1983 claim. *See* Dkt. No. 5 at pp. 5–6 (citing *Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir.2001) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged") (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986))). In accord with that Order and the law of the case doctrine,[FN15] Plaintiff's claims of harassment should be **dismissed.**

> FN15. The law of the case doctrine " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 7–8 (2d Cir.1996) (quoting *Dilaura v. Power Auth.,* 982 F.2d 73, 76 (2d Cir.1992)).

Also throughout the Complaint, Plaintiff makes wholly-conclusory allegations that Defendants either discriminated against, harassed, or otherwise treated Plaintiff poorly because of Plaintiff's mental disability. While this issue of "whether disability discrimination gives rise to a section 1983 claim 'is not a settled question of law in this circuit,' " *Petrosky v. New York State Dept.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

*of Motor Vehicles,* 72 F.Supp.2d 39, 61 (N.D.N.Y.1999) (citing *Campbell v. City Univ. Constr. Fund,* 1999 WL 435132, at *5 (S.D.N.Y. June 25, 1999)), the courts who use the Equal Protection Clause of the Fourteenth Amendment alone as the vehicle by which to seek relief note that "[t]he basic command of the Equal Protection Clause is that similarly situated persons be treated equally," *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To establish an Equal Protection violation, plaintiff must show purposeful discrimination directed to an identifiable class. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (cited in *Greco v. County of Nassau,* 146 F.Supp.2d 232, 248 (E.D.N.Y.2001)). Plaintiff fails to alert this Court to any specific fact by which we could conclude that Plaintiff was treated differently because of his mental illness; instead, he merely repeats conclusory statements that he was "discriminated against." These statements cannot withstand the required pleading standard set out in *Iqbal,* and thus, this Court recommends that the claims Plaintiff brings pursuant to the Equal Protection Clause be **dismissed.** To the extent Plaintiff is stating a claim of disability discrimination under Title II of the ADA, we refer the reader to Plaintiff's identical complaint brought in this District pursuant to the ADA. *See supra* note 3.

Lastly, Plaintiff complains that Defendants Hersh, Scott, and Thomas did not allow Plaintiff to file a grievance. *See* Compl. at Causes of Action 2. To the extent this claim overlaps with Plaintiff's retaliation claims, we refer to our above disposition of that issue. *See supra* Part III.C.i. We pause to note that although Plaintiff "has a constitutional right to access the courts, participation in an inmate grievance process is not a constitutionally protected right." *Davis v. Buffardi,* 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (internal citations omitted); *see also Rhodes v. Hoy,* 2007 WL 1343649, at *2 n. 2 (N.D.N.Y. May 5, 2007) (citing cases, including *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005) (holding that "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim")). Notwithstanding, Plaintiff states no sufficient facts for us to find that Defendant

Hersh, who allowed Plaintiff to go to the "grievance building" when Plaintiff requested, *see* Compl. at ¶ 7, or Defendant Thomas are liable for preventing Plaintiff from filing grievances; thus, this claim must be **dismissed** in its entirety for failing to state a claim.[FN16]

> FN16. We note that a plaintiff's lack of exhaustion of administrative remedies, as prescribed by the Prison Litigation Reform Act ("PLRA"), is an affirmative defense, but one that is not raised by Defendants in this action. *See Arce v. Keane,* 2004 WL 439428, at *2–3 (S.D.N.Y. Mar.9, 2004) (describing PLRA's exhaustion requirement).

### III. CONCLUSION

**\*14** For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt No. 55) be **granted in part and denied in part** as follows:

1. To the extent asserted, retaliation claims against Defendants Hersh and Thomas, relating to their cell search on April 2, 2009, and Defendants Thomas and Scott, relating to misbehavior reports issued pursuant to that cell search, should survive Defendants' Motion and proceed to discovery;

2. To the extent asserted, Eighth Amendment excessive force claims against Defendant Micheals, relating to striking Plaintiff in the head several times, should survive Defendants' Motion and proceed to discovery;

3. All other asserted claims against Defendants be **dismissed** for failure to state a claim; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS***

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031940 (N.D.N.Y.)

(Cite as: 2011 WL 6031940 (N.D.N.Y.))

***REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec'y of Health and Human Servs. ., 892 F.2d 15 (2d Cir.1989)*); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

N.D.N.Y.,2011.

Phelan v. Hersh
Slip Copy, 2011 WL 6031940 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Page 1

Slip Copy, 2011 WL 6031071 (N.D.N.Y.)

(Cite as: 2011 WL 6031071 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Kenneth J. PHELAN, Plaintiff,
v.
HERSH et al., Defendants.
No. 9:10–cv–11 (GLS/RFT).

Dec. 5, 2011.
Kenneth J. Phelan, Romulus, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Adrienne J. Kerwin, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

### MEMORANDUM–DECISION AND ORDER

GARY L. SHARPE, District Judge.

#### I. Introduction

**\*1** Plaintiff *pro se* Kenneth J. Phelan brings this action under 42 U.S.C. § 1983, alleging his constitutional rights were violated by defendants. (*See* Compl., Dkt. No. 1.) In a Report–Recommendation and Order (R & R) filed September 13, 2011, Magistrate Judge Randolph F. Treece recommended that defendants' motion to dismiss be granted in part and denied in part.[FN1] (*See generally* R & R, Dkt. No. 63.) Pending are Phelan's objections to the R & R. (*See* Dkt. No. 68.) For the reasons that follow, the R & R is adopted in its entirety.

> FN1. The Clerk is directed to append the R & R to this decision, and familiarity therewith is presumed.

#### II. Standard of Review

Before entering final judgment, this court routinely reviews all report and recommendation orders in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole,* No. 04–cv–484, 2006 WL 149049, at *6–7 (N.D.N.Y. Jan.18, 2006). In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.*

#### III. Discussion

Phelan's "objections" consist of factual statements which were either not alleged in his Complaint, or already considered by Judge Treece. (*See* Dkt. No. 68 at 1–5.) As Phelan is well aware—given the fact that he has filed nineteen lawsuits in this district alone—the sufficiency of a complaint is judged by the factual allegations contained therein. *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007) (The court's review is limited to the "four corners of the complaint ..."). Thus, Phelan's attempt to cure the deficiencies in his Complaint are unavailing. More importantly though, Phelan's "objections" are insufficient to require a *de novo* review as there is no reference to a perceived error by Judge Treece. Having found no clear error in the R & R, the court accepts and adopts Judge Treece's R & R in its entirety.

#### IV. Conclusion

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Randolph F. Treece's September 13, 2011 Report–Recommendation and Order (Dkt. No. 63) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 55) is **DENIED** in part with respect to the following:

(1) the retaliation claims against defendants Hersh and Thomas, relating to their cell search on April 2, 2009;

(2) the retaliation claims against defendants Thomas and Scott, relating to misbehavior reports issued pursuant to the April 2, 2009 cell search; and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6031071 (N.D.N.Y.)

(Cite as: 2011 WL 6031071 (N.D.N.Y.))

(3) the Eighth Amendment excessive force claims against defendant Micheals, relating to striking Phelan in the head several times; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 55) is **GRANTED** without prejudice as to all of the other claims against defendants; and it is further

**\*2 ORDERED** that in accordance with the Mandate of the United States Court of Appeals for the Second Circuit (*see* 9:10–cv–12, Dkt. No. 25), this case is consolidated with Case No. 9:10–cv–12; and it is further

**ORDERED** that 9:10–cv–11 shall be the lead case and 9:10–cv–12 shall be the member case; and it is further

**ORDERED** that Magistrate Judge Treece shall, in accordance with the Second Circuit's Mandate, appoint counsel; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Treece to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties by mail and certified mail.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Phelan v. Hersh
Slip Copy, 2011 WL 6031071 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Ralph Buck PHILLIPS, Plaintiff,
v.
Richard ROY, Inspector General, New York State;
George Seyfert, Deputy Inspector General, New York
State; Dale Artus, Superintendent, Clinton Correctional
Facility; Donald Selsky, Assistant Commissioner, New
York State Department of Correctional Services; Alec
Friedman, Rabbi, Clinton Correctional Facility; B.
LeCuyer, Nurse Administrator, Clinton Correctional
Facility, A. Lashway; Nurse Practitioner, Clinton
Correctional Facility; S. Racette, Deputy Superintendent
of Security, Clinton Correctional Facility; D. Jarvis,
Inmate Records Coordinator, Clinton Correctional
Facility; Roy Ano, Counselor, Clinton Correctional
Facility; Joseph Pucelli, Counselor, Clinton Correctional
Facility; W. Allan, Lieutenant, Clinton Correctional
Facility; M. Bosco, Mental Health, Clinton Correctional
Facility; Lee Martin, Corrections Officer, Clinton
Correctional Facility; T. Saunders, Corrections Officer,
Clinton Correctional Facility; Miller, Lieutenant,
Clinton Correctional Facility; E. Bouissey, Corrections
Officer, Clinton Correctional Facility; K. Hicks,
Sergeant, Clinton Correctional Facility (SHU); J.
Trottier, Investigator, Inspector General's Office; Brian
Fischer, Commissioner, New York State Department of
Correctional Services (DOCS); Lucien LeClair, Jr.,
Deputy Commissioner of Correctional Facilities
(DOCS); D. Uhler, Captain Security (SHU); T.
Brousseau, Inmate Grievance Program Supervisor; F.
Henderson, Deputy Superintendent of Security, Elmira
Correctional Facility; M. Kirkpatrick, Lieutenant
(C.E.R.T.) (DOCS); R. Marinaccio (C.E.R.T.) (DOCS);
K. Lebel, Corrections Officer (C.E.R.T.) (DOCS); T.
Doyle, Corrections Officer (C.E.R.T.) (DOCS); Curtis
Drown, Hearing Officer, Clinton Correctional Facility;
and John Doe, Defendants.
No. 9:08–CV–878 (FJS/ATB).

Aug. 29, 2011.
Ralph Buck Phillips, Dannemora, NY, pro se.

Office of the New York, State Attorney General, James B.
McGowan, AAG, James Seaman, AAG, of Counsel,
Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

SCULLIN, Senior District Judge.
**I. INTRODUCTION**
   *1 Plaintiff, an inmate, filed a complaint *pro se*
pursuant to 42 U.S.C. § 1983, alleging twenty-eight causes
of action arising from events at two separate correctional
facilities. Plaintiff's allegations include the use of
excessive force and failure to prevent such conduct,
deprivations of procedural due process, cruel and unusual
punishment, violation of Plaintiff's right to practice his
chosen religion, and retaliation for filing grievances and
raising complaints regarding prison conditions.
   Plaintiff commenced this action on August 18, 2008.
*See* Complaint. Plaintiff filed an amended complaint on
December 8, 2008, and a second amended complaint on
December 19, 2009. *See* Dkt. Nos. 10, 52. In his
second amended complaint, he sought, among other
things, an injunction ordering Defendants to release him
from administrative segregation, or place him under
involuntary protective custody, or continue his
confinement to a special housing unit ("SHU") under
Directive 499 § 301.5. Plaintiff further sought
compensatory damages in the amount of $450,000 and
punitive damages in the amount of $10,000 against each
Defendant. Defendants moved to dismiss Plaintiff's second
amended complaint on September 15, 2009. *See* Dkt. No.
76. Magistrate Judge Peebles issued a Report and
Recommendation on September 27, 2010, in which he
recommended that the Court grant Defendants' motion in
part and deny it in part. *See* Dkt. No. 83, Report and
Recommendation ("Report–Rec.").

   Currently before the Court is Magistrate Judge
Peebles' Report and Recommendation, Plaintiff's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

objections thereto, and Defendants' objections thereto. Specifically, Plaintiff objects to Magistrate Judge Peebles' recommendation that the Court dismiss Plaintiff's fourteenth cause of action, that Defendants Fischer, Roy, and LeClair conspired to hold Plaintiff in administrative segregation. *See* Dkt. No 88, Plaintiff's Objections ("Pltf.Obj.") at 4–8. Defendants object to the fact that Magistrate Judge Peebles did not recommend that the Court dismiss Plaintiff's complaint in its entirety and assert that the Court should dismiss Plaintiff's first, second, third, fourth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fifteenth, nineteenth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, and twenty-seventh causes of action.

## II. BACKGROUND[FN1]

> **FN1.** The Court assumes familiarity with the facts as presented in Magistrate Judge Peebles' Report and Recommendation. *See* Report–Rec.

Plaintiff is a New York State prison inmate who was convicted of aggravated murder, attempted murder, and escape. Plaintiff's convictions for murder and attempted murder arose from his shooting and killing two New York State Troopers following his escape from Erie County jail.[FN2] *People v. Phillips,* 56 A.D.3d 1163, 867 N.Y.S.2d 324 (4th Dep't 2008). After these convictions, Plaintiff entered DOCS custody at the Elmira Correctional Facility ("Elmira") on December 21, 2006. Plaintiff later transferred to the Clinton Correctional Facility ("Clinton"). Plaintiff's complaint includes events that occurred at both Elmira and Clinton.

> **FN2.** Typically, the circumstances underlying an inmate's conviction are not relevant to that inmate's challenges to his conditions of confinement. Here, however, Plaintiff alleges that corrections officers exhibit hostility toward him due to his criminal history. *See generally* Dkt. No. 52, Second Amended Complaint.

## III. DISCUSSION

### A. Standard of review

**\*2** Section 636 of Title 28 of the United States Code states that "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate judge's report and recommendation, a district court judge "make[s] a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Id.* However, where "an objecting " 'party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.' " " *Webster v. Fischer* 694 F.Supp.2d 163, 169 (N.D.N.Y.2010) (quoting *Farid v. Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan v. Von Essen,* 417 F.Supp.2d 672, 679 (S.D.N.Y.2007))).

Courts use a two-step inquiry when deciding a Rule 12(b)(6) motion. First, they isolate the moving party's legal conclusions from its factual allegations. Second, they presume the factual allegations to be true and examine them for plausibility. *See Ashcroft v. Iqbal,* ––– U.S. ––––, ––––  –  ––––, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain more than a "blanket assertion" of entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, *Twombly* added a requirement that a pleading show plausible grounds for relief to the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading " 'sho[w] that the pleader is entitled to relief.' " *Id.* at 557 (quotation omitted). The Supreme Court explained this standard in *Ashcroft,* where it set forth that to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 129 S.Ct. at 1949 (citation omitted).

When deciding a 12(b)(6) motion, a court may "consider documents attached to or incorporated by reference in [a] complaint." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). Even where a " 'plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

court may ... take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quotation omitted).

**B. Administrative segregation and due process claims**[FN3]

> FN3. In the New York State prison system, a regulatory scheme governs the practice of administrative segregation, and it requires that an inmate have a hearing within fourteen days of entering administrative segregation. *See* 7 N.Y.C.R.R. § 301.4(a). The N.Y.C.R.R. also provides for post-segregation review of the inmate's situation every sixty days. *See* 7 N.Y.C.R.R. § 301.4(d). Administrative segregation inmates live in SHU and are subject to most of the disciplinary restrictions of SHU inmates. *See Edmonson v. Coughlin,* 21 F.Supp.2d 242, 248–49 (W.D.N.Y.1998) (footnote omitted).

Plaintiff's fourth, fifth, eleventh, thirteenth, and fourteenth causes of action address his confinement in administrative segregation and the periodic review of this determination.

The Supreme Court has held that the placement of an inmate into administrative segregation may implicate the Fourteenth Amendment where the restraints placed on the inmate constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Second Circuit has held that confinement for a period of less than 101 days does not typically constitute such a hardship. *See Colon v. Howard,* 215 F.3d 227, 232 n. 5 (2d Cir.2000). Although the decision to enter an inmate into administrative segregation is typically one made by prison officials, inmates are entitled to procedural safeguards. To this end, due process requires (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing to present witnesses and evidence; (3) a written statement by the hearing officer explaining his or her decision and reasoning; and (4), in some situations, the right to call

witnesses and present evidence in his defense. *See Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The hearing officer's disciplinary determination must have the support of at least "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 447, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

**\*3** However, the *Sandin* decision eroded some of *Wolff's* safeguards. In *Sandin,* the Supreme Court held that an inmate's confinement in disciplinary segregation may not constitute such a significant deprivation as to implicate a liberty interest. *See Sandin,* 515 U.S. 485–86. To determine when the full array of *Wolff* rights applies, the Court considered (1) whether confinement in disciplinary segregation reflected the conditions of other forms of discretionary confinement; (2) whether the decision to place an inmate in administrative segregation presented a major disruption to his environment; and (3) whether the decision affected the duration of the inmate's sentence. *See id* at 486–87.

Further, "where a prisoner's placement in restrictive confinement has both a punitive *and* an administrative, non-punitive basis, the placement decision will not be found to have impaired a protected liberty interest." *Rosenberg v. Meese,* 622 F.Supp. 1451, 1469 (S.D.N.Y.1985) (citing *Sher v. Coughlin,* 739 F.2d 77, 81–82 (2d Cir.1984)) (other citation omitted).

Regarding the hearing itself, "inmates have a right to 'be judged by a fair and impartial hearing officer.' " *Kingwood v. Rourke,* No. 9:97CV1906, 2002 WL 31309240, \*4 (N.D.N.Y. Sept.3, 2002) (quotation omitted). As a consequence, the participation of an insufficiently impartial hearing officer may infringe on a plaintiff's due process rights. *See Wolff,* 418 U.S. at 571. However, the mere "[p]reparation of an [administrative segregation] recommendation is not a basis for a § 1983 claim[;]" rather, a prisoner's due process rights remain intact so long as he has an opportunity to rebut the charges against him at a hearing. *Edmonson,* 21 F.Supp.2d at 254–55 (citations omitted).

Here, Plaintiff's fourth cause of action implicates his due process rights. First, Plaintiff indicates that he experienced "years" of hardship because as a result of his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

hearing before Defendant Drown, Plaintiff lived in administrative segregation. *See* Second Amended Complaint at 37. Although this is a vague statement, it indicates that Plaintiff lived in administrative segregation for more than 101 days. Moreover, Plaintiff's allegation against Defendant Drown, taken as true, is sufficient to demonstrate a level of predisposition against Plaintiff on the part of Defendant Drown. Plaintiff is entitled to an impartial hearing officer, and Defendant Drown's alleged statements indicate a lack of impartiality. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's fourth cause of action.[FN4]

> FN4. It should be noted that Plaintiff does not object to Magistrate Judge Peebles' finding that the hearing process likely met the stringent requirements of *Wolff. See* Report–Rec. at 12–13.

As to Plaintiff's fifth cause of action, against Defendant Seyfert, Plaintiff merely alleged that Defendant Seyfert filed an administrative segregation recommendation based upon false and misleading statements. However, since the preparation of an administrative segregation recommendation cannot serve as the basis of a § 1983 claim, and since Plaintiff had the opportunity to rebut these allegedly false charges at a hearing, the Court adopts Magistrate Judge Peebles' Report and Recommendation, finds that Plaintiff has not stated a viable claim, and grants Defendants' motion to dismiss Plaintiff's fifth cause of action.

**\*4** Regarding Plaintiff's eleventh and thirteenth causes of action, Plaintiff does not deny that Defendants conducted periodic post-segregation reviews. Instead, Plaintiff makes conclusory allegations that such reviews were "sham[s]" and "mere formalities." *See* Second Amended Complaint at ¶¶ 22, 24. However, without allegations to indicate actual bias, Plaintiff's claims are implausible and insufficient to satisfy the *Iqbal* standard. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's eleventh and thirteenth causes of action.

### C. Allegedly false misbehavior report

To state a claim for retaliation regarding the filing of a false misbehavior report, a plaintiff must allege that a defendant not only filed the report but that his motivation to do so relates to the plaintiff having engaged in protected activity. *See Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). When examining a complaint for allegations of retaliatory animus, courts typically look for "[t]ypes of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation[, such as] ... temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Barclay v. N.Y.,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007) (citations omitted).

Here, Plaintiff fails to allege any facts to support a claim of retaliation. First, Plaintiff claims that Defendants filed these allegedly false misbehavior reports to retaliate against him for his murder of two New York State Troopers. *See* Second Amended Complaint at ¶ 30. Even assuming this is true, Plaintiff's killing of two police officers is criminal conduct, and it is obviously not protected by the constitution or by statute. In addition, the misbehavior report was not false. Plaintiff admitted performing the conduct which resulted in the misbehavior report. *See* Dkt. No. 67, Exhibit "2" attached thereto, McGowan Declaration. Accordingly, the Court adopts this portion of Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's seventeenth cause of action.

### D. Access to the courts

Inmates have a well-established constitutional right to meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court has held that to state a claim for denial of access, an inmate "must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). A mere delay in working on a legal action or communicating with the court does not constitute a constitutional violation. *See Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) (citations omitted).

Plaintiff's second amended complaint states that

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Defendants Racette and Jarvis interfered with his access to the courts when they denied him permission to receive a contact visit on July 4, 2007, from a paralegal, Wendy Gambles. *See* Second Amended Complaint at ¶ 23. Plaintiff alleged that this deprived him of the ability to give legal documents to Ms. Gambles, which interfered with his ability to consolidate a pending appeal with a potential appeal. *See id.*

*\*5* On this issue, the Court respectfully disagrees with Magistrate Judge Peebles' Report and Recommendation. Plaintiff alleges that his prejudice took the form of a delayed ability to consolidate a pending appeal with a potential appeal. Although this may have caused Plaintiff some inconvenience, Defendants did not take any action that actually prevented Plaintiff from pursuing either of these appeals, one of which was not yet at the appellate stage. Moreover, Plaintiff has not produced any evidence indicating that he experienced an adverse judicial decision in either of these actions because of the alleged denial of access to courts. In fact, Plaintiff ultimately pursued these appeals, and lost. *See People v. Phillips,* 56 A.D.3d 1163, 867 N.Y.S.2d 324 (4th Dep't 2008); *People v. Phillips,* 56 A.D.3d 1168, 867 N.Y.S.2d 633 (4th Dep't 2008). Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twelfth cause of action.

**E. Excessive force/Failure to intervene**

*1. Excessive force*

An Eighth Amendment claim for excessive force has an objective and a subjective element. *See Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). The objective element focuses on the effect of a defendant's conduct, while the subjective element focuses on the defendant's motive. *See id.*

The objective element is "contextual and responsive to 'contemporary standards of decency.' " *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quotation omitted). The Second Circuit has held that, "[w]here a prison official acts 'maliciously and sadistically,' 'contemporary standards of decency always are violated.' " *Abreu v. Nicholls,* 368 Fed. Appx. 191, 193 (2d Cir.2010) (quoting *Wright* 554 F.3d at 268–69). Thus, "[i]n assessing [the objective] component, the court must ask whether 'the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.' " *Wright,* 554 F.3d at 268 (quotation omitted).

The subjective element considers whether the prison official acted wantonly. Regarding this element, "[t]he 'core judicial inquiry' ... [is] ... 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins v. Gaddy,* ––– U.S. ––––, ––––, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (quoting [ *Hudson v. McMillan,*] 503 U.S. [1,] 7, 112 S.Ct. 995, 117 L.Ed.2d 156 [ (1992) ] ) (other citation omitted). Courts may consider the extent of the injury that the plaintiff inmate suffered as an indication of whether the amount of force was reasonably necessary, but a plaintiff need not sustain a serious injury to maintain an excessive force claim. *See id.*

*2. Failure to intervene*

A corrections officer who witnesses an assault upon an inmate may be responsible for any resulting constitutional deprivation. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) (citations omitted). In addition, law enforcement officials are under an affirmative duty to intervene where other officers violate the constitutional rights of an individual in their presence. *See Mowry v. Noone,* No. 02–CV–6257, 2004 WL 2202645, \*4 (W.D.N.Y. Sept. 30, 2004) (citations omitted); *see also Curley v. Vill. of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) (stating that "[f]ailure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be" (citations omitted)).

*\*6* To state a claim for failure to intervene, a plaintiff must show that someone other than the defendant engaged in the use of excessive force and that the defendant (1) had actual knowledge of this use of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) intentionally refused or failed to take reasonable measures to end the use of excessive force. *See Curley,* 268 F.3d at 72. Mere inattention does not constitute deliberate indifference. *See Cicio v. Graham,* No. 9:08–CV–534, 2010 WL 980272, \* 13

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

(N.D.N.Y. Mar. 15, 2010) (citation omitted).

Courts have found that, where officers assault an individual so quickly that a fellow officer does not have a realistic opportunity to intercede, the witness officer is not liable for the excessive force. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988); *see also Cusamano v. Sobek,* 604 F.Supp.2d 416, 428 n. 9 (N.D.N.Y.2009) (holding that where an attack is "sudden and brief," witnessing officers do not have a realistic opportunity to prevent it (citations omitted)); *Wright v. City of Waterbury,* No. 3:07–CV–306, 2011 WL 1106217, *6 (D.Conn. Mar. 23, 2011)* (holding that an officer who witnessed an attack that began without warning, and lasted two or three seconds, did not have a reasonable opportunity to intercede).

**3. Plaintiff's causes of action**

Plaintiff's first cause of action alleges that Defendants Kirkpatrick, Marinaccio, Lebel, and Doyle assaulted him upon his arrival at Elmira. *See* Second Amended Complaint at ¶¶ 6–8. Specifically, Plaintiff asserts that, after Defendants frisked him and attired him in prison garb, Defendant Lebel grabbed him by the throat and stated, "Your days of media glory are over," and then pushed him against a wall, causing his head to slam into the wall with some force. *See id.* at ¶ 6. Defendant Lebel then kept Plaintiff pinned to the wall as Defendant Doyle struck Plaintiff's legs with the heel of his right hand. *See id.* at ¶ 7. Only when Defendant Henderson, the Deputy Superintendent of Security, arrived on the scene did Defendants cease this conduct. *See id.* at ¶ 8.

Plaintiff's third cause of action cites the same facts contained in paragraphs six through eight of the second amended complaint and alleges that Defendants Lebel and Doyle assaulted Plaintiff with the intent to inflict physical harm.

Plaintiff's second cause of action also cites the same facts and alleges that Defendants Kirkpatrick, Marinaccio, and Henderson watched the assault upon Plaintiff and failed to intervene.

Regarding the excessive force causes of action, Plaintiff's allegations meet both elements of the excessive force inquiry. The statement that Defendant Lebel made,

assuming it is true, evidences a malicious intent. As to the objective prong, such a malicious intent violates contemporary standards of decency. As to the subjective prong, Defendant Lebel's statement indicates that he was not acting in good faith to maintain order but that he wanted merely to inflict pain on Plaintiff. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's first and third causes of action.

**\*7** In light of the length of the alleged attack, Plaintiff's second cause of action is weaker than his claims of excessive force. Plaintiff alleged that only a few seconds elapsed between the commencement of the attack and Defendant Henderson's arrival on the scene. *See* Second Amended Complaint at ¶ 8. Upon seeing the attack, Defendant Henderson told Defendants Doyle and Lebel to "knock it off." *See id.* Defendants Doyle and Lebel continued the attack briefly, at which point Defendant Henderson said more forcefully, "knock that shit off!" *See id.* The attack had only lasted for a few seconds when Defendant Henderson arrived, briefly assessed the situation, and told Defendants to cease their actions. Such action upon arriving at the scene of a short and sudden attack is reasonable. *See O'Neill,* 839 F.2d at 11; *see also Cusamano,* 604 F.Supp.2d at 428–29; *Wright,* 2011 WL 1106217, at *6.* Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendant Henderson.

However, because Plaintiff alleges that Defendants Kirkpatrick and Marinaccio witnessed the entire series of events, from the frisk through the entire assault, it is plausible that they had a reasonable opportunity to intervene. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio.

**F. Religious exercise**

Under the First Amendment, inmates have the right to the free exercise of their chosen religion. *See Ford v.*

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

McGinnis, 352 F.3d 582, 588 (2d Cir.2003) (citing Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). However, this right is subject to legitimate penal concerns. See Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.1990). The Supreme Court set forth a framework of analysis for the free exercise claims of inmates in O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and Turner v. Safley, 482 U.S. 78, 84–87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This framework relies on analyzing the reasonableness of prison-imposed restrictions on religious exercise, and it is less restrictive than tests that the Court has applied to the alleged infringement of other fundamental constitutional rights. See O'Lone, 482 U.S. at 349 (citation omitted).

In O'Lone, the Supreme Court held that a regulation that burdens a protected right will withstand a constitutional challenge if that regulation is reasonably related to legitimate penological interests. See id. (quoting Turner, 482 U.S., at 89, 107 S.Ct., at 2261) (footnote omitted). The same standard governs a decision to deny an individual inmate the ability to engage in a religious exercise. See Salahuddin v. Goord, 467 F.3d 263, 274 n. 4 (2d Cir.2006) (citation omitted).[FN5]

> FN5. The Second Circuit has created a three-step process to analyze a free-exercise claim, stating that "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." Farid v. Smith, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted). The third prong of this test is at issue in the instant case; and, therefore, a "reasonably-related" analysis is appropriate here.

*8 The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact of accommodating that right on guards, inmates, and prison resources; and the exercise of alternative means

of facilitating the exercise of that right that only have a de minimis adverse effect on the valid penological interests. See King v. Bennett, No. 02–CV–349Sr, 2007 WL 1017102, *4 (W.D.N.Y. Mar.30, 2007) (citing Salahuddin, 467 F.3d at 274) (other citation omitted). Once prison officials identify a legitimate penal interest to justify their actions, the burden shifts to the plaintiff to prove that the defendant's concerns are irrational. See Ford, 352 F.3d at 595.

Plaintiff's seventh cause of action alleges that Defendant Racette deprived Plaintiff of the ability to participate in his Native American religious ceremonies. The Second Circuit has held that, to prevail on a motion to dismiss, defendant prison officials must provide reasons for any decisions to deny inmates access to religious services. See Young v. Coughlin, 866 F.2d 567, 570 (2d Cir.1989). Defendants have never presented a reason for the alleged delay. It remains unclear for how long Plaintiff was unable to attend religious services or if he has ever been permitted to so attend. Affording Plaintiff every reasonable inference, he has stated a plausible claim for a First Amendment violation, a claim which Defendants have not rebutted directly. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's seventh cause of action.

Plaintiff's eighth cause of action alleges that Defendant Friedman hindered Plaintiff's ability to freely practice his religion when he ignored Plaintiff's requests to order herbs for the purposes of smudging.[FN6] See Second Amended Complaint at ¶ 16. Plaintiff eventually received the herbs. See id. The Northern District has found that prison officials do not curtail an inmate's First Amendment rights where the inmate "wait[s] longer than he [thinks is] necessary" to receive religious materials. Miller v. Fischer, No. 9:07–CV–942, 2009 WL 7760224, *8 (N.D.N.Y. Sept.22, 2009) (citation omitted). Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's eighth cause of action.

> FN6. The practice of smudging involves burning sacred herbs before and during the incantation of prayers.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Plaintiff's ninth cause of action alleges that, in January of 2008, he contacted Defendant S.E. Racette regarding the purchase of either matches or a lighter so that he could light the herbs for the purposes of smudging. *See* Second Amended Complaint. Plaintiff further alleges that Defendant Hicks deprived Plaintiff of the ability to practice his religion when he confiscated the cigarette lighter that Plaintiff had been given to burn and smudge herbs. *See* Second Amended Complaint at ¶¶ 17–18, 41.

**\*9** Given Plaintiff's history with explosives, the state has a legitimate penological interest in denying him access to a lighter. On October 1, 2007, a hearing officer found Plaintiff guilty of trying to introduce explosives to the prison facility, among other charges.[FN7] *See* Dkt. No. 46–5, Exhibit "D" attached thereto, Tier III hearing decision. An Article 78 judge upheld this ruling on appeal. *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

> FN7. This situation arose from a letter that Plaintiff attempted to send to Wendy Gambles. *See* Dkt. No. 46–5, Exhibit "C" attached thereto, Tier III Hearing Transcript. In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M–203 (a type of grenade launcher), and a bottle containing bird flu taped to an M–100 (a type of explosive device) to facilitate his escape from prison. *See* Dkt No. 46–5, Exhibit "B," Plaintiff's letter to Wendy Gambles.

Prison officials act in accordance with legitimate penological interests where they deny an inmate religious items because that particular inmate's history indicates that he may put the religious items to a destructive use. *See Miller v. Fischer,* No. 07–CV–942, 2011 WL 1100094 (N.D.N.Y. Mar. 24, 2011) (adopting a Report and Recommendation that found that the defendants possessed a legitimate penological interest and recommended that the court deny the plaintiff's First Amendment cause of action where the plaintiff, who had a history of marijuana use in prison, wished to obtain incense, a marijuana masking agent, for religious purposes). Accordingly, the Court respectfully rejects Magistrate Judge Peebles'

recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's ninth cause of action.

**G. Deliberate medical indifference**

To state a claim for deliberate medical indifference successfully, a plaintiff must demonstrate that the defendant deliberately ignored a serious medical need. *See Wallace v. Dawson,* 302 Fed. Appx. 52, 54 (2d Cir.2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Such a statement involves meeting an objective " 'medical need' " element and a subjective " 'deliberate indifference' element." *Lopez v. Fischer,* No. 07CV0365, 2011 WL 1233107, \*9 (W.D.N.Y. Mar.30, 2011) (citing *Smith v. Carpenter,* 316 F.3d 178, 183 (2d Cir.2003)).

A plaintiff meets the objective element where " 'the alleged deprivation [is] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.' " *Wallace,* 302 Fed. Appx. at 54 (quoting [ *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ] ). Where an inmate plaintiff alleges that prison medical personnel provided care but that the care was inadequate, the court's inquiry focuses on the alleged inadequacy, rather than the seriousness of the plaintiff's condition. *See Williams v. Fischer,* No, 9:09–CV–1258, 2011 WL 1812527, \*4 (N.D.N.Y. Feb.9, 2011) (citing *Salhuddin [v. Goord* ], 467 F.3d 263,] 280 [ (2d Cir.2006) ] ).

To meet the subjective element, a plaintiff must allege that " 'the charged official ... act[ed] with a sufficiently culpable state of mind,' " which has been held to mean " 'something more than mere negligence' and akin to criminal recklessness." *Wallace,* 302 Fed. Appx. at 54 (citing [ *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ] ). Regarding the subjective element, "a prisoner's disagreement over the course of treatment rendered by prison medical personnel is not actionable under section 1983." *Williams,* 2011 WL 1812527, at \*5 (citing *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)). The Northern District has applied the reasoning from *Hyde* to instances where an inmate plaintiff received different pain medication than he requested. *See Ramos v. Johnson,* No. 09–CV–0899, 2011 WL 817526, \*9–\*10 (N.D.N.Y. Feb. 7, 2011). In *Ramos,* the Northern District held that where prison medical

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

personnel failed to honor the plaintiff's choice of pain medication,[FN8] the plaintiff did not have a basis for claiming an Eighth Amendment violation for deliberate medical indifference. *See id.*

> FN8. In *Ramos*, the plaintiff requested Tylenol; but prison medical personnel were concerned about his elevated liver enzyme levels and, to avoid possible liver damage, tried to give the plaintiff a combination of Neurontin and Ultram. *See Ramos,* 2011 WL 817526, at *9.

**\*10** Here, Plaintiff alleged that he was given a different pain medication than the one he requested. Plaintiff does not allege that he was refused medical care; he merely alleges that he received inadequate care. At this point, such an alleged inadequacy is sufficient to satisfy the objective prong of the medical indifference test. Plaintiff's allegations also satisfy the subjective prong, albeit barely. Plaintiff's request for Neurontin instead of Ibuprofen may appear to be a simple disagreement regarding the appropriate course of action for treating his back pain. However, Plaintiff alleged that he requested the stronger Neurontin and that prison medical personnel rebuffed him over the course of several months. Although Defendants treated Plaintiff, their lack of response to Plaintiff's continued complaints of unabated pain could constitute medical indifference. *See Morrison v. Mamis,* No. 08 Civ. 4302, 2008 WL 5451639, *8 (S.D.N.Y. Dec. 18, 2008)* (holding that a prisoner was unable to show deliberate medical indifference where doctors responded to the prisoner's complaints). Perhaps, by the summary judgment stage, Defendants will be able to show that they possessed a medical purpose for continuing to administer Ibuprofen to Plaintiff; but, for now, Plaintiff's allegations are barely plausible.

Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's tenth cause of action.

**H. Retaliation**

Inmates may state a retaliation claim under 42 U.S.C. § 1983 where prison officials, motivated by the inmate's exercise of a right protected by the Constitution, take adverse action against that inmate. *See Franco,* 854 F.2d at 589–90. However, the Second Circuit has repeatedly cautioned that, since it is easy for inmates to make claims attributing adverse action to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To state a claim for retaliatory conduct under § 1983, a plaintiff must allege that (1) he engaged in protected conduct; (2) the defendants took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 284–86, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quotation omitted). Where the plaintiff's allegations meet this standard, the defendants must demonstrate that they would have taken the complained-of action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287.

The Second Circuit has instructed that courts should consider whether the actions that the defendants took would deter a similarly situated individual of ordinary firmness from complaining about prison conditions. *See Gill,* 389 F.3d at 381; *see also Espinal v. Goord,* 558 F.3d 119, 19 n. 7 (2d Cir.2009); *Lugo v. Van Orden,* No. 9:07–CV–879, 2008 WL 2884925, *4–*5 (N.D.N.Y. July 23, 2008). The Second Circuit has also warned litigants that "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

**\*11** Where a significant period of time has elapsed between an inmate's retaliated-for behavior and the actual alleged act of retaliation, courts typically find that this lack of temporal proximity precludes a plaintiff from supporting a retaliation claim. *See Johnson v. Conn., Dep't of Corr.,* 392 F.Supp.2d 326, 340–41 (D.Conn.2005) (finding that, where the defendants took the allegedly retaliatory action seven months and ten months after the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

plaintiff filed a complaint, the plaintiff could not show a causal link between the two events).

Regarding cell searches, courts have ruled that, because "[r]andom cell searches ... are a necessary and routine part of prison life[,] ... [e]ven cell searches 'conducted solely for harassment' do not implicate the Constitution [.]" *Henry v. Annetts,* No. 08 Civ. 286, 2010 WL 3220332, *2 (S.D.N.Y. July 22, 2010) (quotation omitted). Therefore, an inmate plaintiff " 'cannot base a retaliation claim against [a group of] defendant[s] based on a cell search.' " *Id.* (quoting *Bumpus v. Canfield,* 495 F.Supp.2d 316, 327 (W.D.N.Y.2007)). However, "the confiscation or destruction of property taken at the time of ... searches" may constitute a retaliatory action. *Keesh v. Goord,* No. 04–CV–271A, 2007 WL 2903682, *8 (W.D.N.Y. Oct.1, 2007) (citation omitted).

Housing transfers may also support a claim for retaliatory action. *See Holmes v. Grant,* No. 03 Civ. 3426, 2006 WL 851753, * 15 (S .D.N.Y. Mar. 31, 2006) (holding that a transfer to SHU, where the plaintiff alleged to be noisy and unhygienic, could serve as the basis for a retaliation claim).

Plaintiff's twenty-second cause of action alleges that, on January 22, 2008, Defendants Allan and Bouissey, under the guise of a cell search, ransacked his cell and issued him a fraudulent misbehavior report for possessing "gang material" and "contraband ." *See* Second Amended Complaint. Plaintiff alleges that Defendants did so in order to retaliate against him for filing grievances related to an alleged assault. *See id.* at ¶ 35. The only assault that Plaintiff alleges in his complaint occurred on December 21, 2006, at the Elmira Correctional Facility. *See id.* at ¶¶ 6–8. Plaintiff filed a second grievance regarding this alleged assault on March 1, 2007.[FN9] *See* Dkt. No. 1, Exhibit "2" attached thereto, at 87, March 1, 2007 Grievance. The nearly eleven-month gap between the filing of Plaintiff's grievance and the search of his cell constitutes such a significant temporal gap that causation between the two events cannot be established. *See Johnson,* 392 F.Supp.2d at 341. Plaintiff's allegations also cannot support a causal connection because the December 21, 2006 assault did not involve Defendants Allan or Bouissey, the Defendants who searched Plaintiff's cell. *See*

Second Amended Complaint at ¶ 35. Finally, Plaintiff alleges no facts to indicate that Defendants Allan and Bouissey had a retaliatory motive to search his cell. His second amended complaint merely attributes such a motive to Defendants Allan and Bouissey, and it relates a conversation between Plaintiff and another officer that indicated that Plaintiff and Defendant Allan did not get along. *See id.* However, Plaintiff makes no allegations which indicate that Plaintiff's filing grievances related to the assault was the cause of this animosity between him and Defendant Allan. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this respect and grants Defendants' motion to dismiss Plaintiff's twenty-second cause of action.

> FN9. According to this grievance, Plaintiff had attempted to file a grievance earlier, but that document was never filed. *See* March 1, 2007 Grievance.

**\*12** Plaintiff's twenty-third cause of action alleges that, on January 28, 2008, Defendants Allan and Trottier ransacked his cell and took newspapers and a legal document,[FN10] under the guise of a cell search, in retaliation for his filing complaints related to the December 21, 2006 assault. *See* Second Amended Complaint. As with Plaintiff's twenty-second cause of action, this claim fails for lack of a causal connection. The large temporal gap between the two incidents, the fact that each incident involved different defendants, and the fact that Plaintiff alleges only his belief of causation, as opposed to facts, show that the two events are not sufficiently related to support a claim for retaliation. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-third cause of action.

> FN10. Plaintiff does not allege denial of access to the courts in this cause of action; nevertheless, this cause of action would not support such a claim. Plaintiff does not identify what type of document Defendants removed from his cell, nor does he allege that the removal of this document hindered his ability to pursue a nonfrivolous legal claim. *See Allah v. Greiner,* No. 03 Civ.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

3789, 2007 WL 1280657, *6 (W.D.N.Y. Apr. 30, 2007).

Plaintiff's twenty-sixth cause of action alleges that Defendants Uhler and Allan intentionally changed Plaintiff's cell on a number of occasions as a means of retaliation. *See* Second Amended Complaint. Plaintiff does not discuss why Defendants Uhler and Allan might have been retaliating against him. Plaintiff asserts that the cells to which he relocated were noisy and unsanitary. *See id.* at ¶ 39. Since housing transfers can support a claim for retaliation and since the actions for which Defendants were allegedly retaliating are unclear, dismissing this claim at this stage would be premature. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's twenty-sixth cause of action.

Plaintiff's twenty-seventh cause of action alleges that Defendant Hicks, retaliating against Plaintiff for filing grievances, confiscated a cigarette lighter that Plaintiff had previously been allowed to use for the purposes of smudging. *See* Second Amended Complaint at ¶ 41. However, these allegations also lack a causal connection. Plaintiff does not allege that he had filed grievances against Defendant Hicks, nor does he allege any temporal proximity between the grievances he filed and the confiscation of the lighter. Plaintiff alleges that, when he asked Defendant Hicks why he was removing the lighter, Defendant Hicks said, "because I can." *See* Second Amended Complaint at ¶ 41. Although this statement may indicate that the two men did not get along particularly well, it does not suggest that Defendant Hicks was interested in hindering Plaintiff's religious practice in order to punish Plaintiff for filing grievances about the conditions of his confinement. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-seventh cause of action.

**I. Property loss claim**

Where adequate post-deprivation remedies exist, confiscation of an inmate's personal property will not constitute a due process violation. *See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393*

(1984). Such remedies are available to inmates in New York State, *see* 7 N.Y.C .R.R. § 1700.3; and the Second Circuit has held that these remedies are adequate and sufficient to preclude a prisoner from maintaining a § 1983 action asserting a loss of due process rights based upon the confiscation of personal property, *see Love v. Coughlin, 714 F.2d 207, 208–09 (2d Cir.1983)* (*per curiam* ). Even where an inmate suffers a " 'random and unauthorized' [loss of property], courts have found that 'New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion....' " *Cantave v. N.Y. City Police Officers,* No. 09–CV2226, 2011 WL 1239895, *7 (E.D.N.Y. Mar.28, 2011) (quoting *Dove v. City of New York,* No. 99 CIV. 3020DC, 2000 WL 342682, at *3 (S.D.N.Y. Mar.30, 2000)) (other citations omitted).

**\*13** New York State has ample post-deprivation remedies for inmates who intend to assert a claim based on the loss of personal property. Here, there is no evidence that Plaintiff pursued these remedies. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grant Defendants' motion to dismiss Plaintiff's eighteenth cause of action.

**J. Retaliatory mail watch**

The First Amendment guarantees prisoners the right, albeit not an unlimited right, " 'to the free flow of incoming and outgoing mail[ .]' " *LeBron v. Swaitek,* No. 9:05–CV–172, 2007 WL 3254373, *6 (N.D.N.Y. Nov. 2, 2007) (quoting *Davis [v. Goord,* 320 F.3d 346,] 351 [ (2d Cir.2003)] ) ) (other citation omitted). However, this right may be abridged without constitutional violation where prison officials have a legitimate penological interest in monitoring the mail. *See United States v. Workman, 80 F.3d 688, 699 (2d Cir.1996). Since actions taken toward mail must align with legitimate penological interests, such as prison safety and order, "[c]ourts have consistently afforded greater protection ... to outgoing mail than to incoming mail." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (citations omitted). Nevertheless, the Second Circuit has held that " 'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman,* 80 F.3d at 698 (quotation and other citation omitted). The Second Circuit has further held that where prison officials suspect that an inmate

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

wishes to conduct disruptive activities in prison, monitoring that prisoner's mail does not constitute a First Amendment violation. *See id.* at 699 (finding no violation where prison officials based their monitoring of inmate's mail on overheard telephone conversations in which the inmate conducted drug trades and discussed the commission of contract murders).

Here, Plaintiff has alleged that Defendant Allan tampered with his outgoing and incoming mail, causing strained relations between Plaintiff and the friends and relatives with whom he was in contact by mail. *See* Second Amended Complaint at ¶ 37. Plaintiff discovered that Defendants were monitoring his outgoing mail when they held a Tier III misconduct hearing regarding a letter that he attempted to send to Wendy Gambles. *See* Dkt. No. 46–5, Exhibit "C" attached thereto, Tier III Hearing Transcript. In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M–203 (a type of grenade launcher), and a bottle containing bird flu taped to an M–100 (a type of explosive device) to facilitate his escape from prison. At his hearing, Plaintiff claimed he wrote this letter to test the prison system and determine whether prison officials were monitoring his mail. *See* Dkt No. 46–5, Exhibit "B" attached thereto, Plaintiff's letter to Wendy Gambles. In the letter, Plaintiff makes reference to the possibility that prison officials are reading his mail. *See id.*

**\*14** The hearing officer found Plaintiff guilty of violent conduct, attempting to introduce explosives into the prison, soliciting items to be smuggled into prison, harassment, and threatening behavior. *See* Dkt. No. 46–5, Exhibit "D" attached thereto, Tier III hearing decision. Plaintiff commenced an Article 78 proceeding to review the Tier III decision; the Article 78 Judge affirmed. *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

Before sending this letter, Plaintiff had a history of escape from prison. He had made several comments regarding escape to the effect that he had nothing to lose by attempting escape again in the future. *See* Dkt. No. 76, Exhibit "8" attached thereto. In addition, Plaintiff had a history of contacting friends outside of prison to try to help him escape. In 1992, while incarcerated in the Chautauqua County Jail, Plaintiff conspired with his

girlfriend to smuggle a handcuff key to him in order to facilitate his escape. *See id.*

Given Plaintiff's history of escape, his history of soliciting outside help to facilitate escape, and his comments regarding future escape, monitoring Plaintiff's mail appears to meet a legitimate penological interest of maintaining order and ensuring that Plaintiff remain in prison. Therefore, the Court finds that Defendants examined Plaintiff's mail pursuant to a legitimate penological purpose. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-fourth cause of action.

**K. Conditions of confinement**

The Eighth Amendment prohibits inhumane conditions of confinement. *See* Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001). Just like medical indifference claims, claims for unconstitutionally inhumane conditions of confinement must satisfy an objective and a subjective requirement. First, the conditions must be serious from an objective point of view; and the plaintiff must demonstrate that, subjectively, prison officials acted with deliberate indifference. *See* Leach v. Dufrain, 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (quotation omitted). Deliberate indifference exists where an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

The Second Circuit has held that allegations of unsanitary conditions may support an Eighth Amendment claim. *See* Gaston, 249 F.3d at 165–66 (denying defendants' motion for summary judgment as to plaintiff inmate's claims of frigid temperatures, rodent infestation in his cell and collections of human waste and sewage water directly in front of his cell); Wright v. McMann, 460 F.2d 126, 128–29 (2d Cir.1972) (reversing the district court's decision to dismiss the plaintiff's claims that arose from spending eleven days, and, at another time, twenty-one days, naked or nearly naked, in a cold cell with only a toilet and washbowl and no hygienic materials or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

bedding).

**\*15** Courts have ruled that, although the denial of hygiene products for an extended period of time may support a plausible Eighth Amendment claim for the denial of basic necessities, a two-week long deprivation is not sufficient. *See Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003). Courts have also held that *de minimis* deprivations will rarely support a finding of an Eighth Amendment violation. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000); *Govan v. Campbell,* 289 F.Supp.2d 289, 299 (N.D.N.Y.2003).

Given the rulings in *Gaston* and *Wright,* Plaintiff has plausibly alleged Eighth Amendment violations on the part of Defendants Allan and Bosco, even though he was only subjected to these conditions for three days. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's fifteenth cause of action.

Regarding Plaintiff's nineteenth cause of action, Magistrate Judge Peebles characterized this claim as a retaliation claim, as opposed to an Eighth Amendment claim, because Plaintiff's cause of action referred to paragraph thirty-two of the complaint, wherein Plaintiff described his move to a cell traditionally reserved for assaultive and disruptive inmates. *See* Report–Rec. at 49. Plaintiff alleged that the cell had feces-smeared walls and was located near mentally disturbed inmates who created continuous noise and further unsanitary conditions. *See id.* However, the essence of this cause of action is Plaintiff's contention that Defendant Allan transferred him to this cell as a retaliatory measure for complaints that Plaintiff had made about the conditions at Clinton. *See id.* Upon review, paragraph thirty-two of the complaint appears to be primarily concerned with the retaliatory motive behind the transfer. The Second Circuit has ruled that cell changes may form the basis of a retaliation claim. *See Holmes,* 2006 WL 851753, at \* 15. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's nineteenth cause of action.

As to Plaintiff's twenty-first cause of action, given the findings in *Trammell,* Plaintiff's allegation that he received

new hygiene products every two weeks is insufficient to state a plausible Eighth Amendment cause of action. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twenty-first cause of action.

Regarding Plaintiff's twenty-fifth cause of action, Plaintiff's allegation that Defendants failed to fix malfunctioning water pipes, resulting in noise which interrupted his sleep, fails to meet the objective element of an Eighth Amendment inquiry. Although undoubtedly annoying, such conditions do not evince a serious risk of harm and do not rise to the level of an Eighth Amendment violation. *See, e.g., Mabery v. Keane,* No. 95 Civ. 1093, 1998 WL 148386, \*8 (S.D.N.Y. Mar.30, 1998) (finding that an inmate's allegation that he had to breathe fumes from nearby running raw sewage was insufficient to state an Eighth Amendment cause of action; *Giglieri v. New York City Dep't of Corr.,* No. 95 CIV. 6853, 1997 WL 419250, \*2, \*4 (S.D.N.Y. July 25, 1997) (finding that exposure to secondhand smoke is not a sufficient basis for an Eighth Amendment claim). Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twenty-fifth cause of action.

**L. Procedural due process**

**\*16** To maintain a claim for procedural due process deprivation, an inmate must allege that prison officials deprived him of a liberty or property interest. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (quotation omitted).

Here, Plaintiff alleged that he sustained a loss of procedural due process when Defendant Miller conducted a Tier II hearing in Plaintiff's absence. The maximum period of disciplinary SHU confinement that officials may impose after conducting a Tier II hearing is thirty days. *See* 7 N.Y.C.R.R. § 253.7(a)(1)(iii). Absent the pleading of special circumstances that would constitute a significant and atypical deprivation in relation to the ordinary incidents of prison life, a period of disciplinary SHU confinement of thirty days or less does not represent a liberty interest under the Due Process Clause of the Fourteenth Amendment. *See Palmer v. Richards,* 364 F.3d 60, 65–66 (2d Cir.2004) (noting that "we have affirmed

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short-less than ... 30 days"); *Rodriguez v. McGinnis,* 1 F.Supp.2d 244, 248 (S.D.N.Y.1998) (holding that " '[t]he decisions of the Second Circuit are unanimous that keeplock ... confinement of 30 days or less in New York prisons is not "atypical or significant hardship" under *Sandin' "* (quotation and other citations omitted)).

Here, Plaintiff's complaint lacks any allegation regarding the penalty imposed as a result of the Tier II hearing, nor does it include allegations demonstrating any conditions he may have endured due to such punishment. Again, the Tier II hearing, by New York State regulation, cannot impose a penalty that would implicate Plaintiff's due process rights under the Fourteenth Amendment. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twentieth cause of action.

**M. Personal involvement of supervisory officials**

The " ' "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983 [.]" ' " *Johnson v. Wright,* 234 F.Supp.2d 352, 362–63 (S.D.N.Y.2002) (quotation omitted). To prevail on a § 1983 cause of action against an individual, a plaintiff must demonstrate the existence of a tangible connection between the constitutional violation alleged and the particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

To sufficiently allege personal involvement on the part of an individual defendant who is a supervisor, a plaintiff must demonstrate that

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation ... failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the alleged victim] by failing to act on information indicating that unconstitutional acts were occurring.

**\*17** *JG & PG v. Card,* No. 08 Civ. 5668, 2009 WL 2986640, \*7 (S.D.N.Y. Sept. 17, 2009) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

Each of the Defendants named in this cause of action serves DOCS in a supervisory capacity, and they are all named only in the fourteenth cause of action. In this cause of action, Plaintiff alleges in conclusory terms that these three Defendants conspired to keep Plaintiff in administrative segregation to punish him for the crimes of his conviction. *See* Second Amended Complaint. Plaintiff expands on this slightly in the body of his complaint, stating that he "has continually petitioned" these Defendants regarding his confinement in Administrative Segregation. *See id.* at ¶ 25. Even if true, these allegations are insufficient to establish the requisite level of personal involvement on the part of Defendants Fischer, Roy, and LeClair. *See Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, \*4 (S.D.N.Y. Apr.19, 1995) (holding that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations" (citations omitted)).

Moreover, to the extent that Plaintiff's allegation that these Defendants "conspired" to keep him in SHU represents a conspiracy claim, such a claim fails. To maintain a conspiracy claim under § 1983, a plaintiff must show that a defendant " 'acted in a willful manner, culminating in an agreement, understanding, or "meeting of the minds", that violated the plaintiff's rights ... secured by the Constitution or the federal courts.' " *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (quotation omitted). Conclusory or vague allegations of conspiracy are not enough to state a claim for relief under § 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (citations omitted). Here, Plaintiff alleges in the most vague and conclusory of terms that Defendants Fischer, Roy, and LeClair conspired against him. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's fourteenth cause of action.

**N. Denial of contact visits**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

Inmates do not have a constitutional right to contact visits. *See Zimmerman v. Burge,* No. 06–cv–0176, 2008 WL 850677, *2 (N.D.N.Y. Mar.28, 2008) (citation omitted). Plaintiff brings this cause of action under the Eighth Amendment. [FN11] As stated earlier, an Eighth Amendment claim has an objective and a subjective element. *See Wright,* 554 F.3d at 268. The objective element focuses on the effect of a defendant's conduct, while the subjective element focuses on the defendant's motive. *See id.*

> FN11. Typically, courts address the issue of contact visits with reference to the Fourteenth Amendment.

Plaintiff discusses no facts that would indicate that the effects of this denial had an objectively severe effect on his mental and emotional well being. Plaintiff also does not allege any facts to indicate that Defendant Artus acted with a sadistic or malicious intent when he denied Plaintiff the privilege of receiving contact visits. Plaintiff's second amended complaint merely contains a conclusory allegation that Defendant Artus acted maliciously. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's sixth cause of action.

**O. John Doe Defendant**

*18 Under Rule 4(c)(1) of the Federal Rules of Civil Procedure, the plaintiff must serve a summons and complaint upon each defendant within 120 days of the filing of the complaint. *See* Fed.R.Civ.P. 4(m). Where a plaintiff does not properly serve a defendant in accordance with the Federal Rules of Civil Procedure, the court will, upon motion or its own initiative, dismiss the case without prejudice as to that defendant. *See id.; see also Cooks v. Delpiano,* No. 9:07–CV–00765, 2008 WL 4186337, *1 n. 1 (N.D.N.Y. Sept.10, 2008); *Pravda v. City of Albany,* 178 F.R.D. 25, 26 (N.D.N.Y.1998).

Plaintiff alleged that the John Doe Defendant did nothing to help him when he was confined in the cold and unsanitary cell, about which he made an Eighth Amendment claim. Specifically, Plaintiff alleged that the John Doe Defendant mocked him when he requested that the windows be closed because snow was gathering on the floor of the cell. *See* Second Amended Complaint at ¶ 29.

However, despite the passage of nearly three years since his original complaint and more than one year since filing his second amended complaint, Plaintiff has not yet identified or served the John Doe Defendant. Accordingly, the Court dismisses Plaintiff's sixteenth cause of action.

**P. Deprivation of the ability to file grievances**

The Constitution does not require the state to create inmate grievance programs. *See Johnson v. Enu,* No. 08–CV–158, 2011 WL 3439179, *13 (N.D.N.Y. July 13, 2011) (citation omitted). As a consequence, allegations that prison officials violated such procedures will not support a claim under § 1983. *See id.* Further, should prison officials ignore or scuttle a grievance that raises constitutional claims, an inmate can petition the courts directly for redress. *See id.* (citing *Flick v. Alba,* 932 F.2d 728, 728 (8th Cir.1991)).

Plaintiff alleges that Defendant Brousseau "blocked" some of Plaintiff's grievances, in that she "picked and chose" which would proceed and which would not. *See* Second Amended Complaint at ¶ 42. The Constitution does not mandate a grievance procedure, and Plaintiff has the opportunity to petition the courts directly regarding any constitutional violations he feels he has sustained, an option with which he is obviously comfortable. Accordingly, the Court dismisses Plaintiff's twenty-eighth cause of action.

**Q. Leave to replead**

Courts must construe *pro se* pleadings liberally and interpret them " 'to raise the strongest arguments that they suggest.' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quotation omitted). Typically, courts do not dismiss *pro se* complaints without granting leave to amend at least once if there is any indication that a valid claim may be stated. *See Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991) (citations omitted); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

*19 Magistrate Judge Peebles, in deference to Plaintiff's *pro se* status, recommended that the Court give Plaintiff a final opportunity to amend his complaint to cure any deficiencies, with the exceptions of the seventeenth

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))

(false misbehavior report) and eighteenth (lost property) causes of action. Magistrate Judge Peebles reasoned that neither of those causes of action presents even a potentially conceivable constitutional claim, and, therefore, neither could be rescued by even the most skillfully worded amendment.

There is no indication that Magistrate Judge Peebles' reasoning is clearly erroneous. Accordingly, the Court adopts this portion of his Report and Recommendation and allows Plaintiff to amend his second amended complaint, except for the seventeenth and eighteenth causes of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Defendants' motion to dismiss Plaintiff's fifth, eleventh, thirteenth, fourteenth, seventeenth, eighteenth, twentieth, twenty-first, and twenty-fifth causes of action, and Defendants' motion to dismiss those causes of action is **GRANTED;** and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action and Defendants' motion to dismiss those causes of action is **DENIED;** and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's eighth, ninth, twelfth, twenty-second, twenty-third, twenty-fourth, and twenty-seventh causes of action and Defendants' motion to dismiss those causes of action is **GRANTED;** and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio and Defendants' motion to dismiss Plaintiff's second cause of action against those Defendants is

**DENIED;** and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's second cause of action as it relates to Defendant Henderson and Defendants' motion to dismiss Plaintiff's second cause of action against Defendant Henderson is **GRANTED;** and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's sixth, sixteenth, and twenty-eighth causes of action is **GRANTED;** and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** with respect to providing Plaintiff with an opportunity to replead and, therefore, **within thirty (30) days of the date of this Memorandum–Decision and Order,** Plaintiff may file a third amended complaint to cure the deficiencies in those causes of action that the Court has dismissed, with the exception of his seventeenth and eighteenth causes of action; [FN12] and the Court further

> [FN12.] In sum, Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action, as well as his second cause of action as it relates to Defendants Kirkpatrick and Marinaccio, are sufficient to withstand Defendants' motion to dismiss. On the other hand, Plaintiff's fifth, sixth, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth, eighteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-seventh, and twenty-eighth causes of action, as well as his second cause of action as it relates to Defendant Henderson, are insufficient to withstand Defendants' motion to dismiss. However, with the exception of Plaintiff's seventeenth and eighteenth causes of action, the Court will provide Plaintiff with an opportunity to amend his complaint to cure any deficiencies in the dismissed causes of action.

**\*20 ORDERS** that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 3847265 (N.D.N.Y.)

(Cite as: 2011 WL 3847265 (N.D.N.Y.))


**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Phillips v. Roy
Slip Copy, 2011 WL 3847265 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 22211500 (S.D.N.Y.)
(Cite as: 2003 WL 22211500 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert ARROYO, Plaintiff,
v.
THE CITY OF NEW YORK, N.Y.C. Department of
Correction, Hospital Administrator, C-73, St. Barnabas
Hospital Administrator, Dr. "John" Mohammad, First
name being fictitious, real name being unknown, Dr.
Harjinger Bhatti, Dr. Jude Aririguzo, Dr. "John"
August, First name being fictitious, real name being
unknown, Dr. Jean Valcourt, Dr. "John Doe", Full name
being fictitious, real name being unknown, Dr. Sung
Kim, Dr. Ye Hum Kim, the New York City Health and
Hospitals Corporation, St. Barnabus Hospital, St.
Barnabus Correctional Health Systems, Inc., the New
York City Correctional Health Services, the New York
City Department of Health, Defendants.
**No. 99 Civ.1458(JSM).**

Sept. 25, 2003.

Inmate brought a § 1983 suit, alleging that violation of his
Eighth Amendment right to be free from cruel and unusual
punishment in connection with an eight-month delay of
allegedly necessary surgery for an inguinal hernia. On a
defense motion for summary judgment, the District Court,
Martin, J., held that: (1) inmate failed to exhaust his
administrative remedies, and (2) in any event, the alleged
delay did not amount to cruel and unusual punishment.

Motion granted.

West Headnotes

**[1] Civil Rights 78** 🔑 **1311**

78 Civil Rights
    78III Federal Remedies in General
        78k1306 Availability, Adequacy, Exclusivity, and
Exhaustion of Other Remedies
            78k1311 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
Inmate, in failing to renew his grievance or otherwise seek
to use an extensive inmate grievance resolution program
in place at correctional facility, did not exhaust his
administrative remedies, as required by the Prison
Litigation Reform Act (PLRA), thus barring his § 1983
suit alleging cruel and unusual punishment in connection
with an eight-month delay of allegedly necessary surgery
for an inguinal hernia; even if he initially thought that he
had been promised prompt surgery after his informal
grievance review, shortly thereafter he obviously knew
that surgery had not been performed, or even scheduled,
and he presented no explanation as to why he did not at
least inquire as to why surgery that he allegedly thought he
had been promised had not been forthcoming. 42 U.S.C.A.
§ 1983; Civil Rights of Institutionalized Persons Act, §
7(a), as amended, 42 U.S.C.A. § 1997e(a).

**[2] Prisons 310** 🔑 **192**

310 Prisons
    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191 Particular Conditions and Treatments
                310k192 k. In General. Most Cited Cases
    (Formerly 310k17(2))

**Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Alleged eight-month delay of allegedly necessary surgery
for an inmate's inguinal hernia did not amount to cruel and
unusual punishment under the Eighth Amendment; the
hernia was not a serious enough condition to satisfy the
objective prong of the test, and as to the subjective prong,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22211500 (S.D.N.Y.)
(Cite as: 2003 WL 22211500 (S.D.N.Y.))

all that the inmate alleged was negligence. U.S.C.A.
Const. Amend. 8.

OPINION & ORDER

MARTIN, J.

**\*1** Plaintiff Robert Arroyo brings this action pursuant to
42 U.S.C. § 1983, alleging that Defendants violated his
Eighth Amendment right to be free from cruel and unusual
punishments by delaying for eight months allegedly
necessary surgery for an inguinal hernia. Defendants have
moved for summary judgment on various grounds,
including Plaintiff's failure to exhaust administrative
remedies, the failure to proffer evidence of deliberate
indifference to Plaintiff's serious medical needs, the lack
of personal involvement by the individual Defendants,
qualified immunity, the failure to plead an unconstitutional
pattern or practice by the municipal Defendants, the fact
that the Department of Corrections and Correctional
Health Services are agencies that may not be sued, and, to
the extent that Plaintiff implies that he may have claims
under state law, the failure to file a notice of claim.

*Failure to Exhaust Administrative Remedies*

[1] The Prison Litigation Reform Act, 42 U.S.C. §
1997e(a) provides that a prisoner may not bring an action
pursuant to 42 U.S.C. § 1983 or any other Federal law
until he has exhausted any available administrative
remedies. In this case, Plaintiff failed to pursue his
administrative remedies, and for that reason alone, this
action must be dismissed.

In October 1998, Plaintiff filed a grievance stating that he
had been denied surgery for a hernia that caused him great
pain and suffering. His complaint was heard in a first level
informal proceeding, in which it was proposed that it be
resolved as follows:

    "On 10/26/98 the IGRC contacted the Clinic Manger.
Grievant will be called down to have an examination.
Action requested is accepted."

Plaintiff accepted this resolution, and was further
examined in the clinic at Riker's Island. When that
examination resulted only in further non-surgical
interventions, and he was not scheduled promptly for
surgery, he did not renew his grievance or otherwise seek
to use the extensive five step inmate grievance resolution
program that is in place at Riker's Island. His failure to do
so precludes this action, despite his claim that it would
have been irrational for him to appeal what he perceived
to be a favorable result. Even if Plaintiff though that he
had been promised prompt surgery after his informal
grievance review, shortly thereafter he obviously knew
that surgery had not been performed, or even scheduled.
He presents no explanation as to why he did not at least
inquire as to why surgery that he allegedly thought he had
been promised had not been forthcoming.

*Denial of Medical Care*

[2] Even if Plaintiff had exhausted his administrative
remedies, he has not sufficiently stated a claim for
violation of the Eighth Amendment. In order to state a
claim for an unconstitutional denial of medical care, a
plaintiff must prove "deliberate indifference" to his
serious medical needs. *Estelle v. Gamble,* 429 U.S. 97,
104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The
deliberate indifference standard has both an objective and
a subjective component. First, the alleged condition must
be objectively "sufficiently serious." Such seriousness has
been defined as "a condition of urgency, one that may
produce death, degeneration, or extreme pain." *Hathaway
v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,*
513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).
Subjective complaints of pain are not sufficient to satisfy
this standard. *Espinal v. Coughlin,* 98 Civ. 2579 (RPP),
2002 U.S. Dist. LEXIS 20, *9 (S.D.N.Y. Jan. 2, 2002);
*Chatin v. Artuz,* No. 95 Civ. 7994(KTD), 1999 U.S. Dist.
LEXIS 11918, *11 (S .D.N.Y. Aug. 4, 1999), *aff'd,* 2002
U.S.App. LEXIS 86 (2002) ("[Plaintiff's] alleged
problems in his right foot may indeed be very real. His
pain is not, however, of the type contemplated for
satisfaction of the objective standard." (citing *Liscio v.
Warren,* 901 F.2d 274, 277 (2d Cir.1990)). Second, the
Defendant must:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22211500 (S.D.N.Y.)
(Cite as: 2003 WL 22211500 (S.D.N.Y.))

**\*2** know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Hathaway v. Coughlin,* 37 F.3d at 66 (2d Cir.1994) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).

Charges that amount only to allegations of malpractice, and mere disagreements with respect to the quality of medical care do not state an Eighth Amendment claim. *Estelle v. Gamble,* 429 U.S. at 105-06, 97 S. Ct at 292 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). *See also Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998); *Espinal v. Coughlin,* 2002 U.S. Dist. LEXIS 20, \*10; *Brown v. McElroy,* 160 F.Supp.2d 699, 705-06 (S.D.N.Y.2001); *Culp v. Koenigsmann,* 99 Civ. 9557(AJP), 2000 U.S. Dist. LEXIS 10168, \*32 (S.D.N.Y. July 19, 2000). Accordingly, a delay in treatment does not violate the Eighth Amendment unless it involves an act or a failure to act that evinces "a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998)); *Espinal v. Coughlin,* 2002 U.S. Dist. LEXIS 20, \*9 ("The Second Circuit has 'reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening' and fast-degenerating' condition for three days, or delayed major surgery for over two years.").

Application of the deliberate indifference standard to the facts of this case makes clear that summary judgment must be granted in favor of the Defendants. First, Plaintiff's inguinal hernia was not objectively a "serious" enough condition to satisfy the objective prong of the test. In *Gonzalez v. Greifinger,* No. 95 Civ. 7932(RWS), 1997 U.S. Dist LEXIS 18677, \*7 (S.D.N.Y. Nov. 22, 1997), the Court found that an 11 month delay in surgically repairing the plaintiff's umbilical hernia, followed by surgery that resulted in complications, failed to satisfy the constitutional serious medical need standard.

Other courts have found objectively insufficient claims relating to a toothache, *Tyler v. Rapone,* 603 F.Supp. 268, 271-72 (E.D.Pa.1985), a broken finger, *Rodriguez v. Joyce,* 693 F.Supp. 1250, 1252-53 (D.Me.1988), and pain in the knee, *Espinal v. Coughlin,* 2002 U.S. LEXIS 20, \*9. *See also Abdul-Akbar v. Dept. of Corrections,* 910 F.Supp. 986, 1006 (D.Del.1995), *aff'd,* 111 F.3d 125 (3rd Cir.), *cert. denied,* 522 U.S. 852, 118 S.Ct. 144, 139 L.Ed.2d 91 (1997) ("It is questionable whether a hernia is a 'serious medical need.' ").

In this case, Plaintiff's condition was not "one of urgency that may produce death, degeneration, or extreme pain," and was far less serious than the types of conditions that have been found to constitute "serious medical needs." Plaintiff has not alleged, let alone presented evidence to show, that his condition was, at any point, "fast degenerating" or "life threatening," or that Defendants delayed necessary medical treatment in order to punish him.

**\*3** Secondly, with respect to the subjective prong, all that Plaintiff has alleged is negligence. There is no evidence that Plaintiff ever was denied medical treatment. To the contrary, he testified that he was promptly taken to the clinic whenever he asked to be, and it is clear that he was seen in the clinic at Riker's Island more than 30 times during the eight month period at issue here.[FN1] Also, there is ample evidence in the record of attempts to ameliorate Plaintiff's condition without surgery. The hernia, which Plaintiff first noticed 1993, and which was repeatedly diagnosed as a reducible hernia, was reduced at least twice. He was prescribed pain medication, a scrotal support, various trusses, ice packs, elevation, and a surgical consultation was requested. Ultimately, in January 1999, the hernia was surgically repaired at Kings County Medical Center. These interventions were consistent with the diagnosis made and treatment prescribed at Beth Israel Hospital one month before Plaintiff was incarcerated. There too he was diagnosed with an "easily reducible RIH [right inguinal hernia]," and told to purchase a scrotal support, or truss, for comfort. At that time, he also was given an appointment for a surgical consultation, which he did not attend.[FN2]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22211500 (S.D.N.Y.)
(Cite as: 2003 WL 22211500 (S.D.N.Y.))

FN1. In addition to treatment for the hernia, Plaintiff was treated for a number of other conditions while incarcerated at Riker's Island. He received medical attention for drug dependency, mental health issues, dyspepsia, heartburn, and ingrown toe nails, and was prescribed eyeglasses at the Riker's Island clinic. Thus, there is absolutely no evidence his medical needs were ignored by Defendants.

FN2. Plaintiff's alleged urgent need and desire for surgery is further undercut by his refusal to undergo prescribed surgery for a left inguinal hernia, which was diagnosed and scheduled at the time of the surgical repair of the right inguinal hernia.

Moreover, Plaintiff has not alleged that the hernia became worse,FN3 or that his general condition deteriorated as a result of the alleged delay in surgery. The evidence also is that, unlike in *Gonzalez v. Greifinger,* 1997 U.S. Dist. LEXIS 18677, the surgery ultimately was performed successfully and without complications.

FN3. His allegation is that the hernia was, at all times, the size of a softball.

Finally, Defendants have presented evidence that attempting to treat a hernia conservatively prior to performing surgery constitutes reasonable medical practice. Plaintiff, on the other hand, did not present any medical opinion testimony to support his argument that it was unreasonable to first attempt to treat his hernia non-surgically, and to resort to surgery only after such methods had failed. *See Culp v. Koenigsmann,* 2000 U.S. Dist. LEXIS 10168, *11. Accordingly, Plaintiff has failed to meet his burden of proof in opposition to Defendants' motion for summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Cifarelli v. Village of Babylon,* 25 C.C.P.A. 785, 93 F.2d 47, 51 (2d Cir.1996) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995).

It also appears that Plaintiff has not alleged that the municipal Defendants engaged in a pattern or practice of indifference to prisoners' medical needs, as required by *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Nor has Plaintiff alleged any personal participation by Dr. Ye Hum Kim. However, in light of the foregoing, there is no need to address either these issues or the Defendants' claims of qualified immunity. Furthermore, having dismissed all of Plaintiff's federal claims, the Court also will dismiss whatever state law claims he intended to state pursuant to this Court's supplemental jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Conclusion*

**\*4** For the foregoing reasons, Defendants' motion for summary judgment is granted and the Second Amended Complaint is dismissed.

SO ORDERED.

S.D.N.Y.,2003.
Arroyo v. City of New York
Not Reported in F.Supp.2d, 2003 WL 22211500 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Homero BORDAS, Plaintiff,
v.
Leo E. PAYANT, Superintendent, Mohawk
Correctional Facility; Gullo, Sgt., Mohawk Correctional
Facility; D. Norman, Correction Officer, Mohawk
Correctional Facility; M. Mullin, Correction Officer,
Mohawk Correctional Facility, Defendants.
No. 9:08-CV-0458.

Jan. 5, 2009.
Homero Bordas, pro se.

Andrew M. Cuomo, New York State Attorney General,
Shoshanah V. Bewlay, Esq., Assistant Attorney General,
of Counsel, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff Homero Bordas, a New York State prison
inmate who is proceeding *pro se* and *in forma pauperis,*
commenced this civil rights action pursuant to 42 U.S.C.
§ 1983 seeking damages for the alleged violation of his
constitutional rights. Plaintiff's claims arose during the
period July through November, 2007, while he was
confined at Mohawk Correctional Facility. Dkt. No. 1.[FN1]

    **FN1.** Plaintiff is presently incarcerated at Marcy
    Correctional Facility.

Currently pending is defendants' motion to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt.
No. 8.

**I. Background**

The following facts are drawn from plaintiff's
complaint and attached exhibits, and are accepted as true

for purposes of the pending motion. *Boykin v. Keycorp,
521 F.3d 202, 204 (2d Cir.2008). See Erickson v. Pardus,
551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).*[FN2]

    **FN2.** The "complaint" includes any written
    instrument attached to it as an exhibit and any
    statements or documents incorporated into the
    complaint by reference. *Gant v. Wallingford Bd.
    of Educ.,* 69 F.3d 669, 674 (2d Cir.1995);
    Fed.R.Civ.P. 10(c) ("A copy of a written
    instrument that is an exhibit to a pleading is a
    part of the pleading for all purposes.")

On July 19, 2007, plaintiff received a misbehavior
report charging him with failing to comply with a direct
order and creating a disturbance. Dkt. No. 1 at ¶ 17.[FN3]
That same day, plaintiff filed a grievance complaining that
the misbehavior report was insufficient because it did not
identify the individual with whom plaintiff allegedly
engaged in a verbal dispute. *Id.* at ¶ 18 and A-11, 12.
Defendant Superintendent Payant denied the grievance on
August 8, 2007, finding no evidence of staff misconduct.
*Id.* at ¶ 18 and A-15. Plaintiff's appeal of the denial of his
grievance to the Central Office Review Committee was
denied on September 19, 2007. *Id.* at ¶ 18 and A-16.

    **FN3.** The misbehavior report was issued by
    Correction Officer Critelli. He is not a defendant
    in this action.

A disciplinary hearing was held on the July 19, 2007
misbehavior report.[FN4] Plaintiff was found guilty of both
charges and sentenced to twenty days confinement in the
Special Housing Unit ("SHU") and twenty days loss of
privileges. Dkt. No. 1 at ¶ 19.

    **FN4.** The hearing officer is not a defendant in
    this action.

Plaintiff received another misbehavior report on July
21, 2007, charging him with loss of state property. Dkt.
No. 1 at ¶¶ 20, 21. In that report, Defendant Correction
Officer Norman stated that plaintiff's state-issued razor
was not found during the inventory of plaintiff's property

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

conducted in connection with his disciplinary SHU confinement. *Id.* At the hearing convened on that charge, plaintiff told the hearing officer that his razor was in his shoes. The hearing officer directed Defendant Correction Officer Mullin to look for the razor. Defendant Mullin, "after coming to an agreement" with defendant Norman, told the hearing officer that he did not find the razor. *Id.* at ¶ 23. Plaintiff was found guilty of the charge and was sentenced to twenty days SHU confinement and loss of privileges. *Id.* at ¶ 25.

On July 31, 2007, defendant Mullin issued a misbehavior report to plaintiff. This report charged plaintiff with possessing material related to an unauthorized organization. Defendant Mullin stated that two items found in plaintiff's property (a book and a photograph) had markings on them which were frequently used by unauthorized organizations. *Id.* at ¶ 28 and A-23. [FN5] No disciplinary hearing was ever held on this charge. *Id.* at ¶ 29.

> FN5. The photograph had the letters "D.P." written on the back. The misbehavior report stated that "D.P." is used to reference "Dominican Power" or "Dominican Don't Play." A book was found to have the letter "C" crossed out of a word on the title page; the report states that this marking is used by rival organizations to disrespect "Crips." *Id.* at 6 and Ex. A-23.

**\*2** Plaintiff filed a grievance on August 2, 2007, claiming that defendants Mullin and Norman wrongfully confiscated his book and photograph during the cell search because they were "unsatisfied" with having had to conduct a further search for plaintiff's razor. Plaintiff also claimed that defendants Mullin and Norman discriminated against him based upon his national origin in placing false disciplinary charges against him. Dkt. No. 1 at ¶ 30 and A-1-A-6. Receiving no response to his grievance, plaintiff resubmitted it on September 7, 2007. *Id.* at ¶ 34. The grievance was denied by defendant Payant on October 1, 2007. *Id.* at ¶ 36 and A-7. Plaintiff's appeal to the Central Office Review Committee was denied on November 7, 2007. *Id.* at ¶ 42 and A-9.

On September 26, 2007, Defendant Sgt. Gullo

questioned inmate Juan Martinez about plaintiff's activities. In particular, defendant Gullo asked Martinez whether plaintiff was the leader of an unauthorized organization known as "Dominican Power" or "Dominican Don't Play." Martinez told defendant Gullo he did not know anything about plaintiff being a leader or member of an unauthorized organization. Dkt. No. 1 at ¶ 37.

Plaintiff filed his complaint on April 29, 2008, naming Superintendent Payant, Sgt. Gullo, and Correction Officers Norman and Mullin as defendants. Plaintiff claims that defendants Norman, Mullin and Gullo retaliated against him for exercising his First Amendment right to file grievances by filing false misbehavior reports against him, interfering with his outgoing legal mail, confiscating his personal property and subjecting him to restrictive confinement. Plaintiff also seeks relief as against defendant Payant, claiming that he violated plaintiff's First and Fourteenth Amendment rights when he ignored and failed to remedy the wrongdoing of his subordinates. *See* Dkt. No. 1 at 10-12.

In lieu of an answer, defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 15. Defendants argue that the allegations of plaintiff's complaint fail to state a claim upon which relief may be granted under the First and Fourteenth Amendments. Defendants also seek dismissal of the complaint on the ground that all defendants are entitled to qualified immunity from liability in this action.

Plaintiff opposes the motion. Dkt. No. 15.

For the reasons set forth below, the Court grants defendants' motion.

**II. Discussion**

**A. Standard of Review Pursuant to Rule 12(b)(6)**

In deciding a Rule 12(b)(6) dismissal motion, "the court must accept the material facts alleged in the complaint as true, and must draw all inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).

**\*3** The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other citations omitted). In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965. In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

**B. Liability Under 28 U.S.C. § 1983**

To prevail on a claim under § 1983, a plaintiff must show the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

In order to state a First Amendment retaliation claim, a plaintiff must advance nonconclusory allegations "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)). Inmates are entitled to free and uninhibited access "to both *administrative and judicial* forums for the purpose of

seeking redress of grievances against state officers' " and the filing of prison grievances is protected conduct under the First Amendment. *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). In the prison context, the Second Circuit has defined " 'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (emphasis in the original). While a plaintiff must allege harm caused by the retaliation, harm is not limited to "a chilling of speech," and may include a period of restrictive confinement. *Id.* at 382-83.

The Second Circuit has recognized that inmate claims of retaliation are easily asserted against prison officials. As the court stated in *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1083), "claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes." Accordingly, "a complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone." *Graham v. Henderson,* 89 F.3d 75, 79 92d Cir.1996) (citing *Flaherty,* 713 F.2d at 13).

**C. Defendants Norman and Mullin**

**\*4** Plaintiff alleges that defendants Mullin and Norman filed false disciplinary charges against him, provided false testimony, confiscated his personal property, and subjected him to restrictive confinement. Plaintiff claims that these actions were retaliatory in nature and intended to "discourage him from exercising his constitutional[ally] protected right to file grievances against the facility administration." Dkt. No. 1 at ¶ 48 (Complaint, Third Cause of Action).[FN6]

> [FN6]. Plaintiff also claims that Norman and Mullin "may" have intercepted his August 2, 2007 grievance, but acknowledges that he has no factual support for that claim. Dkt. No. 1 at ¶ 31. This allegation is patently insufficient. Moreover, plaintiff's grievance was considered on its merits after he resubmitted it on September 7, 2007. *Id.* at ¶ 34-36.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

Defendants seek dismissal of these claims pursuant to Rule 12(b)(6), arguing that plaintiff's complaint contains only conclusory allegations against Norman and Mullin which are insufficient as a matter of law to establish a retaliation claim against them. Dkt. No. 8-2 at 10-11.

Upon review, the Court agrees that the allegations of plaintiff's complaint are not sufficient to state a retaliation claim against Norman and Mullin. FN7 In this regard, while plaintiff's facility grievances constituted protected speech, the only grievance filed by plaintiff which preceded the alleged retaliatory acts by Norman and Mullin was the grievance complaining about the misconduct report written by Officer Critelli. Plaintiff does not allege that defendants Norman and Mullin had any involvement whatsoever in the incident which gave rise to that misbehavior report, nor does he set forth any facts which plausibly suggest that these officers knew of and were motivated by that grievance to take adverse action against plaintiff.

> FN7. Issuance of the misbehavior reports is not itself actionable as plaintiff has no constitutionally protected right to be free from false accusations of misconduct. See *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982 (1988). Similarly, the allegedly improper confiscation of his personal property during a cell search does not state a legally cognizable claim pursuant to § 1983, because inmates have no reasonable expectation of privacy in their prison cells, and thus "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning,* 399 F.Supp.2d 228, 239 (S.D.N.Y.2005) (collecting cases).

Accordingly, the defendants' motion to dismiss the claims asserted against defendants Mullin and Norman is granted. In light of plaintiff's *pro se* status, he is afforded the opportunity to file an amended complaint against defendants Norman and Mullin which states a claim against these defendants upon which relief may be granted. Any such amended complaint must set forth facts regarding the alleged misconduct by defendants Mullin and Norman sufficient "to state a claim to relief that is plausible on its face." *Twombly,* 127 S.Ct. at 1974.

**D. Defendant Gullo**

Plaintiff claims that Defendant Gullo violated his First Amendment rights when he "intimidated and attempted to coerce inmate Martinez into falsely admitting that Plaintiff was the leader of an unauthorized organization." Dkt. No. 1 at ¶ 50. According to plaintiff, defendant Gullo sought information in order to "initiate fraudulent disciplinary charges against Plaintiff and punish Plaintiff in retaliation for exercising his constitutionally protected rights." *Id.*

Defendants seek dismissal of this claim, arguing that the allegations of the complaint fail to state a claim upon which relief may be granted pursuant to § 1983. Dkt. No. 8-2 at 12-13. Defendants argue that plaintiff's admission that Gullo's action did not harm him in any way fatally undermines his claim. *Id.*

Plaintiff's complaint fails to state a claim against defendant Gullo for the violation of his constitutional rights. Defendant Gullo's interview of inmate Martinez did not violate plaintiff's First Amendment rights. Plaintiff has also failed to demonstrate that defendant Gullo retaliated against plaintiff for having exercised his First Amendment rights. Not only does plaintiff fail to allege that defendant Gullo was aware of plaintiff's prior grievances, he does not claim that defendant Gullo took adverse action against him. Because plaintiff does not claim that defendant Gullo's attempt to elicit information from inmate Martinez harmed him in any way, the claims fail as a matter of law.

**\*5** Defendant Gullo's motion to dismiss is granted. Because the problem with plaintiff's cause of action is substantive, such that better pleading will not cure it, leave to plead is denied as futile. See *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

**E. Defendant Payant**

Plaintiff claims that Defendant Leo A. Payant, Superintendent at Mohawk Correctional Facility, violated his First and Fourteenth Amendment rights. Plaintiff does not claim that Payant directly participated in the actions complained of. Rather, plaintiff alleges that Payant had notice of this misconduct by virtue of plaintiff's grievance, but "ignore[d] and failed to remedy the wrongful and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

illegal conduct of his subordinates." Dkt. No. 1 at ¶ 10.

It is well established that personal liability under § 1983 cannot be imposed on a state official based on a theory of *respondeat superior* and that personal involvement of a defendant in the alleged constitutional deprivation is a prerequisite to an award of damages. The Second Circuit has held that an official has the requisite personal involvement for liability under § 1983 when, *inter alia,* "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). A number of district courts have held that the language in *Colon* should not be construed so broadly as to impose liability on any and all officials to whom a prisoner complains, or who are simply linked in the prison chain of command. Rather, personal involvement will be found "where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *See, e.g., Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (collecting cases).

Plaintiff claims that he brought to defendant Payant's attention his claims that defendants took adverse action against him in retaliation for plaintiff having filed a grievance regarding the misbehavior report written by Officer Critelli on July 19, 2007. Dkt. No. 1 at ¶ 46.

Upon review, including consideration of plaintiff's grievance (*see* Dkt. No. 1 at A-1–A-6), the Court finds that plaintiff's claim against defendant Payant is insufficient as a matter of law. In that grievance, plaintiff complains that defendants Norman and Mullin were verbally abusive to him, improperly confiscated his book and photograph, and placed false disciplinary charges against him because they were "pissed off" about having had to conduct a "double search" for his razor. Dkt. No. 1 at A-1–A-2.[FN8] Plaintiff claims that defendants Norman and Mullin acted in a racist manner and "in retaliation because of the double search." *Id.* at A-2. The grievance makes no reference to Officer Critelli's misbehavior report or to plaintiff's July 19, 2007 grievance regarding that matter. In short, defendant Payant was not given notice that defendants Norman and Mullin had engaged in conduct which violated plaintiff's constitutional rights.

FN8. The disciplinary charges were not pursued.

*See* Dkt. No. 1 at ¶ 29.

**\*6** Based upon the foregoing, the complaint fails to state a claim against defendant Payant. Because the problem with plaintiff's complaint is substantive, such that better pleading will not cure it, leave to plead is denied as futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

### III. Conclusion

Based upon the foregoing, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is granted in its entirety.[FN9] As set forth above, prior to any dismissal of this action, plaintiff may file an amended complaint against defendants Norman and Mullin.

FN9. In light of the Court's rulings set forth above, the Court has not addressed the qualified immunity argument advanced by defendants as an independent ground for dismissal of plaintiff's claims. *See Saucier v. Katz,* 533 U.S. 194, 1212 S.Ct. 2151 (2001).

WHEREFORE, it is hereby

ORDERED, that defendants' motion to dismiss plaintiff's complaint (Dkt. No. 8) is granted, and it is further

ORDERED, that plaintiff may file an amended complaint as provided herein **within thirty (30) days** of the filing date of this Memorandum-Decision and Order, and it is further

ORDERED, that the Clerk return the file to the Court upon the filing of plaintiff's amended complaint, and it is further

ORDERED, that in the event plaintiff does not timely file an amended complaint, this action shall be dismissed in its entirety, and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Slip Copy, 2009 WL 35292 (N.D.N.Y.)

(Cite as: 2009 WL 35292 (N.D.N.Y.))

N.D.N.Y.,2009.

Bordas v. Payant
Slip Copy, 2009 WL 35292 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Mark E. CANNON, Plaintiff,
v.
C.O. E. WOOD, Upstate Correctional Facility; Saint
Mary, Correctional Officer, Upstate Correctional
Facility; Relf, Correctional Officer, Upstate
Correctional Facility; Winston, Correctional Officer,
Upstate Correctional Facility; D. Price, Correctional
Officer, Upstate Correctional Facility; M. Eddy,
Sergeant, Upstate Correctional Facility; Nurse Holmes,
Upstate Correctional Facility; Bulis, Hearing Officer,
Upstate Correctional Facility, Defendants.
Civ. No. 9:10–CV–1332 (GTS/RFT).

Aug. 12, 2011.
Mark E. Cannon, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State
of New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

*REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** Plaintiff brings this civil rights Complaint,
pursuant to 42 U.S.C. § 1983, alleging Defendants
violated his constitutional rights while he was incarcerated
at Upstate Correctional Facility. Dkt. No. 1, Compl.
Defendants moved, pursuant to Federal Rule of Civil
Procedure 12(b)(6), for dismissal of the Complaint, Dkt.
No. 22, which Plaintiff opposes, Dkt. No. 23. For the
reasons that follow, it is hereby recommended that
Defendants' Motion be **granted in part** and **denied in
part.**

**I. BACKGROUND**

The following recitation is derived from the
Complaint and, in accordance with the applicable standard
of review, are taken as true. *See infra* Part II.A.

At all times relevant to the events described in the
Complaint, Plaintiff was in the custody of the New York
State Department of Corrections and Community
Supervision (DOCCS) and was housed at the Upstate
Correctional Facility. During February 2010, Plaintiff
wrote an inmate grievance complaining that he had been
denied access to the barbershop. Compl. at ¶ 6(C). As a
result of this grievance, Plaintiff was scheduled a make-up
haircut. *Id.* Thereafter, Defendants Saint Mary and
Winston came to Plaintiff's cell and told him that because
he wrote that grievance, he would never receive another
haircut for as long as he remained at Upstate. *Id.* During
the months of March, April, and May 2010, Defendants
Saint Mary and Winston denied him access to the
barbershop, stating each time that Plaintiff should not have
written the grievance. *Id.* They also told him that he did
not deserve "level 3 status." *Id.* Plaintiff subsequently
wrote a grievance about this harassment.

On May 12, 2010, Defendant S. Price came to
Plaintiff's cell to retrieve his food tray. As Plaintiff was
loading items onto the tray, Defendant Saint Mary told
Defendant Price to close Plaintiff's feed up slot and stated
that Plaintiff refused to give back his feed up tray. *Id.*
Thereafter, Defendant Sergeant M. Eddy approached
Plaintiff's cell and retrieved the food tray. *Id.* at ¶ 6(D).
Approximately ten minutes later, Defendants E. Wood,
Relf, and S. Price came to Plaintiff's cell and told him to
pack his belongings because he lost his level 3 status;
Plaintiff was then placed in a holding pen. *Id.* at ¶ 6(F).
Then, Defendants E. Wood, Relf, and Sergeant Eddy
escorted Plaintiff through a metal detector, which did not
ring, and then into a strip room where he was ordered to
strip naked. *Id.* After that, Plaintiff's hands were cuffed
behind his back and he was escorted out of the strip room.
*Id.* at ¶ 6(G). At that point, Defendant Wood grabbed
Plaintiff's hair and slammed his face against the wall. *Id.*
at ¶ 6(H). Defendant Relf grabbed Plaintiff's handcuffs
and twisted his arm in an upward fashion, causing pain in
Plaintiff's shoulders, elbows, and wrists. *Id.* Defendant
Wood placed his thumb behind Plaintiff's jawbone,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

between his ear and upper neck, and pushed and applied pressure on the jawbone, causing Plaintiff pain and dizziness. *Id.* Defendant Eddy watched while this entire encounter ensued. *Id.* For three days, Plaintiff experienced extreme pain in his jaw whenever he tried to eat. *Id.* at ¶ 7. He also experienced extreme pain in his neck and back and had trouble sleeping for approximately seven days. *Id.* at ¶ 8. The pain he feels in his back and neck continue. *Id.* at ¶ 9.

**\*2** Thereafter, Plaintiff was taken to 11 Building and placed in a drug watch holding pen. *Id.* at ¶ 6(I). Defendant Nurse Holmes came to Plaintiff's cell, but left without examining Plaintiff, telling Sergeant Eddy that Plaintiff refused treatment. *Id.* Plaintiff's drug watch lasted seven days, at which point he was taken back to his cell in the 10 Building. *Id.* at ¶ 6(J).

As a result of the above, Plaintiff was issued a misbehavior report charging him with violent conduct, refusing a direct order, threats, and messhall violation. *Id.* On May 28, 2010, Defendant Bulis presided as the hearing officer during the disciplinary hearing for these charges. *Id.* at ¶ 6(K). At his request, Plaintiff called a witness and viewed the video tape of the alleged incident, during which he pointed out how he did not move during the assault by Defendants Wood and Relf. *Id.* at ¶¶ 6(K)-(L). At the conclusion of the hearing, Defendant Bulis found Plaintiff guilty of all charges. *Id.* at ¶ 6(M). He later told Plaintiff that he should not have written those complaints. *Id.*

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104

S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at \*2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint'* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus. ., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); *see also Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**\*3** A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1960, 173 L.Ed.2d 868 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. at 1950–51, 173 L.Ed.2d 868.

**B. Eleventh Amendment**

Plaintiff brings this action against each Defendant in his or her individual and official capacity and seeks only monetary compensation. Compl. at ¶ 6(B). Defendants assert that they are entitled to Eleventh Amendment immunity as to any claims brought against them in their official capacities. We agree.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v.*

*New York State Dep't. of Corr. Servs.* 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) & *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997) (noting that a "claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the office").

**\*4** Since the only relief sought herein is compensatory monetary relief, Plaintiff's claims against all Defendants in their official capacities should be **dismissed.** Thus, we recommend **granting** Defendants' Motion on this basis.

**C. Personal Involvement**

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz,* 1997 WL 576038, at \*2 (S.D.N.Y. Sept.15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).

Defendants assert that the allegations in the Complaint against Defendant S. Price do not amount to a stated cause of action. We agree. The factual allegations against Defendant Price are that he closed Plaintiff's feed-up tray as Defendant Saint Mary directed, and that he, along with Defendants Wood and Relf, told Plaintiff that his level 3 status was terminated. These factual allegations, taken as true, do not amount to a violation of any constitutional violation. Thus, Defendants' Motion to Dismiss should be **granted** as to Defendant Price due to Plaintiff's failure to allege any personal involvement on his part with regard to any wrongdoing.

**D. Claims Against Defendants Winston and Saint**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

### Mary

According to the factual allegations in the Complaint, Defendants Winston and Saint Mary are accused of denying Plaintiff access to the barbershop after Plaintiff filed a grievance regarding a missed appointment. After the filing of that grievance, Defendants Winston and Saint Mary told Plaintiff that he should not have complained and that he would never receive another haircut for as long as he was at Upstate. And, during the months of March, April, and May, Plaintiff was passed over whenever the barbershop schedule would make rounds. Plaintiff also contends that Defendants Winston and Saint Mary threatened Plaintiff's level 3 status and fabricated a lie that Plaintiff was being uncooperative with the retrieval of his food tray; an event Plaintiff asserts led to his loss of level 3 status and being placed on a drug watch.

Interpreting Plaintiff's claims as stated pursuant to the Eighth Amendment, Defendants assert that the claims against Winston and Saint Mary should be dismissed for failure to state a claim for relief. They argue that harassment and verbal threats are not actionable and that there is no violation of the Eighth Amendment based upon the denial of barbershop visits. We agree with the Defendants' assessments on both counts,[FN1] however, we interpret Plaintiff's claims slightly differently.

FN1. A claim brought under § 1983 is "not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (citing *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996)); *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) (noting that ordinarily, a claim for verbal harassment is not actionable under § 1983). Also, in order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 297–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation omitted) (cited in *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996)). The denial of a haircut, even multiple haircuts, can hardly be categorized as a

denial of the "minimal civilized measure of life's necessities" as to constitute a violation of the Eighth Amendment. *See, e.g., Black v. Cuomo,* 101 F.3d 681 (2d Cir.1996) (unpublished opinion) (noting that the denial of haircuts is not actionable under the Eighth Amendment).

**\*5** The Court notes that Plaintiff has proceeded in this action *pro se* and that, as such, the Court is compelled to adhere to a policy of leniency when perusing claims stated in pleadings. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) ("[W]e read [a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."). Viewing the Plaintiff's claims liberally, it is this Court's view that Plaintiff has stated a claim against Defendants Winston and Saint Mary for retaliation.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988). Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak,* 389 F.3d 379, 381–83 (2d Cir.2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d at 872 (citation omitted); *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

omitted)), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d at 492); *see also Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002).

Here, Plaintiff engaged in constitutionally protected activity when he filed a grievance about being denied a haircut. Defendants Winston and Saint Mary specifically referenced that grievance when they informed Plaintiff that he would never receive another haircut again. They thereafter denied Plaintiff the ability to sign up for barbershop visits, again referencing the grievance he wrote. The ensuing harassment of Plaintiff could be considered action that would have a chilling effect on an inmate's exercise of his First Amendment rights, or, stated another way, it could "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d at 493). Plaintiff has alleged enough facts to set forth a claim for retaliation against these Defendants, which, at a minimum, allows him to go forward with some discovery. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) (noting that when a plaintiff sets forth a "colorable suspicion of retaliation," some documentary evidence should be allowed to proceed); *Carpio v. Walker,* 1997 WL 642543, at *6 (N.D.N.Y. Oct.15, 1997) (citing *Flaherty v. Coughlin,* 713 F.2d at 13); *accord Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). As such, we recommend **granting** Defendants' Motion as to any claim raised by Plaintiff against Defendants Winston and Saint Mary regarding the Eighth Amendment or claims of harassments and threats. We further recommend **denying** Defendants' Motion with regard to the claim of retaliation against

Defendants Winston and Saint Mary.

**E. Claims Against Defendants Wood, Relf, and Eddy**

**\*6** In their Motion to Dismiss, Defendants urge the Court to dismiss the claims against Defendants Wood, Relf, and Eddy because Plaintiff states these claims in wholly conclusory terms. Defendants view these claims as "retaliatory assault" and, to the extent Plaintiff links this assault to the acts of Defendants Winston and Saint Mary, they argue that Plaintiff has not identified the protected conduct at issue that would prompt this retaliatory assault, nor a causal connection between the incidents between Plaintiff and Defendants Saint Mary and Winston, and these Defendants. We agree with Defendants that Plaintiff does not seem to link the two incidents, and thus, to the extent he asserts a retaliatory assault, such claim should fail. However, viewing Plaintiff's claims liberally and construing them to raise the strongest claim presented by the facts, we find that Plaintiff's claim against Defendants Wood, Relf, and Eddy are not rooted in the First Amendment, but rather the Eighth.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666–67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (cited in *Tramell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003)). In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *503 U.S. at 6–7* (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

bad faith. *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks and citations omitted).

Plaintiff's factual allegations adequately plead a plausible claim of excessive force. He asserts that while he was handcuffed, Defendant Wood grabbed his hair and slammed his face against the wall and also grabbed his jaw, placing pressure between his ear and upper neck. Plaintiff also alleges that Defendant Relf grabbed Plaintiff's handcuffs and twisted his arm upwards. As a result, Plaintiff suffered from pain, dizziness, inability to sleep, and difficulty eating. Plaintiff maintains that this assault was unprovoked, and that he, arguably, posed no security risk as he was secured in handcuffs during the entire altercation. We find that these factual allegations are enough to pass scrutiny under a 12(b)(6) analysis. Thus, we recommend **denying** Defendants' Motion on this ground.

**\*7** As for Defendant Eddy, Plaintiff asserts that he stood there during the entire assault and did nothing to stop Defendants Relf and Wood. This too is enough to state an Eighth Amendment claim that survives this level of scrutiny. *See Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) ("The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."); *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) ("Prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.,* 1998 WL 146280, at \*3 (N.D.N.Y. Mar.27, 1998).

Further, a supervisor can be held liable when he or she has actual or constructive notice of unconstitutional practices, but similarly acted with gross negligence or deliberate indifference in failing to act. *See Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989). "Such a supervisor may not escape the consequences of his or her failure to act by pleading the doctrine of qualified immunity." *Fossett v. Morris,* 1991 WL 67093, at \*3 (S.D.N.Y. Apr.22, 1991). If indeed such an assault took place while Plaintiff was secured in handcuffs, and

Defendant Eddy stood by without intervening on Plaintiff's behalf, then he too is liable for an Eighth Amendment violation. Thus, we recommend **denying** Defendants' Motion on this ground.

### F. Remaining Conclusory Claims

Plaintiff states in conclusory fashion that he was subjected to an illegal search, however, the Complaint is devoid of any factual allegations to support this claim. It is not clear how Plaintiff was subjected to an illegal search, nor whom perpetrated such search. As such, we recommend **granting** Defendants' Motion as to this conclusory claim.

Plaintiff claims that he was "illegally" placed on "the loaf" and a drug watch for seven days. Perhaps Plaintiff is attempting to assert an Eighth Amendment conditions of confinement violation. However, these conclusory allegations fail in that he has not alleged enough facts for the Court to assess whether the Eighth Amendment was violated, *ergo,* whether he was subjected to conditions that were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," which Defendants subjected him to these conditions, and whether such Defendants acted with the requisite culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 297–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citation omitted) (cited in *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996)). Thus, to the extent Plaintiff seeks to allege an Eighth Amendment violation based on the drug watch and diet loaf, Defendants' Motion should be **granted.**

Plaintiff also asserts that Defendant Bulis violated his right to due process. However, again, there are no factual allegations to support such a claim. First, Plaintiff does not allege the liberty interest at stake by which he was entitled to some measure of due process before being deprived therewith. *See Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life"). Second, Plaintiff admits that during said hearing, he exercised his right to call witnesses and review requested evidence. Thus, even if Plaintiff had identified a liberty interest, he failed to allege

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

facts supporting the notion that he was denied due process. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Accordingly, Defendants' Motion should be **granted** and Defendant Bulis should be **dismissed** from this action.

*8 Lastly, Plaintiff asserts that Defendant Nurse Holmes did not examine him after the altercation with Defendants Wood, Relf, and Eddy. This claim suffers the same fate of being far too conclusory.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06).

Here, Plaintiff provides no facts by which this Court could assess the seriousness of his injury, other than injecting conclusory statements about the level of pain he experienced, nor the subjective state of mind of Nurse Holmes. His sparse facts do not survive this initial review and we recommend **granting** Defendants' Motion on this ground and **dismissing** Nurse Holmes from this action.

### G. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). The doctrine protects public officials from 'personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service." *Eng v. Coughlin,* 858 F.2d at 895.

Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The only pleading filed in the present case is the Original Complaint. Defendants have not raised this affirmative defense in a responsive pleading as set forth in FED. R. CIV. P. 8(c), but rather in their memorandum of law in support of their Motion to Dismiss. Generally, however, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983); *see also McKenna v. Wright,* 386 F.3d 432, 435 (2d Cir.2004) (quoting *Green* ). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall,* 22 F.Supp.2d 156, 162 (S.D.N.Y.1998) (citing *Green v. Maraio,* 722 F.2d at 1019); *see also McKenna v. Wright,* 386 F.3d at 435.

*9 Pursuant to this Court's analysis, the remaining claims are those against Defendants Winston and Saint Mary for retaliation and those against Defendants Wood, Relf, and Eddy for excessive force and failure to protect. A fair reading of the Complaint does not give rise to the qualified immunity defense. Indeed, it cannot be said that Plaintiff's rights were not clearly established at the time of the alleged constitutional violations. If a plaintiff had a "clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law." *Gill v. Hoadley,* 261 F.Supp.2d 113, 125 (N.D.N.Y.2003) (citing, *inter alia, Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir.2003)); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lewis v. Cowan,* 165 F.3d 154, 166 (2d Cir.1999). Thus, the inquiry turns on the reasonableness of the Defendants' acts. The Second Circuit has held, however, that such analysis "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 793 (2d Cir.2002); *see also McKenna v. Wright,* 386 F.3d 432,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 7071100 (N.D.N.Y.)

(Cite as: 2011 WL 7071100 (N.D.N.Y.))

434 (noting that the "qualified immunity defense can be presented in a Rule 12(b)(6) motion, but that the defense faces a formidable hurdle"). For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee, 332 F.Supp.2d 659, 666 (S.D.N.Y.2004).*

Thus, we find that qualified immunity cannot be determined at this stage. Though we recommend **denying** Defendants' Motion on this ground, Defendants are not precluded from including this defense in their answer and raising it again at a more appropriate time when there is a complete record by which the reasonableness of Defendants' acts can be assessed.

## III. CONCLUSION

For the reasons stated herein, it is hereby
**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 22) should be **granted in part and denied in part** as follows:

1. All causes of action should be **dismissed,** pursuant to the Eleventh Amendment, insofar as they are stated against the Defendants in their official capacities;

2. Defendant Price should be **dismissed** from this action based upon Plaintiff's failure to assert his personal involvement in any wrongdoing;

3. To the extent asserted, any Eighth Amendment conditions of confinement claims and other claims of harassment/verbal threats against Defendants Winston and Saint Mary should be **dismissed** for failure to state a claim;

4. To the extent asserted, any First Amendment retaliation claims against Defendants Winston and Saint Mary should survive and proceed to discovery;

**\*10** 5. To the extent asserted, any First Amendment retaliation claims against Defendants Wood, Relf, and Eddy should be **dismissed** for failure to state a claim;

6. To the extent asserted, any Eighth Amendment claims of excessive force and failure to protect against Defendants Wood, Relf, and Eddy should survive and proceed to discovery;

7. To the extent asserted, claims regarding the "illegal" search, imposition of diet loaf, and drug watch should be **dismissed** for failure to state a claim;

8. To the extent asserted, claims for due process violations against Defendant Bulis should be **dismissed** and Defendant Bulis should be **dismissed** from this action;

9. To the extent asserted, claims for Eighth Amendment medical indifference against Defendant Holmes should be **dismissed** and Defendant Holmes should be **dismissed** from this action;

10. Defendants' request for dismissal based on qualified immunity should be **denied** at this stage;and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec'y of Health and Human Servs. ., 892 F.2d 15 (2d Cir.1989)*); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

N.D.N.Y.,2011.

Cannon v. Wood
Slip Copy, 2011 WL 7071100 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Mark E. CANNON, Plaintiff,
v.
C.O. E. WOOD, Upstate Correctional Facility; Saint
Mary, Correctional Officer, Upstate Correctional
Facility; Relf, Correctional Officer, Upstate
Correctional Facility; Winston, Correctional Officer,
Upstate Correctional Facility; D. Price, Correctional
Officer, Upstate Correctional Facility; M. Eddy,
Sergeant, Upstate Correctional Facility; Nurse Holmes,
Upstate Correctional Facility; and Bulis, Hearing
Officer, Upstate Correctional Facility, Defendants.
No. 9:10–CV–1332 (GTS/RFT).

Jan. 23, 2012.
Mark E. Cannon, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

### MEMORANDUM–DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.
   *1 Currently before the Court, in this *pro se* prisoner
civil rights action filed by Mark E. Cannon ("Plaintiff")
against the eight above-captioned employees of the New
York State Department of Corrections and Community
Services ("Defendants"), are (1) Defendants' motion to
dismiss for failure to state a claim, and (2) United States
Magistrate Judge Randolph F. Treece's
Report–Recommendation recommending that Defendants'
motion be granted in part and denied in part. (Dkt.Nos.22,
31.) No objections have been filed and the deadline by
which to do so has expired. For the reasons set forth
below, the Report–Recommendation is accepted and
adopted in its entirety; and Defendants' motion is granted
in part and denied in part.

### I. RELEVANT BACKGROUND

#### A. Plaintiff's Complaint

   Plaintiff filed his Complaint in this action on
November 4, 2010. (Dkt. No. 1.) Generally, construed
with the utmost of liberality, Plaintiff's Complaint alleges
that, between approximately February 2010 and May
2010, at Upstate Correctional Facility in Dannemora, New
York, the following Defendants committed the following
constitutional violations against him: (1) Defendants Saint
Mary and Winston denied him access to the barbershop
for several months in retaliation for filing a grievance in
violation of the First Amendment; (2) Defendants Relf and
Wood used excessive force against him during a cell
transport in violation of the Eighth Amendment, while
Defendant Eddy witnessed that force and failed to protect
him in violation of the Eighth Amendment; (3) Defendant
Holmes did not physically examine Plaintiff after the
alleged assault in violation of the Eighth Amendment; and
(4) Plaintiff was confined to a "Drug Watch" unit for
seven days, was issued a false misbehavior report in
violation of the Eighth Amendment, and was allegedly
denied due process rights by Defendant Bulis during the
disciplinary hearing in violation of the Fourteenth
Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)
Familiarity with the factual allegations supporting these
claims in Plaintiff's Complaint is assumed in this Decision
and Order, which is intended primarily for review by the
parties. (*Id.*)

#### B. Defendants' Motion to Dismiss

   On March 8, 2011, Defendants filed a motion to
dismiss Plaintiff's Complaint for failure to state a claim
seeking dismissal of all of Plaintiff's claims. (Dkt. No. 22.)
Generally, in support of their motion to dismiss,
Defendants argue as follows: (1) Plaintiff's claims for
monetary damages are barred by the Eleventh
Amendment; (2) Plaintiff fails to state a constitutional
claim against Defendants Winston and Saint Mary; (3)
Plaintiff fails to allege facts plausibly suggesting the
personal involvement of Defendant Price in any of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

alleged constitutional violations; (4) Plaintiff's allegations of wrongdoing are conclusory and insufficient to state a constitutional claim; and (5) Defendants are entitled to qualified immunity. (*See generally* Dkt. No. 22, Parts I–V [Defs.' Memo. of Law].) On April 18, 2011, Plaintiff filed a response to Defendants' motion. (Dkt. No. 23.) On April 19, 2011, Defendants filed a reply to Plaintiff's response. (Dkt. No. 24.)

### C. Magistrate Judge Treece's Report–Recommendation

**\*2** On August 12, 2011, Magistrate Judge Treece issued a Report–Recommendation recommending that Defendants' motion be granted in part and denied in part. (Dkt. No. 31.) Familiarity with the grounds of Magistrate Judge Treece's Report–Recommendation is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. Plaintiff did not submit an objection to the Report–Recommendation.

### II. APPLICABLE LEGAL STANDARDS

#### A. Standard of Review

When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[FN1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence ...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN2]

FN1. *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to

deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

FN2. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error*

Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

review. [FN4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [FN5]

FN3. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

FN4. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

FN5. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

**B. Standard Governing a Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

***3** Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*4** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled

to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[FN6] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN7] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[FN8]

FN6. See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN7. See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

FN8. It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

## III. ANALYSIS

Because Plaintiff did not submit an objection to the Report–Recommendation, the Court reviews the Report–Recommendation only for clear error, as described above in Section II.A of this Decision and Order. After carefully reviewing all of the papers in this action, the Court concludes that Magistrate Judge Treece's thorough Report–Recommendation is correct in all respects. (Dkt. No. 31, at II [Report–Recommendation].) Magistrate Judge Treece employed the proper standards, accurately construed Plaintiff's claim, and reasonably applied the law to those claims. (*Id.*) As a result, the Court adopts the Report–Recommendation in its entirety for the reasons stated therein.[FN9] The Court would add only three points.

FN9. The Court notes that those portions of the Report–Recommendation that Plaintiff does not specifically challenge would survive even *de novo* review.

**\*5** First, Magistrate Judge Treece's thorough and correct Report–Recommendation would survive even a *de novo* review.

Second, the Court agrees with Magistrate Judge Treece that Defendants should not be precluded from including the defense of qualified immunity in their Answer and raising it again at a more appropriate time when there is a complete record by which the reasonableness of Defendants' acts can be assessed.

Third, because the pleading defects on Plaintiff's Complaint are substantive rather than merely formal, the Court sees no need to *sua sponte* grant Plaintiff leave to amend those claims before it dismisses them.[FN10]

FN10. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (finding that denial of leave to amend is not abuse of discretion where amendment would be futile); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.") (citations omitted); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied"); *Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.").

**ACCORDINGLY,** it is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 177972 (N.D.N.Y.)

(Cite as: 2012 WL 177972 (N.D.N.Y.))

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 31) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 22) is **GRANTED** with respect to the following claims, which are **DISMISSED:**

(a) All causes of action asserted against Defendants in their official capacities;

(b) Plaintiff's Eighth Amendment conditions-of-confinement claims against Defendants Winston and Saint Mary;

(c) Plaintiff's First Amendment retaliation claims against Defendants Wood, Relf, and Eddy;

(d) Plaintiff's claims regarding the "illegal" search, imposition of diet loaf, and drug watch confinement;

(e) all of Plaintiff's claims against Defendants Price, Bulis, and Holmes. The clerk is directed to terminate this case as to Defendants Price, Bulis and Holmes; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 22) is **DENIED** with respect to the following claims, which **SURVIVE** Defendants' motion:

(a) Plaintiff's First Amendment retaliation claim against Defendants Winston and Saint Mary; and

(b) Plaintiff's Eighth Amendment claims of excessive force and failure to protect against Defendants Wood, Relf, and Eddy; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action, at which time the Court will schedule a jury trial for Plaintiff's First Amendment retaliation claims against Defendants Winston and Saint Mary and Plaintiff's Eighth Amendment claims of excessive force and failure to protect against Defendants Wood, Relf and Eddy. Counsel are directed to appear at the final pretrial conference with settlement authority from the parties.

N.D.N.Y.,2012.

Cannon v. Wood
Slip Copy, 2012 WL 177972 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Fred BROWN, Plaintiff
v.
Andrew SENIUK, N.Y.P.D.; Mr. Clarke, Ms. Bernstein,
Ms. Katz, Assistant District Attorneys; Richard Brown,
District Attorney, Queens County, New York; and
Pagona, N.Y.P.D., Defendants.
No. 01 CV 1248 SJ.

March 25, 2002.
Fred Brown, a/k/a James Mallard, Mohawk Correctional
Facility, Rome, NY, Petitioner, pro se.

Michael D. Hess, New York City Law Department, New
York, NY, By: Eugene Bernard Sohn, for Respondents, of
counsel.

*MEMORANDUM & ORDER*

JOHNSON, J.

**\*1** Plaintiff Fred Brown, a/k/a James Mallard,
("Brown" or "Petitioner") brought the above-captioned
action against New York City Police Officers Andrew
Seniuk and "Pagona," Queens County District Attorney
Richard Brown, and Assistant District Attorneys "Clark,"
"Burnstein," and "Katz" (collectively, "Defendants"). His
action, initially entitled a "felony complaint," was
construed as a civil action under 42 U.S.C. § 1983.
Presently before the Court is Defendants' motion to
dismiss the complaint. For the following reasons,
Defendants' motion is granted in its entirety.

FACTUAL BACKGROUND

This civil action arises out of the State court criminal
conviction of Plaintiff Fred Brown for a number of theft
offenses. Plaintiff was arrested on June 11, 1996, charged
with Criminal Possession of Stolen Property, Grand
Larceny, Burglary, Possession of Burglar's Tools,
Resisting Arrest, and Illegal Possession of a Vehicle
Identification Number, and indicted by a Grand Jury on
charges of Criminal Possession of Stolen Property in the
Second, Fourth, and Fifth Degrees, Grand Larceny in the
Second and Fourth Degrees, Burglary in the Third Degree,
Criminal Mischief in the Third Degree, and Unauthorized
Use of Vehicle in the Third Degree. On January 23, 1998,
he was convicted by a jury in the New York Supreme
Court, Queens County, of Criminal Possession of Stolen
Property in the Second and Fourth Degrees, Grand
Larceny in the Second and Fourth Degrees, Burglary in
the Third Degree, and Unauthorized Use of a Vehicle in
the Third Degree. He was sentenced on February 25, 1998
to seven and one half to 15 years. (Certificate of
Disposition # 13837, Attached to Sohn Decl. as Ex. E.)
Petitioner appealed his conviction to the Appellate
Division, Second Department, which affirmed on May 30,
2000. State v. Brown, 709 N.Y.S.2d 413 (2000). The
Court of Appeals denied leave to appeal that decision on
August 28, 2000. State v. Brown, 715 N.Y.S.2d 218
(2000). Plaintiff filed the instant lawsuit on March 13,
2001, alleging a variety of criminal actions by Seniuk,
Clarke, Katz, and Bernstein. On June 20, 2001, or
thereabouts, Plaintiff submitted an amended complaint,
which was filed with the Court on July 2, 2001. The
amended complaint added District Attorney Richard
Brown and New York Police Officer Pagona as
Defendants.[FN1] Defendants filed this motion to dismiss on
June 12, 2001.

FN1. Plaintiff's "Amended and Supplemental
Pleading Pursuant to 15(a) RCP" was apparently
filed after Defendants served their Motion to
Dismiss on or about June 12, 2001. Rule 15(a)
of the Federal Rules of Civil Procedure
specifically states that "[a] party may amend the party's
pleading once as a matter of course any time
before a responsive pleading is served....
Otherwise, a party may amend the party's
pleading only be leave of court or by written
consent of the adverse party." Plaintiff did not
seek leave of the Court, nor did he request
Defendants' consent to amend his complaint.
Accordingly, Defendants urge the Court to reject

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

Plaintiff's amended complaint. However, the Court recognizes the difficulty of proceeding *pro se* and from within custody, considers that Plaintiff may not have received Defendants' Motion to Dismiss prior to filing his Amended Complaint, and construes his amended complaint as a request to amend his original pleading. Defense counsel was notified of the addition of two new individual defendants and the additional claims against them in time to address the amended complaint in the Reply brief. Thus, the Court will accept and consider Plaintiff's Amended Complaint.

DISCUSSION

Plaintiff initially styled his complaint a "Felony Complaint Pursuant to Rule 3, and 23." However, it is axiomatic that a private citizen cannot bring a criminal complaint. *See e.g. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)* ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86–87 (2d Cir.1972)* ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo–American jurisdictions by private complaints."). Plaintiff's complaint alleged a violation of his civil rights involving his conviction. Accordingly, the Court construes his complaint as a § 1983 civil action seeking relief from violations of his constitutional rights. Plaintiff's Claims Under Section 1983

**\*2** Plaintiff's remedies under § 1983 are limited. The Supreme Court held in *Preiser v. Rodriguez* that the exclusive remedy for a state prisoner challenging the fact or length of his confinement is through habeas corpus relief. 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983."). However, *Preiser* did not limit state prisoners' use of § 1983 in claims for damages. *Id., 411 U.S. at 494* ("If a state prisoner is seeking damages ... he is seeking

something other than immediate or more speedy release—the traditional purpose of habeas corpus. Accordingly, ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court."). Thus, this Court does have jurisdiction to hear § 1983 damages actions from state prisoners.

However, Plaintiff in this case does not make out a claim for relief under § 1983. In *Heck v. Humphrey,* the Supreme Court applied the standard used for civil actions for malicious prosecution to § 1983 damages actions, and required plaintiffs to show that the allegedly unconstitutional conviction had already been invalidated. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Plaintiff here concedes that his conviction has not been overturned. Instead, he argues that it "is invalid as it was had in violation of Criminal Procedure Rules." (Pet.'s Reply Opp. Mot. Dismiss at 2.) His allegation is insufficient to meet the Supreme Court's requirement that plaintiffs "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487. Plaintiff cannot show that his conviction was terminated in his favor by any of these means. Accordingly, his allegations must be dismissed as legally insufficient to state a claim against any of the Defendants under § 1983.

Plaintiff's Potential Claims for Malicious Prosecution and False Arrest

In their motion to dismiss, Defendants also responded to possible actions for false arrest and malicious prosecution. Neither of these actions are available to Plaintiff. First, a claim for false arrest would be time-barred. The statute of limitations for a constitutional claim for false arrest begins to run at the time of the arrest.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

*Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–219 (E.D.N.Y.1994). Since Plaintiff was arrested on June 11, 1996, he would be required to have filed his complaint alleging false arrest by June 11, 1999. This action was not commenced until February 1, 2001. Accordingly, a claim for false arrest would be time-barred.

**\*3** Second, Plaintiff cannot make out a claim for malicious prosecution, because he fails to establish the elements necessary to sustain a claim. In order to succeed on a claim of malicious prosecution, whether brought under § 1983 or New York State law, Plaintiff must show that (1) the defendants commenced or continued a criminal proceeding against the plaintiff, (2) which ended in the plaintiff's favor, (3) that the defendants did not have probable cause for such a proceeding, and (4) that the defendants acted with actual malice. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 417 (2d Cir.1999). As discussed above, Plaintiff has not shown that the criminal proceedings against him have ended in his favor. Thus he cannot make out a claim for malicious prosecution regarding the charges on which he was convicted and which convictions still stand.

Plaintiff is also precluded from asserting a claim for malicious prosecution on the basis of the additional charges for which he was not convicted. The charges for Possession of Burglary Tools and Resisting Arrest, which were dropped prior to trial, are time-barred by the Statute of Limitations. The Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law. McKinney's CPLR § 215. Those additional charges were terminated, at the latest, on May 19, 1997. Plaintiff did not commence his suit until February 1, 2001.

Nor can he state a claim for malicious prosecution on the basis of the charges for Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree. Where, as here, the criminal prosecution has resulted in conviction on some charges, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on the charge or charges for which the individual was not convicted. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989); *Picardo v. New York Police*

*Department, et al.,* 1998 WL 812049, at \*3 (S.D.N.Y.) Such analysis should consider whether the elements of each charge are similar or different and whether one charge is a lesser included offense of another. *Janetka,* 892 F.2d at 190. The Court should also consider whether the charges on which the individual was convicted were more or less serious than the charges which were dismissed or upon which the individual was acquitted. *See Picardo,* 1998 WL 812049, at \*4.

Here, Plaintiff was indicted on several related charges stemming from a single event. He was convicted of most of these related charges, including Criminal Possession of Stolen Property in the Second and Fourth degrees. The charges upon which Plaintiff was not convicted, Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree, are no more serious than the charges for which Plaintiff was convicted. This Court finds that the charges are sufficiently related to the charges on which Plaintiff was convicted, and thus may not be the basis for a claim of malicious prosecution.

Plaintiff's Allegations of Conspiracy

**\*4** Plaintiff's initial complaint alleges acts of criminal conspiracy. However, Plaintiff does not assert sufficient allegations to make out a claim for conspiracy to violate his civil rights. In order to make out a claim of conspiracy to deprive constitutional rights under 42 U.S.C. § 1983, the plaintiff must show that there was: (1) an agreement among co-conspirators; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal, thus causing damages. *Pangburn v. Culbertson,* 200 F .3d 65, 72 (2d Cir.1999). In addition to asserting these elements, the plaintiff must allege specific facts that show that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 490 U.S. 386 (1991); *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) ("Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). In the instant case, Plaintiff alleges that ADA Clarke and Officer Seniuk conspired "to obtain an indictment at any cost,"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

and that Seniuk and Bernstein conspired "to obtain a conviction at any cost." (Pl.'s Opp. Mot. Dismiss at 7.) He also recites the alleged acts of the Individual Defendants, including making false statements and falsifying reports, presenting false evidence, giving hearsay testimony (Compl. at 2–3), and failing "adequately to train and supervise assistant district attorney(s) Mr. Clarke, Ms. Katz and Ms. Burnstein to insure that they meet their constitutional obligation" (Amend. Compl. at 6). However, Plaintiff's argument is lacking specific facts that show an agreement among the alleged co-conspirators or that the Individual Defendants acted with a shared purpose or common object. While New York law does allow the existence of civil conspiracies to be inferred from circumstantial evidence, "neither conjecture, surmise, nor suspicion can take the place of evidence." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431 (S .D.N.Y.2000) (citing *Cooper v. Maurer,* 37 N.Y.S.2d 992, 996 (N.Y.Sup.Ct.1942)). Here, Plaintiff fails to present evidence, either circumstantial or direct, sufficient to infer the existence of a conspiracy.

As this Court finds that Plaintiff's complaint fails to state facts sufficient to maintain a § 1983 claim for damages, and finding no other claim for relief that may be granted, the Court need not consider Defendants' affirmative defenses of qualified immunity and prosecutorial immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is hereby GRANTED in its entirety. The Clerk of the Court is directed to close this proceeding with prejudice.

SO ORDERED.

E.D.N.Y.,2002.

Brown v. Seniuk
Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.