IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JOHN COSBY,

                    Plaintiff,         Civil Action No.
                                       9:10-CV-0595 (TJM/DEP)

      v.

COLLEEN RUSSELL, *et al.*

                    Defendants.
_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

JOHN COSBY, *Pro Se*
94-A-2671
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN             ADRIENNE J. KERWIN, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff John Cosby, a New York State prison inmate, has commenced this action against several corrections employees stationed at the prison facility in which he was confined at the relevant times pursuant to, *inter alia*, 42 U.S.C. § 1983. Plaintiff's most recent pleading, his third amended complaint, centers upon an alleged assault by defendants that resulted in his sustaining significant injuries. Plaintiff claims defendants violated his constitutional rights, and that they were negligent based upon their failure to protect him from the assault.

In response to plaintiff's third amended complaint, defendants seek its dismissal through the filing of a motion for judgment on the pleadings based on their contention that plaintiff commenced this action after the pertinent statute of limitations expired. For the reasons set forth below, I recommend that (1) plaintiff's state claims be dismissed, *sua sponte*, as precluded based upon N.Y. Correction Law § 24; and (2) defendants' statute of limitations defense be rejected, and their motion be denied.

## I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 84 at 2.  While he is now incarcerated at the Green Haven Correctional Facility, at the times relevant to this action plaintiff was confined at the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  *Id.* at 2.

On May 14, 2007, while assigned to a long-term keeplock cell at Great Meadow, plaintiff filed a grievance accusing Corrections Officer Stormer of threatening him.[2]  Dkt. No. 84 at 2.  In response to his

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's third amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *Cooper v. Pate*, 378 U.S. 546, 546 (1964).  The court has also considered the materials submitted by the plaintiff in opposition to the defendants' motion, Dkt. No. 95, to the extent they are consistent with the allegations set forth in his complaint.  *See Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) ("Thus, in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider matters outside of the complaint to the extent they are consistent with the allegations in the complaint." (internal quotation marks omitted)).

[2]    "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates."  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  "The most significant difference between keeplock and general population

3

grievance, plaintiff was transferred away from the area in which Stormer worked and into a general population cell. *Id.* at 3-4.

Shortly after his transfer, plaintiff was approached by Corrections Officers Bishop and Russell and instructed to dress so that he could be escorted to the prison commissary. Dkt. No. 84 at 4. Once outside his cell, plaintiff requested permission to take his hands out of his pockets while being transported so that he could utilize a handrail to assist him in negotiating a set of stairs. *Id.* After that request was denied, plaintiff was told to return to his cell. *Id.* Plaintiff then began to squat with his hands in his pockets and eventually sat down on the floor. *Id.*

After failing at attempts to pull him to his feet, Bishop and Russell forced plaintiff to lie down on his stomach while they temporarily secured his feet and legs until assistance arrived in response to an alarm sounded by the officers. Dkt. No. 84 at 4. According to plaintiff, before any additional officers arrived, Bishop applied significant pressure to plaintiff's right ear and neck with his baton, and Russell struck plaintiff's ankles and knees with her baton. *Id.*

---

inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

Once assistance arrived, plaintiff was handcuffed, lifted to his feet, and taken to a stairwell next to a control booth by Corrections Officer Lennox, at which point Lennox allegedly smashed plaintiff's head into the glass window of the control booth. *Id.* According to plaintiff, Corrections Sergeant Kline and Russell both allegedly observed Lennox's conduct, but did not attempt to stop the attack. *Id.* Thereafter, several corrections officers, including Bishop, began kicking plaintiff's feet and struck him with blows to his ankles and legs. *Id.*

Following the incident plaintiff was taken to the infirmary for treatment, and thereafter was transported in a wheelchair to the facility's special housing unit ("SHU"). Dkt. No. 84 at 6. After arriving at the SHU, plaintiff was strip searched and placed in handcuffs by Corrections Officer Mayo. *Id.* Plaintiff alleges that Mayo squeezed the handcuffs, causing him pain and discomfort. *Id.* Mayo then allegedly began to stomp on plaintiff's ankle, causing plaintiff to have a seizure. *Id.* Corrections Officer Hayes allegedly observed this attack, but made no attempt to intervene. *Id.*

As a result of the above-described uses of force by corrections officers, plaintiff suffered numerous injuries, including a laceration above

his right eyebrow, an abrasion to his left hand, and a fibular fracture to his left ankle.  Dkt. No. 84 at 6.

II.    PROCEDURAL HISTORY

On May 20, 2010, the court received plaintiff's original complaint in this action, as well as an application for leave to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 1-2.  That complaint named Colleen Russell, Robert J. Lennox, Darrell D. Pilon, Scott Bishop, Douglas Wilson, Kyle J. Mulverhill, [f/n/u] Mayo, J. Hayes, [f/n/u] Griffin, E. Pritchard, E. Rich, and W. Kline as defendants.  Dkt. No. 1 at 1.  Following an initial review of the complaint and IFP application, Senior District Judge Thomas J. McAvoy issued a decision on July 29, 2010, granting Cosby leave to proceed IFP and approving the filing of the complaint, but directing dismissal of plaintiff's claims against defendants Wilson, Mulverhill, Hayes, Griffin, Pritchard, Rich, and Kline, without prejudice and with leave to replead within thirty days.  Dkt. No. 4.

On September 30, 2010, in accordance with Judge McAvoy's order, plaintiff submitted his first amended complaint.  Dkt. No. 7.  That amended pleading named all of the defendants listed in plaintiff's original complaint, with the exception of defendant Griffin, and was again examined by the

6

court for facial sufficiency. Judge McAvoy's review resulted in the issuance of a decision and order, on February 23, 2011, in which the court (1) ordered dismissal of all claims against defendants Griffin, Wilson, and Mulverhill, without prejudice; (2) dismissed plaintiff's due process and equal protection causes of action against defendants Russell and Bishop, without prejudice; and (3) ordered the addition of Dr. Thomas as a defendant based upon allegations against him set forth in plaintiff's first amended complaint. Dkt. No. 9 at 5-6.

On May 17, 2011, following service, defendants moved to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 26. That motion resulted in my issuance of a report recommending that certain of plaintiff's claims, including all causes of action arising under state and federal penal laws, his cause of action under 42 U.S.C. § 1985(3), and all claims against defendants Russell and Thomas be dismissed, with leave to replead only with regard to plaintiff's claims against defendants Russell and Thomas and his cause of action under 42 U.S.C. § 1985(3). Dkt. No. 36. That recommendation was

adopted in a decision and order issued by Judge McAvoy on March 5, 2012. Dkt. No. 37 at 1-2.

Plaintiff availed himself of this second opportunity to amend by filing a second amended complaint in the action on April 24, 2012. Dkt. No. 39. In response, defendants again moved seeking dismissal of the claims asserted against defendants Hayes, Pritchard, Rich, Kline and Russell for failure to state a claim upon which relief may be granted. Dkt. No. 41. On November 20, 2012, I issued a report recommending that defendants' motion to dismiss be granted as to plaintiff's failure-to-intervene claims against defendants Pritchard and Rich and his excessive-force claim against defendant Russell, and that those claims be dismissed with leave to replead. Dkt. No. 57 at 37-38. I also recommended that defendants' motion to dismiss be granted as to plaintiff's New York Human Rights Law claim against defendants Hayes, Pritchard, Rich, Kline, and Russell, and that the claim be dismissed with prejudice. *Id.* at 38. I further recommended that plaintiff's failure-to-intervene claim against defendants Hayes, Kline, and Russell be deemed the only cause of action to survive defendants' motion to dismiss. *Id.* at 38. That report was adopted in a decision and order issued by Judge McAvoy on March 11, 2013. Dkt. No.

64.  As a result, plaintiff's failure-to-intervene cause of action against

defendants Hayes, Kline, and Russell was the only claim to survive

defendants' motion to dismiss plaintiff's second amended complaint.  *Id.* at

2.

Plaintiff again took advantage of the opportunity to amend by filing a

third amended complaint, the currently operative pleading, on August 16,

2013.  Dkt. No. 84.  His third amended complaint asserts claims against

remaining defendants Hayes, Kline, and Russell arising under New York

State common law, as well as constitutional claims based on alleged

violations of his rights under the Eighth and Fourteenth Amendments.

On February 21, 2014, defendants filed a motion for judgment on the

pleadings seeking dismissal of plaintiff's most recent complaint.  In support

of that motion, defendants contend that the the three-year statute of

limitations applicable to plaintiff's section 1983 claims expired prior to the

filing of his original complaint.  Dkt. No. 93-1 at 4.  Plaintiff has opposed

defendants' motion, arguing that he handed his original complaint to a

prison official one day prior to expiration of the statute of limitations.  Dkt.

No. 95 at 2, 8.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Legal Standard Governing Motions for Judgment on the Pleadings

Defendants seek dismissal of plaintiff's third amended complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  When analyzing a Rule 12(c) motion, the court must apply the same standard as that applicable to a motion under Rule 12(b)(6). *See, e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-

defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r*

*of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.   <u>Plaintiff's Claims Arising Under New York State Common Law</u>[3]

Plaintiff's third amended complaint asserts a negligence cause of action against defendants Kline, Hayes, and Russell, pursuant to New York State common law, arising from allegations that they failed to prevent the use of force applied against him by other corrections officers. Dkt. No. 84 at 7. Additionally, plaintiff asserts a failure to intervene a claim against each defendant arising under (1) the New York State Constitution, (2) New York State Correction Law § 137(5), and (3) DOCCS regulations.[4] *Id.* at 7-8.

---

[3]    Defendants do not address plaintiff's state law claims in their motion for judgment on the pleadings. As will be discussed more fully below, whether those claims may be adjudicated in federal court is governed by N.Y. Correction Law § 24 and implicates the court's jurisdiction. The court is authorized to examine subject matter jurisdiction at any time, even where the parties have not raised the issue. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *Sekiguchi v. Long*, No. 13-CV-1223, 2013 WL 5357147, at *1 (D. Conn. Sept. 25, 2013) ("[T]he court has an obligation to consider its subject matter jurisdiction *sua sponte*." (citing, *inter alia*, *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)).

[4]    Plaintiff also asserts a claim that he characterizes as "vicarious liability." Dkt. No. 84 at 8. It is well-established that vicarious liability is insufficient as a basis to support a claim under section 1983. *See, e.g., Iqbal*, 556 U.S. at 676 ("[V]icarious liability is inapplicable to . . . [section] 1983 suits[.]").

By statute, New York vests state employees, including correctional employees, with immunity from suits for damages arising from conduct performed within the scope of their employment.  N.Y. Corr. Law § 24.  That section provides as follows:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

*Id.*; *see also Ierardi v. Sysco*, 119 F.3d 183, 186-87 (2d Cir. 1997).  Section 24 thus precludes claims against corrections officers brought against them in any court in their personal capacities arising out of the discharge of their duties.  *Baker v. Couglin*, 77 F.3d 12, 14-15 (2d Cir. 1996).  Because "a federal court applying pendent jurisdiction is forced to

apply state substantive law to a state claim, this would result in inmates being prohibited from advancing such pendent claims along with their federal claims in federal court." *O'Diah v. Fischer*, No. 08-CV-0941, 2012 WL 987726, at *21 (N.D.N.Y. Feb. 28, 2012) (Homer, M.J.), *report and recommendation adopted by* No. 08-CV-0941, 2012 WL 976033 (N.D.N.Y. Mar. 22, 2012) (McAvoy, J.).[5] Additionally, because the New York State Court of Claims is one of "limited jurisdiction," hearing only claims against New York State, "[section] 24 amounts to a grant of immunity for corrections officers sued in their personal capacities for claims arising out of the discharge of their duties." *Rucano v. Koenigsmann*, No. 12-CV-0035, 2014 WL 1292281, at *15 (N.D.N.Y. Mar. 31, 2014) (D'Agostino, J.).[6]

In 2009, the Supreme Court held that section 24 violates the Supremacy Clause to the extent it delegates to the New York State Court

---

[5]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[6]      To be sure, the immunity afforded under section 24 is by no means absolute. Actions taken by corrections employees occurring during the course of their employment but wholly outside of their scope of employment, for example, lack the protection of that provision. The circumstances presented in *Ierardi,* for example, involving a claim of sexual harassment by a special education teacher employed by the DOCCS against a corrections officer assigned to the same facility, serve to aptly illustrate the type of situation in which section 24 would not afford protection. *Ierardi*, 119 F.3d at 188-89.

of Claims jurisdiction to adjudicate civil rights cases arising under section 1983. *Haywood v. Drown*, 556 U.S. 729, 734-36 (2009). While the Supreme Court found section 24 violates the Supremacy Clause as it applies to claims brought under section 1983, it did not find the statute unconstitutional when applied to claims arising under New York State law. Accordingly, "courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24." *Rounds v. Thompson*, No. 12-CV-0953, 2013 WL 3187074, at *4 (N.D.N.Y. June 20, 2013) (Sharpe, J.); *see also May v. Donneli*, No. 06-CV-0437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) (Sharpe, J., *adopting report and recommendation by* Treece, M.J.) ("A claim brought pursuant to state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear [a] pendent state law claim.").

To determine whether section 24 is applicable to a corrections officer's alleged misconduct, "courts generally look at the factors associated with New York's scope of employment analysis." *Ierardi*, 119

F.3d at 187 n.3 (citing *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty.*

*Supervision*, No. 11-CV-0079, 2013 WL 5347468, at *3 (W.D.N.Y. Sept.

23, 2013)).  Those factors include

> the connection between the time, place and
> occasion for the act; the history of the relationship
> between employer and employee as spelled out in
> actual practice; whether the act is one commonly
> done by such an employee; the extent of departure
> from normal methods of performance; and whether
> the specific act was one that the employer could
> reasonably have anticipated.

*Johnson*, 2013 WL 5347468, at *3 (citing *Riviello v. Waldron*, 391 N.E.2d

1278, 1281 (N.Y. 1979)).  Ultimately, "an employee will be considered

within the scope of his employment so long as he is discharging his duties,

no matter how irregularly, or with what disregard of instructions."  *Cepeda*

*v. Coughlin*, 513 N.Y.S.2d 528, 530 (N.Y. 1987) (quotation marks omitted).

    In this case, all of plaintiff's allegations against defendants Kline,

Hayes, and Russell stem from events that occurred at Great Meadow

while all three defendants were on duty.  Dkt. No. 84 at 4-6.  The alleged

incident forming the basis of plaintiff's claims began as he was escorted by

defendant Russell and Bishop to the prison commissary.  *Id.* at 4.

Defendant Kline arrived as officers, including Bishop and Russell, were

lifting plaintiff back to his feet.  *Id.* at 5.  According to plaintiff, defendant Hayes was present as corrections officer Mayo restrained him through the use of applied handcuffs and stomped on his ankles after being transported to the SHU.  *Id.* at 6.

Transporting an inmate and subduing that individual, should a disciplinary issue arise, is "common[]" conduct by a DOCCS officer or sergeant.  *Johnson*, 2013 WL 5347468, at *3 (citing *Riviello*, 391 N.E.2d at 1281).  Because each defendant in this case was "discharging his [or her] duties" relating to plaintiff's transportation and confinement, I find that the allegations in the third amended complaint plausibly suggest that defendants were acting within the scope of their employment as DOCCS employees while undertaking the conduct alleged by plaintiff.[7]  *Cepeda*, 513 N.Y.S.2d at 530.

Accordingly, pursuant to section 24, only the New York State Court of Claims has proper jurisdiction to hear plaintiff's state law claims "because [he] has alleged acts that clearly fall within the scope of the Defendants' employment duties."  *Rucano*, 2014 WL 1292281, at *16.  For

---

[7]    I note that defendants have acknowledged defendants Hayes, Russell, and Kline were employed as corrections employees at the time of the alleged misconduct. *Compare* Dkt. No. 84 at 2 *with* Dkt. No. 92 at 1.

this reason, I recommend that both plaintiff's excessive force and negligence claims arising under the New York State Constitution, New York State law, and DOCCS regulations be dismissed, without prejudice to the plaintiff's right to reassert those claims in a court of competent jurisdiction. *See Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 139 (S.D.N.Y. 2002) ("Because a New York State court (other than the Court of Claims) would dismiss [plaintiff's] state law claims, we do so as well.").

    C.    <u>Plaintiff's Section 1983 Claims</u>

Plaintiff's remaining claims arise under 42 U.S.C. § 1983. Dkt. No. 84 at 7-8. In support of their motion to dismiss, defendants argue that those claims are barred by the applicable statute of limitations. Dkt. No. 93-1 at 4. In opposition to the motion, plaintiff contends that his claims are timely if the court construes his original complaint as having been filed on the day he handed it to a law library officer at the prison facility in which he was confined. Dkt. No. 95-1 at 2.

The applicable statute of limitations for a section 1983 action is determined from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *accord*, *Pearl v. City of Long Beach*, 296 F.3d

76, 79 (2d Cir. 2002).  Accordingly, in New York, the statute of limitations for a section 1983 action is three years.  N.Y. C.P.L.R. § 214(5); *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001) ("[The plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions[.]"); *accord*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1138, 1156 (2d Cir. 1995).  A claim arising under section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly*, 254 F.3d at 41 (quotation marks omitted).

For purposes of gauging the timeliness of a *pro se* prisoner's action, a complaint in a section 1983 case is deemed to have been filed on the date it was conveyed to prison officials for mailing, in most instances measuring the date appearing on the face of the complaint, rather than the date on which it was received by the court.  *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (adopting the "mailbox rule" and holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," instead of when it is received by the clerk); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *opinion modified on reh'g on other grounds*, 25

F.3d 81 (2d Cir. 1994), (applying *Houston*, where the plaintiff filed a habeas corpus appeal, to complaints arising under section 1983); *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ("Absent evidence to the contrary, the Court assumes that the prisoner gave his petition to prison officials for mailing on the date that he signed it." (alterations omitted)); *accord*, *McPherson v. Burge*, No. 06-CV-1076, 2009 WL 1293342, at *9 (N.D.N.Y. May 5, 2009) (Suddaby, J.) (citing cases); *but see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (suggesting that the operative filing date is that on which the court clerk receives the pleading).[8]  The Supreme Court adopted this protection because a *pro se*

---

[8]      In *Grullon*, the Second Circuit examined a district court's finding that granting the plaintiff leave to amend would be futile.  720 F.3d at 141.  The issue in that case was whether a letter, dated April 18, 2010, to a defendant gave that defendant fifteen days notice and an opportunity to remedy the violation at issue, as required by Connecticut state law, before the plaintiff filed suit.  *Id.* The district court found that, where the plaintiff's letter to the defendant was dated April 18, and the complaint was dated May 1, the plaintiff had failed to provide the defendant with the requisite fifteen days to act prior to filing his lawsuit.  *Id.*  In remanding the matter to the district court with instructions to allow plaintiff to file an amended complaint, the Second Circuit made the following observation:

> First, although the court assumed *arguendo* (quite generously) that [the plaintiff's l]etter dated April 18 would have been received by the Warden on that date, the finding that the complaint that was 'dated' May 1, was 'filed' on May 1, is contrary to the district court records.  The complaint as it appears in the record was date-stamped by the district court as 'FILED 2010 MAY 18'; and the district court docket sheets state that the complaint was filed on May 18.

prisoner loses all contact with his pleading at the moment he delivers it to prison officials. *Houston*, 487 U.S. at 275; *see also Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (explaining that the mailbox rule is "justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court").

In this case, because the relevant events giving rise to plaintiff's claims occurred on May 14, 2007, Dkt. No. 84 at 4, this action was timely commenced if plaintiff is deemed to have filed his original complaint by May 14, 2010. In opposition to defendants' motion to dismiss, plaintiff contends that, in accordance with the prisoner mailbox rule, this action was commenced on May 13, 2010, the date on which he delivered his complaint to a prison law library officer. Dkt. No. 95-1 at 2. This assertion

---

*Id.* (citations omitted).

On its face, this finding could be regarded as being at odds with *Dory* and its progeny, which applied the prison mailbox rule to section 1983 cases. Because it seems doubtful that the Second Circuit would reverse course with regard to this issue and abrogate *Dory* without significant discussion, however, I recommend that the prison mailbox rule be followed in this case, and that plaintiff's complaint be deemed to have been filed when he handed it to prison officials for mailing, rather than on the date on which the court received it. *Cf. Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999) ("That is the teaching of *Hewitt*, and if *Sandin* had meant to overrule *Hewitt* to the extent of precluding a protected liberty interest for all administrative confinements, we would expect to see more pointed language to that effect.").

appears to be plausible, and is buttressed by the fact the original complaint was notarized and signed on May 13, 2010. Dkt. No. 1 at 11. Above the notary stamp on the complaint, the notary includes the handwritten phrase, "[s]worn to before me this 13 day of May 2010; M. Jacquelyen Kennedy." *Id.* Additionally, in opposition to defendants' motion to dismiss, plaintiff submitted a letter addressed to him from a law library officer who states that plaintiff "mailed out legal mail from the law library" on May 13, 2010. Dkt. No. 95 at 8. Because a law library officer constitutes a prison official under the prison mailbox rule, and because, pursuant to that rule, the plaintiff is deemed to have filed his complaint one day prior to the expiration of the pertinent statute of limitations, plaintiff's complaint in this matter was timely filed.

Defendants' statute of limitations argument, which is predicated on the assertion that the plaintiff's complaint was filed on May 20, 2010, is therefore unavailing because it does not take into consideration the applicable and well-settled mailbox rule. Dkt. No 93-1 at 4. Accordingly, I recommend defendants' motion for judgment on the pleadings be denied.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's third amended complaint in this action asserts several claims arising under New York State law against defendants Kline, Hayes, and Russell. Because this court lacks jurisdiction over those claims, I recommend they be dismissed, *sua sponte*.

Turning to defendants' motion and the issue of timeliness of plaintiff's section 1983 claims, I find that defendants have failed to appreciate and apply the well-established prison mailbox rule by contending that this action was commenced on the date the court received plaintiff's original complaint. When plaintiff is given the benefit of that rule, and all inferences are drawn in his favor, the relevant chronology establishes that this action was commenced on May 13, 2010, one day prior to the expiration of the governing statute of limitations, and that his section 1983 claims are therefore timely.[9] Accordingly, it is hereby respectfully

---

[9]   My recommendation is limited to addressing the facial sufficiency of defendants' statute of limitations defense, but does not preclude them from pursuing it at trial if, after completion of discovery and motion practice, there exists a genuine dispute of fact regarding the date on which plaintiff should be deemed to have commenced this action. *See Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1987) (finding the district court "erroneously granted" the defendants summary judgment because "an issue of material fact exist[ed] as to when then statute of limitations actually began to run");

RECOMMENDED that defendants' motion for judgment on the pleadings (Dkt. No. 93) be DENIED; and it is further

RECOMMENDED that plaintiff's state law claims against defendants Kline, Hayes, and Russell be DISMISSED, *sua sponte*, without prejudice to the right of the plaintiff to refile those claims in a court with proper jurisdiction.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

*G.W. White & Son, Inc. v. Tripp*, No. 94-CV-0681, 1995 WL 65058, at *3 (N.D.N.Y. Feb. 14, 1995) (Scullin, J.) ("Absent undisputed allegations, affidavits, and/or admissions, the question of when an improvement or project was completed so as to commence the running of the statute of limitations is one of fact to be determined at trial." (quotation marks omitted)).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    July 1, 2014
          Syracuse, New York


Not Reported in F.Supp.2d, 2012 WL 987726 (N.D.N.Y.)
**(Cite as: 2012 WL 987726 (N.D.N.Y.))**

H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Aror Ark O'DIAH, Plaintiff,

v.

Brian FISCHER; Michael Corcoran; Malcolm R.
Cully; Ronald W. Moscicki; Stephen Guter; C.O.
Ramsay; D. Richardson; J. Pepin; J. Hahn; Mr. &
Lt. Shaw; Scott C. Carlsen; Andrew Cuomo, Attor-
ney General for the State of New York; K. Thomas,
Correctional Officer, Cayuga Correctional Facility;
and D. Swierk, Mail Room Clerk, Lakeview Shock
Incarceration Facility, Defendants[FN1].

> **FN1.** Eleven other defendants were previ-
> ously terminated or had the claims against
> them transferred to other districts. *See* Dkt.
> Nos. 51, 61.

No. 08–CV–941 (TJM/DRH).
Feb. 28, 2012.

Aror Ark O'Diah, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Roger W. Kinsey, Esq., As-
sistant Attorney General, of Counsel, Albany, NY,
for Defendants.

**REPORT–RECOMMENDATION AND ORDER**[FN2]

> **FN2.** This matter was referred to the un-
> dersigned for report and recommendation
> pursuant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

DAVID R. HOMER, United States Magistrate
Judge.

**\*1** Plaintiff pro se Aror O'Diah ("O'Diah"), an
inmate in the custody of the New York State De-
partment of Correctional and Community Supervi-

sion ("DOCCS"), brings this action pursuant to 42
U.S.C. § 1983 alleging that defendants, New York's
prior Attorney General and thirteen DOCCS offi-
cials and employees,[FN3] violated his constitution-
al rights under the First, Fourth, Fifth, Sixth,
Eighth, and Fourteenth Amendments. Am. Compl.
(Dkt. No. 55). O'Diah also asserts claims under 42
U.S.C. §§ 1985 and 1986, Title II of the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12101
*et seq.,* and various state law provisions. Dkt. No.
70, ¶¶ 45–49. Presently pending is the moving de-
fendants' motion to dismiss the amended complaint
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 66.
O'Diah opposes the motion.[FN4] Dkt. No. 70. For
the following reasons it is recommended that de-
fendants' motion be granted in part and denied in
part.

> **FN3.** *See* note 1 *supra.*

> **FN4.** O'Diah's opposition includes new
> claims against new defendants. Dkt. No.
> 70, ¶¶ 5–6, 26, 31, 38. These claims and
> defendants are not subjects of the present
> motion.

**I. Background**
The facts are related herein in the light most fa-
vorable to O'Diah as the non-moving party. *See*
subsection II(A) *infra.*

**A. June 2007**
On June 5 and July 27, 2007, the Queens
County Court denied O'Diah's state court motions
challenging his conviction and sentencing. Am.
Compl. ¶ 29. O'Diah appealed the denials, but the
appeals were not processed or docketed. *Id.* O'Diah
alleges that defendant Corcoran caused he appeals
not to be processed properly. *Id.*

**B. October 2007 through December 2007**[FN5]

> **FN5.** O'Diah claims that in May 2007, he
> was infected with bacterial and in Septem-
> ber 2007 that while he required antibiotics

for the bacterial infection, he was instead diagnosed with cancer, epilepsy, and tuberculosis. Am. Comp. ¶¶ 7–8. However, O'Diah has failed to link these actions to any specific defendants. Thus, he has failed to allege that anyone was personally involved and claims related to these events should be dismissed.

On October 24, 2007, via defendants Ramsay and Corcoran, O'Diah applied for special access to use the law library for extended hours. Am. Compl. ¶ 43. The application was granted from October 24 through November 24, 2008 so that O'Diah could complete pending legal work. *Id.* ¶ 44. O'Diah was under the impression that he had the ability to terminate this authorization whenever he desired. *Id.* ¶ 45. In early November, O'Diah asked Ramsay to remove his name from the call out sheets as he no longer needed the special access to the library because his legal work was completed. *Id.* ¶ 46. Ramsay agreed to remove O'Diah's name from the list and also instructed him on how to renew the application if he required additional library time in the future. *Id.*

On November 11, 2007, O'Diah received a call to visit the library, which was confusing as O'Diah had previously had a conversation with Ramsay in which Ramsay indicated that he would remove O'Diah from the call out list. Am. Compl. ¶ 47. On November 12, O'Diah received a misbehavior report for failing to use the special access pass on November 11th. *Id.* ¶ 48. On or about November 21, 2007, Ramsay, who was allegedly coerced by Mawhir, testified that he did not remember having a conversation with O'Diah about him no longer needing to use the library pass. *Id.* ¶ 50. Ramsay, Mawhir, Corcoran and Carlsen allegedly conspired to have O'Diah found guilty of the disciplinary charge. *Id.* ¶ 51. Additionally, that day, Mawhir also conspired with other inmates to have them instigate an altercation with O'Diah so that he could be given additional disciplinary charges because O'Diah had filed grievances against Corcoran and

Carlsen. *Id.* ¶ 49.

**\*2** After that date, Ramsay, Mawhir and Corcoran encouraged other inmates to instigate fights with O'Diah and pour cold water on his body and personal effects. Am. Compl. ¶ 51. Due to the tension these defendants created, O'Diah refused to go into the recreation yard for fear of his personal safety. *Id.* ¶ 53. O'Diah lodged complaints with Mawhir and Ramsay, but they were ignored and he was told that he was getting what he deserved after filing grievances against the state and its employees. *Id.* ¶ 52.

### C. March 2008
On March 7, 2008, O'Diah was denied his legal mail, even though he had received prior authorization from defendant Thomas and made subsequent arrangements with an advocate to have him pick up the documents from the prison. Am. Compl. ¶ 54. Thomas had accessed O'Diah's property that day, but influenced by Mawhir, refused to deliver the legal property to O'Diah so that he could provide it to his legal advocate. *Id.* ¶ 55. The inability of O'Diah's legal advocate to receive his legal papers represented a denial of access to the courts. *Id.* ¶ 56.

Also on March 7, Thomas issued O'Diah a false misbehavior report for O'Diah's failure to obey a direct order. Am. Compl. ¶ 57. This issuance of this charge was influenced by Mawhir and Corcoran. *Id.* On March 8, O'Diah received the misbehavior report and was sent to keeplock.[FN6] *Id.* ¶ 58. While keeplocked, O'Diah was unable to file a motion to the court in one of his federal cases in the Eastern District of New York and the case was dismissed for a failure to prosecute. *Id.*

> FN6. Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."
> *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

On March 19, 2008, defendant Guter arrived at O'Diah's cell with new medication for him to take with which O'Diah was unfamiliar. Am. Compl. ¶ 59.[FN7] O'Diah requested the information insert for the drug, which would contain the drug's name, purpose and reported side effects, but Guter refused. *Id.* ¶ 60. O'Diah refused to take the medication, so Guter summoned Thomas and the two, at the direction of Mawhir, forced O'Diah to take the unknown medication. *Id.* ¶ 61. After taking the medication O'Diah experienced serious intestinal issues including bowel movements, stomach pain, bleeding, and inflammation of his rectum. *Id.* This occurred despite the facility's directive that inmates retained the right to refuse medication. *Id.* ¶ 62. O'Diah contends that this medication was forced upon him due to his national origin.[FN8] *Id.*

> FN7. O'Diah's amended complaint contains generalized complaints that all defendants tried to provide him with the wrong medication in May, July and September of 2007 and also took away his personal food, forcing him to eat the food from the correctional facility which irritated his stomach. Am. Compl. ¶ 28. As O'Diah failed to indicate which defendants were involved in these alleged Eighth Amendment violations, they will not be further discussed. However, as O'Diah did specify dates and defendants at a later time who allegedly violated similar rights with similar actions, those actions, and only those actions, will be addressed.

> FN8. In O'Diah's opposition, he claims that he was targeted, kidnaped and had his constitutional rights violated because of his African origin. Dkt. No. 70, ¶¶ 34, 36.

On March 19, Guter also issued a misbehavior report against O'Diah for refusing to take the unknown medication. Am. Compl. ¶ 64. Sometime thereafter, non party Rocker conducted a disciplinary hearing and determined that O'Diah was within his rights to refuse to ingest the medication. *Id.* ¶ 65. While Rocker initially stated that he would have dismissed the charge, he ended up sentencing O'Diah to ninety days keeplock due to Corcoran's influence over him. *Id.* ¶ 66. Rocker then reversed himself and suspended O'Diah's sentence. *Id.*

### D. May–June 2008

**\*3** On May 9, 2008, O'Diah could not perform the work required for his work placement because the exposure to cigarette smoke, butts, and ashes aggravated his preexisting medical conditions. Am. Compl. ¶ 68.[FN9] O'Diah suffered from dizziness, headaches, shoulder and back pain, and high blood pressure. *Id.* O'Diah contends that defendants Corcoran, Carlsen, Fischer, Cuomo, and Cully were all aware of his medical conditions and disregarded them when they placed him in the work program. *Id.*

> FN9. O'Diah also contends that he was forced to work in a position exacerbating his medical conditions due to exposure to cigarettes sometime after January 26, 2007. Am. Compl. ¶ 7. Whether these refer to the same events is unclear as he did not name specific defendants, dates, or facts. Additionally, O'Diah claims that the root cause of his pre-existing medical conditions was his degenerative disc disease in his back. Dkt. No. 70, ¶ 4.

On May 10, 2008, while working at his placement, O'Diah suffered from irregular and elevated blood pressure, headaches, and increased pain as a result of having to clean up the cigarettes. Am. Compl. ¶ 69. On May 17, O'Diah received emergency treatment and was informed that his blood pressure was elevated and irregular, so he was placed on a "rest" until June 6 and advised that he should be examined by the physician when he came on duty the following week. *Id.* ¶ 71. Medical staff attended to O'Diah daily, though he still suffered from headaches and dizziness. *Id.* On May 19, 2008, O'Diah experienced a severe headache and dizziness, informed the corrections officer supervising him that he was not feeling well, and reques-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ted a change in his work placement. *Id.* ¶ 70. He was instructed to seek a medical excuse instead. *Id.* While pursuing that request, O'Diah claims to have been told by someone in the front office that Cully had placed him in that position as a sanction. *Id.*

On May 20, 2008, O'Diah was given a choice between two work programs, though he did not prefer either position because of his health conditions. Am. Compl. ¶ 72. O'Diah chose one of the placements, and was then told by an unidentified sergeant that he was going to the other per the authorization of defendants Cully, Carlsen, Corcoran, Fischer and Cuomo. *Id.* Later the sergeant was questioned about denying O'Diah's choice for work programs. *Id* . O'Diah believes his preferences were ignored because he was oppressed. *Id.* The placement results in an aggravation of O'Diah's pre-existing medical conditions of severe headaches, dizziness, and depression. *Id.*

On June 2, 2008, O'Diah was summoned by medical and told the physician that he was unable to work around excessive amounts of cigarette smoke or cigarette butts and ashes and requested a work excuse. Am. Compl. ¶ 74. Cully allegedly told the physician that supervisors prohibited him from giving work excuses. *Id.* O'Diah believes that these instructions ultimately came from Fischer and Cuomo and that he was being treated differently due to his "national origin identification." *Id.* That same day O'Diah returned to his work assignment where he again began cleaning up the cigarettes, butts, and ashes and began feeling dizzy and developing a headache. *Id.* ¶ 75. One of the corrections officers ordered O'Diah back to his cell to rest, and further advised him to file a grievance and again request a work program reassignment. *Id.*

**\*4** On June 3, 2008, O'Diah remained very ill, suffering from dizziness and headaches. Am. Compl. ¶ 76. He wrote a grievance, which was submitted to defendant Pepin in person and mailed to defendants Fischer, Cuomo, the Inmate Grievance Clerk and the Attorney General's Office. *Id.* O'Diah requested reassignment but was again ordered back

to his original work placement. *Id.* Upon returning, Pepin observed O'Diah being unable to complete his work, so Pepin sent O'Diah to return to his dorm after visiting the infirmary. *Id.* ¶ 77. While walking to the infirmary, O'Diah was stopped by an unnamed sergeant who berated him and insisted that he was O'Diah's master. *Id.* The sergeant brought O'Diah to an empty room and left him there, unattended, for hours while O'Diah believed that he was suffering from a stroke. *Id.*

On June 3, 2008, defendants Richardson and Pepin, via instructions from Cully, issued O'Diah a misbehavior report for threatening them to reassign him to a different work station. Am. Compl. ¶ 78. On June 5, 2008, Richardson conducted the hearing during which O'Diah was denied due process because Richardson allegedly made statements evidencing a bias against O'Diah. *Id.* ¶ 78, 83 (specifically, Richardson allegedly stated that he was aware that O'Diah was a difficult inmate and continually filed grievances). O'Diah was found guilty and sentenced to thirty days segregated confinement. *Id.* O'Diah also contends that the sentence which Rocker had reversed, from months prior, was reinstated. *Id.* ¶ 83. There is no evidence as to when this was reinstated or for how long, but O'Diah repeats it throughout the course of the complaint. On the same day, O'Diah was also searched, stripped naked, and paraded around while he remained shackled. *Id* . ¶¶ 33, 79. No defendants were identified as participating in that event.

On or about June 5, 2008, an Order to Show Cause was filed by the Cayuga County Court for one of the Article 78 [FN10] cases which O'Diah had filed regarding his work placement. Am. Compl. ¶ 80. O'Diah's paperwork was searched and seized which precluded his access to the courts and denied him due process. *Id.* ¶¶ 31, 80–81.

> FN10. N.Y.C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

Not Reported in F.Supp.2d, 2012 WL 987726 (N.D.N.Y.)
**(Cite as: 2012 WL 987726 (N.D.N.Y.))**

### E. June 2008

On June 10, 2008, O'Diah was transferred to Lakeview Shock Center. Am. Compl. ¶ 84. The week before, the Cayuga County Court had issued an Order to Show Cause about O'Diah's Article 78 case regarding his work placement. *Id.* ¶ 30. The return date for the order was June 26. *Id.* Prior to his transfer, he had submitted a disbursement form for postage to be attached to his legal mail in response to the Order to Show Cause previously issued by the Cayuga County Court. *Id.* ¶ 84. Also prior to his transfer, O'Diah's cell mate had provided him with postage for his legal mail, since his prior disbursement had not been processed. *Id.* ¶ 85. O'Diah then delivered four envelopes to defendant Hahn to then give to the mail room clerk, defendant Swierk. *Id.* ¶ 86.

**\*5** On June 11, 2008, defendants Hahn, Shaw, Swierk, Moscicki, Corcoran, Carlsen, Fischer and Cuomo searched and seized the stamped envelopes. Am. Compl. ¶¶ 30, 87. Hahn then issued O'Diah a misbehavior report for receiving unauthorized postage stamps from his cell mate. *Id.* ¶ 87. O'Diah also attempted to mail these responses again, on June 26, by giving them again to Hahn, but he was unsuccessful due to the conspiracy between Hahn, Shaw Swierk, Moscicki, Corcoran, Carlsen, Fischer and Cuomo. *Id.* ¶ 89. Since these responses were not mailed, it resulted in the dismissal of the Article 78 case because Cuomo, Fischer, Corcoran, and Carlsen moved for dismissal based on O'Diah's failure to respond. *Id.* ¶¶ 87–88, 90.

O'Diah then demanded the return of the funds he applied to be disbursed for his postage prior to his transfer. Am. Compl. ¶ 91. Moscicki and Cully denied that there was ever funds available with payment. *Id.* O'Diah filed a grievance which resulted in a disposition, on June 10, 2008, that he was owed a refund. *Id.* On June 17, 2008, Shaw and Hahn issued another false misbehavior report about O'Diah exchanging stamps with his cell mate. *Id.* ¶ 92. Both Shaw and Hahn, in conjunction with Moscicki, Corcoran, Carlsen, Fischer, Pepin, Richard-

son, and Cuomo engaged in a conspiracy to deny O'Diah his rights, resulting in another thirty days of segregation pursuant to the misbehavior report. *Id.* ¶ 93.

O'Diah contends that on August 8, 2008, Swierk was instructed by the above referenced defendants to charge O'Diah again with correspondence violations. Am. Compl. ¶ 94. The hearing occurred on August 13 and O'Diah was found not guilty of the charges. *Id.*

### F. Retaliatory Transfers

On May 9, 2008, Corcoran, Carlsen, Cully, Fischer, Cuomo and his subordinates, the Attorney General's office and the state all conspired to arrange for a retaliatory transfer for O'Diah to Livingston where he would be housed in keeplock for the ninety days which Rocker had previously suspended. Am. Compl. ¶ 67. After the disciplinary hearing on August 13, 2008, O'Diah was again transferred to Wyoming and the Gowanda Correctional Facilities. *Id.* ¶ 94. These facilities were further from where O'Diah's family lived, making it more difficult for them to visit him. *Id.*

### G. Conspiracies

O'Diah maintains that he was kidnaped into DOCCS custody pursuant to a conspiracy between all defendants, court and law enforcement personnel, and the state. Am. Compl. ¶ 115. O'Diah had evidenced planted against him so that he would be criminally convicted and sent to prison.[FN11] *Id.* ¶ 40. Moreover, throughout the entire time O'Diah was incarcerated he was subjected to harassment. *Id.* ¶ 36.

> [FN11.] In O'Diah's opposition he specifies that he was denied multiple rights such as the right to represent himself, receive alternate counsel, testify, call key eye witnesses, and introduce key evidence. Dkt. No. 70, ¶ 39. As these are not complaints about his conditions of confinement, but rather the proceedings leading to his conviction, the proper vehicle for addressing

Not Reported in F.Supp.2d, 2012 WL 987726 (N.D.N.Y.)
**(Cite as: 2012 WL 987726 (N.D.N.Y.))**

said claims is a habeas corpus petition and not a § 1983 claim.

## II. Discussion

O'Diah contends that his First Amendment rights were violated because his access to the courts was impeded and false misbehavior reports were issued against him in retaliation. O'Diah also contends that his Eighth Amendment rights were violated when he was forced to work in a placement which exposed him to cigarettes and aggravated his prior medical condition and he was forced to take an unknown medication. O'Diah also contends that some of his disciplinary hearings did not afford due process, that he was discriminated against, and that he did not receive proper reimbursement for his stamps, all in violation of the Fourteenth Amendment. O'Diah also makes allegations that he was discriminated against based on his disability and that all defendants conspired against him. O'Diah also asserts that he was unlawfully convicted and has remained illegally detained in contravention of his constitutional rights.

**\*6** Defendants contend that O'Diah's complaint must be dismissed because it fails to meet the plausibility standards. Defendants also argue that O'Diah's retaliation and conspiracy claims are meritless, he has failed sufficiently to state numerous causes of action, certain defendants were not personally involved in his constitutional violations, and defendants are entitled to qualified immunity.

### A. Legal Standard[FN12]

FN12. O'Diah attached additional paperwork to his opposition. However, consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). As the documents were neither attached nor incorporated into the complaint, they

have not been considered on this motion.

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950–51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) . As the Second Circuit has stated,

[t]here are many cases in which we have said that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they 'suggest At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, .. or arguments that the submissions themselves do not "suggest, ..." that we should not "excuse frivolous or vexatious filings by *pro se* litigants" ... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

**\*7** *Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

## B. Personal Involvement

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[FN13]

> **FN13.** Various courts in the Second Circuit have considered how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *See McCarroll v. Fed. Bureau of Prisons,* No. 08–CV–1343 (DNH/GHL), 2010 WL 4609379, at \*4 (N.D.N.Y. Sept.30, 2010) (noting that although the Second Circuit has not yet addressed *Iqbal's* impact on the five *Colon* factors, several district courts have done so); *Kleehammer v. Monore County,* 743 F.Supp.2d 175 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal's* muster ...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon's* personal involvement standard).

O'Diah continually claims that Fischer, Governor Cuomo, Corcoran, Carlsen, Cully, and Moscicki were persistently involved in his alleged constitutional violations. With the exceptions of Cully's involvement in O'Diah's alleged First and Eighth Amendment violations and Moscicki's involvement in O'Diah's alleged First Amendment violations, such contentions fail. The gravamen of O'Diah's complaints against these defendants is that they were in a position of power and, thus, always involved with anything occurring in conjunction with O'Diah's incarceration. However, attempts to establish personal involvement based upon the supervis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ory role these defendants occupied is inappropriate. *Wright,* 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

Moreover, while O'Diah does not specifically articulate to whom he sent grievances and when, receiving grievances, without more, is insufficient to establish personal involvement as there exists no allegation that the proposed defendants took any action. *See Bodie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.") (citations omitted). Odiah's allegations are insufficient to establish, except where otherwise noted in Section II(C)(1)-(2), (D)(1) *infra,* that these defendants were involved or aware of any alleged constitutional violations.

**\*8** Furthermore, the amended complaint does not contend that these defendants created unconstitutional policies or were grossly negligent in supervising subordinates. As such, O'Diah has failed to establish their personal involvement and defendants' motion on this ground should be granted as to these defendants.

### C. First Amendment
#### 1. Retaliation

O'Diah contends that multiple defendants retaliated against him throughout his tenure in DOCCS. To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). "Types

of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Barclay v. New York,* 477 F.Supp.2d 546, 588 (N.D.N.Y.2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

*Burton v. Lynch,* 664 F.Supp.2d 349, 367 (S.D.N.Y.2009) (internal quotation marks and citations omitted).

However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 214–15 (N.D.N.Y.2008). Therefore, conclusory allegations alone are insufficient. *Id.* at 214 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) (explaining that "claim [s] supported by specific and detailed factual allegations ... ought usually be pursued with full discovery.")).

O'Diah's allegations are as follows: (1) Mawhir conspired and incited the other inmates to attack O'Diah so that he could write false misbehavior reports in retaliation for O'Diah filing grievances; (2) Mawhir and Ramsay conspired with inmates to have them throw water on O'Diah for filing grievances; (3) Pepin and Richardson issued O'Diah a false misbehavior report contending he had threatened them after O'Diah filed a grievance and sought transfer from his allegedly dangerous work placement; (4) Shaw and Hahn issued O'Diah a false misbehavior report seven days after O'Diah's

grievance was resolved providing him with a refund for postage he had previously paid; and (5) Swierk issued O'Diah a false misbehavior report alleging a correspondence violation. Also, liberally construing O'Diah's complaint he has alleged that Cully refused to allow him to participate in another work program, denying any requests for work program reassignments, in retaliation for his filing of grievances.

**\*9** O'Diah has failed to allege a plausible retaliation claim with respect to Mawhir and Ramsay. In order "[t]o show retaliation [in these circumstances, O'Diah] was required to present evidence that his constitutionally protected conduct in filing past grievances was a substantial or motivating factor for a prison official's adverse action." *Cole v. Fischer,* 416 Fed. Appx. 111, 113 (2d Cir.2011) (citing *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). First, the allegations against these defendants are conclusory. Second, O'Diah does not allege when he filed grievances, who he filed them against or how long after the grievances were filed that the alleged retaliation occurred. Accordingly, even construing the facts in the light most favorable to O'Diah he has failed to demonstrate that filing grievances was a substantial factor in the alleged retaliation.

Conversely, O'Diah has sufficiently alleged retaliation claims against (1) Cully for mandating that he remain in a dangerous work condition after complaining to medical staff and filing a grievance; (2) Pepin and Richardson for writing him a false misbehavior report in retaliation for complaining about his work placement in June 2008; (3) Hahn and Shaw for issuing him a false misbehavior report in retaliation for submitting a grievance and receiving a reimbursement of money; and (5) Swierk for issuing him a false misbehavior report in retaliation for submitting a grievance about reimbursement. It is undisputed that filing grievances is a constitutionally protected activity. *See e.g. Varela v. Demmon,* 491 F.Supp.2d 442, 452 (S.D.N.Y.2007) ("[T]he making of a grievance is itself the constitutionally

protected speech. The subject matter of the grievance—including whether it alleges the violation of any constitutional right—is thus irrelevant.") (citations omitted).

While "[a]ll exposure to [environmental tobacco smoke] ETS is not unconstitutional; [unwilling] ... exposure to an unreasonably high level of ETS is cognizable as a constitutional violation." *Taylor v. Conway,* No. 06–CV–1329 (SRU), 2008 WL 4371928, at \*4 (D.Conn. Sept.23, 2008) (citing *Helling v. McKinney,* 509 U.S. 25, 35–36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)) (attached to Report–Recommendation as Ex. A). O'Diah authored a grievance and provided it to Pepin complaining about his work placement and unconstitutional exposure to ETS just prior to receiving an allegedly false misbehavior report. O'Diah contends that Pepin and Richardson were then ordered to issue this misbehavior report at Cully's instruction, which would seem implausible except for O'Diah's earlier contentions that Cully specifically advised that O'Diah was not permitted to receive a work reassignment order from the medical staff, despite his physical ailments. O'Diah's Eighth Amendment claim regarding the ETS has been deemed sufficient to withstand the present motion. The current standing of that claim, in conjunction with the temporal proximity of the filing of the grievance with the issuance of the misbehavior report, along with the fact that the same defendant that received the grievance also authored the misbehavior report serves as a plausible set of facts to establish that the grievance was a substantial cause in Pepin taking the adverse action.

**\*10** Similarly, the circumstances surrounding the misbehavior report issued by Hahn and Shaw in June 2008 and Swirek seven weeks later in August 2008 also establish a plausible set of facts for believing that O'Diah's prior filed grievance was the reason for the adverse action. O'Diah filed a grievance seven days before receiving his misbehavior report from Hahn and Shaw and approximately two months before receiving his misbehavior report

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

from Swirek. Additionally, the grievance that O'Diah filed was resolved in his favor, so O'Diah was granted a reimbursement of funds. Lastly, at the disciplinary hearing for the misbehavior report issued by Swierk, O'Diah was found not guilty of any correspondence violations. Given both the grievance and disciplinary hearings findings in O'Diah's favor and temporal proximity between the filing of the grievance, its disposition, and the subsequent filing of the misbehavior reports, dismissal is inappropriate.

Accordingly, defendants' motion on this ground should be denied on these claims.

### 2. False Misbehavior Reports

In this case, O'Diah contends that he had multiple false misbehavior reports lodged against him throughout his incarceration. An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988)).

In this case, O'Diah contends that he received false misbehavior reports for (1) failing to use his law library pass in November 2007; (2) failing to obey a direct order in March 2008; (3) refusing to take his medication in March 2008; (4) threatening defendants to put him in a new work placement in June 2008; and (5) correspondence violations in June and August, 2008 by Shaw and Hahn and Swierk respectfully. However, O'Diah has only alleged a retaliation claim against defendants Pepin, Richardson, Swierk, Shaw, and Hahn in conjunction with the misbehavior report issued for alleged threats and a correspondence violations, authored in June and August, 2008. As previously discussed, regarding the other five alleged false misbehavior

reports, even assuming that O'Diah's grievances was the basis for his retaliation claim, he has failed to sufficiently to allege that the grievance was the motivation for the adverse action. Because O'Diah has failed to state a claim for retaliation, any allegations related to the alleged filing of false misbehavior reports is also inappropriate. However, with respect to the misbehavior report issued by Pepin, Richardson, Hahn, Swierk, and Shaw, O'Diah has sufficiently pled facts sufficient to state a plausible retaliation claim. Accordingly, defendants' motion on that ground should be denied.

### 3. Retaliatory Transfer

**\*11** "A prisoner has no liberty interest in remaining at a particular correctional facility, but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights .... " *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998) (citations omitted).[FN14] In order to survive dismissal, an inmate must show "that he engaged in constitutionally protected conduct and ... that conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted). However, "conclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." *Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) (citations omitted).

> FN14. As previously stated, an inmate has no liberty interest in being housed at the facility of his or her choice. *Davis,* 160 F.3d at 920. Therefore, to the extent that O'Diah claims that his transfers took him further away from his preferred facilities which were closer to his family, such claims are not cognizable under § 1983.

Here O'Diah has failed to allege that his transfers were retaliatory in anything more than general, conclusory terms. O'Diah claims that his transfers were retaliatory but fails to identify in what constitutionally protected conduct he was engaged which provoked the retaliatory response, when that con-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

duct occurred, and how close it was to the time of the transfers. Moreover, O'Diah has failed to present facts showing that his alleged protected conduct was known by the various supervisory defendants or that it served as a motivating factor for his transfers.

Accordingly, defendants' motion on this claim should be granted.

### 4. Access to Courts[FN15]

FN15. O'Diah also alleges that the defendants discussed *infra* were acting under the influence of Corcoran, Carlsen and Fischer. These are all supervisory defendants for whom dismissal has been recommended *supra* for a lack of personal involvement and infra for a failure to plead conspiracies. Accordingly, the contentions regarding said defendants will not be discussed further here.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). In order to state a claim for denial of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' " *Id.* (citing *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997) (*quoting Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Such injury must affect "a nonfrivolous legal claim [which] had been frustrated or was being impeded due to the actions of prison officials." *Warburton v. Underwood,* 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (citations omitted); *Shine v. Hofman,* 548 F.Supp.2d 112, 117–18 (D.Vt.2008) (explaining that actual injury "is not satisfied by just any type of frustrated legal claim because the Constitution guarantees only the tools that inmates need in order to attack their sen-

tences ... and ... challenge the conditions of their confinement.") (internal quotation marks and citations omitted). Accordingly, without identification of the underlying action which was prejudiced, actual injury, and by extension a First Amendment violation, cannot be established. *See Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) ("[T]he underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

**\*12** O'Diah first alleges that in June 2007, Corcoran impeded his access to the courts. However, O'Diah has failed to plead with any specificity what Corcoran did to preclude his access or what hindrance resulted to O'Diah's pending legal claim. Accordingly, defendants' motion as to this claim should be granted.

O'Diah next claims that in March 2008, Thomas seized his paperwork, including his legal mail, the same day he issued a false misbehavior report and sent O'Diah to keeplock. O'Diah claims that while keeplocked, he was unable to provide his legal paperwork to his legal assistant when he arrived to pick it up at the facility and also was unable to file a response to his case in the Eastern District of New York which was allegedly dismissed for a failure to prosecute. Viewing the facts in the light most favorable to O'Diah, there is nothing to indicate that the federal case pending in the Eastern District was frivolous or meritless. Accordingly, Thomas' actions in blocking delivery of O'Diah's legal papers to be the court resulted in an actual injury as his arguably meritorious case was dismissed. Therefore, defendants' motion as to this claim on this ground should be denied.

Lastly, O'Diah contends that he provided Hahn, Shaw, Swierk and Moscicki his legal mail at various times in June of 2008, but that they intentionally failed to send the mail out. Subsequently, O'Diah's Article 78 case filed in Cayuga County was dismissed. As with the Eastern District case, nothing in the record indicates that O'Diah's court

case was meritless or frivolous. Therefore, the dismissal, caused by defendants' failure to mail out O'Diah's response to the court, constituted an actual injury. Accordingly, defendants' motion as to this claim on this ground should be denied.

### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1884). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective ... and subjective test." *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citations omitted). Thus, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind ...." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (internal quotation marks and citations omitted).

The objective prong can be satisfied by

conditions of confinement ... [which] in combination [constitute an Eighth Amendment violation] when each would not do so alone ... [such as] when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

***13** *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005) (citations omitted). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* (citing *Wilson v. Seiter,* 501 U.S.

294, 304–05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind ..., of deliberate indifference to inmate health or safety" *Farmer,* 511 U.S. at 834 (citations omitted).

### 1. Exposure to Environmental Tobacco Smoke ("ETS")

While "[a]ll exposure to ETS is not unconstitutional; [unwilling] ... exposure to an unreasonably high level of ETS is cognizable as a constitutional violation." *Taylor v. Conway,* No. 06–CV–1329 (SRU), 2008 WL 4371928, at *4 (D.Conn. Sept.23, 2008) (citing *Helling v. McKinney,* 509 U.S. 25, 35–36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)) (attached to Report Recommendation as Ex. A). "Courts have held that inmates were exposed to unreasonable ETS levels when they were forced to share a cell with a heavy smoker." *Id.* (citing cases). Specifically, inmates satisfy the objective prong of the Eighth Amendment test by arguing that they are personally being exposed to unreasonably high levels of ETS which is not only actually causing inmates potential harm and a serious likelihood of injury, but is seen by society as a risk so grave that it offends standards of contemporary decency. *Helling,* 509 U.S. at 35–36. Additionally, to demonstrate the subjective standard the court must assess "the prison authorities' current attitudes and conduct," towards the environment, evaluating whether "prison authorities are ignoring the possible dangers posed by exposure to ETS." *Id.* at 36–37.

In this case, it would appear that O'Diah's employment in a work area, arguably considerably larger than a cell, would expose him to a much less concentrated amount of ETS, thus making his claim meritless. However, viewing the complaint in the light most favorable to O'Diah, he has satisfied the objective prong of the analysis. O'Diah was inundated with cigarette smoke and its byproducts from having constantly to clean cigarette butts and ashes. This led to physical ailments, such as dizziness and elevated blood pressure, which required O'Diah to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

be sent back from work on multiple occasions. FN16 Accordingly, these circumstances caused O'Diah potential and actualized harm which was offensive to the risks society chooses to tolerate.

> **FN16.** To the extent that O'Diah claims an unidentified sergeant was deliberately indifferent to his care during his escort to the infirmary in June 2008, such claims are moot as O'Diah has failed to identify or name the individual as a defendant.

Moreover, O'Diah has satisfied the subjective prong by alleging that Cully specifically precluded him from receiving a work program reassignment. FN17 However, to the extent that O'Diah claims that Pepin also was deliberately indifferent to his needs, such claims are belied by O'Diah's own recitation of the facts. O'Diah contends that it was Pepin that excused him from his work placement and instructed him to report directly to the infirmary for medical treatment. Such actions do not state a plausible claim of indifference.

> **FN17.** O'Diah also claims that other supervisory defendants were aware of his medical condition and had some hand in requiring him to remain in his work placement. However, these vague and conclusory allegations are insufficient to establish personal involvement, as discussed *supra*.

*14 Accordingly, defendants' motion on this ground should be denied as to Cully and granted as to Pepin.

### 2. Other Conditions of Confinement

O'Diah claims that Ramsay, Mawhir and Corcoran encouraged inmates to pour cold water onto O'Diah and his property. These actions led him to avoid the recreation yard. These allegations, while inappropriate, do not rise to satisfy either prong of the Eighth Amendment analysis. These alleged occurrences, which were not enumerated or described in any further detail, do not result in the deprivation of a single human need. Additionally,

O'Diah's decision not to engage in certain activities cannot be imputed to other defendants. Accordingly, defendants' motion should be granted as to these clams.

O'Diah also claims that an unidentified officer paraded him around the yard shackled and naked. However, O'Diah has failed to name this individual as a defendant and further discussion about the potential constitutional violations which occurred is moot. Accordingly, defendants' motion should also be granted as to this claim.

### 3. Forced Medication

O'Diah alleges that Thomas and Guter, acting at Mawhir's direction, forced O'Diah to take an unknown medication. O'Diah was not provided with the medication's identifying information, the reason for its administration, or the anticipated side effects. The Supreme Court has recognized a constitutional right not to be medicated involuntarily, allowing it in rare instances, with respect to antipsychotic drugs "solely for trial competence purposes in certain cases." *Sell v. United States,* 539 U.S. 166, 179, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). There is no indication in the record that the administration of the medication was for these purposes. Therefore O'Diah had a right to refuse to take such medication. After ingesting the medication, O'Diah suffered severe intestinal complications. Accordingly, such allegations suffice to satisfy the plausibility standard that O'Diah's constitutional rights were violated. Accordingly, defendants' motion on this ground should be denied.

### E. Fourteenth Amendment
### 1. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) ("To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

**\*15** *Vegas v. Artus,* 610 F.Supp.2d 185, 209 (N.D.N.Y.2009) (internal quotation marks and citations omitted).

In this case, O'Diah has offered only a few statements implicating equal protection, though they fail to establish how he was treated differently than other inmates. There are no contentions, and the record does not show, that O'Diah was treated differently by staff than other inmates. All O'Diah offers are a few, vague, conclusory allegations that he was oppressed and discriminated based upon his national origin. These allegations, without more, are insufficient. *See, e.g., John Gil Const., Inc. v. Riverso,* 99 F.Supp.2d 345, 353 (S.D.N.Y.2000) ("[A]ssertions of selective enforcement and racial animus [that] are wholly conclusory and unaccompanied by any supporting factual allegations ... are insufficient to state a claim under either the Equal Protection Clause or 42 U.S.C. § 1983.") (citations omitted). Accordingly, defendants' motion should be granted on this ground.

## 2. Confiscation of Property

O'Diah makes multiple, general complaints about unlawful confiscation of his property. An inmate has a right not to be deprived of property without due process. However, federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy which the plaintiff can pursue. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "An Article 78 proceeding permits a petitioner to

submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Locurto v. Safir,* 264 F.3d 154, 174 (2d Cir.2001) (citations omitted); *see also* N.Y. C.P.L.R. §§ 7803, 7804; *Campo v. New York City Employees' Ret. Sys.,* 843 F.2d 96, 101 (2d Cir.1988) ("Article 78 ... provides a summary proceeding which can be used to review administrative decisions."). State law also provides that "[a]ny claim for damages arising out of any act done ... within the scope of ... employment and in the discharge of the duties of any officer or employee of the department [of corrections] shall be brought and maintained in the court of claims as a claim against the state." N.Y. Corr. Law § 24(2).

In this case, O'Diah contends that there was an unconstitutional deprivation when his personal property was allegedly confiscated. Such claims fail as a matter of law for several reasons. First, the Article 78 procedure exists and affords an adequate state court remedy. Second, because O'Diah is suing for damages, he must pursue his claims here against New York State in the New York Court of Claims pursuant to Corrections Law § 24. Thus, the correct venue to litigate these claims is in state court.

Accordingly, defendants' motion should be granted as to this claim.

## 3. Disciplinary Dispositions

To the extent O'Diah contends he was denied due process during his disciplinary hearings, such contentions are meritless for multiple reasons. First, such claims run afoul of the "favorable termination" rule of *Heck v. Humphrey,* 512 U.S. 477, 487–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983. This rule applies to challenges to procedures

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

used in prison disciplinary proceedings. *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). There is no evidence that O'Diah's disciplinary determinations were ever vacated. Thus, the *Heck* rule applies and any challenges to those determinations are barred.

**\*16** Additionally, as a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. *See Perry v. McDonald,* 280 F.3d 159, 173 (2d Cir.2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. *Id.* at 484; *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a segregated confinement alone is insufficient to establish an atypical and significant deprivation. The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. *Vasquez v. Coughlin,* 2 F.Supp.2d 255, 259 (N.D.N.Y.1998). The Second Circuit has noted that where the period of segregated confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under *Sandin. Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000).

To the extent that O'Diah claims any of his disciplinary hearings denied him due process, all of his dispositions were for thirty days. O'Diah does not complain about the conditions of his confinement while serving his sentences but only that the findings of guilt occurred. Given that no confinement exceeded thirty days, no further fact finding is required.

Therefore, defendants' as to these claims should be granted on these grounds.

### F. Failure to State a Claim

An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983. Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

#### 1. Harassment

O'Diah contends that he was constantly harassed during his incarceration at DOCCS facilities. However verbal threats and harassment, alone, are insufficient to state a constitutional claim. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1996) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ( "[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983 ."). FN18 Accordingly, defendants' motion should be granted as to all such claims.

> FN18. To the extent that such contentions can be construed to allege that O'Diah should be compensated for defendants' failure to comply with DOCS policies and protocols for investigating grievances, such contentions are also meritless. *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987) ( "State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law ....").

#### 2. Defective Grievance Procedures

**\*17** "Prisoners, including pretrial detainees,

have a constitutional right of access to the courts ...." *Bourden v. Loughren,* 386 F.3d 88, 92 (2d Cir.2004) (internal quotation marks omitted) (citing *Bounds v. Smith,* 430 U.S. 817, 821–22, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate, effective, and meaningful" access to courts). "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) (citations omitted). However, "[i]f prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Id.* (citations omitted).

In this case, to the extent that O'Diah has proffered generalized complaints about the grievance process as a whole, such claims are insufficient to establish a constitutional violation. Accordingly, defendants' motion on this ground should be granted as to all such claims.

### G. Qualified Immunity

Defendants claim that even if O'Diah's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 Fed.Appx. 146 (2d Cir. Nov.10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the second prong of the inquiry must be discussed with regard to O'Diah's First Amendment access to court and retaliation claims as well as his Eighth Amendment medical indifference claims. As to all other claims, the second prong of the qualified immunity analysis need not be addressed because, as discussed above, even viewing the allegations in the light most favorable to O'Diah, he has failed sufficiently to allege constitutional violations.

**\*18** There is no question that it was well settled on June 7, 2008 that the (1) First Amendment provided inmates with access to the courts and freedom from retaliation, including in the form of a false misbehavior report ( *Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) ("[O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts); *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003) (evaluating retaliation claim because "the filing of grievances is a constitutionally protected activity.") and (2) Eighth Amendment required that inmates are to be provided "with ... reasonable safety [as i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions," (*Helling,* 509 U.S. 33 (internal quotation marks and citations omitted)) whether that pertain to their medical care or conditions of confinement. Thus, accepting all of O'Diah's allegations as true, qualified immunity cannot be granted to (1) Thomas, Hahn, Shaw, Swierk or Moscicki for interfering with O'Diah's right

of access to the courts; (2) Cully for O'Diah's dangerous exposure to ETS at his work placement; (3) Thomas, Guter or Mawhir for forcing O'Diah to take unidentified medication; (4) Pepin, Richardson, Cully, Hahn, Shaw and Swierk for retaliating against O'Diah; and (5) Pepin, Richardson, Hahn, Shaw, and Swierk for filing false misbehavior forms. However, defendants' motion should be granted in the alternative on this ground as to all other defendants for all other claims.

**H. Conspiracy**[FN19]

> FN19. Defendants also assert that any conspiracy claims are effectively barred by the intracorporate conspiracy doctrine. However, because it is recommended herein that defendants' motion as to the conspiracy claim be granted on other grounds, the intracorporate conspiracy doctrine need not be addressed.

In order to support a claim for conspiracy pursuant to "§ 1985, there must be "(1) an agreement ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 468 (N.D.N.Y.2009). An agreement must be alleged with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir.2007); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." *Anilao v. Spota,* 774 F.Supp.2d 457, 512–13 (E.D.N.Y.2011) (citations omitted). Con-

clusory, vague, and general allegations are insufficient to support a conspiracy claim. *Ciambriello,* 292 F.3d at 325.

O'Diah alleges that (1) Mawhir, Ramsay, Corcoran and Carlsen all conspired to procure his conviction on disciplinary charges, incite other inmates to assault O'Diah, and issue additional misbehavior reports subsequent to the assaults; (2) Mawhir, Corcoran and Thomas all conspired before issuing the March 2008 misbehavior report; (3) Corcoran, Carlsen, Fischer, Cuomo, and Cully all conspired to put O'Diah in a work placement program which exposed him to dangerous levels of ETS despite prior knowledge of his health conditions; and (4) Shaw, Hahn, Moscicki, Corcoran, Carlsen, Fischer, Pepin, and Cuomo conspired to deny O'Diah of his rights by assisting in the conviction on disciplinary charges he received from his misbehavior report in June 2008. However, none of these alleged conspiracy claims is sufficient to withstand the current motion.

**\*19** Some of O'Diah's underlying claims of constitutional violations have survived the present motion. However, it appears that in addition to the underlying conspiracy claims, O'Diah also alleges a conspiracy between the acting defendants and all of the supervisory defendants employed by DOCCS. These claims are conclusory and fail to establish how, when or why defendants from various correctional facilities and different levels of management colluded and formed these alleged schemes. While specifics are unnecessary, O'Diah fails to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of these defendants.

Accordingly, defendants' motion as to the claims of conspiracies should be granted.

**I. ADA Claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of ... a public entity, or be sub-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

jected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA "applies to inmates in state prisons." *Beckford v. Portuondo,* 151 F.Supp.2d 204, 220 (N.D.N.Y.2001) (citations omitted). To state a claim under the ADA, an inmate must demonstrate that

(1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

*Clarkson v. Coughlin,* 898 F.Supp. 1019, 1037 (S.D.N.Y.1995); 42 U.S.C. § 12132.

As to the first element, a person is an individual with a qualified disability if "(A) a physical or mental impairment ... substantially limits one or more of the major life activities of such individual, (B) [there is] a record of such an impairment, or (C) [the individual is] being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C).

To determine if an individual meets any of the above criteria, courts apply a three part test ... First, a plaintiff must show that [he or] she suffers from a physical or mental impairment. Second, the plaintiff must establish that the activity [he or] she alleges to be impaired constitutes a "major life activity." Third, the plaintiff must show that [his or] her impairment "substantially limits" the major life activity previously identified.

*Smith v. Masterson,* 538 F.Supp.2d 653, 657 (S.D.N.Y.2008) (internal citations omitted). The Second Circuit has held that it is important to distinguish[ ] between (I) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits ... [since] the disability statutes do not require that substantively different services be provided to the disabled, no matter how great their need for services may be. They

require only that covered entities make "reasonable accommodations" to enable "meaningful access" to such services as may be provided, whether such services are adequate or not.

**\*20** *Wright v. Giuliani,* 230 F.3d 543, 548 (2d Cir.2000) (citations omitted).

In this case, O'Diah has failed sufficiently to allege that he is suffering from any sort of impairment or disability. O'Diah makes conclusory assertions that the ADA is applicable to his case, yet fails to advance from facts detailing what impairment he suffers, how it has impacted him and prevented him from engaging in major life activities, or identifying which major life activities are affected. Additionally, O'Diah has failed to indicate which reasonable accommodations, programs, or services he was denied.

Accordingly, defendants' motion as to the ADA claims on this ground should be granted.

**J. Sections 1985 & 1986**

"Section 1985 prohibits conspiracies to interfere with civil rights." *Davila v. Secure Pharmacy Plus,* 329 F.Supp.2d 311, 316 (D.Conn.2004). To state a claim for relief under § 1985(3), a plaintiff must show:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*United Bd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Additionally, a plaintiff "must demonstrate that the defendant ... acted with class-based invidiously discriminatory animus." *Webster v. Fischer,* 694 F.Supp.2d 163,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

196 (N.D.N.Y.2010) (citations omitted).

Here, O'Diah does not allege any facts giving rise to a conspiracy. First, O'Diah vaguely asserts conclusory statements relating to an alleged conspiracy among defendants. This is insufficient. *See generally Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999) (granting summary judgment for a § 1985(3) claim where the "assertions were conclusory and vague, and did not establish the existence of an agreement among defendants to deprive [plaintiff] of his constitutional rights."). Second, there has been alleged no facts relating to agreements, or even communications, between the defendants, the purpose of their alleged conspiracy, or an intent by defendants to deprive O'Diah of his civil rights. *See Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir.2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation marks and citations omitted); *see also Romer v. Morgenthau,* 119 F.Supp.2d 346, 364 (S.D.N.Y.2000) (explaining that a plaintiff "cannot satisfy the conspiracy prong [if] his claims are too general and conclusory to sufficiently plead the meeting of the minds requirement.") (citations omitted). Lastly, O'Diah also fails to allege or establish discriminatory animus other than conclusory allegations that he was oppressed and discriminated against because of his national origin. Such statements are wholly insufficient.

**\*21** Additionally, if any defendant "ha[d] knowledge that any of the wrongs ... mentioned in section 1985 ... [we]re about to be committed, and ha[d] power to prevent or aid in preventing the commission of the same, [and] neglect[ed] or refuse[d] so to do ..., [he] shall be liable to the party injured." 42 U.S.C. § 1986. However, "[a] claim under section 1986 ... lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994). No such viable claim has been alleged here.

Accordingly, defendants' motion as to this claim should be granted.

## K. Pendent State Law Claims

O'Diah's complaint also asserts that defendants violated various state laws, however these claims fail as a matter of law. New York Correction Law § 24 provides that

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

"Section 24 thus precludes claims against corrections officers brought against them in any court in their personal capacities arising out of the discharge of their duties." *Crump v. Ekpe,* No. 07–CV–1331, 2010 WL 502762, at \*18 (N.D.N.Y. Feb. 8, 2010) (citations omitted) (Attached to this Report–Recommendation as Ex. B). Because a federal court applying pendent jurisdiction is forced to apply state substantive law to a state claim, this would result in inmates being prohibited from advancing such pendent claims along with their federal claims in federal court. *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996).

In 2009, the United States Supreme Court held that § 24 is unconstitutional to the extent that it precludes inmates from pursuing § 1983 actions. However, at least two judges in this District have observed that because *Haywood's* focus is on concerns about civil rights claims and the Supremacy Clause, the decision does not affect the question of whether this Court has proper juris-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

diction to hear a pendent state law claim.

*Tafari v. McCarthy,* 714 F.Supp.2d 317, 384 (N.D.N.Y.2010) (internal quotation marks and citations omitted). Accordingly, this district has continued to dismiss state law pendent claims against defendants acting in their personal capacities, discharging their duties, pursuant to the preclusive effects of § 24. *See e.g., Crumpe,* 2010 WL 502762, at *18.

When determining whether actions fall within the scope of the defendants employment, courts have considered:

**\*22** the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of the departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Degrafinreid v. Ricks,* 452 F.Supp.2d 328, 333 (S.D.N.Y.2006) (citations omitted). Thus, "an employee will be considered within the scope of his employment so long as he is discharging his duties no matter how irregularly, or with what disregard of instructions." *Id.* (citations omitted). Accordingly, even in cases where alleged excessive force was used in frisking or searching a cell, or where negligence was alleged in the provision of medical care, such actions are still defined to be within an employee's duties. *Id.* (citations omitted); *see also Crump,* 2010 WL 502762, at *18 (listing DOCCS employee duties to include "determinations to administratively confine plaintiff to SHU, to issue a misbehavior report, the conduct of the disciplinary hearing, and the determination that plaintiff was guilty of the charges alleged," and explaining that while actions "exceeding the scope of the corrections officer's authority ...." may give rise to a constitutional violation, such actions are still precluded pursuant to § 24).

With respect to the defendants, all of their purported actions fell within their assigned duties. These duties include filing and adjudicating misbehavior reports, supervising inmates at their work placements, receiving grievances and handling the mail, and providing medical care. Thus, § 24 prohibits the advancement of any pendent state law claims. While these defendants actions, or inactions, may be cited as the alleged cause of a constitutional violation, their conduct was nevertheless protected by § 24.

Accordingly, defendants' motion on this ground as to such claims should be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss the amended complaint (Dkt. No. 66) be:

1. **DENIED** as to O'Diah's claims of:

A. Denial of access to courts against defendants Thomas, Hahn, Shaw, Swierk and Moscicki;

B. Medical indifference against defendants Cully, Thomas, Guter, and Mawhir;

C. Retaliation against defendants Pepin, Richardson, Cully, Hahn, Shaw and Swierk; and

D. Filing of false misbehavior reports against defendants Pepin, Richardson, Hahn, Shaw and Swierk; and

2. **GRANTED** as to all other claims and all other moving defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**\*23** [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

N.D.N.Y.,2012.
O'Diah v. Fischer
Not Reported in F.Supp.2d, 2012 WL 987726 (N.D.N.Y.)

END OF DOCUMENT



H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Aror Ark O'DIAH, Plaintiff,
v.
Brian FISCHER; Michael Corcoran; Malcolm R. Cully; Ronald W. Moscicki; Stephen Guter; C.O. Ramsay; D. Richardson; J. Pepin; J. Hahn; Mr. & Lt. Shaw; Scott C. Carlsen; Andrew Cuomo, Attorney General for the State of New York; K. Thomas, Correctional Officer, Cayuga Correctional Facility; and D. Swierk, Mail Room Clerk, Lakeview Shock Incarceration Facility, Defendants.[FN1]

FN1. Eleven other defendants were previously terminated or had the claims against them transferred to other districts. *See* Dkt. Nos. 51, 61.

No. 08–CV–941 (TJM/DRH).
March 22, 2012.

Aror Ark O'Diah, Attica, NY, pro se.

Roger W. Kinsey, Office of Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

***1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred by this Court to the Hon. David R. Homer, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In his February 28, 2012 Report–Recommendation and Order, Magistrate Judge Homer recommended that Defendants' motion to dismiss (Dkt. No. 66) be:

1. DENIED as to O'Diah's claims of:

A. Denial of access to courts against Defendants Thomas, Hahn, Shaw, Swierk and Moscicki;

B. Medical indifference against Defendants Cully, Thomas, Guter, and Mawhir;

C. Retaliation against Defendants Pepin, Richardson, Cully, Hahn, Shaw and Swierk; and

D. Filing of false misbehavior reports against Defendants Pepin, Richardson, Hahn, Shaw and Swierk; and

2. GRANTED as to all other claims and all other moving Defendants.

Plaintiff has filed objections to that much of the Report–Recommendation that recommends that certain claims be dismissed.

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Machicote v. Ercole,* 2011 WL 3809920, at *2 (S.D.N.Y., Aug.25, 2011) (citations and interior quotation marks omitted); *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 340 (S.D.N.Y.2009) (same). By the same reasoning, a party may not advance new theories that were not presented to the magistrate judge in an attempt to obtain this second bite at the apple. *See Calderon v.*

*Wheeler,* 2009 WL 2252241, at *1, n. 1 (N.D.N.Y. July 28, 2009); *Green v. City of New York,* 2010 WL 148128, at *4 (E.D.N.Y. Jan.14, 2010) ("[N]ew claims ... presented in the form of, or along with, 'objections ...' should be d ism issed.") (citations omitted).

As Judge Suddaby noted in *Calderon:*

On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ( "In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

*2 *Calderon,* 2009 WL 2252241, at *1, n. 1.

General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey,* 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); *see Frankel v. N.Y.C.,* 2009 WL 465645 at *2 (S.D.N.Y. Feb.25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

With this standard in mind, and after having reviewed Plaintiff's objections, the Court determines to adopt the recommendations for the reasons stated in Magistrate Judge Homer's thorough report. Plaintiff has attempted to reargue the positions he took before Magistrate Judge Homer and attempted to fill the gaps in his argument, but he has not pointed to specific erroneous determinations by Judge Homer and the Court finds none. In addition, Plaintiff has attempted to assert additional facts not provided in the Amended Complaint, and some involving individuals not named as defendants in the Amended Complaint. These facts and the actions by these non-parties were properly not considered by Magistrate Judge Homer on this Rule 12(b)(6) motion.

To the extent that Plaintiff seeks leave to file a second amended complaint re-alleging the claims dismissed here, *see Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (It is the usual practice upon granting a motion to dismiss to allow leave to replead.... [L]eave to replead is within the discretion of the district court ... [and] where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.), or assert new claims against new defendants, *see* Rep. Rec. p. 2, n. 4 ("O'Diah's opposition includes new claims against new defendants. Dkt. No. 70, ¶¶ 5–6, 26, 31, 38. These claims and defendants are not subjects of the present motion."), such an application must be made by proper motion before the magistrate judge. If such a motion is made, Plaintiff must comply with Local Rule 7.1(a)(4) that provides in pertinent part:

A party moving to amend a pleading pursuant to Fed.R.Civ.P. 14, 15, 19 – 22 must attach an unsigned copy of the proposed amended pleading to its motion papers. Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. A party shall not incorporate any portion of its prior pleading into

the proposed amended pleading by reference.

The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

    **\*3** NDNY LR 7.1(a)(4).

If such a motion is made, Plaintiff must also be prepared to address (1) why a sought after amendment would not be futile in light of the determinations made herein adopting the Report–Recommendation and Order,[FN2] (2) why leave to amend should be allowed after this case has been pending for such a long period of time, and (3) why amendment would not prejudice the remaining Defendants.

> [FN2]. Plaintiff's continued disagreement with the Court's and Magistrate Judge Homer's legal conclusions applied to the facts as they exist in amended complaint does not constitute a meritorious basis for amendment. The assertion of some additional fact that would differentiate a claim from that considered and that would set forth a plausible claim under the law as discussed in Magistrate Judge Homer's Report–Recommendation and Order might constitute a non-frivolous basis for amendment.

## III. CONCLUSION

For the reasons discussed above, the Court adopts Magistrate Judge Homer's February 28, 2012 Report–Recommendation and Order. Therefore, Defendants' motion to dismiss (Dkt. No. 66) is:

    1. **DENIED** as to O'Diah's claims of:

    A. Denial of access to courts against Defendants Thomas, Hahn, Shaw, Swierk and Moscicki;

    B. Medical indifference against Defendants

Cully, Thomas, Guter, and Mawhir;

    C. Retaliation against Defendants Pepin, Richardson, Cully, Hahn, Shaw and Swierk; and

    D. Filing of false misbehavior reports against Defendants Pepin, Richardson, Hahn, Shaw and Swierk; and

    2. **GRANTED** as to all other claims and all other moving Defendants.

If Plaintiff seeks to file a second amended complaint, he must make proper application by motion before the magistrate judge.

    **IT IS SO ORDERED.**

N.D.N.Y.,2012.
O'Diah v. Fischer
Not Reported in F.Supp.2d, 2012 WL 976033 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2014 WL 1292281 (N.D.N.Y.)
**(Cite as: 2014 WL 1292281 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony RUCANO, Plaintiff,
v.
Carl J. KOENIGSMANN, et al., Defendants.

No. 9:12–cv–00035 (MAD/RFT).
Signed March 31, 2014.

Anthony Rucano, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of
the State of New York, Christopher W. Hall, Esq.,
Assistant Attorney General, of Counsel, Albany,
NY, for Defendants.

**ORDER**

MAE A. D'AGOSTINO, District Judge.

**\*1** Plaintiff, an inmate in the custody of the
New York State Department of Corrections and
Community Supervision ("DOCCS"), commenced
this action pursuant to 42 U.S.C. § 1983, alleging
that Defendants violated his rights under the Eighth
Amendment of the United States Constitution. *See*
Dkt. No. 60. Plaintiff's claims arise out of Defend-
ants' alleged failure to provide Plaintiff with ad-
equate dental care.

In his second amended complaint, Plaintiff
contends, among other things, that Defendant Oli-
veira violated his Eighth Amendment rights by re-
fusing to provide him with three crowns, improp-
erly performing a root planing procedure, and
delaying root planing treatments. Further, Plaintiff
alleges that Defendant Kullman failed to treat his
cavity and also delayed root planing treatments. *Id.*
Currently pending before the Court is Defendant's
motion to dismiss. *See* Dkt. No. 64.

In a March 3, 2014 Report–Recommendation
and Order, Magistrate Judge Randolph F. Treece

recommended that the Court (1) grant Defendants'
motion to dismiss as to Plaintiff's supervisory liab-
ility claims against Defendants Bellamy, LaValley,
and Fischer; (2) grant Defendants' motion to dis-
miss as to Plaintiff's state law negligence and med-
ical malpractice claims; (3) deny Defendants' mo-
tion to dismiss as to Plaintiff's Eighth Amendment
claims against Defendants Oliveira and Kullman;
and (4) deny Defendants' motion to dismiss as to
Plaintiff's supervisory liability claims against De-
fendant Koenigsmann. *See* Dkt. No. 75. None of the
parties objected to the Report–Recommendation
and Order.

When a party files specific objections to a ma-
gistrate judge's report-recommendation, the district
court makes a *"de novo* determination of those por-
tions of the report or specified proposed findings or
recommendations to which objection is made." 28
U.S.C. § 636(b)(1). However, when a party files
"[g]eneral or conclusory objections or objections
which merely recite the same arguments [that he
presented] to the magistrate judge," the court re-
views those recommendations for clear error.
*O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL
933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and
footnote omitted). After the appropriate review,
"the court may accept, reject, or modify, in whole
or in part, the findings or recommendations made
by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magis-
trate judge's report and recommendation, even
when that litigant is proceeding *pro se,* waives any
challenge to the report on appeal. *See Cephas v.
Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that,
"[a]s a rule, a party's failure to object to any pur-
ported error or omission in a magistrate judge's re-
port waives further judicial review of the point"
(citation omitted)). A *pro se* litigant must be given
notice of this rule; notice is sufficient if it informs
the litigant that the failure to timely object will res-
ult in the waiver of further judicial review and cites
pertinent statutory and civil rules authority. *See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

**\*2** Having carefully reviewed the March 3, 2014 Report–Recommendation and Order, the parties' submissions and the applicable law, the Court finds that Magistrate Judge Treece correctly recommended that the Court (1) dismiss Plaintiff's supervisory liability claims as to Defendants Bellamy, LaValley, and Fischer; (2) dismiss Plaintiff's state law negligence and medical malpractice claims as to all Defendants; and (3) deny Defendants' motion to dismiss in all other respects. *See* Dkt. No. 75. Upon review of the thorough and well-reasoned ReportRecommendation and Order, the Court finds that Magistrate Judge Treece did not clearly err in any of his recommendations.

Wherefore, the Court hereby

**ORDERS** that Magistrate Judge Treece's March 3, 2014 Report–Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 64) is **GRANTED in part** and **DENIED in part;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**ANTHONY RUCANO,** Plaintiff,

—v—

**CARL J. KOENIGSMANN,** *Deputy Commissioner and Chief Medical Officer,* **RITA GRINBERGS,** *Regional Health Services Administrator,* **MARY D'SILVA,** *Director of Correctional Dental Services,* **KAREN BELLAMY,** *Director of Inmate Grievance Program,* **TAMIR R. FAROOKI,** *Dental Director, Clinton Correctional Facility,* **ROGERIO A. OLIVEIRA,** *Facility Dentist; Clinton Correctional Facility,* **BRIAN FISCHER,** *Commissioner; Clinton Correctional Facility,* **THOMAS LAVALLEY,** *Superintendent; Clinton Correctional Facility,* **PAUL J. KULLMAN,** *Regional Dental Director at Clinton Correctional Facility,* Defendants.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Anthony Rucano brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to provide adequate dental care, or created and countenanced policies and procedures that led to the inadequate provision of dental care. *See generally* Dkt. No. 60, Second Am. Compl. Now before this Court is Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 64. Plaintiff opposes the Motion. Dkt. No. 68. For the reasons that follow we recommend that Defendants' Motion be **GRANTED** in part and **DENIED** in part.

#### I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183 (1984).

**\*3** "Generally, in determining a 12(b)(6) mo-

tion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at *2 (N .D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus ., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft,* 585 F.3d 559, 567 (2d Cir.2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v.. Iqbal,* 556 U.S. at 679–80.

**\*4** With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION
### A. Background
The following facts are derived from Plaintiff's Second Amended Complaint.<sup>FN1</sup>

> FN1. On June 6, 2013, this Court granted Plaintiff's Motion to Amend and directed the Clerk of the Court to file Plaintiff's Proposed Amended Pleading as his Second Amended Complaint. Dkt. No. 59. The Exhibits attached to the Proposed Amended Pleading were mistakenly not refiled by the Clerk. Nevertheless, this section includes facts derived from the Exhibits attached to Plaintiff's Proposed Amended Pleading (Dkt. No. 47–2), which are incorporated by reference as part of Plaintiff's Second Amended Complaint. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). All references to these Exhibits correspond to the Table of Contents provided by Plaintiff filed as Docket Number 47–3.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

On February 5, 2011, Plaintiff entered Down-state Correctional Facility ("DCF"). Second Am. Compl. at ¶ 13. During the week of February 8, Plaintiff requested and received a visit with DCF's Dentist.[FN2] *Id.* at ¶ 14. At that appointment, Plaintiff relayed that prior to his incarceration, his personal dentist had started work on crowns[FN3] in three of his teeth by inserting temporary fillings, which were now "past due to be replaced with crowns, and [are] affecting the way I eat. I chew slowly, carefully and am constantly nervous and afraid I will lose the fillings and the teeth." *Id.* at ¶ 15. Plaintiff also informed DCF's Dentist that his periodontist had told him that he had "advanced periodontal disease that required bone grafts to prevent continuing bone loss which would eventually result in the loss of my teeth, and work was scheduled to begin once my crowns were completed." *Id.* at ¶ 16. DCF's Dentist informed Plaintiff that "it was not within [New York State Department of Corrections and Community Supervision's ("DOCCS") ] Policy to provide crowns or bone grafts." *Id.* at ¶ 17. On February 23, 2011, Plaintiff filed a grievance regarding DCF's Dentist's refusal to provide him with crowns. *Id.* at ¶ 18.

> FN2. DCF's Dentist is not a Defendant in this action.

> FN3. According to Plaintiff, "when a tooth receives a root canal, the inside of the tooth down to the root is removed which weakens the structural integrity of the tooth; and the placement of a post, permanent filling and crown secures the tooth's integrity to prevent it from breaking apart." Second Am. Compl. at ¶ 66.

On April 19, 2011, Plaintiff was put on the draft list to be transferred to Clinton Correctional Facility ("CCF"). *Id.* at ¶ 22. On May 17, 2011, Plaintiff received a letter from Defendant Grinbergs in response to a letter he wrote, concerning his dental issues, to Defendant Koenigsmann, Deputy Commissioner and Chief Medical Officer of DOCCS. *Id.* at ¶¶ 5 & 25. On June 13, 2011,

Plaintiff wrote another letter to Defendant Grinbergs "to thank her for responding for Dr. Koenigsmann[,]" and received a response, dated June 27, informing him that "the Division of Health Services has investigated [his] concerns with the Health ervice staff at Clinton, and stated [he] was receiving treatment" and that he had been scheduled to see the Dentist. *Id.* at ¶¶ 27–29.

On September 9, 2011, Plaintiff met with Defendant Oliveira, the Dentist at CCF. Plaintiff explained to Defendant Oliveira that he had three teeth that required crowns, and stated that he was concerned he would lose his teeth if the work was not completed. Defendant Oliveira told Plaintiff that pursuant to § 7.02 of the Health Services Policy Manual ("HSPM") Plaintiff could get his own dentist to handle the crowns, but that he would not provide crowns for Plaintiff. *Id.* at ¶¶ 31–32. Plaintiff informed Defendant Oliveira that he could not afford to pay a private dentist to perform the procedure. *Id.* at ¶ 33. Defendant Oliveira's assistant, Louise Jerdo,[FN4] informed Plaintiff that if his temporary "fillings fell out they would just pull the teeth [.]" *Id.* at ¶¶ 31 & 34. On September 9, 2011, Plaintiff wrote to Defendants Grinbergs and Koenigsmann, however, neither Defendant responded. *Id.* at ¶¶ 39–40 & 42–43.

> FN4. Louise Jerdo is not a Defendant in this action.

**\*5** On October 4, November 18, and December 23 of 2011, Defendant Oliveira conducted a systematic periodontal root planing of each of the four quadrants of Plaintiff's mouth; however, he continued to refuse to provide Plaintiff with crowns. *Id.* at ¶¶ 47, 48, & 49. After his final treatment, Plaintiff inquired about a follow up treatment, but was told by Defendant Oliveira that his treatment was complete and no other work was scheduled. *Id.* at ¶ 50.

In February and March of 2012, Plaintiff made "multiple"[FN5] requests for a dental appointment to treat tooth pain and to begin bi-annual root plaining. Eventually, an appointment was made for April

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

5, 2012. However, Plaintiff arrived at his appointment late and consequently was told by an unidentified guard that he would have to reschedule. *Id.* at ¶¶ 51–56. On April 23, 2012, Plaintiff requested an appointment with a doctor other than Dr. Oliveira, for root planing and pain in his tooth. *Id.* at ¶ 59. Plaintiff also filed a grievance regarding the events of April 5, stating that "[he] wrote [a] letter to Mary D'Silva (Director of Corr. Dental Services) requesting my semi-anual root planing for advanced periodontal disease and appt. for tooth pain by a dentist other th[a]n Dr. Oliveira, due to issues of retaliation and substandard treatment complained of in the past. *Need appt. ASAP.* Delay will result in unnecessary infection, pain and loss of teeth that is unnecessary and serves no penological purpose, in violation of my constitutional right to adequate medical care." *Id.* at ¶ 60 & Ex. F–3, Grievance # CL–62243–12, dated Apr. 23, 2012 (emphasis in original). On May 10, 2012, Plaintiff received a response to his grievance from the Inmate Grievance Resolution Committee ("IGRC") stating "that [Plaintiff] did have a call-out on 4/5/12 for Dental but he was late. The grievant has been rescheduled." *Id.* at Ex. F–5. I.G.R.C. Response, dated May 10, 2012.

> FN5. The precise number of requests Plaintiff made is unclear from the Second Amended Complaint.

On May 11, Plaintiff was seen by Defendant Dr. Kullman, CCF's Regional Dental Director, who examined Plaintiff and discovered that he had a cavity which required treatment; Plaintiff also informed Defendant Kullman of his need to replace his temporary fillings with permanent crowns in three of his teeth. *Id.* at ¶¶ 63–64. A dental treatment form filled out by Dr. Kullman notes that root planing was needed, tooth # 5 required treatment for a cavity, and he would schedule another appointment for the treatment. *Id.* at ¶ 64A & Ex. G2, Dental Treatment Record, at entry dated May 11, 2012. When asked by Plaintiff to explain the function of crowns, Defendant Kullman

explained that when a tooth receives a root canal, the inside of the tooth down to the root is removed which weakens the structural integrity of the tooth; and the placement of a post, permanent filling and crown secures the tooths integrity to prevent it from breaking apart.... [and] that having the crown placed on my teeth was not necessary now, but in a few years if you are still here we will give you crowns."

**\*6** *Id.* at ¶ 66.

On June 12, 2012, Plaintiff was called to the dental clinic at CCF for an "emergency callout." Although his cavity was not treated, Defendant Oliveira took a full set of x-rays of Plaintiff's mouth. *Id.* at ¶ 68. On June 14, Plaintiff received a letter from Defendant Oliveira, stating in part, " 'Generalized Advanced Chronic Adult Periodontal disease is present' and 'Teeth # 04 and # 19 are poorly endodontic treated. These teeth need retreatment of root canals, post and core and crowns. Stainless steel crowns are not indicated for these teeth. DOCCS does not provide offenders with root canals in posterior teeth.... You can either follow Form HSPM–7.02 and bring a dentist into the facility to treat them or alternatively we can extract and replace them with a partial removal denture.' " *Id.* at ¶ 69 & Ex. F6, Lt. dated June 14, 2012.

On October 26, 2012, Plaintiff saw Dr. Kullman for a second time. Notwithstanding Plaintiff's protestations that he was experiencing a problem with a tooth on the left side of his mouth, Defendant Kullman refused to look at Plaintiff's x-rays and put "another filling on top of a temporary filling in tooth # 4" located on the right side of Plaintiff's mouth. *Id.* at ¶¶ 72–75. On November 26, 2012, Plaintiff submitted a sick call request form stating:

> I have cavity on upper left side of mouth, diagnosed on May 11, 2012. I saw dentist on 10–26–12 who refused to look at full mouth x-rays until after he treated a temp filling on the right side of my mouth not causing pain. My cavity is worsening, causing daily pain and I have

had no treatment in it for over 6 months

*Id.* at ¶ 76.

On December 27, 2012 Plaintiff submitted an additional sick call request form stating that he had a "[c]avity on front left top of mouth untreated for over 6 months ... [and][a]dvanced Periodontal disease not treated with root scaling since Oct–Dec 2011. Please schedule appt." *Id.* at ¶ 77. Plaintiff also submitted a note to Defendant Farooki regarding his concerns. On December 31, Plaintiff received a memo from the Dental Department notifying him that he was on the list to be seen but that it was a " '[l]ong list, long wait.' " *Id.* at ¶ 78.

On April 9, 2013, Plaintiff submitted his Second Amended Complaint. As of that date, Plaintiff had not received crowns, treatment for his cavity, nor any additional root planing for treatment of his periodontal disease. *Id.* at ¶¶ 79–80 & p. 52, Wherefore Clause.FN6

> FN6. Plaintiff does not explicitly claim that as of April 9, 2013 he had still not been provided with crowns to replace three temporary fillings that were installed prior to his incarceration. However, in Plaintiff's Wherefore Clause, he requests that an injunction be granted directing Defendants to provide "treatment to complete [his] partially completed crowns[.]" Second Am. Compl. at p. 52, Wherefore Clause.

### B. Eighth Amendment

Construed liberally, Plaintiff's fifty-seven page Second Amended Complaint alleges that Defendant Oliveira (1) refused to provide him with crowns in three teeth, (2) improperly performed a root planing procedure on the lower half of his mouth, and (3) delayed root planing treatments for his advanced periodontitis. *See, e.g.,* Second Am. Compl. at ¶¶ 145–55. And, that Defendant Kullman (1) failed to treat his cavity, and (2) delayed his treatment for root planing. *See, e.g., id.* at ¶¶ 180–90E. Defendants argue that Plaintiff has failed to state a cause

of action under the Eighth Amendment. *See* Dkt. No. 64–1, Defs.' Mem. of Law, at pp. 7–12.

**\*7** To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994).

The seriousness element is an objective test, to determine whether the deprivation of care is sufficiently serious "entails two inquiries." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006) (citations omitted). First, courts must determine "whether the prisoner was actually deprived of adequate medical care." *Id* . Medical care is "adequate" where the care provided is a "reasonable" response in light of the "health risk" the inmate faces. *Id.* at pp. 279–80. The second inquiry requires a determination of "whether the inadequacy in medical care is sufficiently serious." *Id.* at p. 280. In cases where medical care is denied, courts focus on the seriousness of the underlying medical condition. *Id.* (citing *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). Some of the factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright,* 315 F.3d 158, 162–63 (2d Cir.2003)

(internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is at the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

Whereas, the "seriousness inquiry is narrower" in cases where "the prisoner is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment." *Salahuddin v. Goord,* 467 F.3d at 280 (citing *Smith v. Carpenter,* 316 F.3d at 185)). In such cases, courts "focus [ ] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* The question becomes whether delaying treatment subjected Plaintiff to any serious risk of harm. To that end, the Second Circuit has instructed us that "the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Smith v. Carpenter,* 316 F.3d at 187. In this regard, "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* Determining whether the inadequacy/delay presents a sufficiently serious risk "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citing *Helling, v. McKinney,* 509 U.S. 25, 32–33 (1993)).

**\*8** The second element, deliberate indifference, is based on a subjective standard. To establish deliberate indifference a plaintiff must demonstrate that the defendant acted with a culpable mental state, similar to criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... [but] something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

### 1. Plaintiff's Crowns

According to Plaintiff, Defendants' Oliveira and Kullman were aware that he required crowns in three of his teeth. Second Am. Compl. at ¶¶ 31–32, 63–64, 66, & 69. Additionally, Plaintiff has alleged that in a letter from Defendant Oliveira, and during a conversation with Defendant Kullman, these Defendants explicitly acknowledged that one possible consequence of not receiving crowns was that Plaintiff's teeth could collapse and end up needing to be removed. Nonetheless, Defendant Oliveira told Plaintiff that DOCCS' Policy did not permit him to provide Plaintiff with crowns and he could either pay to have an outside dentist perform the procedure—which he could not afford—or wait until his temporary fillings fell out, at which time he could have his teeth pulled. *See id.* at ¶¶ 32–34, 66, 69, & Ex. F6, Lt. dated June 14, 2012. Likewise, Defendant Kullman informed Plaintiff that he would install the crowns if Plaintiff was still at CCF "in a few years." *Id.* at ¶ 66. Plaintiff claims that Defendants' refusals were based on economic rather than medical reasons. *See, e.g., id.* at ¶¶ 32–36 & 42–43; Dkt. No. 68, Pl.'s Mem. in Opp'n, at pp. 5–7.

Defendants argue that Plaintiff has not alleged a sufficiently serious injury for purposes of the Eighth Amendment because he does not claim to be "suffering any substantial, chronic pain from the

lack of crowns," and, that his desire for crowns is nothing more than a non-actionable dispute over the proper course of treatment. Defs.' Mem. of Law at p. 9. They point out that in his Second Amended Complaint, Plaintiff does not claim that he suffered from any pain due to the lack of crowns, rather he merely alleges that he "chews slowly, carefully and [is] constantly nervous and afraid [he] will lose the fillings in his teeth." *Id.* (quoting Second Am. Compl. at ¶ 15). However, while pain is one factor to be considered in assessing the seriousness of an underlying condition, the Second Circuit has held that "dental needs—for fillings, crowns, and the like—are serious medical needs as the law defines that term." *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (quoting *Dean v. Coughlin,* 623 F.Supp. 392, 404 (S.D.N.Y .), *vacated on other grounds,* 804 F.2d 207 (2d Cir.1986)).

**\*9** While upon a fuller record it may be established that Plaintiff's condition was not sufficiently serious, at this early stage, Plaintiff's allegations that Defendants acknowledged but chose to ignore the possibility that if he did not receive crowns he would lose teeth that might otherwise be saved—for economic rather than medical reasons—is sufficient to plausibly allege that Defendants acted with deliberate indifference towards Plaintiff's sufficiently serious medical need for crowns. *See Chance v. Armstrong,* 143 F .3d at 703–04 (reversing the district court's 12(b)(6) dismissal of an inmate's claim that doctors chose to pursue a less efficacious treatment based on "ulterior" economic motives).

Therefore, we recommend that Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's claims that Defendants Oliveira and Kullman refused to provide him with crowns.

### 2. Plaintiff's Cavity

Plaintiff has alleged that notwithstanding multiple requests for treatment of the cavity diagnosed by Defendant Kullman, the condition went untreated for more than ten months. Second Am. Compl. at ¶¶ 63 & 76–79. Defendants argue that

Plaintiff has failed to allege that his cavity was a sufficiently serious condition for purposes of the Eighth Amendment because Plaintiff did not allege that this condition caused him substantial pain or that it affected his ability to go about his daily activities. Defs.' Mem. of Law at p. 11.

The Second Circuit has noted "that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so." *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003) (citing *Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) for the proposition that "a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction"). Moreover, although Plaintiff did not complain about his cavity on a daily basis, in November and December of 2012 he requested treatment for his cavity, noting that "[m]y cavity is worsening, causing daily pain and I have had no treatment in it for over 6 months." Second Am. Compl. at ¶¶ 76–79. Thus, it is plausible that Plaintiff's cavity was a sufficiently serious condition for purposes of the Eighth Amendment.

Moreover, Plaintiff's allegations that despite their awareness of the cavity, and his requests for treatment, Defendants continued to ignore his condition for approximately ten months, is sufficient at this early stage to plausibly allege that Defendants consciously disregarded his cavity.

For these reasons we recommend that Defendant's Motion be **DENIED** as to Plaintiff's Eighth Amendment claim regarding Defendants Kullman's and Oliveira's failure to treat his cavity.

### 3. Plaintiff's Periodontal Disease

Plaintiff has alleged that (1) Defendant Kullman's failure to schedule follow up appointments for routine root planing, despite acknowledging that Plaintiff required further treatment for his periodontal disease, Second Am. Compl. at ¶¶ 188–90;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and (2) Defendant Oliviera's substandard provision of dental planing, and his failure to schedule a follow up treatment for future planing, constituted deliberate indifference toward the treatment of his condition, *id.* at ¶¶ 150–52.

**\*10** For purposes of the instant Motion, Defendants concede that periodontal disease is a serious medical condition, and we agree. *See* Defs.' Mem. of Law. at p. 9; *see also Rashid v. McGraw, 2006 WL 1378945,\*1 (S.D.N.Y. May 18, 2006)* ("Periodontitis, like gingivitis, is a serious infection of the gum area, that, if left untreated, can lead to tooth loss. As the disease progresses, gums separate from the teeth, forming pockets (spaces between the teeth and gums) that become infected. Pockets deepen as the disease progresses and more gum tissue and bone are destroyed.") (citation omitted).

To begin with, we note that performing a procedure negligently does not amount to deliberate indifference. Here, Plaintiff alleges that Defendant Oliveira failed to properly plane the roots in the bottom quadrants of his mouth, because he performed the procedure too quickly and did not draw any blood, as is typical during such a procedure. *See, e.g.,* Second Am. Compl. at ¶¶ 150–51. Even if true, such behavior does not evince a conscious disregard to a known serious risk of harm; at most, such a claim sounds in negligence or medical malpractice, neither of which is tantamount to deliberate indifference. *See Estelle v. Gamble, 429 U.S. 97, 106 (1976)* ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Contrariwise, Plaintiff's remaining claims against these Defendants are sufficient to state a cause of action. Dr. Oliveira provided Plaintiff with root planing between October and December of 2011. Second Am. Compl. at ¶¶ 47, 48, & 49. On May 11, 2012, Defendant Kullman noted in a medical report that further root planing was needed, but did not schedule an appointment. *Id.* at ¶¶ 64A & 71. On June 14, 2012, Defendant Oliveira sent

Plaintiff a letter noting that advanced periodontal disease was present, and that two of his teeth needed root canals and crowns. *Id.* at ¶ 69 & Ex. F6, Lt. dated June 14, 2012. Nonetheless, as of the filing of Plaintiff's Second Amended Complaint, on April 9, 2013, Plaintiff had not received any additional treatment for his periodontal disease. Second Am. Compl. at ¶ 80. Defendants' failure to provide further periodontal care to Plaintiff, despite their explicit acknowledgments of his continuing need for such care, evinces a conscious disregard of Plaintiff's serious medical need.[FN7] While upon a fuller record, Defendants' contentions that Plaintiff received adequate care for his periodontal disease may be born out, at this early stage Plaintiff has sufficiently alleged an Eighth Amendment claim for deliberate indifference.

> FN7. In addition, we note that Plaintiff alleges that Defendants' decision not to provide further treatment for his periodontitis was based on ulterior economic concerns rather than his actual dental needs. *See* Pl.'s Mem. in Opp'n at p. 12; *see also Chance v. Armstrong, 143 F.3d at 703–04.*

Therefore, we recommend that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's claims that Defendants Oliveira and Kullman were deliberately indifferent towards the care of his periodontal disease.

### C. Personal Involvement

**\*11** An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted).

Defendants claim that Plaintiff failed to allege the personal involvement of Defendants Carl J. Koenigsmann, the Deputy Commissioner and Chief Medical Officer at DOCCS, Karen Bellamy, Director of the Inmate Grievance Program at DOCCS, Brian Fischer, the Commissioner of DOCCS, and Thomas LaValley, the Superintendent at CCF. Defs.' Mem. of Law at pp. 12–15.

### 1. Defendant Koenigsmann

Plaintiff alleges that he wrote Defendant Koenigsmann three letters describing the inadequacies of his dental care. Defendant Koenigsmann referred two of those letters to Defendant Grinbergs, who replied to Plaintiff on behalf of Defendant Koenigsmann on May 17 and June 27, 2011. *See, e.g.,* Second Am. Compl. at ¶¶ 82–87. Defendant Koenigsmann did not respond to Plaintiff's third letter, dated September 9, 2011, in which Plaintiff alleged that Defendant Kullman and Oliveira refused to provide him with crowns pursuant to an unconstitutional DOCCS' Policy. *Id.* at ¶¶ 40–43 & 83–87; *see also* Dkt. No. 1–1., Compl., Ex. B13, Lt., dated Sep. 9, 2011. It was once well accepted that neither ignoring an inmate's letter nor referring his letters to a subordinate constituted personal involvement on behalf of a supervisory official. *See Thomas v. Coombe,* 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Silvagnoli v. Fischer,* 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010) (citing *Smart v. Goord,* 441 F.Supp.2d 631, 642–43 (S.D.N.Y.2006) for the proposition that "[i]t is now well-settled that the failure of a supervisory official to investigate a let-

ter of protest written by an inmate is not sufficient to show personal involvement"; & *Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.,* 491 F.Supp.2d 342, 347 (W.D.N.Y.2007) for the proposition that "[t]he same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation."). However, in light of the Second Circuit's recent decision in *Grullon v. City of New Haven,* it would appear that plaintiffs within the Second Circuit are "entitled to have the court draw the reasonable inference ... that the [official] in fact received the Letter, read it, and became aware of the alleged conditions of which [the inmate] complained." *See Castro v. Heath,* 2013 WL 5354241, at *8 (N.D.N.Y. Sept. 23, 2013) (MAD) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. June 19, 2013)).

**\*12** As to the first two letters, it is clear that Defendant Koenigsmann acted upon those letters by referring them to his subordinate. *See Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.,* 491 F.Supp.2d at 347. However, affording Plaintiff the benefit of this inference, it is possible that Plaintiff's third letter to Defendant Koenigsmann put him on notice of a continuing violation of Plaintiff's Eighth Amendment rights, and he failed to take any action to remedy the wrong. *See Colon v. Coughlin,* 58 F.3d at 873. Therefore, we recommend that Defendants' Motion be **DENIED** as to Defendant Koenigsmann.

### 2. Defendant Bellamy

Plaintiff claims that Defendant Bellamy is liable because of her supervisory role over the voting members of the Central Office Review Committee ("CORC"), an entity within DOCCS that reviewed and decided the final level of Plaintiff's grievance appeals. Second Am. Compl. at ¶¶ 127–129. Construed liberally, it appears that Plaintiff believes Defendant Bellamy failed to ensure that the voting members of CORC were properly trained to understand inmate medical issues. *See id.* at ¶¶ 127–129. Even if true, such a failure is not actionable under §

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

1983. See *Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 183 (N.D.N.Y.1996) (citing cases for the proposition that "supervisory officials are also generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment."). Moreover, there is no apparent supervisory link between Defendants Kullman and Oliveira and Defendant Bellamy, therefore, Plaintiff has failed to allege her personal involvement in the alleged Eighth Amendment deprivations caused by Defendants Kullman and Oliveira. See *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (finding that in the absence of *respondeat superior,* supervisory liability is found only where some act or omission of the supervisory official is the proximate cause of the constitutional violation); see also *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir.2007) (a supervisory official may be held liable for "gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury") (quoting *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

Alternatively, Plaintiff argues that Defendant Bellamy is "personally involved and appropriately named in this action for the purposes of discovery to ascertain the voting members present in deciding the Plaintiff's grievance, including determining the information requested by the voting members in any form that was gathered, acquired, used or consulted in reaching the final determination on the grievance." *Id.* at ¶ 130. Although courts within the Second Circuit have permitted a named defendant who lacked personal involvement in the underlying constitutional violation to remain a defendant solely for the purposes of discovery, such exceptions are typically granted only where the plaintiff was legitimately unable to identify the true identity of any other defendant named in the action without the benefit of first conducting some limited discovery. See, e.g., *Murphy v. Goord,* 445 F.Supp.2d 261, 266 (W.D.N.Y.2006) (citing *Covington v. Warden*

*of C–95,* 1996 WL 75211 at \*4 (E.D.N.Y.Feb.8, 1996)); see also *Reed v. Doe No. 1,* 2013 WL 5441503, at \*8 fn.5 (N.D.N.Y. Sept. 27, 2013) (citing *Davis v. Kelly,* 160 F.3d 917, 921–22 (2d Cir.1998)).

\***13** Here, Plaintiff has not named any Doe Defendants. Moreover, to the extent that Plaintiff seeks discovery of relevant information, Plaintiff has named other supervisory officials in this action which Defendants have not moved to dismiss.[FN8] *Compare* Second Am. Compl., *with* Defs.' Mem. of Law. Therefore, it is unnecessary to allow Plaintiff to continue his action against Defendant Bellamy in the absence of some indication that she was personally involved in the deprivations allegedly caused by Defendants Oliveira and Kullman.

> FN8. By their Motion, Defendants do not seek dismissal of Defendants Grinbergs, D'Silva, nor Farooki.

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant Bellamy.

### 3. Defendant Fischer

Plaintiff claims that Defendant Fischer is liable for actions he took (or failed to take) while acting as Commissioner of DOCCS. Specifically he alleges that Defendant Fischer (1) failed to remedy certain unconstitutional policies that he was alerted to *via* a 2009 report entitled "Healthcare in New York State Prisons, 2004–2007" written by the "Corrections Association", (2) and for his gross negligence in failing to supervise Defendant Koenigsmann. Second Am. Compl. at ¶¶ 156–68. Defendant Fischer "may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury" *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

Plaintiff does not allege that Defendant Fischer was personally involved in any aspect of his dental care. Moreover, Plaintiff has not plausibly alleged that Defendant Fischer was aware that Plaintiff's constitutional rights were being violated. Plaintiff's claim that the Correction Association's report regarding healthcare provided to prisoners in New York State between 2004 and 2007 put Defendant Fischer on notice of the care actually received by Plaintiff in 2011–2013 is patently implausible. Moreover, a review of the report offered by Plaintiff reveals that it does not directly relate to dentistry, dental care, nor the named Defendants. In fact, the word dentist does not appear at all in the report nor does the report conclude anywhere that dental care at Clinton was constitutionally inadequate. Second Am. Compl. at Ex. G11. Accordingly, it is equally implausible to suggest that Defendant Fischer's awareness of the unrelated state-wide issues presented in the report put him on notice of the potential that Plaintiff would suffer constitutional harm at the hands of Defendants Kullman and Oliveira. *See Colon v. Coughlin,* 58 F.3d at 873.

Next, Plaintiff claims that Defendant Fischer was grossly negligent in his supervision of Defendant Koenigsmann because he failed to ensure that Defendant Koenigsmann properly implemented DOCC's Quality Improvement Program and that he properly supervised Defendant D'Silva, DOCCS' Dental Director. Second Am. Compl. at ¶¶ 162–68. According to Plaintiff, it was Fischer's responsibility to ensure that Defendant Koenigsmann held Defendant D'Silva accountable for her responsibilities to (1) update HSPM § 2.01, (2) utilize the Dental Review Committee to assist in complying with policies, and to investigate health complaints, and (3) insure that Facility Dental Directors were effectively applying Dental Care Policies at CCF. *Id.* at ¶¶ 165–68.

**\*14** According to the Second Circuit:

a supervisor may be liable for failing to screen or otherwise inquire about his subordinates ... ac-

tions.... To be liable under section 1983 for his failure to inquire, he must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior. Such notice could be actual (for example, awareness of prior deprivations in a related context), or it could be constructive (for instance, notice arising from a preexisting duty)....

*Poe v. Leanard,* 282 F.3d at 141–42.

Here, Plaintiff points out several aspects which he believes could have been handled better by Defendants Koenigsmann and D'Silva, yet he fails to allege any facts from which it could plausibly be concluded that Defendant Fischer was, or should have been, aware of the allegedly deficient performance of his subordinates. "[T]he mere fact that a subordinate may have deprived an inmate of a constitutional right, without more, will not support a claim against that subordinate's supervisor." *Felix–Torres v. Graham,* 687 F.Supp.2d 38, 62 (N.D.N.Y.2009). Moreover, as mentioned above, the report Plaintiff offers is primarily focused on unrelated medical and staffing issues and does not involve dental care generally nor Defendants Koenigsmann and D'Silva. Therefore, Plaintiff has failed to plausibly allege that Defendant Fischer knew of, or should have known, that either of his subordinates required greater supervision. Consequently, Plaintiff has failed to state a plausible claim that Defendant Fischer's supervision of either Defendant was grossly negligent. *See Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) citing *Poe v. Leonard,* 282 F.3d at140 & *Iqbal v. Hasty,* 490 F.3d 143, 166 (2d Cir.) *cert. granted sub nom. Ashcroft v. Iqbal,* 554U.S. 902 (2008) for the proposition that "[t]o the extent that the complaint attempts to assert a failure-to-supervise claim, ... it lacks any hint that [defendant] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."); *see also Poe v. Leonard,* 282 F.3d at 140 n. 14 ("We have often equated gross negligence with recklessness, and have defined it as the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

'kind of conduct ... where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.' " (quoting *Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir.1991)).

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant Fischer.[FN9]

> FN9. In light of this recommendation, there is no need for us to address Defendants' request to dismiss, pursuant to the Eleventh Amendment, the monetary claims asserted against Defendant Fischer in his official capacity.

### 4. Defendant La Valley

Plaintiff claims that Defendant LaValley, CCF's Superintendent, is liable in his supervisory capacity for the alleged constitutional violations of Defendants Oliveira and Kullman, because (1) "despite having actual knowledge through his administrative oversight of the FHSD, through his operation and participation of the Quality Improvement Program and in the [Quality Improvement] Committee, and through his knowledge and awareness of grievances appealed through his office, had allowed and condoned the Policies and Customs which resulted in unconstitutional practices occurring." Second Am. Compl. at ¶¶ 169–79.

**\*15** Construed liberally, Plaintiff has alleged that Defendant LaValley was aware of the alleged constitutional violations which Plaintiff experienced at CCF yet took no action to remedy the situation. Plaintiff's allegations that Defendant LaValley learned of the alleged constitutional deprivations *via* his administrative oversight of the FHSD, participation in the Quality Improvement Committee, or through the grievances appealed through his office, are purely speculative and conclusory. Plaintiff failed to allege with any specificity how the alleged report generated by the FHSD, complaints received by the Quality Improvement Com-

mittee, or the grievances appealed through his office related directly to Plaintiff's allegedly deficient dental care.

Moreover, although Plaintiff grieved these issues on two occasions, once while at DCF, and once while at GCF, there is nothing in the record from which it would be reasonable to infer that Defendant LaValley, the Superintendent of CCF, ever saw either grievance. *See, e.g.,* Second Am. Compl. at ¶¶ 18–21, 60 & Ex. F–3, Grievance # CL–62243–12. Plaintiff's first grievance was filed at DCF, and although he appealed the decision of the IGRC to the Superintendent, that grievance was handled by DCF's Superintendent, not Defendant LaValley the Superintendent of CCF. *See id.* at Ex. A–3, Superintendent's Response, dated Mar. 24, 2011. Moreover, while Plaintiff filed a grievance regarding his dental care while at CCF, he does not allege that he appealed the decision of the IGRC to the Superintendent. Second Am. Compl. at ¶ 60 & Ex. F–5, I.G.R.C. Response, dated May 5, 2012. Thus, Plaintiff has failed to plausibly allege that Defendant LaValley was aware of the alleged constitutional violations of which Plaintiff now complains, or that he had any reason to suspect that his subordinates would violate Plaintiff's constitutional rights. *See Pettus v. Morgenthau,* 554 F.3d at 300; *see also Poe v. Leonard,* 282 F.3d at 140 n. 14.

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant LaValley.

### D. Corrections Law § 24

In addition to his federal claims, Plaintiff also raises pendent state law negligence and medical malpractice claims against each of the named Defendants. Second Am. Compl. at ¶¶ 191–239. A federal court exercising pendent jurisdiction must apply state law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1996). "Thus, if state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction." *Livingston v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Griffin,* 2007 WL 2437433, at *2 (N.D.N.Y. Aug. 22, 2007) (citing *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996)).

New York Corrections law § 24 precludes "the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment.FN10 *Baker v. Coughlin,* 77 F.3d at 15. And, because the Court of Claims is a court of limited jurisdiction, hearing only claims against New York State and no other individual or entity, § 24 amounts to a grant of immunity for corrections officers sued in their personal capacities for claims arising out of the discharge of their duties. N.Y. CT. CLMS. LAW § 9.

FN10. N.Y. CORR. LAWW § 24 states that:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

**\*16** Plaintiff contends that when used to relegate to the Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, § 24 is in-

consistent with the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and therefore, pursuant to the Supreme Court's decision in *Haywood v. Drown,* 556 U.S. 729 (2009), unconstitutional. Pl.'s Opp'n at pp. 25–26. However, Plaintiff's reliance on *Haywood* is misplaced because claims brought pursuant to state law do not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear pendent state law claims.FN11 *See Rounds v. Thompson,* 2013 WL 3187074 (N.D.N.Y. June 20, 2013) (citing cases for the proposition that "courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24 ."); *see also Lewis v. Turco,* 2011 WL 1044511, at *2 (W.D.N.Y. Mar. 21, 2011) ("In other words, in *Haywood,* the Supreme Court held that Correction Law section 24 was unconstitutional only insofar as it barred federal section 1983 claims in state court.").

FN11. The *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear § 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims [against corrections officers] that it considers at odds with its local policy." *Id.* at 2117. The Supreme Court found such selective treatment of § 1983 claims brought against corrections officers to be "contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages," and therefore, in violation of the Supremacy Clause. *Id.* at 2115 (emphasis in original).

Thus, pursuant to § 24, only the New York State Court of Claims has jurisdiction to hear Plaintiff's pendent claim because Plaintiff has alleged acts that clearly fall within the scope of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Defendants' employment duties. The Second Circuit has held that § 24 bars a plaintiff from bringing state law claims against corrections employees in their individual capacities in federal as well as state court. *Baker v. Coughlin,* 77 F.3d at 15–16. In making such ruling, the Second Circuit has stated that “[i]t is of no significance that § 24(1) refers only to actions in state courts, because a federal court acts essentially as a state court in addressing pendent state law claims.” *Baker v. Coughlin,* 77 F.3d at 15. Under these circumstances, the correct jurisdiction for these types of claims rests with the New York State Court of Claims. Therefore, this Court does not have jurisdiction to hear Plaintiff's pendent state law claims and we recommended that Defendants' Motion be **GRANTED** and that Plaintiff's state law claims against all Defendants be **DISMISSED.**

**III. CONCLUSION**

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 64) be **GRANTED** in part and **DENIED** in part as follows:

1) **GRANTED** as to Plaintiff's supervisory liability claims against Defendants Bellamy, LaValley, and Fischer, and these Defendants should be dismissed from this action;

2) **GRANTED** as to Plaintiff's state law negligence and medical malpractice claims against all Defendants;

3) **DENIED** as to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Oliveira and Kullman; and

4) **DENIED** as to Plaintiff's supervisory liability claims against Defendant Koenigsmann;

***17 ORDERED,** that the Clerk of the Court attach a copy of the Exhibits that were included in Plaintiff's Motion to Amend (Dkt. No. 47), as Document Numbers 47–3 through 47–8, to Plaintiff's Second Amended Complaint (Dkt. No. 60); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Date: March 3, 2014.

N.D.N.Y.,2014.
Rucano v. Koenigsmann
Slip Copy, 2014 WL 1292281 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3187074 (N.D.N.Y.)
**(Cite as: 2013 WL 3187074 (N.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
William ROUNDS, Plaintiff,
v.
C.O. THOMPSON, Correction Officer; Brian Fischer, Commissioner, NYS Department of Correction and Community Service, Defendants.

Civil Action No. 9:12–cv–953 (GLS/TWD).
June 20, 2013.

William Rounds, North Syracuse, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Kevin P. Hickey, Esq., of Counsel, Albany, NY, for Defendant Fischer.

Sheehan, Greene Law Firm, Lawrence H. Schaefer, Esq., Thomas D. Latin, Esq., of Counsel, Albany, NY, for Defendant Thompson.

### ORDER
GARY L. SHARPE, Chief Judge.

**\*1** The above-captioned matter comes to this court following a ReportRecommendation by Magistrate Judge Therese W. Dancks, duly filed May 28, 2013. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Magistrate Judge's Report–Recommendation for clear error, it is hereby

ORDERED that the Report–Recommendation of Magistrate Judge Therese W. Dancks filed May 28, 2013 is ACCEPTED in its entirety for the reasons state therein; and it is further

ORDERED, that Defendant Fischer's Rule 12(c) motion for judgment on the pleadings (Dkt.

No. 25) be GRANTED; and it is further

ORDERED, that Plaintiff's Complaint be dismissed as against Defendant Fisher with leave to amend within thirty (30) days of this Order; and it is further

ORDERED, that the Clerk of the Court is to mail copies of the Order to the parties in accordance with the court's local rules.

IT IS SO ORDERED.

### *ORDER AND REPORT–RECOMMENDATION*
THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This *pro se* civil rights action commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff William Rounds has asserted an Eighth Amendment claim for excessive force against Defendant Thompson, a Corrections Officer at the Oneida Correctional Facility ("Oneida") during the time period relevant to the claim. (Dkt. No. 1.) Plaintiff has alleged a claim for negligent hiring, training, discipline, and retention of Thompson against Brian Fischer ("Fischer"), Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). *Id.* Defendant Fischer filed an Answer to Plaintiff's Complaint (Dkt. No. 21) and now moves for judgment on the pleadings in his favor pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 25.) Plaintiff has not filed papers opposing Fischer's motion. For the reasons that follow, I recommend that Defendant Fischer's motion be granted.

### I. BACKGROUND[FN1]

> FN1. The background facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this motion. *See Sheppard v. Beerman,* 94 F.3d 823, 827 (2d

Cir.1996) (in deciding a Rule 12(c) mo-
tion, "all allegations in the complaint must
be accepted as true ....")

**A. Defendant Thompson**

In March of 2011, Plaintiff was an inmate con-
fined at Oneida. (Dkt. No. 1 at ¶ 1.) On March 28,
2011, Plaintiff was working in Cook–Chill, a food
service program owned and operated by DOCCS.
*Id.* at ¶ 8. Defendant Corrections Officer Thompson
was assigned to supervise the area in which
Plaintiff was working. *Id* . at ¶ 9.

According to Plaintiff, while he was perform-
ing his duties, Thompson began swearing at him
and ordered him into a nearby bathroom. *Id.* at ¶ 10.
Once in the bathroom, Thompson called Plaintiff "a
piece of shit" and accused him of being a lazy
worker. *Id.* at ¶ 11. When Plaintiff denied being
lazy, Thompson became infuriated and pushed
Plaintiff hard against a wall, causing Plaintiff to fall
to the floor in pain. *Id.* at ¶¶ 12–13. Thompson then
grabbed Plaintiff by the throat and began choking
him, continuing as Plaintiff gasped for air and
neared unconsciousness. *Id.* at ¶¶ 14–17, 19.
Thompson is alleged to have told Plaintiff while he
was choking him that "this is what I used to do
when I was 21 [yrs. old] working at Sing Sing." *Id.*
at ¶ 17. Upon releasing the choke hold, Thompson
forced Plaintiff to stand, grabbed the back of his
neck, and smashed his face into the wall. *Id.* at ¶¶
22–24.

**\*2** After being taken to the Oneida infirmary
where Plaintiff was treated for what he has de-
scribed as injuries to his neck, face, and head, he
was placed in punitive segregation pending a dis-
ciplinary proceeding on a misbehavior report filed
by Thompson claiming that Plaintiff had assaulted
him. *Id.* at ¶¶ 29–30, 36. According to Plaintiff, the
charges in the misbehavior report were dismissed
several days later on the grounds that they were un-
substantiated and not credible, and an internal in-
vestigation was conducted concerning the force
used by Thompson. *Id.* at ¶¶ 31–32. Plaintiff has al-
leged upon information and belief that Thompson

had an extensive history of assaulting inmates but
was nonetheless allowed by Defendant Fischer to
remain employed during the investigation. *Id.* at ¶
33.

In July of 2011, Plaintiff attended an arbitra-
tion hearing held for the purpose of determining
whether Thompson had used excessive force. *Id.* at
¶ 33. Plaintiff believes that Thompson's employ-
ment with DOCCS was terminated following the ar-
bitration hearing. *Id.* at ¶ 35.

**B. Defendant Fischer**

Plaintiff has alleged that Defendant Fischer, as
DOCCS Commissioner, is responsible for operating
a number of New York correctional facilities, and
through his senior officials, promulgates and imple-
ments policies, including those with respect to the
use, reporting and investigation of force by uni-
formed staff. *Id.* at ¶ 7. Plaintiff claims that Fisc-
her's senior officials at DOCCS are aware of and
tolerate certain practices by subordinate employees
in correctional facilities, including some which are
inconsistent with formal policy. *Id.* Because these
practices are "wide-spread, long-standing, and
deeply embedded in the culture of DOCCS," they
constitute unwritten policies or customs. *Id.*
Plaintiff has also alleged that Fischer is responsible
for the "appointment, training, supervision, and
conduct of all DOCCS personnel, including
Thompson. *Id.*

Plaintiff contends that Thompson was unfit and
incompetent for his position, and that Fischer knew
or should have known through the exercise of reas-
onable diligence that Thompson was potentially
dangerous. *Id.* at ¶¶ 44–45. Plaintiff has alleged
upon information and belief that Fischer was negli-
gent in "screening, hiring, training, disciplining,
and retaining" Thompson. *Id.* at ¶ 46.

**II. PROCEDURAL HISTORY**

Plaintiff filed his Complaint in this matter on
June 12, 2012, and was authorized to proceed *in
forma pauperis* by this Court's Decision and Order
filed on September 13, 2012. (Dkt. Nos. 1 and 9.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3187074 (N.D.N.Y.)
**(Cite as: 2013 WL 3187074 (N.D.N.Y.))**

Defendants Fischer and Thomson filed their respective Answers to the Complaint on January 17, 2013. (Dkt. Nos. 21 and 22.) Fischer filed his motion to dismiss on the pleadings pursuant to Rule 12(c) a day later. (Dkt. No. 25.)

On January 22, 2013, Plaintiff sent a letter to the Clerk asking for a temporary restraining order against Thompson on the grounds that he was fearful for his safety and property once he was released from incarceration. (Dkt. No. 27.) Judge Sharpe treated Plaintiff's request as a motion for a preliminary injunction and denied the motion on the grounds that Plaintiff had not made the necessary showing for issuance of a mandatory injunction. (Dkt. No. 32.)

### III. ANALYSIS

### A. Legal Standard Governing a Rule 12(c) Motion for Judgment on the Pleadings

**\*3** The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is the same as that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Irish Lesbian and Gay Organization v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998). "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007)). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly* ). Where a *pro se* complaint fails to state a cause of action, the court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it ." *Cuoco,* 222 F.3d at 112 (citation omitted).

### B. Plaintiff's Official Capacity Claims For Money Damages Against the Defendant

Plaintiff has sued Defendant Fischer under 42 U.S.C. ¶ 1983 in both his individual and official capacity as Commissioner of DOCCS. (Dkt. No. 1 at ¶ 7.) Fischer seeks dismissal of Plaintiff's official capacity claim for money damages against him on Eleventh Amendment grounds. (Dkt. No. 25–1 at 5–6.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d

232, 236 (2d Cir.2006), and bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (an inmate plaintiff's claims for damages against individual Department of Correctional Services employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity.) Therefore, the Court recommends that the Plaintiff's § 1983 claim for money damages brought against Fischer in his official capacity be dismissed on Eleventh Amendment grounds without leave to amend.

## C. Plaintiff's State Law Negligence Claim Against Fischer

**\*4** Plaintiff's claim for relief against Fischer sounds in state law negligence. (Dkt. No. 1 at ¶¶ 42–47.) According to Plaintiff, Fischer knew or should have known that Thompson was potentially dangerous and owed a duty of care to Plaintiff to prevent Thompson from assaulting him. *Id.* at ¶¶ 43, 45. Plaintiff contends, upon information and belief, that Fischer's negligence in screening, hiring, training, disciplining, and retaining Thompson potentially caused Plaintiff's injuries. *Id.* at ¶ 46. Fischer argues correctly that he is entitled to dismissal of Plaintiff's state law claim for negligence under New York Corrections Law § 24. (Dkt. No. 25–1 at 6–7.)

Section 24 provides as follows:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

The statute precludes inmates from suing DOCCS employees in their personal capacity in New York State courts. *See Arteaga v. State,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 62, 527 N.E.2d 1194 (1988). The bar also applies to pendent state law claims in federal court because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* at 15. *See Redd v. Wright,* No. 9:04–CV–00401 (PAM/RFT), 2006 WL 6907552, at \*8, 2006 U.S. Dist. LEXIS 100971, at \*25–26 (N.D.N.Y. Aug.9, 2006) (claim for negligent failure to train and supervise based on state law dismissed under Corrections Law § 24 which precludes pendent state law claims against DOCCS officers and employees sued in their personal capacity in federal court for employment related activities).

In 2009, the United States Supreme Court found Corrections Law § 24 unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown,* 556 U.S. 729, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24. *See O'Diah v. Fischer,* No. 08–CV–941 (TJM/DRH), 2012 WL 987726, at \*21, 2012 U.S. Dist. LEXIS 39232, at \*60 (N.D.N.Y. Feb.28, 2012); *Joy v. New York,* No. 5:09–CV–841 (FJS/ATB), 2010 WL 3909694, at \*4–5, 2010 U.S.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Dist. LEXIS 104641, at *15–16 (N.D.N.Y. Sept.30, 2010); *Gillard v. Rovelli,* No. 9:09–CV–0860 (NAM/GHL), 2010 WL 4905240, at *16, 2010 U.S. Dist. LEXIS 124737, at *47–48 (N.D.N.Y. Sept.29, 2010); *Crump v. Ekpe,* No. 9:07–CV–1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *61 (N.D.N.Y. Feb.8, 2010). For the reasons set forth in those decisions, the Court recommends that Plaintiff's state law claim against Fischer for negligence be dismissed under Corrections Law § 24 without leave to amend.

**D. Claim Against Fischer Under § 1983**

**\*5** Although Plaintiff has labeled his claim against Fischer solely as one for negligence, given Plaintiff's *pro se* status, the Court is obligated to read his Complaint liberally and interpret it to raise the "strongest arguments [it] suggest[s]." *Burgos,* 14 F.3d at 790. The Court must therefore consider whether Plaintiff has stated a claim against Fischer under § 1983 for deliberate indifference to a known risk to Plaintiff's safety in violation of the Eighth Amendment.[FN2] The Eighth Amendment proscribes "cruel and unusual" punishments, *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and requires prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In order to state a cognizable failure to protect claim under § 1983, a plaintiff must set forth facts showing that (1) "he was incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference" to his safety. *Warren v. Goord,* 476 F.Supp.2d 407, 410 (S.D.N.Y.2007) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

> FN2. Mere negligence is not actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327 (1986).

Deliberate indifference requires that the defendant official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and in fact "dr[e]w the inference." *Farmer,* 511 U.S. at 837; *see also Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996) (defendant official must "ha[ve] knowledge that an inmate faces a substantial risk of serious harm and ... disregard[ ] that risk by failing to take reasonable measures to abate the harm."). Mere negligence is not enough to demonstrate deliberate indifference. *Id.*

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 ." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*6** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant cre-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ated a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

The factual allegations in Plaintiff's Complaint concerning Fischer his general supervision of DOCCS facilities and promulgation and implementation, through senior officials, of policies regarding the use of force by uniformed staff, and the toleration of wide-spread and long-standing practices contrary to formal policies expose Plaintiff's claim against Fischer as one for supervisory liability. (Dkt. No. 1 at ¶ 7.) Plaintiff's only factual allegations concerning Fisher that relate specifically to Thompson's alleged use of excessive force are his conclusory assertions that: (1) upon information and belief, Fischer knew or should have known that Thompson was potentially dangerous; and (2) upon information and belief, Fischer's negligence in screening, hiring, training, disciplining, and retaining Thompson was a potential cause of Plaintiff's injuries. *Id.* at ¶¶ 45–46. The Complaint is devoid of factual allegations showing personal involvement by Fischer in Thompson's alleged use of excessive force, or that Fischer acted with deliberate indifference with respect to Thompson's safety that Fischer had knowledge that Plaintiff faced a substantial risk of serious harm from Thompson and disregarded that risk.[FN3] *Hayes,* 84 F.3d at 620.

> FN3. In order to "sufficiently allege supervisory liability based upon deliberate indifference, a plaintiff must show "(1) that the supervisor had actual or constructive notice that unconstitutional acts were occurring and deliberately failed to take corrective action and (2) that there is an affirmative causal link between the supervisor's inaction and the plaintiff's injury." *Ziemba v.*

*Thomas,* 390 F.Supp.2d 136, 144 (D.Conn.2005) (citing *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002); *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989). The factual allegations in Plaintiff's Complaint are inadequate to make that showing with regard to Thompson's alleged use of excessive force.

Furthermore, conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison).

**\*7** Given the absence of factual allegations in Plaintiff's Complaint that make a facially plausible showing of personal involvement by Fischer related to Thompson's alleged use of excessive force under any of the *Colon* categories, the Court recommends that Fischer's motion for judgment on the pleadings be granted, and that Plaintiff's Complaint be dismissed as against Fischer. However, in deference to Plaintiff's *pro se* status, the Court also recommends that the dismissal be without prejudice, and that Plaintiff be granted leave to amend.

**ACCORDINGLY,** it is hereby

Slip Copy, 2013 WL 3187074 (N.D.N.Y.)
**(Cite as: 2013 WL 3187074 (N.D.N.Y.))**

**RECOMMENDED** that Defendant Fischer's Rule 12(c) motion for judgment on the pleadings (Dkt. No. 25) be **GRANTED;** and it is further

**RECOMMENDED** that Plaintiff's Complaint be dismissed as against Defendant Fisher with leave to amend; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

N.D.N.Y.,2013.
Rounds v. Thompson
Slip Copy, 2013 WL 3187074 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

(Cite as: 2009 WL 3049613 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Charles MAY, Plaintiff,

v.

Superintendent DONNELI; Donaldson, Grievance Coordinator; Dep. Stern; Imam Ahmed; Officer Matthew; Deacon Bashaw; and James Jones, Administration Sergeant, Defendants.

Civil Action No. 9:06-cv-437 (GLS/RFT).

Sept. 18, 2009.

West KeySummary**Civil Rights 78** 🔑 1463

**78** Civil Rights

   **78III** Federal Remedies in General

      **78k1458** Monetary Relief in General

         **78k1463** k. Mental Suffering, Emotional Distress, Humiliation, or Embarrassment. Most Cited Cases

A prisoner who did not suffer a physical injury was

not entitled to compensatory damages for mental or emotional suffering for his § 1983 claim under the Religious Land Use and Institutionalized Persons Act (PLRA). The prisoner's alleged loss of weight and possible increase in blood pressure was insufficient to constitute a physical injury under the PLRA. The prisoner alleged that his First Amendment rights were violated when he was denied the opportunity to eat blessed food for seven days with his fellow Nation of Islam members during the Holy Month of Ramadan. Prison Litigation Reform Act of 1995, § 101(e), 42 U.S.C.A. § 1997e(e).

Charles May, Ray Brook, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Assistant Attorney General, of Counsel, Albany, NY, for the Defendants.

***ORDER***

GARY L. SHARPE, District Judge.

**\*1** The above-captioned matter comes to this court following a Report-Recommendation by Magistrate Judge Randolph F. Treece, duly filed August 25, 2009. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the Magistrate Judge's Report-Recommendation for clear error, it is hereby

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

(Cite as: 2009 WL 3049613 (N.D.N.Y.))

ORDERED, that the Report-Recommendation of Magistrate Judge Randolph Treece filed August 25, 2009 is ACCEPTED in its entirety for the reasons state therein, and it is further

ORDERED, that the defendants' motion for partial summary judgment (Docket No. 57) is GRANTED in part and DENIED in part, and it is further

ORDERED, that the Clerk of the court serve a copy of this order upon the parties in accordance with this court's local rules.

IT IS SO ORDERED.

### REPORT-RECOMMENDATION AND ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Charles May brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his First Amendment rights were violated when he was denied the opportunity to eat blessed food for seven days with his fellow Month of Islam members during the Holy Month of Ramadan. Dkt. No. 51, Am. Compl. at ¶ 1. In addition, Plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, and New York State Corrections Law § 610. *Id.* at ¶ 37. Defendants move for Partial Summary Judgment, to which Plaintiff filed a Response in Opposition. Dkt. Nos. 57-58. Defendants contend that Plaintiff is (1) barred from bringing an action for mental or emotional injury under 42 U.S.C. § 1983 because he failed to allege the required showing of physical injury pursuant to 42 U.S.C. § 1997e(e); and (2) estopped from bringing a pendent state law claim pursuant to N.Y. CORR. LAWW § 24. Dkt. No. 57-5, Defs.' Mem. of Law at pp. 2-4. For the reasons that follow, it is recommended that the Defendants' Motion be

GRANTED in part and DENIED in part.

### I. BACKGROUND

The following material facts are not, for purposes of this Motion, in dispute. Plaintiff alleges that in August 2005, approximately one month prior to the Islamic celebration of Ramadan, he was signed up as a member of the Nation of Islam in order to allow him to participate in Ramadan related activities. Dkt. No. 58, Pl.'s 7.1 Statement at p. 2. According to Plaintiff, during the Holy Month of Ramadan, Muslims are unable to eat during mess hall hours because they are required to fast during that time; the fast is then broken at night by eating blessed food. Am. Compl. at ¶ 16.FN1 On October 5, 2005, Plaintiff fasted and then ate blessed food with his fellow Nation of Islam members. *Id.* at ¶ 13. Plaintiff alleges that on October 6, 2005, he was informed by Defendant Sergeant Jones, in the presence of Defendant Corrections Officer ("C.O.") Mathew, that the administration had him listed as a Sunni Muslim and he would therefore have to eat with them until the administration straightened things out. *Id.* Though Plaintiff was willing to eat with the Sunni Muslims temporarily, he alleges that when he attempted to enter the Masjid FN2 on October 6th, he was denied access by C.O. Mathew because he was not on the list. *Id.* at ¶ 35. Plaintiff alleges that Defendant Sergeant Jones maliciously failed to put him on the Sunni Muslim list. *Id.* at ¶ 34. Ultimately, Plaintiff was unable to eat with either Muslim sect for seven days until October 13, 2005, when he was permitted to eat with the Sunni Muslims. *Id.* at ¶ 19. During those seven days, Plaintiff observed the fasting strictures of Ramadan, but was unable to properly break his fast, thus resulting in a seven day fast. After informing Defendant Superintendent Donneli of the matter, Plaintiff was immediately placed with the Nation of Islam on October 18, 2005. *Id.* at ¶ 20.

FN1. Though Plaintiff submitted a "Material Fact" statement in accordance with N.D.N.Y.L.R. 7.1 (Dkt. No. 57), his statement is presented in an argumentative manner and does

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

(Cite as: 2009 WL 3049613 (N.D.N.Y.))

not clearly lay out all of his factual allegations. Therefore, the Court relies primarily on Plaintiff's Amended Complaint to discern his factual allegations.

FN2. A Masjid is a Muslim place of worship, commonly referred to in English as a Mosque.

**\*2** Though Plaintiff refrained from eating for seven days, he alleges no physical injury other than that he "lost a few pounds," was feeling lightheaded because of a possible increase in blood pressure, and suffered mental and emotional distress. Dkt. No. 58, Pl.'s Resp. in Opp'n to Defs.' Mot. (hereinafter "Pl.'s Resp.") at p. 2. In fact, Plaintiff stated candidly during his deposition that he did not suffer any physical injury. Dkt. No. 57-4, David L. Cochran, Esq., Affirm., dated Oct. 15, 2008, Ex. A, Pl.'s Dep., dated Jan. 22, 2008 (hereinafter "Pl.'s Dep.") at p. 2.

Plaintiff alleges a second violation of his constitutional right to freely exercise his religion when Defendants denied him the opportunity to have family visits during the Muslim festival of Eid-Ul-Adha. Am. Compl. at ¶ 22.

As a result of the aforementioned factual allegations Plaintiff claims he suffered emotional, mental, and physical distress, and seeks both compensatory and punitive damages for his alleged injuries. *Id.* at ¶¶ 22, 25 & 26.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In order for an issue of material fact to exist, it must relate to a disputed matter that "might affect the outcome of the suit," and the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the moving party bears the initial burden to demonstrate that there is no genuine issue as to any material fact, and therefore, they are entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and allege specific facts that present a genuine issue for trial. FED. R. CIV. P. 56(e). To that end, the non-movant cannot rest on "mere allegations or denials." *Id.*

When evaluating a motion for summary judgment, the court will draw all inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, when a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (cited in *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995)). Nevertheless, a party's "bald assertion," unsupported by evidence, is insufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

### B. Physical Injury Requirement

**\*3** The Prison Litigation Reform Act of 1995 ("PLRA"), codified in part at 42 U.S.C. § 1997e(e), states

that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The purpose of this physical injury requirement is to discourage frivolous suits commenced by inmates. *See Cox v. Malone,* 199 F.Supp.2d 135, 139-140 (S.D.N.Y.2002) ("Section 1997e(e) [ ... ] is a *substantive* limitation on the type of actions that can be brought by prisoners. Its purpose is to weed out frivolous claims where only emotional injuries are alleged.") (emphasis in original). The Second Circuit Court of Appeals has held that the PLRA applies to alleged constitutional violations brought under 42 U.S.C. § 1983. *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002).

In this case, the only physical injury that Plaintiff states he suffered was a loss of a few pounds and a possible increase in blood pressure. Pl.'s Resp. at p. 2. Furthermore, Plaintiff did not allege these injuries in his Amended Complaint, but rather, only after Defendants raised the PLRA defense in their Motion for Partial Summary Judgment. Prior to Defendants' Motion, Plaintiff stated at his deposition that he did not suffer any physical injury. Pl.'s Dep. at p. 2. Even assuming, *arguendo,* that Plaintiff had properly alleged a physical injury in his Amended Complaint, his allegations do not constitute physical injury for purposes of the PLRA.

Section 1997e(e) provides no definition of "physical injury." *Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999). However, courts have held that in order to constitute a physical injury under 1997e(e), an injury must be more than *de minimis,* but need not be significant. *Id.* (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997)); *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 570 (S.D.N.Y.2000) (citing *Siglar* ).

The issue is therefore whether Plaintiff's loss of a few pounds amounts to more than a *de minimis* injury for

purposes of the PLRA. In short, it appears this question is answered in the negative. Loss of weight is generally not considered to be a physical injury for purposes of the PLRA, especially the loss of only a few pounds. *See Dawes v. Walker,* 1998 WL 59454, at *1 n. 1 (N.D.N.Y. Feb.9, 1998)* ("It appears unlikely that lost weight is a physical injury within the meaning of Section 1997e(e).");* *see also Porter v. Coombe,* 1999 WL 587896, at *8 (S.D.N.Y. Aug.4, 1999)* (plaintiff's loss of twenty-five pounds did not constitute a physical injury); *accord Pearson v. Welborn,* 471 F.3d 732, 744 (7th Cir.2006) (plaintiff's loss of fifty pounds did not constitute a physical injury). Similarly, Plaintiff's alleged increase in blood pressure does not amount to physical injury. *See Jones v. H.H.C. Inc.,* 2003 WL 1960045, at *5 (S.D.N.Y. Apr.8, 2003);* *accord Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C.Cir.1998)* (articulating that § 1997e(e) precludes reliance on somatic manifestations of emotional distress). Thus, Plaintiff has not alleged a sufficient physical injury pursuant to the PLRA.

**\*4** Although Plaintiff has not met his burden on the physical injury requirement of the PLRA, his failure to do so is not completely dispositive of his underlying constitutional claim. "The failure of prisoners to plead or establish a compensable actual injury in a § 1983 constitutional tort claim [ ... ] only precludes the recovery of compensatory damages, but does not lead to the dismissal of the underlying claim." *Dawes v. Walker,* 239 F.3d 489, 496 (2d Cir.2001). Plaintiff may still be entitled to injunctive or declaratory relief for a violation of his constitutional rights. *Thompson v. Carter,* 284 F.3d 411, 416-418 (2d Cir.2002). A plaintiff is not required to show physical injury in order to recover nominal damages, punitive damages, or declaratory relief. *Gill v. Hoadley,* 2007 WL 1341468, at *4 (N.D.N.Y. May 4, 2007). In fact, it is error for courts not to award nominal damages in § 1983 actions when a constitutional violation has been established. *See Robinson v. Cattaraugus,* 147 F.3d 153, 162 (2d Cir.1998).

In the instant case, Plaintiff has requested punitive

Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

(Cite as: 2009 WL 3049613 (N.D.N.Y.))

damages. Am. Compl. at ¶ 26. Defendants do not challenge the merits of Plaintiff's underlying constitutional claim, therefore that issue is not before this Court. Due to Plaintiff's inability to demonstrate a physical injury under 1997e(e), compensatory damages for mental or emotional suffering are barred for his § 1983 claim, but it remains to be decided if Plaintiff is entitled to nominal damages, punitive damages, or declaratory relief.

### C. Plaintiff's Pendent State Law Claim

Plaintiff also brings a pendent state law claim pursuant to N.Y. CORR. LAWW § 610, which guarantees inmates "the free exercise and enjoyment of religious profession and worship" while incarcerated. Am. Compl. at ¶ 37. A federal court exercising pendent jurisdiction must apply state law. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996). "Thus, if state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction." Livingston v. Griffin, 2007 WL 2437433, at *2 (N.D.N.Y. Aug.22, 2007) (citing Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir.1996)).

Defendants argue that this claim is barred by N.Y. CORR. LAWW § 24, which reads:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the

employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

*5 Thus, § 24 precludes "the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment. Baker v. Coughlin, 77 F.3d at 14-15. And, because the Court of Claims is a court of limited jurisdiction, hearing only claims against New York State and no other individual or entity, § 24 amounts to a grant of immunity for corrections officers sued in their personal capacities for claims arising out of the discharge of their duties. N.Y. CT. CLMS. LAW § 9.

After the parties submitted their respective briefs on this Motion, the Supreme Court held in Haywood v. Drown, --- U.S. ----, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) that § 24, when used to relegate to the Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, is inconsistent with the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and therefore, unconstitutional. The Haywood Court held that New York State, having created courts of general jurisdiction that routinely hear § 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims [against corrections officers] that it considers at odds with its local policy." Id. at 2117. The Supreme Court found such selective treatment of § 1983 claims brought against corrections officers to be "contrary to Congress' judgment that all persons who violate federal rights while acting under color of state law shall be held liable for damages," and therefore, in violation of the Supremacy Clause. Id. at 2115 (emphasis in original).

In this case, Plaintiff has brought a state law claim

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

(Cite as: 2009 WL 3049613 (N.D.N.Y.))

pursuant to N.Y. CORR. LAWW § 610. Although the *Haywood* decision found § 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under § 1983, a federal statute. A claim brought pursuant to a state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear this pendent state law claim.

Even after *Haywood,* a New York state court (other than the Court of Claims) would not have jurisdiction to hear Plaintiff's pendent claim pursuant to § 24 because Plaintiff has alleged acts that clearly fall within the scope of the Defendants' employment duties as corrections officers. Therefore, this Court does not have jurisdiction to hear this pendent state law claim brought pursuant to N.Y. CORR. LAWW § 610, and it is recommended that such claim be **dismissed.** *Baker v. Coughlin,* 77 F.3d at 14-16; *see also, e.g., Cancel v. Mazzuca,* 205 F.Supp.2d 128, 139 (S.D.N.Y.2002) (dismissing plaintiff's pendent state law claims pursuant to § 24).

### III. CONCLUSION

For the reasons stated therein, it is hereby

***6 RECOMMENDED,** that the Defendants' Motion for Partial Summary Judgment (Dkt. No. 57) be **GRANTED in part and DENIED in part;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have

ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. ,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2009.

May v. Donneli

Slip Copy, 2009 WL 3049613 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2013 WL 5347468 (W.D.N.Y.)
**(Cite as: 2013 WL 5347468 (W.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Bertha A. JOHNSON, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF COR-
RECTIONAL SERVICES AND COMMUNITY
SUPERVISION, Lieutenant Wojinski, Captain Dale
Scalise, Sergeant Brown, Defendants.

No. 11–CV–079S.

Sept. 23, 2013.

Prathima C. Reddy, Law Offices of Prathima
Reddy, Buffalo, NY, for Plaintiff.

Benjamin K. Ahlstrom, New York State Attorney
General's Office, Buffalo, NY, for Defendants.

**DECISION AND ORDER**
WILLIAM M. SKRETNY, Chief Judge.
**I. INTRODUCTION**
**\*1** Plaintiff Bertha A. Johnson commenced this
action seeking damages for, *inter alia,* alleged viol-
ations of Title VII of the Civil Rights Act of 1964,
42 U.S.C. §§ 2000e *et seq.* and state law. Presently
before this Court is the motion of Defendants Woj-
inski, Scalise, and Brown to dismiss the Second
Amended Complaint as against them for lack of jur-
isdiction, on which this Court previously reserved
decision, and the Plaintiff's second motion for leave
to file a third amended complaint. For the reasons
that follow, the Court will grant Defendants' mo-
tion, and grant in part and deny in part Plaintiff's
motion.

**II. BACKGROUND**
Plaintiff filed her initial complaint *pro se* and
*in forma pauperis* against the New York State De-
partment of Correctional Services and Community
Supervision ("DOCCS") in January 2011. DOCCS
moved to dismiss this complaint, (Docket No. 4),

following which Plaintiff sought leave to file an
amended complaint. (Docket No. 18.) DOCCS op-
posed Plaintiff's motion, but before the Court ruled,
Plaintiff moved to file a 'supplemental complaint'
with additional claims. (Docket Nos. 20, 24–25.)
Plaintiff also filed three 'supplemental exhibits'
shortly thereafter. (Docket Nos. 26–28.) In a
December 2011 text order, this Court agreed with
DOCCS that Plaintiff's "current allegations are con-
fused," and ordered Plaintiff to file an amended
complaint incorporating her various claims and al-
legations. (Docket No. 30.)

Plaintiff filed what purported to be an amended
complaint in January 2012. (Docket No. 32.) The
Court found this document to be deficient, and
again afforded her an opportunity to file a com-
plaint that accurately recited her claims and allega-
tions. (Docket No. 31.) This Second Amended
Complaint, which named additional individual de-
fendants, was filed on February 27, 2012. (Docket
No. 36.) Following a review by the Court pursuant
to 28 U.S.C. § 1915 in light of Plaintiff's *in forma
pauperis* status,(Docket No. 41 ¶ 8), and a motion
to dismiss filed by DOCCS, (Docket Nos. 42), only
Plaintiff's federal claims of employment discrimin-
ation on the basis of race and gender and improper
retaliation in violation of Title VII remained viable
against DOCCS. (Docket No. 49.) Plaintiff's state
law claims against Defendant Wojinski for assault
and against Defendants Brown and Scalise for un-
lawful imprisonment also survived. (*Id.* at 2–3.)

These individual Defendants then moved to
dismiss the Second Amended Complaint as against
them based on the immunity provided by New York
Correction Law § 24. (Docket No. 53.) Plaintiff op-
posed the motion and, having retained counsel,
sought leave to file a third amended complaint.
(Docket No. 61.) This Court denied Plaintiff's mo-
tion on the ground that the numerous deficiencies in
the proposed third amended complaint would
render several causes of action subject to dismissal.
(May 1, 2013 Decision and Order at 7, Docket No.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

66.) In order to allow the litigation to move meaningfully forward, Plaintiff was permitted to file another motion for leave to file a third amended complaint on or before July 7, 2013. (*Id.*) Decision on the individual Defendants' motion to dismiss was reserved at that time. (*Id.* at 9–10.) Plaintiff thereafter timely filed the present motion for leave to amend.

### III. DISCUSSION

**\*2** Generally, leave to amend a pleading should be freely given when justice so requires. Fed.R.Civ.P. 15(a)(2). Nonetheless, it is in the sound discretion of this Court "to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). An amendment is considered futile if the amended pleading would not survive a motion to dismiss, either pursuant to Rule 12(b)(6) or on some other basis. *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002); *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 465 (W.D.N.Y.1997).

This Court has already ruled that granting Plaintiff leave to file another amended complaint is proper to help clarify the issues initially raised *pro se* and to incorporate additional factual allegations regarding Plaintiff's termination after this action was commenced. (May 1, 2013 Decision and Order at 3, 9–10.) Defendants opposition to the proposed new pleading is limited to the argument raised in the prior motion to dismiss: that Plaintiff's state law claims of assault and unlawful imprisonment are barred from consideration in this Court by N.Y. Correction Law § 24(1). (Defs' Mem of Law in Opp'n at 1–2, Docket No. 69; *see* Def's Mem of Law in Support of the Motion to Dismiss, 3–4, Docket No. 53). Defendants argue that amendment with respect to these claims should be denied as futile. (Defs' Mem of Law in Opp'n at 2.)

N.Y. Correction Law § 24(1) provides:

No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

*See Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (this section also prohibits review by a federal court exercising pendent jurisdiction). Section 24 therefore "shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997). Instead, any claim for damages due to a state correctional facility employee's action or inaction must be brought in New York's Court of Claims as a claim against the state. *Id.* § 24(2).

The jurisdictional limitation of § 24 is broad, and "immunity is not necessarily unavailable simply because the challenged conduct is violative of regulations of the Department of Correctional Services, or otherwise beyond an officer's authority." *Ierardi,* 119 F.3d at 187. Its application is nonetheless not absolute, and is limited to conduct occurring "within the scope of the employment and in the discharge of the [employee's] duties." N.Y. Correction Law § 24(1); *Ierardi,* 119 F.3d at 187. Conduct engaged in "for purely personal reasons unrelated to the employer's interests, ... which is a substantial departure from the normal methods of performing [an officer's or employee's] duties" is not considered within the scope of employment. *Gore v. Kuhlman,* 217 A.D.2d 890, 891, 630 N.Y.S.2d 141 (N.Y.A.D.3d Dep't 1995).

**\*3** In determining whether Correction Law § 24 applies, courts generally look at the factors associated with New York's scope of employment analysis. *Ierardi,* 119 F.3d at 187 n. 3 (citing *Riviello*

*v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979)). These factors include:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello,* 47 N.Y.2d at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278; *see Ieardi,* 119 F.3d at 187–88. Ultimately, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.' " *Cepeda v. Coughlin,* 128 A.D.2d 995, 996, 513 N.Y.S.2d 528, 530 (N.Y. A.D.3d Dep't 1987) (quoting *Riviello,* 47 N.Y.2d at 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (internal quotation marks omitted)), *lv denied* 70 N.Y.2d 602 (1987); *see Degrafinreid v. Ricks,* 452 F.Supp.2d 328, 333 (S.D.N.Y.2006); *Gore,* 217 A.D.2d at 891, 630 N.Y.S.2d 141.

In the instant case, Plaintiff's fifth and sixth causes of action are based on allegations that, shortly after her reinstatement pursuant to an arbitration ruling in her favor, Lieutenant Wojcinski "launched his entire body at her while[] screaming "WHAT" in an aggressive fashion when she attempted to enter ... the line-up room for her 7am call." (Proposed Third Amend. Compl. ¶ 57, Docket No. 67–2.) Plaintiff reported the incident and documented it in a logbook. (*Id.*) Hours later, Plaintiff "was called off her post in the yard by Defendant [Sergeant] Brown" and "confined in a conference room for over four hours against her will and denied union representation." (*Id.*) She further alleges that her confinement was the result of "a discussion with Captain Scalise, Deputy [Superintendent] Amoia and Superintendent Powers." (*Id.* ¶ 58.)

Although on-the-job conduct of DOCCS em-

ployees has under certain circumstances been found to be outside the scope of employment, "such holdings generally have been limited to cases in which the conduct was prompted purely by personal reasons unrelated to the employer's interest, or indicated an intentional course of conduct contrary to institutional rules, training and common sense." *Degrafinreid,* 452 F.Supp.2d at 334 (internal quotation marks, brackets, and citations omitted); *see Ierardi,* 119 F.3d at 188 (correction officer's alleged sexual harassment of co-worker while on duty was beyond scope of employment); *Livingston v. Griffin,* No. 9:04–CV–0607, 2007 WL 2437433, *2 (N.D.N.Y. Aug.22, 2007) (defendants not immune from allegation that they committed a civil battery by intentionally and deliberately feeding plaintiff foods mixed with unknown drugs). Here, however, Plaintiff alleges that these acts were carried out and condoned by her supervisors as part of a pattern of discrimination and retaliation. Therefore, as alleged, these incidents "occurred during the course of the parties' employment and arose out of defendants' relationship as plaintiff's supervisors." *Gore,* 217 A.D.2d at 890, 630 N.Y.S.2d 141; *see Reynolds v. Barrett,* 685 F.3d 193, 201 n. 5 (2d Cir.2012) (affirming dismissal of state law discrimination claims as barred by Corrections Law § 24); (*see* Proposed Third Amend. Compl. ¶ 93 (alleging that the assault was part of "Defendants' illegal retaliatory actions")). A supervisor's abuse of authority "for the purposes of harassment, as alleged by plaintiff, constitutes no more of a departure from the normal methods of performing the duties of employment than a correction officer's use of excessive force to quell an inmate disturbance, resulting in an assault." *Gore,* 217 A.D.2d at 891, 630 N.Y.S.2d 141 (citing *Cepeda,* 128 A.D.2d at 997, 513 N.Y.S.2d 528 (section 24 applied to alleged assault of inmates by correction officers because custody and control of inmates are part of the officers' duty)); *cf. Ierardi,* 119 F.3d at 185, 188 (specifically noting that the plaintiff and the defendant were co-workers, neither of whom had supervisory authority over the other).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*4** Plaintiff's motion for leave to amend is therefore denied with respect to her proposed fifth and sixth causes of action for unlawful imprisonment and assault. These factual allegations, however, are appropriately considered in connection with her federal discrimination claims and should remain included in the filed third amended complaint.

Finally, because Correction Law § 24 applies a jurisdictional limitation, this Court is obligated to consider whether it is precluded from ruling on Plaintiff's third cause of action of discrimination in violation of the New York State Human Rights Law ("NYSHRL"). *See Baker,* 77 F.3d at 15–16 (discussing application of state limitation on jurisdiction in federal court); *see generally Joseph v. Leavitt,* 465 F.3d 87, 89 (2d Cir.2006) (court has obligation to address issue of jurisdiction *sua sponte* ), *cert. denied,* 549 U.S. 1282, 127 S.Ct. 1855, 167 L.Ed.2d 325 (2007). Plaintiff claims therein that the individually named Defendants [FN1] "aided, abetted, incited, compelled or coerced discriminatory conduct forbidden by NYSHRL through their active participation in conduct giving rise to a discrimination claim." (Proposed Third Amend. Compl. ¶ 81.). A state employee may be held liable in his or her individual capacity under N.Y. Executive Law § 296(6) for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by NYSHRL. *See Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir.2012); *Smith v. State Univ. of N.Y.,* No. 1:00–CV–1454, 2003 WL 1937208, \*7 (N.D.N.Y. Apr.23, 2003). Plaintiffs' specific allegations made in support of this claim, however, describe the individual Defendants' abuse or dereliction of their supervisory positions. Specifically, in addition to the alleged assault and confinement, Plaintiff asserts that the individually named Defendants failed to respond to complaints, failed to take appropriate remedial action with respect to harassment by coworkers, and created false allegations to support imposing discipline on Plaintiff. (Proposed Third Amend. Compl. ¶ 82.) Accordingly, this cause of action is also barred from consideration in this Court by Corrections Law § 24. *See Gore,* 217 A.D.2d at 891, 630 N.Y.S.2d 141 (disciplinary actions and similar matters fell within the defendants' authority as plaintiff's supervisors).

> FN1. Plaintiff correctly conceded that a NYSHRL claim is barred against Defendant DOCCS on the ground of Eleventh Amendment immunity. (*See* Docket No. 65 at 2.)

### IV. CONCLUSION

Because Correction Law § 24 bars consideration of Plaintiffs' alleged state law claims against the individual Defendants, the Motion to Dismiss the Second Amended Complaint as against Defendants Wojinski, Scalise, and Brown (Docket No. 53) is granted. Plaintiff's second Motion for Leave to File a Third Amended Complaint is granted with respect to the proposed first, second, and fourth causes of action against Defendants DOCCS and Superintendent Sandra Amoia–Kowalczyk, and is otherwise denied.

### V. ORDERS

IT HEREBY IS ORDERED that the motion of Defendants Wojinski, Scalise, and Brown to dismiss the Second Amended Complaint as against them (Docket No. 53) is GRANTED;

**\*5** FURTHER, that Plaintiff's second Motion for Leave to File a Third Amended Complaint (Docket No. 67) is GRANTED in part and DENIED in part. Plaintiff is directed to file a third amended complaint that complies with this order by October 11, 2013.

SO ORDERED.

W.D.N.Y.,2013.
Johnson v. New York State Dept. of Correctional Services and Community Supervision
Slip Copy, 2013 WL 5347468 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Stanley W. McPHERSON, Petitioner,
v.
J. BURGE and H.D. Graham, Respondents.
No. 9:06-CV-1076 (GTS/VEB).

May 5, 2009.
West KeySummary**Habeas Corpus 197** ☞ 603.4

197 Habeas Corpus

197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.4 k. Bar of limitations in general.
Most Cited Cases
(Formerly 197k603)

A defendant's claim for habeas relief, concerning the prison's withholding of good time credits for failure to participate in drug abuse treatment, was barred by the statute of limitations. The defendant filed the claim more than one year after learning of the administrative decision to revoke his good time credits. There were no extraordinary circumstances that prevented the defendant from filing the claim in a timely manner. 28 U.S.C. § 2224(d)(1)(D).

Stanley W. McPherson, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Frederick H. Wen, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.
**\*1** Stanley W. McPherson ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on August 31, 2006. (Dkt. No. 1.) By

Report-Recommendation dated January 27, 2009, the Honorable Victor E. Bianchini, United States Magistrate Judge, recommended that the Petition be denied and dismissed, and that a certificate of appealability not issue. (Dkt. No. 15.) Petitioner timely filed his Objections to the Report-Recommendation on February 4, 2009. (Dkt. No. 16.) For the reasons discussed below, Magistrate Judge Bianchini's Report-Recommendation is accepted and adopted in its entirety, and Petitioner's petition is denied and dismissed in its entirety.

**I. STANDARD OF REVIEW**

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

> FN1. On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

FN2. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

## II. BACKGROUND

For the sake of brevity, the Court will not repeat the factual background of Petitioner's 1991 conviction for Second Degree Attempted Murder and Second Degree Criminal Possession of a Weapon because Petitioner does not contest his judgment of conviction. (Dkt. No. 15, at 1.) Likewise, the Court will not repeat the factual background surrounding Petitioner's contention that the Auburn Correctional facility improperly withheld six years and eight months of good time credits on or about June 23, 2003, as a result of Petitioner's refusal to participate in a drug abuse treatment program, but will simply refer the parties to the relevant portions of Magistrate Judge Bianchini's Report-Recommendation, which accurately recite that factual background. (Dkt. No. 15, at 1-4.)

In his Petition, Petitioner asserts seven claims in support of his request for habeas relief.FN3 In his Report-Recommendation, Magistrate Judge Bianchini recommends that the Court deny each of these claims as not timely under the one-year limitations period, established by 28 U.S.C. § 2224(d)(1)(D). (*Id.* at 5-6.) In his Objections to Magistrate Judge Bianchini's Report-Recommendation, Petitioner simply states that he objects to the Report-Recommendation. (Dkt. No. 16.)

FN3. These claims are discussed in Magistrate Judge Bianchini's Report-Recommendation. (Dkt. No. 15, at 4.)

**\*2** Because Petitioner has not made specific objections to the recommendations in Magistrate Judge Bianchini's Report-Recommendation, the Court need only review the Report-Recommendation for clear error. *See, supra,* Part I of this Decision and Order. After carefully reviewing all of the papers in this action, including Magistrate Judge Bianchini's Report-Recommendation, the Court agrees with each of the recommendations made by Magistrate Judge Bianchini, and rejects Plaintiff's general objection. (Dkt. No. 15; Dkt. No. 16.) FN4 Magistrate Judge Bianchini employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 15, at 5-12.) As a result, the Court accepts and adopts Magistrate Judge Bianchini's Report-Recommendation in its entirety for the reasons stated therein.

FN4. The Court notes that Magistrate Judge Bianchini's Report-Recommendation would also survive *de novo* review.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report-Recommendation (Dkt. No. 15) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Petitioner's petition (Dkt. No. 1) is *DENIED* and *DISMISSED* in its entirety; and it is further

**ORDERED** that a Certificate of Appealability shall not issue; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close the file.

## REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.
### I. INTRODUCTION
Petitioner Stanley W. McPherson, acting *pro se,*

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1991, he was convicted in a New York State court of two counts of Second Degree Attempted Murder, and one count of Second Degree Criminal Possession of a Weapon. Petitioner does not contest his judgment of conviction, but challenges a decision by the Auburn Correctional Facility to withhold six years and eight months of good time credits as a result of Petitioner's refusal to participate in a drug abuse treatment program.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

### A. Facts[FN1]

> FN1. In the interest of judicial economy and because Petitioner does not contest his underlying conviction in this case, this Court will not discuss, in depth, the facts of Petitioner's underlying conviction, trial, or appeals. Rather, this Court will discuss Petitioner's appeals that are relevant to his current habeas petition.

On April 22, 1990, Petitioner approached two women in the Bronx and asked them if they knew where he could buy some "smoke." When they were unable to direct him, he left and came back with a gun and shot and injured the two women as they tried to run away from him. (Docket No. 9 at Exhibits B & H). On December 6, 1991, Petitioner was convicted of two counts of attempted murder in the second degree, and criminal possession of a weapon in the second degree. He was sentenced to concurrent terms of ten (10) to twenty (20) years on each of the two attempted murder counts, and three (3) to six (6) years on the weapon possession count. *See People v. McPherson,* 198 A.D.2d 119, 603 N.Y.S.2d 828 (1st Dep't 1993).

**\*3** During Petitioner's prison intake interview, he admitted using marijuana regularly from 1981 through 1986 and stated that he had recently smoked it on a daily basis. A drug abuse program was recommended for

Petitioner, however, he refused to participate. On June 3, 2003, Petitioner appeared at a hearing of the Auburn Correctional Facility Time Allowance Committee ("TAC"). Based on Petitioner's refusal to participate in the drug program, the TAC recommended that all of Petitioner's good time credits, totaling six years and eight months, be withheld from his sentence. (Docket No. 9 at Exhibits A at 3 & B). The TAC advised Petitioner that he could request a reappearance if he completed the drug abuse program. (*Id.* at Exhibit B). Respondent Burge confirmed the TAC's recommendation on June 3, 2003. Petitioner administratively appealed that decision, which was affirmed on June 23, 2003. (*Id.* at Exhibit A at 5 & B).

### B. Article 78 Proceedings

On November 13, 2003, Petitioner, proceeding *pro se,* filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). Petitioner asserted that the withholding of his good time credits violated his Fourteenth Amendment rights. (Docket No. 9, Exhibit A at 2-11). Petitioner argued that there was no evidence of positive drug urinalysis in his record while he was incarcerated. (*Id.* at 3). Therefore, Petitioner argued, in light of the fact that he did not use drugs while incarcerated, he did not qualify for the program and should not have been required to participate. (*Id.*).

The Honorable Joseph C. Teresi, Justice of the New York State Supreme Court, dismissed Petitioner's Article 78 petition on April 28, 2004. On May 11, 2004, Petitioner appealed to the Appellate Division, Third Department, which affirmed the Supreme Court's dismissal of his petition. *McPherson v. Goord,* 17 A.D.3d 750, 793 N.Y.S.2d 230 (3d Dep't 2005).

The Appellate Division stated that:

Although petitioner contends that the recommendation that he participate in a substance abuse program was in error given the absence of any drug abuse in the underlying crimes or in his institutional record, the record establishes that just prior to committing the instant offense, petitioner asked the victims of the crime where he could buy some 'smoke.' Furthermore, the presentence investigation report indicates that petitioner admitted to the use of marihuana.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

*Id.* at 751, 793 N.Y.S.2d 230. The New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on September 15, 2005. *McPherson v. Goord, 5*, N.Y.3d 709 (2005).

## C. Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se,* commenced this action on August 31, 2006, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts that: (1) withholding his good time credits for his refusal to attend the drug abuse program when the program did not apply to him violated his constitutional rights; (2) "[a] Due Process violation in procedure and determination. A Liberty Interest as of mandatory conditional release."; (3) his Fourteenth Amendment rights were violated when he was not conditionally released from his indeterminate sentence after completing 2/3 of his sentence; (4) his rights under the Ex Post Facto Clause were violated by Respondents adding the drug abuse program as a requirement in order for Petitioner to obtain his good time credits after he was incarcerated and that Respondents failed to transcribe the hearing proceedings; (5) the Appellate Division violated his equal protection rights in reviewing Petitioner's pre-sentence report *in camera* without Petitioner and without giving Petitioner an opportunity to review the report; (6) the Time Allowance Committee violated Petitioner rights by failing to record or transcribe the hearing; and (7) his Fifth Amendment rights were violated by Respondents' failure to follow proper procedure and by "failing to following [sic] the statute § 7804 of CPLR." (Docket No. 1).

**\*4** Respondent filed a Response and memorandum of law in opposition on December 29, 2006. (Docket No. 6). Thereafter, on January 3, 2007, Respondent filed an Amended Answer and Memorandum of Law. (Docket No. 8). Petitioner filed his Traverse on January 17, 2007. (Docket No. 17). This case was referred to the undersigned by Order of the Honorable Norman A. Mordue, Chief United States District Judge, on October 27, 2008. (Docket No. 13).

## III. DISCUSSION

## A. Timeliness

A state prisoner challenging the loss of good time credits must bring an action for habeas corpus relief under 28 U.S.C. § 2254. *Jenkins v. Duncan,* No. 02-CV-0673, 2003 WL 22139796, at *3 (N.D .N.Y. Sep. 16, 2003); *see also Cook v. New York State Div. of Parole,* 321 F.3d 274, 278-79 (2d Cir.2003) (holding that state prisoner "must bring a challenge to the execution of his or her sentence ... under § 2254").

Petitioner challenges the execution of his sentence, namely, the TAC's decision to revoke his good time credits. As such, the Petition was properly brought pursuant to § 2254. However, because Petitioner is a "person in custody pursuant to the judgment of a state court," he was required to file his petition for habeas corpus relief in accordance with the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See Cook,* 321 F.3d at 280 (concluding that limitations period of § 2244 applies to petitions under § 2254).

Section § 2244(d)(1) provides, in pertinent part, as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

In the present case, Petitioner is not challenging the judgment of conviction, there was no state action that impeded Petitioner from seeking habeas relief, and there is no issue regarding retroactive application of a constitutional right recognized by the Supreme Court. As such, the one-year limitations period began running, pursuant to § 2244(d)(1)(D), on the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

*5 Thus, this Court must determine the date on which the factual predicate of Petitioner's claims could have been discovered with due diligence. The Second Circuit faced an analogous situation in *Cook.* The petitioner in *Cook* was challenging the revocation of his parole. The Second Circuit concluded that the factual predicate for the petitioner's claim reasonably would have been discovered when he "was notified that the administrative decision to revoke his parole had become final." *Cook,* 321 F.3d at 280.

Petitioner challenges the revocation of his good time credits, arguing that the administrative decision in that regard violated his federal constitutional rights. Thus, in accordance with the Second Circuit's reasoning in *Cook,* this Court finds the "factual predicate" of Petitioner's claims was readily identifiable on the date the administrative decision to revoke his good time credits became final.

This raises the question of when Petitioner was notified that the revocation of good time credits was "final." The TAC recommended on June 3, 2003, that Petitioner's good time credits be revoke. That decision was adopted by the superintendent of the correctional facility on that same date. The superintendent's decision was upheld on administrative appeal on June 23, 2003. It is not clear from the record when Petitioner was notified of this decision. However, there is no allegation of undue delay or any reason to believe that Petitioner was not notified at or about the time of the decision.

On September 17, 2003, the chair of the TAC responded to a "recent memo" from Petitioner requesting

reconsideration of the decision. As such, the record clearly indicates that Petitioner was aware of the administrative decision underlying his claims prior to September 17, 2003 (as evidenced by the fact that he sent a memo to the TAC requesting a reconsideration).

Because the actual date of notice of the Superintendent's decision upholding the revocation of good time credits is uncertain, out of an abundance of caution, this Court will use September 16, 2003, as the latest possible date upon which Petitioner could have been notified that the TAC's recommendation had been approved by the facility's superintendent and upheld on administrative review.[FN2] As such, Petitioner's deadline to commence this action would have expired on September 16, 2004, absent statutory or equitable tolling

> FN2. Respondent notes that October 14, 2003, might also be considered as the date on which the withholding of good time credits became "final." On that date, a second reconsideration request by Petitioner was denied. This Court finds that September 16th is the more appropriate date, as that was the last possible date on which Petitioner would have been notified that the TAC's recommendation had been adopted by the superintendent and affirmed on administrative appeal. At that point, Petitioner was clearly aware of the factual predicate of the claims that he raises in this action. In any event, even if October 14th was used as the starting date for a statute of limitations calculation, the instant Petition is still untimely.

**B. Statutory Tolling**

The one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) is modified by § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Under this subsection, the word "pending" designates the "end point" of the tolling period, *Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005), and "an application for state review is 'pending' until it has achieved final review

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

through the state's post-conviction procedures." *Foster v. Phillips,* No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005) (citing *Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); *accord, e.g., King v. Cunningham,* 442 F.Supp.2d 171, 180 n. 15 (S.D.N.Y.2006).

**\*6** In addition, the Second Circuit has held that the "proper calculation of Section 2244(d)(2)'s tolling provision *excludes* time during which properly filed state relief applications are pending but does not *reset* the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (emphases added); *accord Bethea v. Girdich,* 293 F.3d 577, 578 (2d Cir.2002).

In this case, the statute of limitations is statutorily tolled from November 13, 2003, when Petitioner filed his Article 78 proceeding,[FN3] until September 15, 2005, when the Court of Appeals of New York denied his application for leave to appeal. Thus, on September 15, 2005, Petitioner's Article 78 had completed the final stage of review and was no longer considered "pending" for tolling purposes.

> FN3. The Article 78 Petition is stamped as received by the Albany County Clerk on April 28, 2004. The Article 78 Petition was dated November 13, 2003. It is not clear why there was such a substantial gap between the date of filing and the date contained on the Article 78 Petition. Again, giving Petitioner every benefit of the doubt, this Court will consider the Article 78 Petition has having been filed on November 13, 2003.

Fifty-eight (58) days passed between September 16, 2003, the latest date on which Petitioner could have been "notified" of the decision to withhold his good time credits, and November 13, 2003, when he filed his Article 78 proceeding. Three hundred fifty (350) days elapsed between September 15, 2005, when the Court of Appeals denied Petitioner's application for leave to appeal, and August 31, 2006, when Petitioner filed this action for habeas relief.

With regard to this August 31, 2006 date, it should be noted this Court has given Petitioner the benefit of the "prisoner mailbox rule." The Petition was not actually filed by the Clerk of this Court until September 7, 2006. Per the "mailbox rule," a motion or pleading filed by a *pro se,* incarcerated petitioner is deemed filed the day that he or she turned the pleading over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk).

It is not clear when Petitioner delivered the Petition to prison officials. However, courts in this Circuit have generally concluded that "[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." *Torres v. Irvin,* 33 F. Supp .2d 257, 270 (S.D.N.Y.1998) (citing *Hunter v. Kuhlman,* 97 Civ. 4692, 1998 WL 182441, at *1 n. 2 (S.D.N.Y. Apr.17, 1998)) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997); *Jones v. Artuz,* No. CV 97-2394, 1997 WL 876735, at *1 (E.D.N.Y. Sept. 13, 1997)); *accord Johnson v. Coombe,* 156 F.Supp.2d 273, 277 (S.D.N.Y.2001). In accordance with this practice, this Court deems the Petition filed on August 31, 2006, the date it was signed by Petitioner.

Based on the foregoing calculations, this Court finds that four hundred and eight (408) days of untolled time passed between the latest possible date on which Petitioner was aware of the factual predicate underlying his claim (September 16, 2003) [FN4] and the date that he filed the instant case (August 31, 2006). The Petition for habeas relief is therefore untimely and barred by the one-year statute of limitations set forth in § 2244.

> FN4. The Petition is untimely even if October 14, 2003, the date on which Petitioner's second reconsideration request was denied, is used as the date on which Petitioner was aware of the factual predicate underlying his claims. Using that date, three-hundred eighty (380) days of untolled time

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

elapsed prior to the filing of this case.

**C. Equitable Tolling**

**\*7** The one-year period set forth in AEDPA for the filing of federal habeas petitions is a statute of limitations, not a jurisdictional period. *Smith,* 208 F.3d at 17. However, it is only in " 'rare and exceptional circumstances' " that AEDPA's limitations period may be subject to equitable tolling. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (quoting *Smith,* 208 F.3d at 17)).

Consequently, the period may be equitably tolled only if a petitioner is able to show that extraordinary circumstances prevented him from filing his petition earlier and that he acted with reasonable diligence throughout the period sought to be tolled. *Id.* "Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period. *Smaldone v. Senkowski,* 273 F.3d 133 (2d Cir.2001).

Equitable tolling also "requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000). Thus, the petitioner must show that extraordinary circumstances "prevented" him from filing on time. *Id.* at 133-34.

There is no indication in the record of any extraordinary circumstances that operated to prevent Petitioner from timely filing his application for habeas relief. In particular, there is no evidence that the nearly one year delay between the conclusion of the Article 78 proceeding and the filing of this case was caused by any events beyond Petitioner's control. Petitioner's *pro se* status does not, in and of itself, entitle him to equitable tolling. *Id.* (citing *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.")); *see also Francis v. Miller,* 198 F.Supp.2d 232, 235

(E.D.N.Y.2002) (stating that petitioner's ignorance of the law and legal procedures are not extraordinary circumstances); *Armand v. Strack,* No. 98 Civ. 6650, 1999 WL 167720, at \*5 (E.D.N.Y.Feb.19, 1999) (noting that lack of access to law clerks, illiteracy, lack of English fluency and ignorance of the law have all been considered and rejected by courts as insufficient to demonstrate exceptional circumstances); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1998) (holding that equitable tolling based on excuses common among prisoners, such as lack of education and lack of familiarity with legal research, would undermine AEDPA's statute of limitations).

Accordingly, this Court finds that equitable tolling is not warranted in this case and therefore recommends that the Petition be dismissed as untimely filed and barred by the applicable statute of limitations.

**IV. CONCLUSION**

**\*8** For the reasons stated above, the Court recommends Stanley McPherson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. *See* 28 U.S.C. § 2253(c)(2) (1996).

**V. ORDERS**

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)

(Cite as: 2009 WL 1293342 (N.D.N.Y.))

**SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd. .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

N.D.N.Y.,2009.

McPherson v. Burge
Not Reported in F.Supp.2d, 2009 WL 1293342 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin*. I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.
HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> FN1. This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994).

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

#### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995). Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433-34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37-38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> FN5. Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. Cf. *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

*7 Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> FN6. A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

### III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

FN10. Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

*9 Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2013 WL 5357147 (D.Conn.)
**(Cite as: 2013 WL 5357147 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Raymond SEKIGUCHI, Plaintiff,
v.
Joseph LONG, Joshua Long, and Robert Pollak,
Defendants.

No. 3:13–cv–01223 (CSH).
Sept. 25, 2013.

Joshua B. Kons, Law Offices of Joshua B. Kons, LLC, Canton, CT, for Plaintiff.

Michael A. Carbone, Zeldes, Needle & Cooper, P.C., Bridgeport, CT, for Defendant.

### ORDER

HAIGHT, Senior District Judge:
## I. INTRODUCTION
*1 Plaintiff Raymond Sekiguchi (hereinafter "Plaintiff") brings this action against Defendants Joseph Long, Joshua Long, and Robert Pollak (hereinafter collectively "Defendants") alleging "breach of fiduciary duty, negligence, negligent misrepresentations, unjust enrichment, and violations [of] the Connecticut Unfair Trade Practices Act." [Doc. 1] at 1.

Plaintiff has asserted that this Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2), as "this is an action between citizens of the States of New Jersey, California and Connecticut on the one hand and a resident of Japan on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs." *Id.* at 2; *see also,* e.g., 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... (2) citizens of a State and citizens or subjects of a

foreign state," subject to specific exceptions.). As set forth below, however, Plaintiff has failed to allege sufficient facts to establish that such diversity of citizenship exists. The Court therefore mandates confirmation of the citizenship of all parties to this action.

## II. SUBJECT MATTER JURISDICTION
In general, if subject matter jurisdiction is lacking in an action before a court, the action must be dismissed. Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As the Second Circuit recently noted, "[w]here jurisdiction is lacking, ... dismissal is mandatory." *Lovejoy v. Watson,* 475 F. App'x 792, 792 (2d Cir.2012) (internal quotations and citation omitted).

Consequently a federal court must determine with certainty whether it has subject matter jurisdiction over a case pending before it. If necessary, the court has an obligation to consider its subject matter jurisdiction *sua sponte. Joseph v. Leavitt,* 465 F.3d 87, 89 (2d Cir.2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte.* "), *cert. denied,* 549 U.S. 1282 (2007); *see also, e.g., Univ. of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999) ("a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 107–08 (2d Cir.1997) (holding that district court may raise issue of subject matter jurisdiction *sua sponte* at any time)). It is, in fact, "common ground that in our federal system of limited jurisdiction any party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory." *Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir.1983).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*2** In order for requisite diversity of citizenship to exist under 28 U.S.C. § 1332(a), a plaintiff's citizenship must be diverse from the citizenship of all defendants to an action. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply,* 409 F.3d 73, 80 (2d Cir.2005) ( "Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373–74 (1978)). Such complete diversity "must exist *at the time the action is commenced,*" *Universal Licensing Corp. v. Lungo,* 293 F.3d 579, 581 (2d Cir.2002) (emphasis added), which in the case at bar is August 23, 2013, the date on which Plaintiff's Complaint was filed.

Plaintiff's statements concerning the citizenship of all Defendants, as well as Plaintiff's statements concerning his own citizenship, fall short of demonstrating the Court's subject matter jurisdiction. Plaintiff alleges that "Defendant Joseph Long is an individual and *resident* of New Jersey," that "Defendant Joshua Long is an individual and *resident* of California," and that "Defendant Robert Pollak is an individual and *resident* of Connecticut." [Doc. 1] at 2–3 (emphasis added). Plaintiff also alleges that Plaintiff "is an individual who was at all relevant times residing in and around Greenwich, Connecticut," but who "has subsequently relocated to Tokyo, Japan, where he currently *resides* ." *Id.* at 2 (emphasis added).

An individual's *citizenship* for diversity purposes, however, is determined by his or her *domicile,* not his or her *residence. See, e.g., Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir.2000). Courts have "long ... held that a statement of residence, unlike domicile, tells the court only where the parties are *living* and not of which state they are *citizens.* " *John Birch Soc. v. Nat'l Broadcasting Co.,* 377 F.2d 194, 199 (2d Cir.1967) (emphasis added). Thus it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.,* 126 F.3d 100, 102–03 (2d Cir.1997) (citing *Leveraged Leasing Admin. Corp.*

*v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir.1996)).

The differences between a domicile and a residence are straightforward. "In general, the domicile of an individual is his true, fixed and permanent home and place of habitation," which is to say, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum,* 461 U.S. 321, 331 (1983); *see also, e.g., Palazzo v. Corio,* 232 F.3d at 42. In contrast, the United States Supreme Court has described "residency" as occurring "when a person takes up his abode in a given place, without any present intention to remove therefrom." *Martinez v. Bynum,* 461 U.S. at 331. A "residency," therefore, may be taken up for personal or business reasons and may be either permanent *or* solely for a period of time. *Id.* The test for an individual's residency is thus significantly less stringent than the "more rigorous domicile test." *Id.*

**\*3** Given that "one can *reside* in one place but be *domiciled* in another," for jurisdictional purposes, the term " '[d]omicile' is not necessarily synonymous with [the term] 'residence.' " *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989) (citations omitted). Accordingly, while Plaintiff has alleged each party's *residency,* Plaintiff has not established any party's *citizenship* at the time the action was commenced, i.e., August 23, 2013. For the reasons explicated *supra,* a court may not and cannot simply infer the latter from the former. *See, e.g., Realty Holding Co. v. Donaldson,* 268 U.S. 398, 399 (1925). Accordingly, the citizenship of all parties to this action must be confirmed.

### III. *CONCLUSION*

In order to determine whether it has subject matter jurisdiction in this action, the Court hereby ORDERS Plaintiff to establish, by affidavit, both Plaintiff's own citizenship and the citizenship of all Defendants for diversity purposes as of the date this action was commenced by the filing of Plaintiff's Complaint, i.e., August 23, 2013. Plaintiff shall file and serve such affidavit regarding citizenship on or before **Wednesday, October 16, 2013.** All case

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 5357147 (D.Conn.)
**(Cite as: 2013 WL 5357147 (D.Conn.))**

deadlines shall be stayed pending the Court's review of this affidavit. If, upon review, the Court determines that it possesses subject matter jurisdiction, the action may proceed. Otherwise, in the absence of such jurisdiction, the Court shall dismiss the action without prejudice.

It is SO ORDERED.

D.Conn.,2013.
Sekiguchi v. Long
Not Reported in F.Supp.2d, 2013 WL 5357147 (D.Conn.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp., 1995 WL 65058 (N.D.N.Y.)
**(Cite as: 1995 WL 65058 (N.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.

G.W. WHITE & SON, INC., Plaintiff–Appellant,
v.
Robert G. TRIPP, Jr., Defendant–Appellee.

Civ. No. 94–CV–681 (FJS).
Feb. 14, 1995.

The Militello Law Office, P.C., Watertown, NY (
Christina Stone, of counsel), for plaintiff-appellant.

Williams, Katzman Law Firm, Watertown, NY (
David P. Antonucci, of counsel), for defendant-appellee.

DECISION AND ORDER

SCULLIN, District Judge.

INTRODUCTION

*1 This matter is before the Court on appeal from an April 18, 1994, Order of the United States Bankruptcy Court for the Northern District of New York, per Judge Gerling, which granted summary judgment in favor of debtor-appellee Tripp and dismissed the complaint of plaintiff-appellant Whites & Sons, Inc. ("Whites").

BACKGROUND

From September 6, 1990 through June 12, 1991, debtor Tripp purchased supplies from Whites to be used in Tripp's construction business. Tripp allegedly incorporated the supplies into real estate improvements and was paid for his work. Under New York's Lien Law the contractor, Tripp, is deemed to hold his customers' payments in trust to be applied first to the materialman, like Whites. Nonetheless, Tripp failed to pay Whites for the material and supplies.

On November 16, 1992, Tripp filed for bank-

ruptcy under Chapter 13 of the U.S. Bankruptcy Code and the bankruptcy court converted the petition to Chapter 7 on September 20, 1993. On January 25, 1994, Whites brought an adversary proceeding in the bankruptcy court objecting to the discharge of the debt, claiming that it was procured by defalcation while acting in a fiduciary capacity and is thus nondischargeable. Tripp moved for summary judgment claiming that the cause of action underlying the debt was time barred. Judge Gerling granted summary judgment and dismissed Whites' adversary proceeding. This appeal followed.

DISCUSSION

I. ONLY ALLOWED CLAIMS CAN BE SUBJECT TO DISCHARGE

Generally, before the bankruptcy court can determine if a debt is dischargeable, it must determine first if the alleged debt is a valid claim, second whether the claim will be allowed, and lastly whether the claim is dischargeable. Here both parties focus the court's attention on whether federal law is to be applied to determine if a claim is dischargeable. However, prior to reaching that question, the court must first address the question of whether the claim is one that should be allowed. If the claim is not allowed then the bankruptcy court does not need to determine if it is dischargeable.

A. Relationship Between Allowed Claims and Dischargeable Claims

Once a debtor has filed for bankruptcy, listed his creditors and scheduled his assets and liabilities, the creditors are given a period of time in which to file proofs of claim. See 11 U.S.C. § 521 (1993) (requiring debtor to file list of creditors and schedule finances) 11 U.S.C. § 501 (1993) (filing proofs of claim). The definition of "claim" in bankruptcy is afforded its broadest possible meaning. See 11 U.S.C. § 101(5) (defining claim); *Johnson v. Home State Bank,* 501 U.S. 78, 78 (1991).

After the claims are filed, 11 U.S.C. § 502 becomes operative. It provides:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 65058 (N.D.N.Y.)
**(Cite as: 1995 WL 65058 (N.D.N.Y.))**

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) ... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of filing of the petition, and shall allow such claim in such amount, *except to the extent that—*

**\*2** (1) *such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law* for a reason other than because such claim is contingent or unmatured; ....

11 U.S.C. § 502 (1993) (emphasis added).

The import of § 502(b)(1) is that "a claim against the bankrupt estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." *In re Sanford,* 979 F.2d 1511, 1512 (11th Cir.1992). Whether the claim would be enforceable outside of bankruptcy is determined by looking to "any applicable law," including state statutes of limitations. *See In re Edge,* 60 B.R. 690, 699 (M.D.Tenn.1986) ("Statutes of limitations are an example of 'applicable law' which might render a claim unenforceable against a debtor and not allowable."); *In re Dunn,* 50 B.R. 664, 666 (Bankr.W.D.N.Y.1985) ("[I]t would appear that a defense of statute of limitations having run would cause a claim to be unenforceable and disallowed."); *In re Great Eastern Express, Inc.,* 37 B.R. 579, 581 (Bankr.M.D.Pa.1984) ("Thus, if a claim is unenforceable against the debtor or against property of the debtor because, under applicable law, the debtor could raise the defense of ... statute of limitations, such a basis affords the trustee a basis for the disallowance of the claim."). Therefore, if a claim would be unenforceable against the debtor outside of bankruptcy because the statute of limitations has run, the claim will not be allowed in bankruptcy. *In re Grosso,* 9 B.R. 815, 821 (Bankr.N.D.N.Y.1981).

In a Chapter 7 bankruptcy, such as the present case, allowed claims ultimately may be discharged—that is, the debtor may be relieved from repaying the claim. *See* 11 U.S.C. § 727 (1993) (discharge in Chapter 7 bankruptcy); 11 U.S.C. § 524 (1993) (effect of discharge). However, not all allowed claims are dischargeable. Section 523(a)(6) of Title 11 provides:

(a) A discharge under section 727 [*i.e.* Chapter 7] ... of this title does not discharge an individual debtor from any debt—

....

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

Thus if an allowed debt [FN1] was procured by fraud or defalcation within the meaning of § 523, and the party properly objects to its discharge, it will not be dischargeable in a Chapter 7 bankruptcy.

Whites' claim must be analyzed against this statutory backdrop.

## II. SHOULD WHITES' CLAIM BE "ALLOWED"?

The Bankruptcy Court determined that Whites' claim was time barred. This court reviews that determination *de novo. In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992). The factual underpinnings of that determination, however, are reviewed under a clearly erroneous standard. *Id.*

Whites alleged that it sold goods to Tripp from September 6, 1990 through June 12, 1991 which Tripp used in real estate improvements; that Tripp was paid for its completed work; and that Tripp did not pay Whites. Whites argues that the failure to pay over the monies constituted defalcation while acting under the fiduciary duty created by New York Lien Law Article 3–A, and thus, while the debt should be allowed, it is not dischargeable. *See* Record on Appeal at 25–27.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*3** Tripp moved for summary judgment and objected to Whites' claim alleging that New York Lien Law Article 3–A is subject to a one-year statute of limitations and that the adversary proceeding was commenced more than one year after the materials were supplied. Tripp therefore argues that the claim should not be allowed.

As was discussed previously, before the court can consider whether the debt is nondischargeable, it must first determine if the debt should be allowed. [FN2] The debt will not be allowed if it is time barred. *See* 11 U.S.C. § 502; *In re Grosso,* 9 B.R. 815, 821 (Bankr.N.D.N.Y.1981).

A similar issue was confronted in *In re Grosso,* 9 B.R. 815 (Bankr.N.D.N.Y.1981). There, a materialman sought to have a debt declared nondischargeable because it was allegedly procured by defalcation under a trust established by New York Lien Law Article 3–A. The Bankruptcy Court reasoned: "Presuming the Plaintiff will prove his statutory trust claims under Article 3–A of New York Lien Law, this Court must first examine the Debtor's asserted statute of limitations defenses." *Id.* at 821. This court must do the same.

Any action to enforce a trust established under New York Lien Law Article 3–A "shall not be maintainable if commenced more than one year after the completion of such improvements, or, in the case of subcontractors or materialmen, after the expiration of one year from the date on which final payment under the claimants' contract became due, whichever is later...." [FN3] New York Lien Law § 77 (McKinney 1993); *Grosso,* 9 B.R. at 821–22. "[A]bsent undisputed allegations, affidavits, and/or admissions, the question of when an improvement or project was completed so as to commence the running of the statute of limitations is one of fact to be determined at trial." *Grosso,* 9 B.R. at 822.

Here, Whites alleges that Tripp completed its work and was paid in full for such work; however, Whites does not allege when those events took place. Whites alleges that it has a claim for

$56,194.77 as of June 12, 1992, although it does not allege the significance of that date, for example, whether that is when the debt was due under a contract. Tripp offers no facts on this point, but merely claims that materials were supplied more than one year before the filing of the adversary proceeding. Based on the record before the court, there are insufficient facts to determine when the statute of limitations began to run on this claim. The court cannot determine when the work was completed nor when the payment was due under a contract.

In considering whether the claim was timely brought, it would appear that 11 U.S.C. § 108(c) extends the running of an unexpired statute-of-limitations from the date the bankruptcy petition is filed until, at a minimum, 30 days after the termination of the bankruptcy stay. Thus if a statute of limitations has not expired at the date of the petition is filed, then a claimant would have until 30 days after the bankruptcy stay is lifted to file a claim if the claim is not otherwise discharged. *See In re Morton,* 866 F.2d 561, 566 (2d Cir.1989) (measuring the statute of limitations against the date of the filing of the complaint); *Aslandis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993). Basically 11 U.S.C. § 108(c) protects creditors who are prevented from bringing a cause of action because of the strict bankruptcy stay, but on whose cause of action the statute of limitations period would run during the bankruptcy process. *See Morton,* 866 F.2d at 566–67.

**\*4** Although at least two cases have measured the running of the statute of limitations against when the adversary proceeding was filed, *see In re Dunn,* 50 B.R. 664, 666 (Bankr.W.D.N.Y.1985); *In re Grosso,* 9 B.R. 815, 822 (Bankr.N.D.N.Y.1981), it seems that the proper inquiry should be whether the statute of limitations has run at the date of the filing of the bankruptcy petition, which in this case was November 16, 1992. *See Morton,* 866 F.2d at 566; *In re Burger,* 125 B.R. 894, 901 (Bankr.D.Del.1991).

Because there are insufficient facts in the re-

cord to determine whether the claim was time barred and because the Bankruptcy Court's Order did not set forth its reasoning, the case is remanded to the Bankruptcy Court for further consideration not inconsistent with this decision.

Therefore it is hereby

ORDERED that this action is REMANDED to the Bankruptcy Court of the Northern District of New York for further consideration not inconsistent with this decision.

IT IS SO ORDERED.

FN1. It should be noted that the term 'debt' has the same meaning as 'claim' for these purposes. "The two concepts are ... coterminous." *In re Villarie,* 648 F.2d 810, 812 (2d Cir.1981).

FN2. Plaintiff–Appellant Whites argues that the court can only consider the dischargeability of the debt and must leave the statute of limitations question for another forum, citing *In re Silba,* 170 B.R. 195 (Bankr.E.D.N.Y.1994). *In re Silba* noted that the statute of limitations question was not before the court because the debtor did not object to the claim. *Id.* at 199 n. 2. Because this court considers Tripp's answer and motion for summary judgment (which argues that the debt is time barred) as the equivalent of a claim objection under Fed.R.Bankr.P. 3001, *In re Silba* is inapplicable.

FN3. If the work is never completed and is abandoned then New York's "catcall" 6 year statute of limitation applies. *See Grosso,* 9 B.R. at 823; N.Y.CPLR § 213(1) .

N.D.N.Y. 1995
G. W. White & Son, Inc. v. Tripp
Not Reported in F.Supp., 1995 WL 65058

(N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.